**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| CHARLES BROWN, Individually and on behalf of all others similarly situated,<br><br>   Plaintiff,<br><br>v.<br><br>BIOGEN IDEC INC., WILLIAM RASTETTER AND JAMES MULLEN,<br><br>   Defendants. | Civil Action No. 05-cv-10400 (RCL) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION OF LOUISIANA SCHOOL EMPLOYEES' RETIREMENT SYSTEM AND MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM OF LOUISIANA TO CONSOLIDATE ALL ACTIONS, FOR APPOINTMENT AS LEAD PLAINTIFF, AND FOR APPROVAL <u>OF ITS SELECTION OF LEAD COUNSEL</u>**

**ADDITIONAL CAPTIONS ON NEXT PAGE**


| | |
|---|---|
| CARY GRILL, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>BIOGEN IDEC INC., WILLIAM RASTETTER AND JAMES MULLEN,<br><br>    Defendants. | Civil Action No. 05-cv-10453 (RCL) |
| ROCHELLE LOBEL, Individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>BIOGEN IDEC INC., WILLIAM RASTETTER AND JAMES MULLEN,<br><br>    Defendants. | Civil Action No. 05-cv-10801 (RCL) |

**PRELIMINARY STATEMENT**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), the Louisiana School Employees' Retirement System ("LSERS") and the Municipal Police Employees' Retirement System of Louisiana ("MPERS"), collectively (the "Louisiana Funds") with losses totaling approximately $1,047,986.13 from purchases of shares of Biogen Idec, Inc. ("Biogen" or the "Company"), respectfully submit this memorandum of points and authorities in support of its motion to: (i) consolidate all related actions; (ii) be appointed Lead Plaintiff in the consolidated securities class action; and (iii) approve its selection and retention of Berman DeValerio Pease Tabacco Burt & Pucillo ("Berman DeValerio") as Lead Counsel.

LSERS is a public pension fund system created on July 1, 1946 for the benefit of the current and retired public school employees of the State of Louisiana. The Fund is located in Baton Rouge and has total assets of approximately $1.5 billion. Funding comes from employer and employee contributions, as well as investment earnings. Similarly, MPERS is a public pension fund system organized for the current and retired police employees of the State of Louisiana. The Fund is located in Baton Rouge and has total assets of $1.5 billion.

This motion advances one of the primary goals of Congress in enacting the Private Securities Litigation Reform Act of 1995 ("PSLRA") – to encourage institutional investors to serve as lead plaintiffs in class actions brought under the federal securities laws. The legislative history of the PSLRA establishes that Congress clearly intended to

1

encourage institutional investors, and particularly public pension funds, to serve as lead plaintiffs. The Conference Committee's explanatory report expressly states that the PSLRA was intended "to increase the likelihood that institutional investors will serve as lead plaintiffs" because, among other reasons, "[i]nstitutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake." H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733. Similarly, the Senate Report on the PSLRA states, in pertinent part:

> The Committee believes that increasing the role of institutional investors in class actions will ultimately benefit the class and assist the courts… Institutions with large stakes in class actions have much the same interests as the plaintiff class generally.

Rep. No. 104-98, at 11 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 690.

The PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(iii), affords a presumption that the person (or group of persons) with the largest financial interest in the relief sought by the Class, who otherwise preliminarily satisfies the requirements of Fed. R. Civ. P. 23, is presumed to be the most adequate plaintiff and therefore should be appointed lead plaintiff. Here, the Louisiana Funds are believed to be the institutions with the largest financial interest in the relief sought by the Class and otherwise satisfy the applicable requirements of Fed. R. Civ. P. 23.

