# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

```
-------------------------------------------------------------X
CHARLES BROWN, Individually and on Behalf of   :
All Others Similarly Situated,
                                               :
                                                    05 CV 10400 (RCL)
                    Plaintiff,                 :
                                               :
            vs.                                :
                                               :
BIOGEN IDEC INC., WILLIAM RASTETTER,           :
and JAMES MULLEN,
                                               :
                    Defendants.                :
                                               :
-------------------------------------------------------------X
```

[Additional Captions Set Forth Below]


**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF ROCHELLE
LOBEL FOR CONSOLIDATION, APPOINTMENT AS LEAD
PLAINTIFF PURSUANT TO § 21D(A)(3)(B) OF THE SECURITIES
EXCHANGE ACT OF 1934 AND APPROVAL OF SELECTION OF LEAD COUNSEL**

{00004657.DOC ; 1}

```
-----------------------------------------------------------X
                                                           :
CARY GRILL, Individually and on Behalf of                  :
All Others Similarly Situated,                             :
                                                           :
                          Plaintiff,                       :     05 CV 10453 (RCL)
                                                           :
              vs.                                          :
                                                           :
BIOGEN IDEC INC., WILLIAM RASTETTER,                       :
and JAMES MULLEN,                                          :
                                                           :
                          Defendants.                      :
-----------------------------------------------------------X
                                                           :
ROCHELLE LOBEL, Individually and on Behalf of              :
All Others Similarly Situated,                             :
                                                           :
                          Plaintiff,                       :     05 CV 10801 (RCL)
                                                           :
              vs.                                          :
                                                           :
BIOGEN IDEC INC., WILLIAM RASTETTER,                       :
and JAMES MULLEN,                                          :
                                                           :
                          Defendants.                      :
-----------------------------------------------------------X
```

Movant Rochelle Lobel ("Lobel" or "Movant") hereby respectfully submits this memorandum of law in support of her motion for: (i) consolidation of all related actions for all purposes, pursuant to Rule 42 of the Fed. Rules of Civil Procedure; (ii) appointment as Lead Plaintiff, pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (iii) approval of Movants' selection of Lead Counsel.

## INTRODUCTION

The Actions are securities fraud class actions brought against Biogen, Idec, Inc. ("Biogen" or the "Company"), William Rastetter, and James Mullen (collectively referred to as the "Defendants") alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, on behalf of all persons who purchased Biogen common stock at artificially inflated prices during the proposed Class Period (collectively, the "Class").

Movant purchased 1,800 shares of Biogen between February 18, 2004 and February 25, 2005, inclusive (the "Class Period"), and suffered estimated losses[1] of $20,904.50 as a result of Defendants' misconduct. Movant seeks appointment as Lead Plaintiff and approval of her selection of Counsel for plaintiffs and the Class as set forth herein. As discussed below, Movant has satisfied each of the requirements of the PSLRA and, therefore, is qualified for appointment as Lead Plaintiff.

---

[1]     The estimated losses suffered by Movant are determined based on the certifications required under Section 21D of the Exchange Act and based on information concerning the current market for the Company's shares. See Declaration of Michael J. Klein, May 2, 2005, Ex. C. ("Klein Decl.").

## PROCEDURAL BACKGROUND

On or about March 2, 2005, the plaintiff in the Brown action[2] filed a complaint on behalf of a class consisting of all persons and entities who purchased Biogen common stock at artificially inflated prices during the proposed Class Period.  On March 2, 2005, notice was published over PR Newswire, advising members of the proposed class of their right to move the Court to serve as lead plaintiff within the requisite period from the date of publication of the notice.  See Klein Decl., Ex. A.

## STATEMENT OF FACTS

Biogen Idec. Inc. develops, manufacturers and commercializes novel therapies.[3]  ¶ 17.  As of December 31, 2003, it had four commercial products: Avonex (Interferon beta-1a) for the treatment of relapsing multiple sclerosis (MS), Rituxan (rituximab) and Zevalin (ibritumomab tiuxetan), both of which treat certain B-cell non-Hodgkin's lymphomas, and Amevive (alefacept) for the treatment of adult patients with moderate-to-severe chronic plaque psoriasis who are candidates for systemic therapy or phototherapy.  ¶ 17.  The Company also receives revenues from royalties on sales by its licensees of a number of products covered under patents that it controls including sales of Rituxan outside the United States.  ¶ 17.

The Class Period starts on February 18, 2004.  At that time, the Company issued a press release with the headline "Biogen Idec and Elan Announce Intention to Submit Antegren® for Approval for Multiple Sclerosis Based on One-year Data."  ¶ 21.  Through December of 2004, Biogen released press releases touting the efficacy of TYSABRI.  ¶ 22-26, 28.  Meanwhile, the

---

[2]    Brown v. Biogen Idec Inc., 05 CV 10400 (RCL) (D. Mass. Mar. 2, 2005).

[3]    References to complaints for purposes of this memorandum will be to the action entitled Lobel v. Biogen Idec, Inc., 05 CV 10801 (D. Mass. Apr. 21, 2005) (referred to as "¶__").

Company released inflated financial highlights on February 7, 2005.  ¶ 27.

The statements referenced above were materially false and misleading when made because defendants failed to disclose or indicate the following: (1) that TYSABRI posed serious immune-system side effects; (2) that TYSABRI, like other MS drugs, made patients susceptible to progressive multifocal leukoencephalopathy ("PML") by changing the way certain white blood cells function thereby allowing PML, a normally dormant virus, to run rampant with in the human body; (3) that defendants knew and/or recklessly disregarded documented facts that MS drugs can cause greater incidents of PML to occur; and (4) that defendants concealed these facts in order to fast track TYSABRI for FDA approval so that they could reap the financial benefits from the sales of the drug.  ¶ 29.

On February 28, 2005, before the market opened, Biogen issued a press release stating that it had voluntarily suspended the marketing of TYSABRI.  ¶ 30.  News of this shocked the market and shares of Biogen fell $28.63 per share, or 42.44 percent, to close at $38.65 on unusually high trading volume.  ¶ 31.  Additionally, as detailed by a chart in the Complaint, before the announcement was made, and while TYSABRI was being falsely hyped by the Company, insiders took advantage of Biogen's artificially inflated stock price by disposing of 786,244 shares of Company stock for $37,395,198.53 in proceeds, of which $17,572,188.53 went to Defendant Rastetter and $10,898,810 went to Defendant Mullen.  ¶ 37.

## **ARGUMENT**

### **POINT I**

### **The Actions Should Be Consolidated**

The above-captioned actions involve class action claims on behalf of the purchasers of Biogen common stock and assert essentially similar and overlapping class claims for relief

brought on behalf of purchasers of Biogen common stock.  Consolidation is appropriate where, as here, there are actions involving common questions of law or fact.  See Fed. R. Civ. P. 42 (a); Johnson v. Celotex Corp., 899 F.2d 1281, 1284 (2d Cir.), cert. denied, 498 U.S. 920 (1990). That test is met here and the Actions should be consolidated.

## POINT II

### Movant Should Be Appointed Lead Plaintiff

#### A.     The Procedure Required By The PSLRA

The PSLRA establishes a procedure governing the appointment of a lead plaintiff in "each action arising under the [Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A)(i).  On March 2, 2005, notice of the first Biogen action was published over PR Newswire.  See Klein Decl., Ex. A.

Second, the PSLRA provides that within 90 days after publication of notice, the Court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the Court determines the most adequate to represent the interests of the class members.  15 U.S.C. § 78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that - -
>
> (aa)     has either filed the complaint or made a motion in response to a notice . . .
>
> (bb)     in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4 (a)(3)(B)(iii).  See generally Greebel v. FTP Software, 939 F. Supp. 57, 64 (D. Mass. 1996).

**B.    Movant Satisfies The PSLRA's "Lead Plaintiff" Requirements**

      **1.    Movant Has Complied with the PSLRA in Timely Seeking Appointment as Lead Plaintiff**

The time period in which class members may move to be appointed as lead plaintiff herein under 15 U.S.C. § 78u-4 (a)(3)(A) and (B) expires on May 2, 2005.  Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on March 2, 2005), Movant timely moves this Court to be appointed Lead Plaintiff on behalf of all members of the class.

Movant has duly signed and filed a certification stating that she has reviewed the complaint filed in the action and is willing to serve as a representative party on behalf of the Class.  See Klein Decl., Ex. B.  In addition, Movant has selected and retained experienced and competent counsel to represent her and the class.  See Klein Decl., Exs. D and E.

Accordingly, Movant has satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and is entitled to have her application for appointment as Lead Plaintiff and her selection of counsel, as set forth herein, considered and approved by the court.

      **2.    Movant Has The Largest Financial Interest In The Relief Sought By The Class**

According to 15 U.S.C. § 21(a)(3)(B)(iii), the court shall appoint the lead plaintiff who represent the largest financial interest in the relief sought by the action.  During the Class Period, as evidenced by, among other things, the accompanying signed certification, Movant purchased 1,800 shares of Biogen common stock and suffered estimated losses of $20,904.50 as a result of

Defendants' misconduct.  <u>See</u> Klein Decl., Ex. C.  Therefore, Movant herein has a significant

financial interest in this case.  Moreover, Movant has not received notice of any other competing

applicant for lead plaintiff that has sustained greater financial losses in connection with the

purchase of Biogen.

      Therefore, Movant satisfies all of the PSLRA's prerequisites for appointment as Lead

Plaintiff in this action and should be appointed as Lead Plaintiff pursuant to 15 U.S.C. § 78u-

4(a)(3)(B).

### 3.    Movant Otherwise Satisfies the Requirements of Federal Rules of Civil Procedure Rule 23

      According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial

interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the

requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a

party may serve as a class representative only if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is
> impracticable, (2) there are questions of law or fact common to the
> class, (3) the claims or defenses of the representative parties are
> typical of the claims or defenses of the class, and (4) the
> representative parties will fairly and adequately protect the
> interests of the class.

      Of the four prerequisites to class certification, only typicality and adequacy directly

address the personal characteristics of the class representative.  Consequently, in deciding a

motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy

prongs of Rule 23(a), and defer examination of the remaining requirements until the lead

plaintiff moves for class certification.  <u>In re Lernout & Hauspie Sec. Litig.</u>, 138 F. Supp. 2d 39,

46 (D. Mass. 2001).

      Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby

justifying her appointment as Lead Plaintiff.  Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class.  Typicality exists if the named plaintiffs' claims arise from the "same events or course of conduct" and involve the same legal theory as do the claims of the rest of the class. In re Bank of Boston Corp. Sec. Litig., 762 F. Supp. 1525, 1532 (D. Mass. 1991).  However, the claims of the class representative need not be identical to the claims of the class to satisfy typicality. Guckenberger v. Boston Univ., 957 F. Supp. 306, 325 (D. Mass. 1997).

Movant seeks to represent a class of purchasers of Biogen shares who have identical, non-competing and non-conflicting interests.  Movant satisfies the typicality requirement, because she: (i) purchased Biogen shares; (ii) at market prices allegedly artificially inflated as a result of Defendants' violations of the federal securities laws; and (iii) suffered damages thereby. Thus, typicality is satisfied since the claims asserted by Movant arise from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory.  In re Lernout & Hauspie Sec. Litig., 138 F. Supp. at 46.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class."  "To meet the adequacy requirement, plaintiffs must demonstrate that they have common interests and an absence of conflict with the class members and that the plaintiffs' attorneys are qualified, experienced and vigorously able to conduct the litigation." In re Lernout & Hauspie Sec. Litig., 138 F. Supp. at 46.

Here, Movant is an adequate representative of the class.  As evidenced by the injury suffered by Movant, who purchased Biogen shares at prices allegedly artificially inflated by Defendants' violations of the federal securities laws, the interests of Movant are clearly aligned with the members of the class, and there is no evidence of any antagonism between Movant's

interests and those of the other members of the class.  In addition, as shown below, Movant's proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner.  Thus, Movants <u>prima</u> <u>facie</u> satisfy the typicality and adequacy requirements of Rule 23.

<b>POINT III</b>

<b><u>The Court Should Approve Movant's Choice of Lead and Liaison Counsel</u></b>

Pursuant to 15 U.S.C. § 78u-4 (a)(3)(B)(v), the proposed Lead Plaintiff shall, subject to Court approval, select and retain counsel to represent the class they seek to represent.  In that regard, Movant has selected Stull, Stull & Brody to serve as Lead Counsel and Gilman and Pastor, LLP to serve as Liaison Counsel.  Stull, Stull & Brody and Gilman and Pastor, LLP have extensive experience in successfully prosecuting shareholder and securities class actions and have frequently appeared in major actions in this and other courts.  <u>See</u> Klein Decl., Exs. D and E.

<b><u>CONCLUSION</u></b>

For all the foregoing reasons, Movant respectfully requests that the Court: (i) consolidate all related actions; (ii) appoint Movant as lead plaintiffs in the Actions; and (iii) approve Movant's selection of counsel as set forth herein.

Dated: May 2, 2005

Respectfully submitted,

**GILMAN AND PASTOR, LLP**


By:/s/ Douglas Brooks
    Douglas Brooks (BBO# 058850)
    David Pastor (BBO# 391000)
    60 State Street
    37th Floor
    Boston, MA 02109
    (617) 742-9700

**Proposed Liaison Counsel**
**For Plaintiffs and the Class**

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
Michael J. Klein
6 East 45th Street
New York, New York 10017
(212) 687-7230

**Proposed Lead Counsel For**
**Plaintiffs and The Class**

Exhibit A

PR Newswire US March 2, 2005 Wednesday

Copyright 2005 PR Newswire Association LLC.
All Rights Reserved.
PR Newswire US

March 2, 2005 Wednesday

**LENGTH:** 671 words

**HEADLINE:** Shareholder Class Action Filed Against Biogen Idec Inc. By The Law Firm of Schiffrin & Barroway, LLP

**DATELINE:** RADNOR, Pa. March 2

**BODY:**

RADNOR, Pa., March 2  /PRNewswire/ -- The following statement was issued today by the law firm of Schiffrin & Barroway, LLP:

Notice is hereby given that a class action lawsuit was filed in the United States District Court for the District of Massachusetts on behalf of all securities purchasers of Biogen Idec Inc., (NASDAQ:BIIB) ("Biogen" or the "Company") between February 18, 2004 and February 25, 2005, inclusive (the "Class Period").

If you wish to discuss this action or have any questions concerning this notice or your rights or interests with respect to these matters, please contact Schiffrin & Barroway, LLP (Marc A. Topaz, Esq. or Darren J. Check, Esq.) toll-free at 1-888-299-7706 or 1-610-667-7706, or via e-mail at info@sbclasslaw.com .

The complaint charges Biogen, William Rastetter, and James Mullen with violations of the Securities Exchange Act of 1934.  More specifically, the Complaint alleges that the Company failed to disclose and misrepresented the following material adverse facts which were known to defendants or recklessly disregarded by them:  (1) that TYSABRI posed serious immune-system side effects; (2) that TYSABRI, like other MS drugs, made patients susceptible to progressive multifocal leukoencephalopathy ("PML") by changing the way certain white blood cells function, thereby allowing PML, a normally dormant virus, to run rampant within the human body; (3) that defendants knew and/or recklessly disregarded documented facts that MS drugs can cause greater incidents of PML to occur; and (4) that defendants concealed these facts in order to fast track TYSABRI for FDA approval so that they could reap the financial benefits from the sales of the drug.

On February 28, 2005, before the market opened, Biogen announced a voluntary suspension in the marketing of TYSABRI(R) (natalizumab), a treatment for multiple sclerosis (MS), because of two serious adverse events that have occurred in patients treated with TYSABRI in combination with AVONEX(R) (Interferon beta-1a) in clinical trials.  News of this shocked the market. Shares of Biogen fell $28.63 per share, or 42.44 percent, to close at $38.65 on unusually high trading volume.

Plaintiff seeks to recover damages on behalf of class members and is represented by the law firm of Schiffrin & Barroway, which prosecutes class actions in both state and federal courts throughout the country.  Schiffrin & Barroway is a driving force behind corporate governance reform, and has recovered in excess of a billion dollars on behalf of institutional and high net worth individual investors.  For more information about Schiffrin & Barroway, or to sign up to participate in this action online, please visit http://www.sbclasslaw.com/ .

If you are a member of the class described above, you may, not later than May 2, 2005 move the Court to serve as lead plaintiff of the class, if you so choose.  A lead plaintiff is a representative party that acts on behalf of other class members in directing the litigation.  In order to be appointed lead plaintiff, the Court must determine that the class member's claim is typical of the claims of other class members, and that the class member will adequately represent the class.  Under certain circumstances, one or more class members

PR Newswire US March 2, 2005 Wednesday

may together serve as "lead plaintiff."  Your ability to share in any recovery is not, however, affected by the decision whether or not to serve as a lead plaintiff.  You may retain Schiffrin & Barroway, or other counsel of your choice, to serve as your counsel in this action.

```
     CONTACT:   Schiffrin & Barroway, LLP
                Marc A. Topaz, Esq.
                Darren J. Check, Esq.
                280 King of Prussia Road
                Radnor, PA 19087
                1-888-299-7706 (toll-free) or 1-610-667-7706
                Or by e-mail at
info@sbclasslaw.com
```

     CONTACT:  Marc A. Topaz, Esq. or Darren J. Check, Esq., Schiffrin & Barroway, LLP, +1-888-299-7706, +1-610-667-7706,  info@sbclasslaw.com

     Web site:  http://www.sbclasslaw.com/

     SOURCE Schiffrin & Barroway, LLP


**URL:** http://www.prnewswire.com

**LOAD-DATE:** March 3, 2005

Exhibit B

### PLAINTIFF CERTIFICATION

_Rochelle Lobel_ ("Plaintiff") hereby states that:

1.     Plaintiff has reviewed the complaint and has authorized the filing of the complaint on his/her behalf.

2.     Plaintiff did not purchase any common stock/securities of **Biogen Idec Inc.** at the direction of his/her counsel or in order to participate in this private action.

3.     Plaintiff is willing to serve as a representative party on behalf of a class, including providing testimony at deposition and trial, if necessary.

4.     The following includes all of Plaintiff's transactions in **Biogen Idec Inc.** common stock/securities during the class period specified in the complaint:

| SECURITY (Common Stock, Call, Put, Bonds) | TRANSACTION (Purchase, Sale) | TRADE DATE | PRICE PER SECURITIES/SHARE | QUANTITY |
|---|---|---|---|---|
| Biogen | Purchase | 11-24-04 | 58.21 | 100 |
| Biogen | Purchase | 11-24-04 | 58.23 | 100 |
| Biogen | Purchase | 12-16-04 | 65.99 | 500 |
| Biogen | Sold | 12-17-04 | 65.99 | 800 |
| Biogen | Purchase | 1-7-05 | 66.52 | 500 |
| Biogen | Purchase | 1-14-05 | 65.35 | 300 |
| Biogen | Sold | 1-14-05 | 66.47 | 300 |
| Biogen | Purchase | 1-19-05 | 69.00 | 150 |

**Please list other transactions on a separate sheet of paper, if necessary.**     _Continued #_

5.     Plaintiff has not served or sought to serve as a representative party on behalf of a class under the federal securities laws during the last three years, unless otherwise stated in the space below:

6.     Plaintiff will not accept any payment for serving as a representative party on behalf of a class except to receive his pro rata share of any recovery, or as ordered or approved by the court including the award to a representative party of reasonable costs and expenses including lost wages relating to the representation of the class.

Plaintiff declares under penalty of perjury that the foregoing is true and correct.

Executed this ___10th___ day of ___April___, 2005.