Warren Ponder, Esq., General Counsel for LSERS, and R. Randall Roche, General Counsel for MPERS, have submitted declarations regarding the Louisiana Funds' losses in Biogen stock, its roles and obligations as lead plaintiffs, its willingness to undertake those responsibilities, and its selection of counsel for the prosecution of this lawsuit. *See* Declarations of Warren Ponder and R. Randall Roche attached as Ex. C and

2

D to the Declaration of Jeffrey C. Block, Esq. ("Block Decl.") (filed herewith). The Louisiana Funds, under the direction of Mr. Ponder and Mr. Roche, understand its responsibilities as lead plaintiffs and are uniquely qualified to serve the role in this case. The Louisiana Funds also have negotiated an attorneys' fee agreement that provides for the payment of attorneys' fees, subject to this Court's approval, below the amounts typically requested in securities class actions.[1]

The Louisiana Funds each manage over $1.5 billion in assets on behalf of thousands of school employees, police officers and retirees. The Louisiana Funds have a significant financial stake in this litigation, having suffered losses of approximately $1,047,986.13 during the Class Period.[2] Block Decl. ¶ 7. The Louisiana Funds are precisely the types of investors Congress envisioned would serve as lead plaintiff in securities class actions following the passage of the PSLRA.

For the reasons set forth below, the Louisiana Funds respectfully request that this Court grant its motion to: (i) consolidate all related actions; (ii) be appointed Lead Plaintiff in the consolidated securities class action; and (iii) approve its selection and retention of Berman DeValerio as lead counsel.

## SUMMARY OF ALLEGATIONS

There are at least three class actions pending in the District of Massachusetts against Biogen[3] and certain current officers of the Company. The complaints allege that

---

[1] The Louisiana Funds are prepared to submit a copy of its Retainer Agreement to the Court for *in camera* review, should the Court wish to review it.

[2] The proposed class period in this case as stated in the press release issued by Schiffrin & Barroway on March 2, 2005 is February 18, 2004 through February 25, 2005 inclusive (the "Class Period"). See Exhibit B to the Block Decl.

[3] Biogen develops and manufactures novel therapies. Specifically, Biogen manufactures four commercial products: Avonex, for the treatment of relapsing multiple sclerosis; Rituxan and Zevalin, both of which treat B-cell non-Hodgkin's lymphomas; and Amevive, which treats psoriasis. Biogen also receives

3

defendants disseminated false and misleading statements to the investing public in violation of the federal securities laws. Specifically, the complaints allege that defendants: (a) knowingly or recklessly failed to disclose and misrepresented that TYSABRI, the first humanized monoclonal antibody approved for the treatment of multiple sclerosis ("MS"), which inhibits adhesion molecules on the surface of immune cells, posed serious immune-system side effects; (b) that TYSABRI, like other MS drugs, made patients susceptible to progressive multifocal leukoencephalopathy ("PML") by changing the way certain white blood cells function, thereby allowing PML, a normally dormant virus, to progress through the human body; (c) knew and/or recklessly disregarded documented facts that MS drugs can cause greater incidents of PML to occur; and (d) recklessly concealed these facts in order to fast track TYSABRI for FDA approval so that they could reap the financial benefits from the sales of the drug.

On February 28, 2005, before the market opened, Biogen announced a voluntary suspension in the marketing of TYSABRI® (natalizumab), a treatment for multiple sclerosis (MS), because of two serious adverse events that occurred in patients treated with TYSABRI in combination with AVONEX®(Interferon beta-1a) in clinical trials. In response to this announcement, Biogen's stock price fell $28.63 per share, or 42.44%, to close at $38.65 per share on unusually high trading volume.

The complaints further allege that Company insiders profited from Biogen's artificially inflated stock prices. Indeed, the Securities and Exchange Commission ("SEC") is currently investigating the sales of Biogen stock by company executives in the days prior to Biogen's February 28 announcement withdrawing TYSABRI from the

---

revenues from royalties on sales by its licensees of a number of products covered under patents that it controls including sales of Rituxan outside the Unites States. The Company was formed via the merger of Biogen, Inc. and IDEC Pharmaceuticals Corporation.

4

marketplace. Specifically, between February 14, 2005 and February 18, 2005 two Biogen officials sold shares of Company stock for $3 million in proceeds.

## ARGUMENT

### I. THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this Chapter has been filed, the Court shall not make the determination" of the most adequate plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii); 15 U.S.C. 77z-1(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff as lead plaintiff for the consolidated actions." Id. Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. See Fed. R. Civ. P. 42(a).