_Rochelle Lobel_
Signature

/

| Biogen # | Purchase | 1-25-05 | 63.69 | 150 shr. |
|---|---|---|---|---|
| | Sold | 2-28-05 | 37.39 | 1000 shs. |

Exhibit C

# Biogen IDEC, Inc.

**Movants' Register and Transaction Report**

| Proposed Lead Plaintiff | Date of Purchase | Number of Shares | Price Per Share | Cost Per Transaction | Date of Sale | Number of Shares Sold | Price of Sale | Gross Receipts | Gains (Losses) | Total Gain (Loss) |
|---|---|---|---|---|---|---|---|---|---|---|
| Lobel, Rochelle | 11/24/2004 | 100 | $58.21 | $5,821.00 | 12/17/2004 | 100 | $65.79 | $6,579.00 | $758.00 | ($20,904.50) |
| | 11/24/2004 | 100 | $58.23 | $5,823.00 | 12/17/2004 | 100 | $65.79 | $6,579.00 | $756.00 | |
| | 12/16/2004 | 500 | $65.99 | $32,995.00 | 12/17/2004 | 500 | $65.79 | $32,895.00 | ($100.00) | |
| | 1/7/2005 | 300 | $66.32 | $19,896.00 | 1/14/2005 | 300 | $66.47 | $19,941.00 | $45.00 | |
| | 1/14/2005 | 200 | $65.35 | $13,070.00 | 2/28/2005 | 200 | $37.39 | $7,478.00 | ($5,592.00) | |
| | 1/14/2005 | 300 | $65.35 | $19,605.00 | 2/28/2005 | 300 | $37.39 | $11,217.00 | ($8,388.00) | |
| | 1/19/2005 | 150 | $67.00 | $10,050.00 | 2/28/2005 | 150 | $37.39 | $5,608.50 | ($4,441.50) | |
| | 1/25/2005 | 150 | $63.67 | $9,550.50 | 2/28/2005 | 150 | $37.39 | $5,608.50 | ($3,942.00) | |
| **TOTALS:** | | **1,800** | | **$116,810.50** | | **1,800** | | **$95,906.00** | | **($20,904.50)** |

**Explanatory notes**

The total estimated damages of each Proposed Lead Plaintiff has been calculated in the following manner:

1) <u>Common stock sold within the Class Period:</u>
Damages with respect to shares sold within the Class Period have been based upon each proposed lead plaintiff's actual loss. Each Proposed Lead Plaintiff's actual loss has been offset by any gain realized by plaintiff as a result of sales made within the Class Period.

2) <u>Common stock still held:</u>
Purchase price of Biogen Idec, Inc. shares still held minus the mean trading price of Biogen Idec, Inc. shares between February 26, 2005 and April 30, 2005 ($37.087045) multiplied by the number of shares held.

3) <u>Common stock sold after the Class Period:</u>
For shareholders who sold their shares after the end of the Class Period, their actual (non statutory) losses were calculated.

4) All losses have been calculated exclusive of costs, commissions and fees.

Exhibit D

# STULL, STULL & BRODY

### ATTORNEYS AT LAW

| | |
|---|---|
| 6 EAST 45TH STREET | 10940 WILSHIRE BOULEVARD |
| SUITE 500 | SUITE 2300 |
| NEW YORK, NY 10017 | LOS ANGELES, CA 90024 |
| TELEPHONE: (212) 687-7230 | TELEPHONE: (310) 209-2468 |
| FACSIMILE: (212) 490-2022 | FACSIMILE: (310) 209-2087 |

## BRIEF BIOGRAPHY OF STULL, STULL & BRODY

Over the past 30 years, Stull, Stull & Brody has developed a national reputation representing plaintiffs in securities class actions. Stull, Stull & Brody has litigated hundreds of securities cases obtaining nearly a billion dollars in settlements for aggrieved shareholders. Stull, Stull & Brody has also represented claimants in numerous class actions alleging violations of ERISA. With 19 attorneys and a full complement of secretarial and administrative personnel, Stull, Stull & Brody is capable of effectively prosecuting all types of complex litigation. Our lawyers possess outstanding credentials and have repeatedly been acknowledged for their achievements.

Stull, Stull & Brody has been recognized by numerous Courts for the high quality of its legal representation and for its excellence in the field of securities as evidenced by the following comments of judges in cases where Stull, Stull & Brody has taken a leading role:

> [T]his is one of the largest, if not the largest, securities fraud settlements in this district. The settlement size is particularly noteworthy as class counsel did not have the benefit of an SEC or other regulatory agency investigation and so prosecuted the case without assistance. . . . The management of the case was also of extremely high quality. . . . [C]lass counsel is of high caliber and has extensive experience in similar class action litigation. Each of the co-lead counsel firms has a national reputation for advocacy in securities class actions, and there is no doubt that this standing enhanced their ability to prosecute the case effectively and to negotiate credibly. . . . The submissions were of consistently high quality, and class counsel has been notably diligent in preparing filing in a

timely manner even when under tight deadlines. *In re Ikon Office Solutions, Inc Securities Litigation*, 2000 U.S. Dist. LEXIS 6510 (E.D. Pa. May 9, 2000).

I am satisfied that counsel in this case are highly competent, very skilled in this very specialized area and were at all times during the course of the litigation . . . well prepared, well spoken, []knew their stuff and []were a credit to their profession.  They are the top of the line. *In Re Electro-Catheter Corporation Securities Litigation*, Civ. No. 87-41 (D.N.J. September 7, 1989).

The court takes note of the competence of both plaintiffs' counsel and defendants' counsel and their extensive experience in litigating securities class actions.  The competence of plaintiffs' counsel resulted in this case being vigorously and efficiently prosecuted against very able opponents over a twenty month period and was a factor in bringing about settlement.  *Schaffer v. Timberland Co.*, 94-634-JD (D.N.H. 1997).

This case is a "model for how commercial litigation should be conducted and can be resolved." *Bash v. Diagnostek*, CV 94-794 M (D.N.M.).

Indeed, I indicate to. . .counsel for plaintiff that they have done an admirable job in this case in bringing it to finality and in bringing back to the shareholders of this corporation some moneys [sic] as a result of cer-tain things which occurred during the course of the operation of this corporation which perhaps should not have occurred.  *Finkel v. O'Brien*, Civ. No. 85-2539 (D.N.J. March 27, 1990).

All the firms involved in this litigation are highly experienced and well respected, particularly in the field of securities law litigation.  The Stull . . . firm [is one] of this area's, if not the nation's most active and successful law firms specializing in securities litigation. *Stull v. Baker*, 410 F.Supp. 1326, 1332 (S.D.N.Y. 1976).

Stull, Stull & Brody's expertise in the field of securities litigation has also been

recognized by the following courts: *In re Frontier Group Insurance, Inc. Securities Litigation*, 172 F.R.D. 31 (E.D.N.Y. 1997); *In re Allegheny International Inc. Shareholder Litigation*, 86-835 (W.D. Pa.) (Order, December 10, 1987, Diamond J.); *Zucker v. United States Steel*, C-1-79-588 (S.D. Ohio) (Order, October 14, 1981, Rubin, C.J.); *Friedman v. Colgate Palmolive*, 80 Civ. 2340 (CPS) (E.D. N.Y.) (Order, June 16, 1981, Sifton, J.); *Zuckerman v. Sparton*, G79-457-C.A. (W.D. Mich.) (Opinion and Order, April 14, 1981, Fox, J.); *Mottoros v. Abrams*, 524 F.Supp. 254 (N.D. Ill. 1981); *Koenig v. Smith*, 79 C 452

(ERN) (E.D.N.Y.) (Memorandum Opinion and Order, December 3, 1980, Neaher, J.);

*Koenig v. Kenneally*, 79 Civ. 0487 (LBS) (S.D.N.Y.) (Opinion No. 49289, November 5, 1979,

Sand, J.); *In Re Commonwealth Oil-Tesoro Petroleum Securities Litigation*, MDL No. 347

(Order, July 24, 1979, Higginbotham, J.); *Wietschner v. McCulloch*, CV 78-4036-RMT

(C.D. Ca.) (Order, June 29, 1979, Takasugi, J.); *Fruchthandler v. LTV Corp.*, 77C 1879

(E.D.N.Y.) (Order, May 10, 1978, Nickerson, J.); *Lewis v. Adikes*, 76 F.R.D. 68 (E.D.N.Y.

1977); *Lewis v. Black*, [1976-77 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶95,738 (E.D.N.Y.

1976) (Mishler, C.J.); *Fruchthandler v. Blakely*, 73 F.R.D. 318 (S.D.N.Y. 1976).

## SEMINAL CASES

Throughout its 30 year history, Stull, Stull & Brody has been involved with a

number of seminal cases that have significantly affected the landscape of securities

litigation.

- ♦ In *Rand v. Monsanto Company*, 926 F.2d 596 (7th Cir. 1991),the firm appeared for the plaintiff in a landmark decision establishing the principle that a representative plaintiff need not be willing to bear all costs of an action to satisfy the adequacy of representation requirement.

- ♦ In *Small v. Fritz Companies Inc.*, 30 Cal.4th 167 (2003), the firm successfully argued before the California Supreme Court that a non-trading shareholder has the right to sue a corporation for damages where the shareholder relies on false financial statements issued by the corporation. The decision represented a significant doctrinal change and was widely heralded as a potent new weapon for investors.

- ♦ In *Lewis v. Black*, 74 F.R.D. 1 (E.D.N.Y. 1975), the firm established that neither the personality nor the motive of a proposed class representative was determinative of whether he would provide vigorous advocacy for the class, thereby preventing defendant corporations from compelling representatives to respond to questions regarding motives and actions in past cases.

- ♦ In *In re Cabletron Systems, Inc. Securities Litigation*, 311 F.3d 11 (1st Cir. 2002), the firm was instrumental in obtaining a reversal of a dismissal of a complaint under the pleading requirements of the Private Securities Litigation Reform Act.  This case established in the First Circuit that plaintiffs are not required to provide the names of informants in a complaint.

- ♦ In *In re Frontier Group Insurance Litigation*, Master File No. 94 Civ. 5213

(E.D.N.Y. 2002), the firm was instrumental in defeating a *Daubert* challenge and sustained the ability of the expert to testify as to aggregate damages based on the use of a trading model.

♦    In *Harman v. Lyphomed, Inc.*, 122 F.R.D. 522 (N.D. Ill. 1988) the firm established the applicability of the fraud-on-the-market theory of reliance for stocks trading on NASDAQ.

♦    The firm was instrumental in establishing new law on "fraud on the market" theory in the 5th Circuit decision of *Finkel v. Docutel/Olivetti Corporation*, 817 F.2d 356 (5th Cir. 1987), *cert. denied*, 485 U.S. 959 (1988), and, in the Northern District of Illinois decision of *Mottoros v. Abrams*, 524 F.Supp. 254 (N.D. Ill. 1981).