To date, the Louisiana Funds are aware of three class actions pending in this District against Biogen and certain officers and directors on behalf of purchasers of Biogen securities. These actions are:

| ABBREVIATED CASE NAME | CASE NUMBER | DATE FILED |
|---|---|---|
| 1. *Brown v. Biogen Idec Inc. et al.* | 1:05-cv-10400 | 3/02/2005 |
| 2. *Grill v. Biogen Idec Inc. et al.* | 1:05-cv-10453 | 3/10/2005 |
| 3. *Lobel v. Biogen Idec Inc. et al.* | 1:05-cv-10801 | 4/21/2005 |

All of these actions relate to the same series of allegedly false and misleading statements made or approved by the same defendants in the same press releases and SEC filings. All of the actions concern transactions in Biogen securities, which were traded on the NASDAQ during the Class Period. All documents to be reviewed and testimony to be taken relate to these allegedly false and misleading statements and are identical as to

5

all actions. In light of these facts, consolidation is clearly appropriate and in the interest of judicial economy. See Johnson v. Celotex Corp., 899 F.2d 1281, 1285 (2d Cir. 1990).

## II.     THE LOUISIANA FUNDS SHOULD BE APPOINTED LEAD PLAINTIFF

### A.     Procedural Requirements Under the PSLRA

On December 22, 1995, Congress enacted Public Law 104-67, the PSLRA, which amended provisions of the Exchange Act. The PSLRA sets forth, among other things, procedures for providing notice to members of the proposed Class regarding the selection of a lead plaintiff or plaintiffs to prosecute the action on behalf of the Class and the retention of lead counsel.

Section 78u-4(a)(3)(A)(i) of the PSLRA provides that within 20 days after the date on which a securities class action is filed:

> the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class -- (I) of the pendency of the action, the claims asserted therein, and the purported class period; and (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Further, Section 78u-4(a)(3)(B) of the PSLRA directs the Court to consider any motions by putative class members to serve as lead plaintiff in response to any such notice by the later of: (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate any actions "asserting substantially the same claim or claims." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

The PSLRA also directs the Court to presume that the "most adequate plaintiff" to serve as lead plaintiff is the person or group of persons that:

6

>(aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
>(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
>(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); see also In re Lernout & Hauspie Sec. Litig., 138 F. Supp. 2d 39, 42 (D. Mass. 2001).

This presumption "may be rebutted only upon proof by a member of the purported class that the presumptively most adequate plaintiff . . . will not fairly and adequately protect the interests of the class" or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); Lernout & Hauspie, 138 F. Supp. 2d at 43; In re Cendant Corp. Sec. Litig., 264 F.3d 201, 262-68 (3d Cir. 2001), cert. denied, 122 S. Ct. 1300 (2002) ("[O]nce the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair and adequate' job"); In re Waste Mgmt. Sec. Litig., 128 F. Supp. 2d 401, 410-12 (S.D. Tx. 2000); Gluck v. Cellstar Corp., 976 F. Supp. 542, 543-45 (N.D. Tex. 1997).

### B.   The Louisiana Funds' Motion Is Properly Made Pursuant To The PSLRA

Pursuant to Section 78u-4(a)(3)(A)(i) of the PSLRA, on March 2, 2005, the law firm of Schiffrin & Barroway, LLP caused to be published an initial notice over a national business-oriented wire service, *PRNewswire*, advising members of the proposed

7

class that a securities class action was filed and that investors had the right to move for appointment as lead plaintiff no later than May 2, 2005.  See 15 U.S.C. § 78u-4(a)(3)(A)(i); Block Decl. ¶ 2.  Having timely filed the instant motion, the Louisiana Funds satisfy the requirements set forth in Section 78u-4(a)(3)(B)(iii)(I)(aa) of the PSLRA.  See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

*PRNewswire* is a national business-oriented news wire service that distributed the notice to more than 2,000 different outlets, including *Bloomberg Business News*, *Dow Jones News Retrieval*, *Associated Press,* and *Reuters*.  Block Decl. ¶ 3.  The notice was reprinted, verbatim, by *YahooFinance, Lexis/Nexis* and *Westlaw*.  Block Decl. ¶ 2.