As a lead counsel, Stull, Stull & Brody has successfully litigated hundreds of

actions, recovering nearly a billion dollars on behalf of defrauded shareholders. A

sampling of these cases in which Stull, Stull & Brody had a leading role include:

•    *In re BankAmerica Corp. Securities Litigation*, MDL No. 1264 (E.D. Mo. 2002) (recovery of $333.2 million)

•    *In re Geodyne Resources, Inc. Securities Litigation* (Harris County Tex.) (recovery of $200 million)

•    *In re Computer Associates Sec. Litig.*, Master File No. 98-CV-4839 (TCP) (E.D.N.Y. 2003) (recovery of 5.7 million shares (estimated at $134 million))

•    *In re Ikon Office Solutions, Inc. Securities Litigation*, 2000 U.S. Dist. LEXIS 6510 (E.D. Pa. May 9, 2000) (recovery of $111 million)

•    *Morse v. Abbott Laboratories*, C.A. No. 90 C 1982 (N.D. Ill. 1994) (jury verdict of $15 million)

•    *In re Salomon Brothers Treasury Litigation*, Consolidated Action No. 91 Civ. 5471 (RPP) (S.D.N.Y. 1994) (recovery of $100 million)

•    *In re Westinghouse Securities Litigation,* Civil Action No. 91-354 (W.D. Pa. 1999) (recovery of $67.25 million)

•    *In re Thomas & Betts Securities Litigation*, Case No. 00-2127 (W.D. Tenn. 2002) - related case: *Pifko v. KPMG LLP*, Civ. Action No. 01-CV-2553 (W.D. Tenn. 2004) (recovery of $51.15 millon)

•    *In re Tenneco Inc. Securities Litigation*, Civ. Action No. H-91-2010 (S.D. Tex. 1992) (recovery of $50 million)

•    *In re Apria Healthcare Group Securities Litigation*, Master File No. 797060 (Superior Court of California, Orange County) (recovery of $42 million)

- *In re Cannon Group Securities Litigation*, 86-5559-WMB (JRx) (C.D. Ca. 1988) (recovery of $33 million)

- *Teichler v. DSC Communications Corporation*, CA 3-85-2005-T (N.D. Tex. 1990) (recovery of $30 million)

- *Berger v. Compaq Computer Corp.*, Civ. Action No. 98-1148 (S.D. Tex. 2002) (recovery of $28.65 million)

- *In re: Northeast Utilities Securities Litigation*, Civil Action No. 397 CV 00189 AVC (D. Ct.) (recovery of $25 million)

- *Lasky v. Brown (United Companies Financial Corporation) Securities Litigation*, Civil Action No. 99-1035-B-M2 (M.D. La. 2002) (recovery of $20.5 million)

- *Feinberg v. Hibernia Corp.*, Civil Action No. 90-4245 (E.D. La. 1995) (recovery of $20 million)

- *In re Dreyfus Aggressive Growth Mutual Fund Litigation*, Master File No. 98 Civ. 4318 (HB) (S.D.N.Y.) (recovery of $18.5 million)

- *In re C.R. Bard, Inc. Securities Litigation*, Master File No. 90-948 (AMW) (D.N.J. 1991) (recovery of $17.9 million)

- *Spring v. Continental Illinois Corporation*, 84 C 4648 (N.D. Ill. 1987) (recovery of $17.5 million)

- *In re Green Tree Financial Corporation Stock Litigation*, Master File No. 97-2666 (JRT/RLE) (D. Minn. 2003) ($12.45 million)

- *In re Elscint Securities Litigation*, Civ. Action No. 85-2662-K (D. Mass. 1989) (recovery of $12 million)

- *In re National Medical Enterprises Securities Litigation II*, Case No. CV 93-5224 TJH (Bx) (C.D. Ca.) (recovery of $11.65 million)

- *Bash v. Diagnostic, Inc.*, Civil Action No. 94-784 (D.N.M.) (recovery of $10.7 million)

- *In re Cybermedia, Inc. Securities Litigation*, Master File No. 98-1811CBM (Ex) (C.D. Ca.) (recovery of $10.5 million)

- *In re Complete Management Inc. Sec. Litig.*, Master File No. 99 Civ. 1454 (NRB) (S.D.N.Y.) (recovery of $10.15 million)

- *In re Physicians Corp. of America Sec. Litig.*, Case No. 97-3678-CIV (S.D. Fla. 2003) (recovery of $10.2 million)

- *In re U.S.A. Detergent Securities Litigation,* 97-CV-2459 (D.N.J. 1999) (recovery of $10 million)

- *In re Trump Hotels Shareholder Derivative Litig.*, 98-Civ-7820 (GEL) (S.D.N.Y. 2001) (recovery of assets for corporation valued in the range of $10 million)

- *In re Nice Systems, Ltd. Securities Litigation*, Master File No. 2:01 CV 737 (Judge Greenaway) (D.N.J. 2003) (recovery of $10 million, subject to court approval)

- *Harman v. Lyphomed*, 88 C 476 (N.D. Ill. 1989) (recovery of $9.99 million)

- *In re Beverly Enterprises, Inc. Securities Litigation*, Master File No. CV 88-01189-RSWL (Tx) (C.D. Ca. 1992) (recovery of $9.975 million)

- *Greenfield v. Compuserve Corp.*, Case No. 96-CV-06-4810 (Franklin County, Ohio) (recovery of $9.5 million)

- *In re Stratosphere Securities Litigation*, Master File No. CV-S-96-00708-PMP (RLH) (D. Nev.) (recovery of $9 million)

- *In re Steven Madden Ltd. Securities Litigation*, No. 00-CV-3676 (JG) (E.D.N.Y. 2002) (recovery of $9 million)

- *In re Gibraltar Financial Corporation Securities Litigation*, CV 87-07876 MRP (Gx) (C.D. Ca. 1989) (recovery of $8.5 million)

- *In re FHP Securities Litigation*, Master File No. SACV 91-580-GLT (RWRx) (C.D. Ca. 1992) (recovery of $8.25 million)

- *Zucker v. Maxicare Health Plans, Inc.*, Case No. 88-02499-LEW (Tx) (C.D. Ca. 1991) (recovery of $8.1 million)

- *In re Orion Pictures Corp. Securities Litigation*, Master File No. 91 CV 1903 (CBA) (E.D.N.Y. 1992) (recovery of $8 million)

- *Berlinsky v. Alcatel*, 94-CIV-9084 CBM (S.D.N.Y.) (recovery of $8 million)

- *In re Triton Energy Corporation Securities Litigation*, Master File No. 3:92-CV-1069-H (N.D. Tex. 1993) (recovery of $8 million)

- *In re Cityscape*, CV 97 5668 (E.D.N.Y.) (recovery of $7 million)

- *In re Dime Savings Bank of New York Securities Litigation*, MDL Docket No. 846 (E.D.N.Y. 1993) (recovery of $6.8 million)

- *In re Western Digital Securities Litigation*, SACV 91-375(A) GLT (RWRx) (C.D. Ca.) (recovery of $6.75 million)

- *In re Bank of New England Corporation Class Action and Shareholder Litigations*, C.A. Nos. 89-2582-S, 89-2811-S (D. Mass. 1992) (recovery of $6.5 million)

- *In re Berkshire Realty Company, Inc. Shareholder Litigation*, C.A. No. 17242 (Delaware Chancery Court 2004) (recovery of $6.25 million)

- *Gerstein v. Micron Technology, Inc., et al.*, Civil No. 89-1262 (D. Id. 1993) (recovery of $6 million)

- *In re Ziff-Davis, Inc. Securities Litigation*, Master File No. 98-CIV-7158 (SWK) (S.D.N.Y. 2002) (recovery of $6 million)

- *Dynegy Inc., et al. v. Bernard V. Shapiro, et al.*, No. 2002-00080, in the 129th Judicial District, Harris County, Texas (recovery of $6 million)

- *In re Ascend Communications Securities Litigation*, Case No. 97-9376 MRP (AN) (C.D. Ca. 2002) (recovery of $5.45 million)

- *In re Brightpoint, Inc. Securities Litigation*, Case No.  IP 01 1796 C-T/K (recovery of $5.25 million)

- *Kushner v. Wang Laboratories*, Civil Action No. 89-1963-Y (D. Mass. 1994) (recovery of $5 million)

- *In re SouthEast Banking Corp. Securities Litigation*, Master File No. 90-0760-CIV-MOORE (S.D. Fla. 1993) (recovery of $5 million)

- *Wells v. Southmark Corporation, et al.*, CA3-85-1518-G (N.D. Tex. 1992) (recovery of $5 million)

- *In re Sunglass Hut Intl., Inc. Securities Litigation*, Case No. 97-0191-CIV-MOORE (S.D. Fl. 2001) (recovery of $4.5 million)

- *Clive T. Miller v. Apropos Technology, Inc., et al.*, No. 01 C 8406 (N.D. Ill. 2004) (recovery of $4.5 million)

- *In re Fidelity Holdings Securities Litigation*, Case No. CV 00 5078 (CPS) (VVP) (E.D.N.Y. 2003) (recovery of $4.45 million)

- *In re NetEase.com Sec. Litig.*, Civil Action No. 01-CV-9405 (RO) (S.D.N.Y. 2003) (recovery of $4.35 million)

- *In re Flextronics, Inc. Sec. Litig.*, No. C-03-2102 PJH (N.D. Ca. 2004) (recovery of $4.25 million)

- *Schaffer v. Timberland Co.*, 94-634-JD (D.N.H. 1997) (recovery of $4.2 million)

- *In re HMO America Securities Litigation*, Civ. No. 92 C 3305 (CPK) (N.D. Ill.