In Greebel v. FTP Software, Inc.*,* 939 F. Supp. 57 (D. Mass. 1996), the court found that the notice requirements of Section 78u-4(a)(3)(A)(i) of the PSLRA are satisfied when the plaintiff publishes notice through a national business wire service (in that case, *Business Wire*) and when the notice is republished on a medium such as *Bloomberg Business News*.  Id. at 62-64; see also Gluck 976 F. Supp. at 545 (N.D. Tex. publication of notice over *Business Wire* satisfies PSLRA notice requirement).  Thus, the notice requirements of Section 78u-4(a)(3)(A)(i) of the PSLRA have been satisfied in this case.

## C.     The Louisiana Funds Are The "Most Adequate Plaintiff"

The Louisiana Funds reasonably believe that they are the "most adequate plaintiff" to lead this securities class action.  The Louisiana Funds have suffered significant losses on their investment in Biogen securities, totaling approximately $1,047,986.13 providing a strong incentive to prosecute this action.

8

In addition, the Louisiana Funds are precisely the types of investors Congress envisioned would lead securities class actions when it enacted the PSLRA. The explanatory report accompanying the PSLRA's enactment specifically states that:

> The Conference Committee seeks to increase the likelihood that institutional investors will serve as lead plaintiffs by requiring courts to presume that the member of the purported class with the largest financial stake in the relief sought is the "most adequate plaintiff." . . .
>
> The Conference Committee believes that . . . in many cases the <u>beneficiaries of pension funds</u> - - small investors - - ultimately have the greatest stake in the outcome of the lawsuit. Cumulatively, these small investors represent a single large investor interest. Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.

H.R. Conf. Rep. No. 104-369, 104th Cong. 1st Sess. at 34 (1995), <u>reprinted in</u> 1995 U.S.C.C.A.N. 730, 733 (emphasis added); <u>see also</u> <u>Waste Mgmt.</u>, 128 F. Supp. 2d at 431 (stating Congressional preference to appoint institutional investors "that have the greatest financial interest in the recovery sought by the class . . ."); <u>Bowman</u>, 195 F.R.D. at 657 (large institutional investors, like public pension funds, are "exactly the type of lead plaintiff envisioned by Congress when it instituted the [PSLRA] lead plaintiff requirements . . . ."); <u>In re Network Ass'n. Sec. Litig.</u>, 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1999) ("Congress expected that the lead plaintiff would normally be an institutional investor. . . ."); <u>Gluck</u>, 976 F. Supp. at 548 ("through the PSLRA, Congress has unequivocally expressed its preference for securities fraud litigation to be directed by large institutional investors").

Indeed, Congress deemed institutional investors "presumptively most adequate to serve as lead plaintiffs in securities class actions." Greebel, 939 F. Supp. at 63-64. Furthermore, Congress believed that "increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions." In re Baan Co. Sec. Litig., 186 F.R.D. 214, 221 (D.D.C. 1999).

### D. The Louisiana Funds Otherwise Satisfy the Requirements of Rule 23

Section 78u-4(a)(3)(B) (iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B) (iii)(I)(cc). Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

FED. R. CIV. P. 23(a).

Of the four prerequisites to class certification, only two, typicality and adequacy, directly address the personal characteristics of the class representative. See In re Enron Corp. Sec. Litig., 206 F.R.D. 427, 441 (S.D. Tx. 2002) (noting that typicality and adequacy are directly relevant to choice of lead plaintiff). Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23, and defer its examination of the remaining requirements until the lead

10

plaintiffs move for class certification.  See Gluck, 976 F. Supp. at 546.  A court's determination with respect to typicality and adequacy are without prejudice to defendants' right to contest these issues later in the action.  See Waste Mgmt., 128 F. Supp. 2d at 409-10.  As set forth below, the Louisiana Funds satisfy the typicality and adequacy requirements of Rule 23(a), thereby justifying its appointment as Lead Plaintiff.

### 1. The Louisiana Funds' Claims Are Typical Of The Claims Of The Class

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied when the prospective lead plaintiff's claims arise out of the same course of conduct and are based on the same legal theory of the other members of the class.  See Lernout & Hauspie, 138 F. Supp. 2d at 46 (typicality satisfied when a "named plaintiffs' claims arise from the 'same events or course of conduct' and involve the same legal theory as do the claims of the rest of the class") (quoting In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1532 (D. Mass. 1991)).