1993) (recovery of $4 million)

- *In re Nanophase Technologies Corporation Securities Litigation*, Case No. 98 C 3450 (N.D. Ill.) (recovery of $4 million)

- *In re Quintex Securities Litigation*, Master File No. CV-89-6182-R (C.D. Ca. 1990) (recovery of $4 million)

- *Walsingham v. Biocontrol Tech. Inc.*, Civil Action No. 96-809 (W.D. Pa.) (recovery of $3.7 million)

- *In re Irvine Sensors Corp. Sec. Litig.*, Master File No. SA 02-00159 GLT (MLGx) (C.D. Ca. 1994) (recovery of $3.5 million)

- *In re iTurf Inc. Shareholders Litigation*, Consolidated Civil Action No. 18242 NC (Delaware Chancery Court) (recovery of $3.25 million)

- *In re Kay Jewelers Securities Litigation*, Civil Action No. 90-1663A (E.D. Va. 1991) (recovery of $3 million)

- *Clarkson v. Greyhound Lines, Inc.*, 96-11329-C (Dist. Ct., Dallas County, Tex.) (recovery of $3 million)

- *In re Spectrian Corp. Securities Litigation*, Master File No. C-97-4672-CW (N.D. Ca.) (recovery of $2.975 million)

- *Moriarty v. Molina*, Case No. 99-0255-CIV-MORENO (S.D. Fla. 2003) (recovery of $2.8 million)

- *In re Peritus Software Services, Inc. Securities Litigation*, Civ. Action No. 98CV10955 WGY (D. Mass. 2000) (recovery of $2.8 million)

- *In re 2TheMart.com, Inc. Sec. Litig.*, Case No. 99-1127 DOC (ANx) (C.D. Ca. 2002) (recovery of $2.7 million)

- *McBride v. Vision Twenty-One, Inc.*, Case No. 99-138-CIV-T-25F (M.D. Fl. 2003) (recovery of $2.5 million)

- *In re Pharmaprint Inc. Sec. Litig.*, Civ. No. 00-61 (AJL) (D.N.J. 2003) (recovery of $2.3 million)

Stull, Stull & Brody is presently serving as plaintiffs' lead or co-lead counsel in a number of pending actions in various district courts, including:

<u>Securities Class Action Cases</u>

- *Unger v. Amedisys, Inc., et al.*, Case No. 01-703 (JJB) (M.D. La.)

- *Adam Burstyn, et al. v. Worldwide Xceed Group, Inc., et al.*, Case No. 01

8

CV 1125 (GEL) (S.D.N.Y.)

- *In re Cabletron Systems, Inc. Sec. Litig.*, C 97-542 (D.R.I.)

- *Sharon Bobbitt v. Andrew J. Filiposki, et al.*, No. 03 C 3599 (N.D. Ill.)

- *In re FleetBoston Financial Corp. Sec. Litig.*, Civ. No. 02-4561 (WGB) (D.N.J.)

- *Dan Gavish, et al. v. Revlon, Inc., et al.*, Case No. 00 Civ. 7291 (SHS) (S.D.N.Y.)

- *Thomas Levitan v. John B. McCoy, Jr., et al.*, Case No. 00 C 5096 (N.D. Ill.)

- *In re Light Management Group, Inc. Sec. Litig.*, Civil Action No. 02-CV-3345(RO) (S.D.N.Y.)

- *In re Metris Companies, Inc. Sec. Litig.*, Civil Action No. 02-CV-3677 JMR/FLN (D. Minn.)

- *In re Peregrine Systems, Inc. Sec. Litig.*, Civil Action No. 02-CV-870 J (RBB) (S.D. Ca.) (for Securities Act of 1933 claims)

- *Frank Pringle v. Merck & Co., Inc., et al.*, Civil Action No. 03-3125 c/w 04-0147, 04-022 & 04-406 (E.D. La.)

- *In re Rhythms Sec. Litig.*, Civil Action No. 02-K-35 (GCL) (D. Co.)

- *In re Safety Kleen Rollins Shareholder Litig.*, Case No. 3:00-1343-17 (D.S.C.)

- *In re Xerox Sec. Litig.*, Civil Action No. 3:99 CV 2374 (AWT) (D. Ct.)

ERISA Class Action Cases

- *In re AEP ERISA Litigation*, Master File No. C2-03-67 (S.D. Ohio)

- *In re AOL Time Warner ERISA Litigation*, Civil Action No. 02 CV 8853 (SWK) (S.D.N.Y.)

- *Harrington v. Household International, Inc.*, Civil Action No. 02 C 8257 (N.D. Ill.)

- *In re Lucent Technologies, Inc. ERISA Litig.*, Civil Action No. 01-cv-3491 (JAP) (D.N.J.)

- *In re Sears, Roebuck & Co. ERISA Litig.*, No. 02 C 8324 (N.D. Ill.)

- *In re Sprint Corporation ERISA Litig.*, Master File No. 2:03-CV-02202-JWL (D. Kan.)

- *Overby v. Tyco International, Ltd.*, Case No. 02-CV-1357-B (D.N.H.)

9

Stull, Stull & Brody's advocacy in these and other ERISA class actions, which have been brought on behalf of 401(k) retirement plan participants and beneficiaries, has also yielded new law in the ERISA field.  For example, in the *Lucent* ERISA litigation the firm was largely responsible for a frequently-cited ruling by the District Court dated February 11, 2002, where the Court denied a motion to stay the ERISA litigation against Lucent until resolution of a related securities class action against the company.  Stull, Stull & Brody's briefing on the stay motion pointed out the many significant differences between ERISA and securities class actions, even when the ERISA and securities cases involve the same factual issues.  The District Court ultimately ruled that "resolution of the securities class action . . . will not necessarily resolve all issues in this matter" and "[t]he legal issues here will still have to be determined, and a stay or continuance shall not change that fact."

## ATTORNEYS

Stull, Stull & Brody maintains offices in both New York and Los Angeles.  The following section sets forth basic educational and experience information for each of Stull, Stull & Brody's attorneys.

## NEW YORK

*Jules Brody* is a graduate of Brooklyn College, *magna cum laude*, and received his L.L.B. from the New York University School of Law in 1964.  Mr. Brody made the Dean's List and was an editor of the Law Review.  Mr. Brody was the author of "The Equitable Power to Assess Counsel Fees" which was published in the New York University Intramural Law Review in May 1964.  At NYU, Mr. Brody was a John Norton Pomeroy Scholar and received the American Jurisprudence Prize in Commercial Law and graduated in the top 10% of his class.  He was admitted to the New York State Bar in 1964.  Mr. Brody received his LL.M. in taxation from the graduate division of the NYU School of Law in 1967.  Mr. Brody is also admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York, the United States Courts of Appeals for the Second, Fourth and Fifth Circuits, and has been specially admitted to practice before various district courts throughout the United States.

*Edwin J. Mills* is Of Counsel to Stull, Stull & Brody.  He is a graduate of Fordham University and received his J.D. from Brooklyn Law School in 1977.  Mr. Mills was admitted to practice in the State of New York and in the Eastern District of New York in 1978.  He has represented classes of purchasers of securities and shareholders for over 20 years in federal and state courts throughout the United States.  He is experienced in all aspects of securities class action litigation, including settlement negotiation and trial.  Mr. Mills is also active in several large ERISA class action cases brought on behalf of 401(k) retirement plan participants and beneficiaries, including cases involving Lucent Technologies, Household International, Tyco International, Conseco, American Electric Power and Sears.

*Mark Levine* is a graduate of the University of Maryland and received his J.D. from Brooklyn Law School in 1981.  He was admitted to the New York State Bar in 1982 and is admitted to practice before the United States District Courts for the Southern, Western and Eastern Districts of New York and the Northern District of Illinois, the United States Court of Appeals for the Second, Fourth, Sixth, Ninth, Tenth and Eleventh Circuits, and has been specially admitted to practice before various other state and federal courts.  He has participated in the litigation of securities class actions throughout the United States.

*Howard T. Longman* received his undergraduate degree from the University of Virginia and his J.D. from New York Law School in 1982.  Mr. Longman is a member of the New York State Bar and has also been admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

*Patrick K. Slyne* received his J.D. from the University of Wyoming in 1988.  He is a member of the Colorado, Connecticut and Wyoming state bars.

*Melissa R. Emert* received her undergraduate degree from the State University of New York at Stony Brook and her J.D. from Brooklyn Law School in 1988.  Ms. Emert is a member of the New York State Bar and has also been admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

*Caroline V. Camhy*, an associate with the firm, received her undergraduate degree from New York University, Class of 1989, and received her J.D. from Touro College Jacob D. Fuchsberg Law Center in 1994.  Ms. Camhy was admitted to the New York State Bar in 1995.

*Aaron L. Brody* received his undergraduate degree from Yeshiva University, *summa cum laude*, Class of 1990, and his J.D. from New York University School of Law in 1995.  At NYU, Mr. Brody concentrated on securities law and was a staff editor on the *Review of Law and Social Change*.  Mr. Brody is a member of the New York State Bar and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

*Tzivia Brody* received her undergraduate degree from Stern College, *magna cum laude*, Class of 1992, and her J.D. from the Benjamin M. Cardozo School of Law in 1995.  Ms. Brody is a member of the New York State Bar and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

11

*Theodore A. Bechtold* received his undergraduate degree from Fordham University, Class of 1986, and his J.D. from Brooklyn Law School in 1995.  Mr. Bechtold is a member of the New York and Connecticut State Bars and is admitted to practice before the Southern and Eastern Districts of New York.

*Jason D'Agnenica* received his undergraduate degree from Providence College, Class of 1995, and his J.D. from St. John's University School of Law in 1998.  Mr. D'Agnenica is a member of the New Jersey State Bar and is admitted to practice before the United States District Court for the District of New Jersey and the Southern and Eastern Districts of New York.

*Nathan G. Lamm* received his undergraduate degree from Yeshiva University, Class of 1997, and his J.D. from Benjamin N. Cardozo School of Law in 2000.  Mr. Lamm is a member of the New York State Bar and is admitted to practice before the Southern and Eastern Districts of New York.

*Menashe Y. Shapiro* received his undergraduate degree from Yeshiva University, *cum laude*, Class of 1997, and his J.D. from Benjamin N. Cardozo School of Law in 2000.  Mr. Shapiro is a member of the New Jersey State Bar and is admitted to practice before the United States District Court for the District of New Jersey and the Southern and Eastern Districts of New York.

*Bradley Dyer* received his undergraduate degree from Lafayette College, Class of 1999, and his J.D. from Fordham University School of Law in 2002.  Mr. Dyer is a member of the New York State Bar and is admitted to practice before the Southern and Eastern Districts of New York.

*James Henry Glavin IV* received his undergraduate degree from Boston College, Class of 1999, and his J.D. from Fordham University School of Law in 2002.  While at Fordham, Mr. Glavin served as an editor on the Moot Court Board and International Law Journal.  He is a member of the New York State Bar.