> In order to meet the typicality requirement of Rule 23(a)(3):
>
> plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of absent members . . .  The question is simply whether a named plaintiff, in presenting his case, will necessarily present the claims of the absent plaintiffs.

Randle v. SpecTran, 129 F.R.D. 386, 391 (D. Mass. 1988) (citing Priest v. Zayre Corp., 118 F.R.D. 552, 555 (D. Mass. 1988)).

As detailed above, the complaints allege that management of Biogen knew or recklessly disregarded the underlying facts giving rise to the fraud, and with violating Sections 10(b) and 20(a) of the Exchange Act and related SEC regulations, by publicly

11

disseminating false and misleading financial statements, opinions on financial statements, and other public statements during the Class Period. The Louisiana Funds, like all members of the Class, relied upon the integrity of the market in purchasing Biogen common stock during the Class Period. Thus, the typicality requirement is satisfied in this case.

### 2. The Louisiana Funds Will Fairly And Adequately Represent The Interests Of The Class

Under Rule 23(a)(4) of the Federal Rules of Civil Procedure, courts have consistently applied a two-prong test to assess the adequacy of representation: (1) whether the named plaintiffs have interests antagonistic to those of the class; and (2) whether the plaintiffs' attorneys are qualified to conduct the litigation. See Lernout & Hauspie, 138 F. Supp. 2d at 46 ("plaintiffs must demonstrate that they have common interests and an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experience[d] and vigorously able to conduct the litigation"); Jenkins v. Raymark Indus., 782 F.2d 468, 472 (5th Cir. 1986); Rubenstein v. Collins, 162 F.R.D. 534, 538-39 (S.D. Tex. 1995). The Louisiana Funds satisfy this test. First, there is no conflict between the Louisiana Funds and other Class members - all investors are aligned in the common interest of recovering the maximum possible damages from the defendants. Indeed, the large losses suffered by the Louisiana Funds create an incentive to maximize the recovery in this case. Second, the Louisiana Funds have selected the qualified law firm of Berman DeValerio. Berman DeValerio specializes in the prosecution of federal securities fraud class action lawsuits, has represented institutional investor clients and other class representatives in other major class actions, and is thoroughly committed to vigorously prosecuting this action.

Moreover, this Court's determination of whether the Louisiana Funds are an adequate plaintiff to represent the interests of the Class "mandates an inquiry into . . . the willingness and ability of the representatives to take an active role in and control the litigation and to protect the interests of absentees." Berger, 257 F.3d at 482 (quoting Horton v. Goose Creek Indep. Sch. Dist., 690 F.2d 470, 484 (5th Cir. 1982)). The Louisiana Funds will adequately represent the interests of the Class by managing, directing, and controlling this litigation, and will vigorously prosecute the claims and relief sought by the Class. See Berger, 257 F.3d at 481-83. As shown in the declarations of Warren Ponder, Esq. and R. Randall Roche, Esq., the Louisiana Funds have affirmatively demonstrated its commitment to actively manage the prosecution of this case.

Accordingly, the Louisiana Funds satisfy the requirements of Section 78u-4(a)(3)(B)(iii)(I) of the PSLRA and should be appointed Lead Plaintiff.

### E.   The Court Should Approve the Louisiana Funds' Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel to represent the Class, subject to Court approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). The Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa). The Louisiana Funds have retained experienced and capable counsel that specialize in the prosecution of securities class actions. A copy of the firm resume of Berman DeValerio, proposed Lead Counsel, is annexed to the Block Decl. as Exhibit F.

### CONCLUSION

For all of the foregoing reasons, the Louisiana Funds respectfully request that the Court grant its motion and appoint it as Lead Plaintiff and approve its selection of Berman DeValerio as Lead Counsel.

Date:   May 2, 2005                   Respectfully submitted,


/s/ Jeffrey C. Block
**BERMAN DEVALERIO PEASE
 TABACCO BURT & PUCILLO**
Jeffrey C. Block (BBO# 600747)
Leslie R. Stern (BBO# 631201)
One Liberty Square
Boston, MA 02109
617/542-8300 Telephone
617/542-1194 Facsimile


**[Proposed] Lead Counsel**

14