*Michael J. Klein* received his undergraduate degree in 2001 from Emory University and his J.D., with honors, from the University of Connecticut School of Law in 2004.  While at the University of Connecticut, Mr. Klein served as an executive editor of the Connecticut Law Review.  Mr. Klein is a member of the New York and Connecticut State Bars and is admitted to practice before the United States District Courts for the Southern and Eastern Districts of New York.

## LOS ANGELES OFFICE

*Patrice L. Bishop* received her undergraduate degree from New York University and her J.D. from Loyola Law School - Los Angeles in 1994.  Ms. Bishop is a member of the California State Bar and is admitted to practice before the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, and the United States Court of Appeals for the Ninth Circuit.

*Timothy J. Burke* graduated *magna cum laude* from Suffolk University and received his J.D. from the University of California at Los Angeles in 1995.  Mr. Burke is a

member of the California State Bar, and is admitted to practice before the United States District Courts for the Northern, Central, Southern and Eastern Districts of California, and the United States Court of Appeals for the Ninth Circuit.

*Michelle M. Furukawa* graduated with highest honors in economics from the University of California, Berkeley and received her J.D. from the University of California, Los Angeles.  While at UCLA, Ms. Furukawa externed for the Honorable Sheri Bluebond, U.S. Bankruptcy Court, and was Editor-in-Chief of the UCLA Asian Pacific American Law Journal.  Ms. Furukawa is a member of the California State Bar and active with the Japanese American Bar Association.

# GILMAN AND PASTOR, LLP

### *FIRM RESUME*

***GILMAN AND PASTOR, LLP*** is a law firm which concentrates in class action litigation on behalf of consumers, small businesses and investors.  The firm has broad experience in the areas of consumer protection, products liability, antitrust, securities and other types of complex litigation.  Although Gilman and Pastor, LLP's offices are located in Massachusetts and Florida, the firm litigates cases throughout the country, including both federal and state courts.  Many of the firm's cases have involved complex multi-district litigation, including appearances before the Judicial Panel on Multi District Litigation.  The attorneys in the firm are experienced in, and thoroughly familiar with, all aspects of class action litigation, including the underlying substantive law, the procedures recommended in the Manual for Complex Litigation, and the substance and procedure of class certification.  The firm has recovered hundreds of millions of dollars for the clients it has represented.

## *REPRESENTATIVE CASES BY AREA OF PRACTICE*

### Securities

The firm is actively involved in litigation on behalf of defrauded individual and institutional investors in both class action and shareholder derivative litigation.

The firm served as Co-Lead Counsel in In re Blech Securities Litigation, 94-CIV-7696-RWS (S.D. N.Y.) asserting market manipulation claims against the brokerage firm of D. Blech & Co., its principals, its clearing broker, and several other alleged participants in connection with an alleged scheme to inflate the prices of various biotechnology securities.  In a vigorously litigated case, the firm and its co-counsel obtained certification of a class of purchasers of 22 separate securities, successfully opposed various motions to dismiss, and, subsequently, motions for summary judgment, and after extensive discovery and trial preparation, negotiated over $15 million in cash settlements on behalf of the class.  This case resulted in several reported opinions, including one that has been frequently cited and referred to by commentators on the issue of clearing broker liability.  In re Blech Securities Litigation, 961 F. Supp. 569 (S.D. N.Y. 1997).

Gilman and Pastor, LLP served as Co-Lead Counsel in Hynes v. The Enstar Group, Inc., et al. 90-C-1204-N (M.D. Alabama).  In the face of substantial risks of an unsuccessful outcome due to the bankruptcy (and consequent immunity from suit) of Enstar and the bankruptcy of Enstar's chairman who was the chief architect of the fraud, Gilman and Pastor, LLP aggressively litigated the case on behalf of the Class and obtained settlements totaling in excess of $19 million from several defendants, including a major accounting firm, a major law firm, and former outside directors after the conclusion of extensive discovery and immediately prior to the scheduled trial.  Subsequently, Gilman and Pastor, LLP won an additional $4.1 million for the class in collateral litigation against Michael Milken and related entities.

The firm was Co-Lead Counsel in <u>Cooper v. Kana, et al</u>. Civil Action No. 3:98-CV-2804-M (N.D. Texas) on behalf of purchasers of CPS Systems, Inc. ("CPS") stock in connection with its $8.74 million initial public offering ("IPO") and trading on the American Stock Exchange thereafter, against CPS, its officers and directors, the underwriters for its IPO, and CPS's independent auditors, alleging misstatements in the IPO Prospectus and subsequent press releases and SEC filings concerning CPS's revenue recognition methods and reported revenues and earnings. After CPS restated its earnings and filed bankruptcy, the firm and its co-counsel obtained class certification, defeated various motions to dismiss, conducted discovery, engaged in two separate mediations, and ultimately recovered $3.44 million in cash settlements on behalf of the class against the remaining defendants.

The firm served as Co-Lead Counsel in <u>Lynn v. Infinity Investors Limited, et al</u>. 3:97-CV-226 (E.D. Tenn.), a case asserting claims for open market securities fraud and for breach of contract arising out of an alleged complex scheme to evade the requirements of Regulation S of the Securities Act of 1933 and to manipulate the market prices of United Petroleum Corporation ("UPET") stock. The firm obtained class certification, successfully objected to UPET's bankruptcy plan in another jurisdiction that would have otherwise dismissed the action with prejudice, and overcame other significant obstacles in a vigorously litigated case to ultimately obtain a $4 million cash settlement, recovering a very substantial portion of actual losses claimed by class members.

Gilman and Pastor, LLP served as Co-Lead Counsel in <u>In re Hallwood Energy Partners L.P. Securities Litigation</u>, 90-Civ-1555-JFK (S.D.N.Y.) in which a $9.1 million settlement was obtained after five years of intensive litigation. This class action arose out of a complex merger and exchange offer transaction involving several publicly traded oil and gas limited partnership entities. The litigation challenged the fairness of the exchange and involved highly complex oil and gas valuations and methodologies. Gilman and Pastor, LLP effectively managed the litigation and diligently prosecuted the case on behalf of a Class of approximately forty thousand unitholders.

Gilman and Pastor, LLP served as Co-Lead Counsel in <u>Caven v. Miller, et al</u>. No. H-96-CV-3464 (EW) (S.D. Tex.), a shareholder derivative action arising out of the merger of a publicly held hospital company with and into a firm in the same industry that had been privately held. After the merger, the successor firm downwardly restated its financial results due to its own previously undisclosed accounting irregularities and losses. After defeating motions to dismiss on various grounds, conducting discovery, and engaging in mediations, Plaintiffs recovered over $18 million in benefits on behalf of the successor company from various insiders of both companies involved.

The firm served as one of four co-lead counsel representing a class of securities purchasers in <u>In re Immunex Securities Litigation</u>, No. C92-548 (W.D. Wash.), and obtained a settlement of $14 million.

The firm served as one of three co-lead counsel representing a class of limited partners in In re Oxford Tax Exempt Fund Securities Litigation, No. 95-3643 (D. Md.), a case asserting federal securities and related common law claims arising out of a complex partnership restructuring transaction, and obtained a settlement valued in excess of $11 million.

Gilman and Pastor, LLP served as lead counsel in Sullivan, et al. v. Shearson California Radisson Plaza Partners, Limited Partnership, et al., No. 89-5472-JMI (C.D. Cal.), a case arising out of a publicly offered limited partnership wherein claims under the 1934 Exchange Act and the 1933 Securities Act were asserted on behalf of the investors. The case involved complex issues of hotel appraisal and valuation, and resulted in a settlement valued in excess of $11 million on behalf of the class.

In Hartley v. Stamford Towers Limited Partnership, et al., No. C-90-2146-JPV (N.D. Cal.), another action arising out of a public limited partnership offering, the firm served as co-lead counsel for the investor class and obtained a settlement of $6.5 million. In that litigation the plaintiffs engaged in extensive discovery and negotiations and consultation with real estate valuation experts, in the face of several challenging obstacles.

The firm served as co-lead counsel representing a class of more than 4,000 investors in a series of oil and gas drilling programs in the Woodlands Energy and Development Corporation/ Intercomex Financial Corp. Litigation (encompassing several related civil actions in various federal and state courts in Texas and California). That litigation involved complicated securities issues, as well as certain novel insurance liability questions, and was also contested vigorously by the defendants with respect to every aspect of the case. In that case, plaintiffs' counsel overcame several rounds of briefing on motions to dismiss the pleadings and a vigorous opposition to class certification. Counsel then engaged in a long series of merits discovery, and eventually took part in intense negotiations that led to several partial settlements. Ultimately, Gilman and Pastor, LLP, together with their co-counsel, recovered in excess of $11 million for investors.

The firm was one of four firms actively involved in Alert Income Partners Securities Litigation, No. 92-2-9150 (D. Colo.) a securities class action brought against promoters of a series of limited partnerships, their auditors and other parties. After extensive discovery, a settlement was reached valued at $60 million.

Gilman and Pastor, LLP, as lead class counsel, achieved a successful settlement in the case of Hutson, et al. v. Merrill Lynch, Pierce, Fenner & Smith, et al., No. 89 Civ. 8358 (L.M.M.) (S.D.N.Y.). That case, which arose out of the offering of limited partnership interests, involved mortgage revenue bonds issued by many state and local government agencies which were secured by participating non-recourse mortgage loans on fourteen apartment projects and retirement communities. As lead counsel, Gilman and Pastor, LLP was responsible for and managed all aspects of the complex litigation which also involved the subject areas of real estate financing and valuation, secured lending and foreclosure. In addition, because the case involved a 1985

offering, there were serious statute of limitations questions facing plaintiffs and plaintiffs' counsel. Despite these momentous problems, the firm obtained a settlement valued at $14 million for the class. Judge McKenna, in approving the settlement, praised plaintiffs' counsel for their efficient work.

Gilman and Pastor, LLP was one of five firms actively involved in the In re Granada Partnership Securities Litigation, MDL No. 837 (S.D. Tex.), in which a partial settlement in excess of $14 million was reached with certain of the defendants. This was an extremely contentious lawsuit in which every procedural step was a pitched battle. After protracted litigation with extensive motion practice, the partial settlement was reached, which accounted for virtually all of the available financial resources of the settling defendants.

Other examples of the firm's litigation ability are the dual settlements achieved in the related cases styled In re Permian Partners, L.P. Securities Litigation, No. 11373 (Del. Ch. Ct.) and Rodgers v. National Intergroup, Inc., et al. No. 90-11653-Z (D. Mass.). Gilman and Pastor, LLP was designated as lead counsel and directed and participated in every aspect of the cases. The first settlement, valued at $6.1 million, plus non-monetary benefits, arose out of an action in the Delaware Chancery Court challenging a merger of limited partnership interests. Gilman and Pastor, LLP conducted extensive discovery in that litigation, most of which was done on an expedited basis, and consulted with experts, including authorities on oil and gas. The litigation involved many complex issues, including issues relating to the valuation of interstate and intrastate pipeline assets. The settlement was reached after the conclusion of expedited discovery and prior to a hearing on our motion for preliminary injunction. The second settlement successfully concluded litigation in the U.S District Court in Massachusetts arising out of the 1987 public offering of the partnership interests which later became the subject of the merger proposal.

Gilman and Pastor, LLP has also played a major role in significant litigation challenging limited partnership roll-ups, restructurings, exchanges and mergers, including the Hallwood Energy, Oxford and Permian cases described above, Adam et al. v. Berkshire Realty Corporation, No. 90-12864 WF (D. Mass), where the firm served as co-lead counsel and achieved a settlement consisting of cash and warrants valued at $7.5 million, In re Equitec Rollup Litigation, Master File No. C-90-2064 (N.D. Cal); Laurence v. Brewer, No. 97-15464 (Del. Ch. Ct.), where the firm served as co-lead counsel (challenging a tender offer by general partners for publicly traded master limited partnership, and obtaining settlement with establishment of dividend payments to limited partners); LLOV Partners v. INCO Limited, No. 00-4999 (NHP) (D.N.J.) (challenging tender offer by parent company for tracking stock of subsidiary); and Rosenblum v. Equis Financial Group, No. 98-8030 (S.D. Fla.) (class and derivative settlements on behalf of three sub-classes).

Gilman and Pastor, LLP has also been actively involved in numerous other class actions arising under the federal securities laws, including In re Painewebber Inc. Limited Partnership Litigation, No. 94-CV-8547 (S.D.N.Y.); In re The One Bancorp Securities Litigation, No. 89-0315-P (D.

Me.); In re VMS Securities Litigation, No. 89C 9448 (N.D. Ill.); In re Shearson Union Square Associates Securities Litigation, (Del. Ch. Ct.); In re Software Publishing Securities Litigation, C-93-20246 (N.D. Cal.); In re Prudential-Bache Energy Income Partnerships Litigation, MDL No. 888 (E.D. LA); In Re: T² Medical Inc. Shareholder Litigation, 92-CIV-1564 (N.D. Ga.); In re Interneuron Pharmaceuticals Securities Litigation; 97-12254 (D. Mass.); In re UDC Homes Securities Litigation, 95-08941 (Maricopa County, AZ Superior Ct.); and In re Towers Financial Securities Litigation, 93-0810 (S.D.N.Y.).

**Defective Products**

Gilman and Pastor, LLP is actively involved in litigation involving defective products, including defective building products, pharmaceutical products, motor vehicles, electronics and other products.

In Sebago, Inc., et al. v. Beazer East, Inc., et al., No. 96-10069 (D. Mass.), Gilman and Pastor, LLP served as lead class counsel in a suit on behalf of owners of buildings with corrosive phenolic foam roof insulation. The litigation was extremely contentious, involved numerous potentially dispositive motions, discovery motions and extensive class certification proceedings. The defendants ultimately produced hundreds of thousands of documents as well as hundreds of depositions. To prepare for hearings on class certification, summary judgment and trial, Gilman and Pastor marshaled testimony from experts in a variety of disciplines, including roof engineering, structural engineering, materials science and corrosion, and financial analysis. The firm obtained a significant decision upholding RICO claims against the manufacturers. See Sebago, Inc. v. Beazer East, Inc., 18 F. Supp. 2d 70 (D.Mass. 1998). The Court recently approved nationwide class settlements with the two manufacturers of the phenolic foam insulation, worth a combined estimated present value of more than $240 million.

In Coleman, et al. v. GAF Building Materials Corporation, No. CV-96-0954-GALANOS (Circuit Court of Mobile County, Alabama), Gilman and Pastor, LLP served as lead counsel for a nationwide class of persons who owned properties with defective roofing shingles. The firm recently obtained a settlement with benefits estimated at a present value in excess of $75 million.

In Paradis v. Bird Incorporated, No. 00-C-0235 (Merrimack, N.H. Superior Court), Gilman and Pastor, LLP served as lead counsel on behalf of purchasers of Bird defective roofing shingles. The settlement obtained was valued at approximately $9.6 million.

Other cases handled by the firm involving defective building products include Foster v. ABTco, Inc. (Civil Action No. CV95-151-M, Choctaw County, Alabama) (defective hardboard siding; nationwide class certified and class settlement approved); In re Louisiana-Pacific Corporation Inner-Seal OSB Trade Practices Litigation, (Master File No. C-95-3178-VRW, N.D.Cal.) (defective oriented strand board (OSB); nationwide class certified and settlement approved).

### Consumer Protection and Antitrust

The firm is also actively involved in litigation involving price-fixing and other anti-competitive conduct, deceptive sales practices, and unfair and deceptive trade practices.

Gilman and Pastor, LLP served as sole Class Counsel in <u>Fortin v. Ajinomoto, et al</u>, (Civil Action No. 02-2345C, Middlesex Superior Court Department, Mass.), and recently obtained final approval of partial class settlements totaling $8.2 million.

Gilman and Pastor, LLP served as a member of the Plaintiffs Steering Committee in <u>Ciardi v. F. Hoffman-LaRoche, Ltd., et al.</u>, (Civil Action No. 99-03244, Middlesex Superior Court Department, Mass.), a case that created new law in Massachusetts conferring standing upon indirect purchasers for claims arising from price-fixing or other anti-competitive conduct. Settlement funds valued at over $22.5 million were obtained and distributed to over 300 charitable organizations providing food and nutrition programs in Massachusetts.

Gilman and Pastor, LLP served as sole counsel in <u>Boos v. Abbott Laboratories</u>, No. 95-10091 (D.Mass.), which was the first case in which indirect purchasers in Massachusetts ever recovered damages arising from a price-fixing conspiracy.  The case was settled in 1997 for $2.5 million.

Gilman and Pastor, LLP served as lead counsel in <u>Muccioli v. Sony Computer Entertainment America, Inc</u>., No. 413148 (San Mateo Cty. California Superior Court) and obtained a substantial nationwide class settlement that provided free service and repairs during an extended warranty period and partial refunds of past repair costs to purchasers of Sony Playstation Models 1001 and 5501 in an action arising out of alleged product defects, breaches of warranty, and deceptive trade practices.

The firm was lead counsel in <u>Hardy v. Sears Roebuck & Co.</u>, Civil Action No. 98-CH-06305 (Cook County, Illinois) obtaining a nationwide class settlement which provided warranty repairs to consumers who purchased home improvement services from Sears and its authorized contractors.

The firm is a member of the Plaintiffs' Counsels' Steering Committee in <u>In re High Fructose Corn Syrup Antitrust Litigation</u>, MDL No. 1083, U.S. District Court for the Central District of Illinois, antitrust suit on behalf of businesses which purchased high fructose corn syrup at prices which were inflated due to a massive, world-wide price-fixing conspiracy.

Gilman and Pastor, LLP served as sole counsel for the class in <u>Anslono v. Thorn Americas, Inc.</u> (Civil Action No. 98-0049, Suffolk Superior Court Department, Mass.), and obtained a class settlement of claims for false advertising of "rent to own" contracts.

In <u>In re Packard Bell Consumer Class Action Litigation</u>, No. BC 125671 (California Superior Court), Gilman and Pastor, LLP served as counsel and obtained a substantial settlement for

purchasers of "reconditioned" personal computer systems which were falsely advertised as "new."

In In re Miracle Ear Consumer Litigation, No. 94-1696 (Dist. Ct. Minn.), Gilman and Pastor, LLP served as counsel and obtained a substantial settlement for purchasers of hearing aids which had been falsely advertised.

Gilman and Pastor, LLP has been actively involved in litigation arising from life insurance sales practices, including Michaels v. Phoenix Home Life Mutual Insurance Company, Index No. 5318-95 (NY.Sup.Ct., Albany County), 1997 N.Y.Misc. LEXIS 171 (1996) (approving class settlement); Natal v. Transamerica Occidental Life Insurance Company, Index No. 694829 (CA.Sup.Ct., San Diego County, 1997) (approving class settlement); In re: Manufacturers Life Insurance Company Premium Litigation, MDL No. 1109 (S.D.Cal.) (substantial settlement for class); In re: Sun Life Assurance Company of Canada Insurance Litigation, MDL No. 1102 (D.N.J.) (substantial settlement for class); In re: New England Mutual Life Insurance Company Sales Practices Litigation, MDL No. 1105 (D.Mass.) (court appointed Gilman and Pastor, LLP as liaison counsel in MDL proceeding; court subsequently approved substantial class settlement); Duhaine v. John Hancock Mutual Life Insurance Company (Civil Action No. 96-10706-GAO, D.Mass.) (substantial class settlement).

Gilman and Pastor, LLP has developed unique expertise in litigation involving pyramid marketing schemes, including obtaining significant decisions in Webster v. Omnitrition, 79 F.3d 776, 782 (9th Cir. 1996) (holding that multi-level marketing firm could be found to be a pyramid scheme and an investment security where there was no evidence that it actually enforced "anti-pyramid" requirements; class settlement approved following successful appeal by Gilman and Pastor); Capone v. Nu Skin Canada, Inc. (Case No. 93-C-2855, D.Utah) (Gilman and Pastor obtained court approval of settlement of class claims against multi-level marketing firm after successfully opposing multiple motions to dismiss and for summary judgment and after extensive discovery); Rhodes v. Consumers' Buyline, Inc., 868 F.Supp. 368 (D.Mass. 1993) (case settled after Gilman and Pastor obtained court ruling that contractual arbitration clause was unenforceable because distributorship agreement violated public policies against pyramid marketing schemes).

## *ATTORNEYS*

**KENNETH GILMAN**  is a graduate of Suffolk University Law School (J.D., 1979) and Boston University (B.A.,1976). Mr. Gilman is a member of the bars of the Commonwealth of Massachusetts, the State of Florida, the U.S. District Court for the District of Massachusetts and the U.S. District Court for the Southern District of Florida. He is a member of the Massachusetts Bar Association, the Florida Bar and the American Bar Association. Mr. Gilman has served, and currently serves as lead or co-counsel in various types of complex litigation, including cases in the areas of antitrust, consumer protection, insurance, dangerous and defective products, environmental law, personal injury and securities fraud.

Representative cases which have produced significant legal developments, include: Sebago, Inc., et. al. v. Beazer East, Inc., et. al., No. 96-10069- Wolf (D. Mass.) (Nationwide Class Settlements with two manufacturers of phenolic insulation with a value in excess of $240 million; 18 F.Supp.2d 70 (D.Mass. 1998); Coleman, et. al. v. GAF Building Materials Corporation, No. CV-96-0954-Galanos (Circuit Court of Mobile County, Alabama) (Nationwide class of persons who owned properties with GAF defective roofing shingles with settlement value in excess of $75 million); In re: Louisiana-Pacific Corporation Inner-Seal OSB Trade Practices Litigation; Ciardi v. F. Hoffman-LaRoche Ltd, et. al.,(Civil Action No. 99-03244, Middlesex Superior Court Department Mass.), (a case that created new law in Massachusetts conferring standing upon indirect purchasers for claims of price-fixing or other anti-competitive conduct. Settlement funds obtained of over $22.5 million); Michaels v. Phoenix Home Life Mutual Insurance Company, Index No. 5318-95 (N.Y.Sup.Ct. Albany County) 1997 N.Y. misc. LEXIS 171 (1996); Agnes v. The Enstar Group, Inc., et. al., 90-C-1204-N (M.D. Alabama)(Settlement obtained of over $23 million); In re Hallwod Energy Partners L.P. Securities Litigation, 90-Civ-1555-JFK (S.D.N.Y.)(In which a $9.1 million settlement was obtained after five years of intensive litigation arising out of a complex oil and gas merger; Sullivan, et. al. v. Shearson California Radison Plaza Partners Limited Partnership, et. al., No. 89-5472 (C.D.Cal.)(Securities fraud action resulting in settlement in excess of $11 million); and Alert Income Partners Securities Litigation, No. 92-2-9150(D.Colo.)(Securities fraud action resulting in settlement valued at $60 million).

Mr. Gilman was previously associated with Gilman, McLaughlin and Hanrahan in Boston, Massachusetts and with the firm of Blackwell, Walker, Gray, Powers, Flick and Hoehl in Miami, Florida. In 1985, Mr. Gilman was appointed by the United States District Court for the Southern District of Florida as the Equity Receiver in the Intercontinental Commodities litigation. During the period from 1980 through 1984, he participated as counsel to the Equity Receiver in the Lloyd Carr and Company commodities fraud litigation. In that capacity, he prosecuted complex litigation in Federal and state courts in Massachusetts and Florida, resulting in significant recoveries for defrauded investors. Also as part of this litigation, Mr. Gilman acted as special counsel for the Department of Justice.

**DAVID PASTOR** is a 1979 graduate of Boston University School of Law and a 1976 graduate of Haverford College.  During law school, Mr. Pastor clerked for two Wisconsin state court judges. Mr. Pastor is a member of the bar of the Commonwealth of Massachusetts, the U.S. District Court for the District of Massachusetts and the U.S. Court of Appeals for the First Circuit.  He is a member of the Massachusetts Bar Association, the American Bar Association and the Association of Trial Lawyers of America.  Mr. Pastor has served, and currently serves as class counsel in numerous class actions in various state and federal courts and has substantial experience in various types of complex class action litigation, including cases involving securities fraud and market manipulation, privacy rights, antitrust misconduct, consumer protection claims and defective products.  Certain of Mr. Pastor's cases have produced significant legal developments, including In re Blech Securities Litigation, 961 F. Supp. 569 (S.D.N.Y. 1997) and 2002 WL 31356498 (S.D.N.Y. Oct. 17, 2002)(liability of a clearing broker as a primary violator for a scheme initiated by one of the clearing broker's correspondent broker-dealers) and Weld v. Glaxo Wellcome, Inc., 434 Mass. 81, 746 N.E.2d 522 (2001)(certification

of class action against several defendants engaged in parallel conduct where certain defendants had no contact with the plaintiff and engaged in no conduct which directly affected the plaintiff).

***JOHN C. MARTLAND*** is a 1978 graduate of Suffolk University Law School (J.D.) and received a Bachelor of Arts degree from Colby College in 1972. Mr. Martland was previously associated with the Law Offices of Harold Brown in Boston, Massachusetts, where he was the senior trial attorney and with the firm of Ring and Rudnick, also located in Boston. Mr. Martland has had experience in a wide variety of complex civil litigation and been trial counsel in complex civil actions in state and federal courts throughout the United States. He has served as counsel in complex business litigation in state courts in Massachusetts, New Hampshire and Maine. He has represented franchisees in arbitration proceedings before the American Arbitration Association in Massachusetts, North Carolina, Illinois and New Jersey. He is a member of the bar of the Supreme Judicial Court of Massachusetts, the U.S. District Court for the District of Massachusetts, the U.S. Court of Appeals for the First Circuit, and the Supreme Court of the United States of America. He is a member of the Massachusetts Bar Association and the American Bar Association and is a member of the ABA Antitrust Section. Mr. Martland was a speaker at the 1998 Annual Forum on Franchising of the American Bar Association, where he delivered a paper entitled "Mediation: An In-Depth Analysis of the Process and the Techniques - the Franchisee Perspective" and has been a frequent speaker at the annual conventions of the American Franchisee Association and the American Association of Franchisees and Dealers on franchise law topics.

***DOUGLAS M. BROOKS*** is a 1982 graduate of Suffolk University Law School (J.D.) and received a Bachelor of Arts degree from Northwestern University in 1979. He was a Note Editor for the Suffolk University Transnational Law Journal in 1981-1982. Mr. Brooks was previously associated with the Law Offices of Harold Brown in Boston, Massachusetts. Mr. Brooks has litigated a wide variety of civil cases, including matters involving franchising, dealer and distribution, as well as securities actions. He is a member of the bar of the Commonwealth of Massachusetts, the U.S. District Court for the District of Massachusetts, and the U.S. Court of Appeals for the First Circuit. He is a member of the Massachusetts Bar Association and a member of the Forum on Franchising and Litigation Section of the American Bar Association. Mr. Brooks was a speaker at the 1995 Annual Forum on Franchising of the American Bar Association, where he delivered a paper entitled "Survey Evidence - Use of Collected Data in Encroachment Cases" and has been a frequent speaker at the annual conventions of the American Association of Franchisees and Dealers and the American Franchisee Association. Significant trials and appeals handled by Mr. Brooks include NXIVM Corp. v. Ross Institute, 364 F.3d 471 (2nd Cir. 2004) (affirming denial of preliminary injunction against non-profit anti-cult organization in lawsuit alleging Copyright and Lanham Act violations; Mr. Brooks is representing the defendant pro bono); Wolinetz v. Berkshire Life Insurance Co., 361 F.3d 44 (1st Cir. 2004) (reversing summary judgment in "vanishing premium" case based on statute of limitations); In re: America Online, Inc., 168 F.Supp.2d 1359 (S.D.Fla. 2001) (denying summary judgment); Scheck v. Burger King Corp., 756 F.Supp. 543 (S.D.Fla. 1991) (denying summary judgment in franchise encroachment litigation), further opinion, 798 F.Supp. 692 (S.D.Fla. 1992); Rhodes v. Consumers' Buyline, Inc., 668 F.Supp. 368 (D.Mass. 1993) (denying motion to

compel arbitration in pyramid scheme case); <u>Szymanski v. Boston Mutual Life Ins. Co.</u>, 56 Mass.App. 367 (2002), <u>rev. den.</u>, 438 Mass. 1106 (2003) (reversing summary judgment in vanishing premium litigation); <u>Oganesov v. GNC Franchising Inc.</u>, Bus. Franchise Guide (CCH) ¶11,808 (Pa. Ct. Cmn. Pl., March 3, 2000) (awarding $700,000 judgment for franchisee in encroachment litigation), <u>aff'd</u>, Bus. Franchise Guide (CCH) ¶12,163 (Pa.Super. 2001).

***DOUGLAS J. HOFFMAN*** is a graduate of the George Washington University Law School (J.D. 1995) and The University of Wisconsin - Madison (B.S. 1992).  Prior to joining Gilman and Pastor, Mr. Hoffman was an associate with the firm of Milberg Weiss Bershad & Schulman LLP.

Mr. Hoffman is an experienced class action attorney who has litigated a wide variety of significant individual cases and class actions, including: securities fraud, consumer fraud and employment discrimination.  Significant cases in which Mr. Hoffman has played a central role include:  *Mauldin, et al. v. Wal-Mart Stores, Inc.,* No. 1:01-CV-2755, 2002 U.S. Dist. LEXIS 21024 (N.D. Ga. Aug. 23, 2002) (granting class certification in case alleging discrimination in employer's health plan)*; Warren, et al. v. Xerox Corporation*, No. 01 Civ. 2909, 2004 U.S. Dist. LEXIS 5080 (E.D.N.Y. March 11, 2004) (certifying nationwide class of African-American salespeople alleging discrimination in assignment of sales territories); *Cokely, et al. v. The New York Convention Center Operating Commission,* No. 00 Civ. 4637, 2004 U.S. Dist. LEXIS 9264 (S.D.N.Y. May 21, 2004) (certifying class of African-American and Hispanic employees alleging discrimination at the Jacob K. Javits Convention Center in New York City).  At Gilman and Pastor, Mr. Hoffman practices in the areas of Securities Fraud, Consumer Protection, Antitrust, and Employment Discrimination.

Mr. Hoffman is a member of the following Bars: Commonwealth of Massachusetts, Commonwealth of Virginia, State of Maryland, District of Columbia, U.S. District Court for the Eastern District of Virginia, U.S. District Court for the District of Columbia, the U.S. Court of Appeals for the Fourth Circuit and the U.S. Court of Appeals for the Eleventh Circuit.