# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS (BOSTON)

| | | |
|---|---|---|
| CHARLES BROWN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIOGEN IDEC, INC., WILLIAM RASTETTER, and JAMES MULLEN,<br><br>Defendants. | : : : : : : : : : : : | 1:05-cv-10400 (RCL) |
| CARY GRILL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIOGEN IDEC, INC., WILLIAM RASTETTER and JAMES MULLEN,<br><br>Defendants. | : : : : : : : : : : : : | 1:05-cv-10453 (RCL) |
| ROCHELLE LOBEL, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>BIOGEN IDEC, INC., WILLIAM RASTETTER and JAMES MULLEN,<br><br>Defendants. | : : : : : : : : : : : : | 1:05-cv-10801 (RCL) |

## MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF THE BIOGEN INSTITUTIONAL INVESTOR GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF CO-LEAD COUNSEL AND LIAISON COUNSEL

The New Jersey Carpenters Pension and Annuity Funds, Folksam Asset Management, Third Millennium Trading LLP, the Deerfield Beach Non-Uniformed Municipal Employees Retirement Plan and the Plumbers and Pipefitters Local No. 520 Pension Fund[1] (collectively, the "Biogen Institutional Investor Group" or "Movants") hereby move this Court for entry of an order: (1) consolidating the above-captioned actions (the "Actions"), (2) appointing Movants Lead Plaintiff in the Actions, and (3) approving Movants' selection of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and Entwistle & Cappucci LLP ("Entwistle & Cappucci") as Co-Lead Counsel, and Moulton and Gans, P.C. ("Moulton & Gans") as Liaison Counsel.

## PRELIMINARY STATEMENT

As of May 2, 2005, there were three related class action lawsuits pending in this District brought on behalf of persons who purchased or otherwise acquired securities of Biogen Idec, Inc. ("Biogen" or the "Company") between February 18, 2004 and February 25, 2005 (the "Class Period"). The Actions are brought pursuant to §§10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. §240.10b-5 promulgated thereunder. Defendants are Biogen and certain of its officers and directors. Class members sustained significant losses as a result of the alleged fraud.

Pursuant to the PSLRA, prior to selecting a Lead Plaintiff, the Court must decide whether to consolidate related actions. *See* 15 U.S.C. 78u-4(a)(3)(B)(ii). As soon as practicable after a decision on consolidation has been rendered, the Court is to appoint as the Lead Plaintiff the

---

[1]    Also joining in this motion is Horatio Capital, LLC which approximates its losses at $500,000. A certification relating to its transactions will be tendered forthwith. *See Greebel v. FTP Software,* 939 F. Supp. 57, 61 ("Accordingly, the court concludes that a purported class member seeking to serve as lead plaintiff is not required to file a certification, pursuant to section 21D(a)(2)(a), with his or her motion.") (D. Mass. 1996) (Tauro, J.).

movant or group of movants with the largest financial interest in the litigation of those seeking

such appointment and which otherwise satisfy the requirements of Rule 23 of the Federal Rules

of Civil Procedure. *See id.*

The Actions should be consolidated because they each involve substantially similar

issues of law and fact. *See* Fed. R. Civ. P. 42(a). The Biogen Institutional Investor Group should

be appointed as Lead Plaintiff because it: (1) timely filed a motion for appointment as lead

plaintiff; (2) with an estimated loss in excess of $4 million in Biogen securities during the Class

Period, the Biogen Institutional Investor Group has the largest financial interest in this litigation

of any plaintiff or lead plaintiff movant of which movants are aware; and (3) will adequately

represent the interests of the Class. *See* 15 U.S.C. 78u-4(a)(3)(B)(iii). The Biogen Institutional

Investor Group's selection of Milberg Weiss and Entwistle & Cappucci to serve as Co-Lead

Counsel, and Moulton & Gans as Liaison Counsel should be approved because, pursuant to the

PSLRA, the Biogen Institutional Investor Group, as the presumptive Lead Plaintiff, selects

counsel. Milberg Weiss, Entwistle & Cappucci and Moulton & Gans have extensive experience

in the prosecution of securities class actions and will adequately represent the interests of all

class members.

## STATEMENT OF FACTS [2]

Biogen Idec Inc. develops, manufacturers and commercializes novel drug therapies. As

of December 31, 2003, it had four commercial products: Avonex (Interferon beta-1a) for the

treatment of relapsing multiple sclerosis (MS), Rituxan (rituximab) and Zevalin (ibritumomab

tiuxetan), both of which treat certain B-cell non-Hodgkin's lymphomas, also referred to as B-cell

---

[2]     These facts are derived from the allegations in the complaint captioned *Charles Brown v. Biogen Idec, Inc., et al.* (D. Mass. filed on March 2, 2005) ("the Brown Complaint").

NHLs, and Amevive (alefacept) for the treatment of adult patients with moderate-to-severe chronic plaque psoriasis who are candidates for systemic therapy or phototherapy.

TYSABRI, formerly referred as ANTEGREN, the first humanized monoclonal antibody approved for the treatment of MS, inhibits adhesion molecules on the surface of immune cells.

The complaint charges Biogen, William Rastetter, and James Mullen with violations of the Securities Exchange Act of 1934. More specifically, the Complaint alleges that the Company failed to disclose and misrepresented the following material adverse facts which were known to defendants or recklessly disregarded by them: (1) that TYSABRI posed serious immune-system side effects; (2) that TYSABRI, like other MS drugs, made patients susceptible to progressive multifocal leukoencephalopathy ("PML") by changing the way certain white blood cells function, thereby allowing PML, a normally dormant virus, to run rampant within the human body; (3) that defendants knew and/or recklessly disregarded documented facts that MS drugs can cause greater incidents of PML to occur; and (4) that defendants concealed these facts in order to fast track TYSABRI for FDA approval so that they could reap the financial benefits from the sales of the drug.

On February 28, 2005, before the market opened, Biogen announced a voluntary suspension in the marketing of TYSABRI® (natalizumab) because of two serious adverse events that have occurred in patients treated with TYSABRI in combination with AVONEX® (Interferon beta-1a) in clinical trials. News of this shocked the market. Shares of Biogen fell $28.63 per share, or 42.44 percent, to close at $38.65 on unusually high trading volume.

## ARGUMENT

### POINT I.

### THE ACTIONS SHOULD BE
### CONSOLIDATED FOR ALL PURPOSES

Consolidation is appropriate where there are actions involving common questions of law or fact.  See Fed. R. Civ. P. 42 (a).  The Actions assert class claims on behalf of the purchasers of Biogen securities for alleged violations of the securities laws during the Class Period.  The Actions name common defendants and involve the same factual and legal issues.  They are each brought by investors who purchased shares of Biogen during the Class Period pursuant to the materially false and misleading statements which artificially inflated the price of Biogen securities.  *See e.g. Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990).  That test is readily met here and, accordingly, the Actions should be consolidated.

### POINT II.

### MOVANTS SHOULD
### BE APPOINTED LEAD PLAINTIFF

**A.    The Procedure Required By The PSLRA**

The PSLRA has established a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C.  § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. §§  78u-4(a)(3)(A)(i).  The plaintiff in the first-filed action captioned *Brown v. Biogen Idec, Inc., et al.*, No. 1:05-cv-10400 (RCL) (D. Mass. filed on March 2, 2005),

caused notice to be published on the PR Newswire on March 2, 2005.[3]  Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
>> (aa) has either filed the complaint or made a motion in response to a notice...
>>
>> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and otherwise satisfies the requirements of Rule 23 of the
>>
>> (cc) Federal Rules of Civil Procedure.

15 U.S.C. 78u-4(a)(3)(B)(iii).  *See generally Greebel*, 939 F. Supp. at 64.

---

[3]    A copy of this notice is attached as Exhibit A to the Declaration of Nancy Freeman Gans, submitted contemporaneously herewith ("Gans Decl.").  The national news wire services have been recognized as suitable vehicles for meeting the statutory requirement that notice be published "in a widely circulated national business-oriented publication or wire services." *Greebel v. FTP Software, Inc.,* 939 F. Supp. 57, 62-64 (D. Mass. 1996); *Lax v. First Merchants Acceptance Corp.,* No. 97 C 2715, 1997 U.S. Dist. LEXIS 11866, at *2 (N.D. Ill. Aug. 6, 1997).

**B.    Movants Satisfy The "Lead Plaintiff" Requirements Of The PSLRA**

   **1.    Movants Have Complied With The PSLRA And Should Be Appointed Lead Plaintiff**

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. § 78u-4(a)(3)(A) and (B) expires on May 2, 2005. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on March 2, 2005), Movants timely move this Court to be appointed Lead Plaintiff on behalf of all members of the Class.

Movants have each duly signed a certification stating that they have reviewed the complaint and are willing to serve as representative parties on behalf of the class. *See* Gans Decl., Exhibit B (attaching certifications of the Biogen Institutional Investor Group). In addition, Movants have selected and retained competent counsel to represent them and the class. *See* Gans Decl. Exhs. D-F (attaching firm resumes of Milberg Weiss, Entwistle & Cappucci and Moulton & Gans). Accordingly, Movants have satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiff and their selection of Milberg Weiss and Entwistle & Cappucci to serve as Co-Lead Counsel, and Moulton & Gans to serve as Liaison Counsel approved by the Court.

   **2.    Movants Have The Requisite Financial Interest In The Relief Sought By The Class**

During the Class Period, as evidenced by the certifications signed by or on behalf of each member of the Biogen Institutional Investor Group (*see* Gans Decl. Exhibit B) and analysis of their transactions in Biogen securities (*see* Gans Decl. Exhibit C), the Biogen Institutional Investor Group has suffered losses in excess of $4 million. Upon information and belief, the Biogen Institutional Investor Group's financial interest in this matter is the largest of any competing lead plaintiff movant. Therefore, the Biogen Institutional Investor Group satisfies all

of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. 78u-4(a)(3)(B). *See Schulman*, 2003 U.S. Dist. LEXIS 10348, at *12 (appointing movant group with the largest financial interest as lead plaintiff.).

### 3.    Movants Otherwise Satisfies Rule 23

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two — typicality and adequacy -directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *Lax v. First Merchants,* 1997 U.S. Dist. LEXIS 11866 at *20; *Fischler v. Amsouth Bancorporation,* No. 96-1567-Civ -T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997). Movants satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiff.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See*

*Rossini v. Ogilvy & Mather, Inc.,* 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are typical. *See Priest v. Zayre Corp.,* 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Phillips v. Joint Legislative Comm. on Performance & Expenditure Review,* 637 F.2d 1014, 1024 (5th Cir. 1981).

Movants satisfy this requirement because, just like all other class members, they: (1) purchased or otherwise acquired Biogen securities during the Class Period; (2) purchased Biogen securities at prices artificially inflated as a result of the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages. Thus, Movants' claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events.

Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding Movants' adequacy to represent the class to the existence of any conflicts between their interests and the interests of the other members of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the proposed lead plaintiff and the class members and (2) the class representatives' choice of counsel who is qualified,

experienced and able to vigorously conduct the proposed litigation. *Modell v. Eliot Sav. Bank,* 139 F.R.D. 17, 23 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (lst Cir. 1985)).

Here, Movants are adequate representatives of the class.  As evidenced by the injuries suffered by them as a result of acquiring Biogen shares at prices artificially inflated by defendants' materially false and misleading statements, Movants' interests are clearly aligned with those of other class members, and there is no antagonism between Movants' interests and those of the other members of the class.  Movants are a cohesive group of sophisticated institutional investors and are precisely the type of movants envisioned by the PSLRA.  In addition, as shown below, Movants' proposed Co-Lead Counsel and Liaison Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner.  Thus, Movants *prima facie* satisfies the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

### POINT III.

### MOVANTS' CHOICE OF CO-LEAD COUNSEL AND LIAISON COUNSEL SHOULD BE APPROVED

Movants have selected Milberg Weiss and Entwistle & Cappucci to serve as Co-Lead Counsel, and Moulton & Gans as Liaison Counsel, subject to Court approval.  Milberg Weiss, Entwistle & Cappucci and Moulton & Gans possess extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  Milberg Weiss has been appointed as lead or co-lead counsel in landmark class actions, including *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465

(S.D.N.Y. 1998), where plaintiffs' recovery was the largest ever in an antitrust case.[4]  Entwistle & Cappucci likewise specializes in commercial and class action litigation and has prosecuted securities fraud class actions including *In re Daimler Chrysler A.G. Securities Litig.*, Master Docket No. 00-0993 JJF (U.S. Dist. Ct., D. Del)  Moulton & Gans is similarly experienced in securities class action and has served as Liaison Counsel with Milberg Weiss in many actions in this District.  *See* Gans Decl. Exs. D-F (attaching firm resumes).

## CONCLUSION

For the foregoing reasons, the Biogen Institutional Investor Group satisfies the PSLRA's requirements for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiff pursuant to 15 U.S.C. §78u-4(a)(3)(B).  Movants respectfully requests that this Court: (1) consolidate the actions presently pending in the District of Massachusetts; (2) appoint them as Lead Plaintiff pursuant to §21D(a)(3)(B); and (3) approve its selection of Milberg Weiss and Entwistle & Cappucci as Co-Lead Counsel, and Moulton & Gans as Liaison Counsel.

DATED: May 2, 2005                    Respectfully submitted,


                                      **MOULTON & GANS, P.C.**


                                      By: /s/ Nancy Freeman Gans
                                      Nancy Freeman Gans, BBO #184540
                                      33 Broad Street, Suite 1100
                                      Boston, MA  02109
                                      Telephone:  (617) 369-7979

                                      *Proposed Liaison Counsel*

---

[4]       *See also In re Advanced Tissue Scis. Sec. Litig.,* 184 F.R.D. 346, 352 (S.D. Cal. 1998) (Milberg Weiss qualified to serve as lead counsel); *Chill v. Green Tree Fin. Corp.,* 181 F.R.D. 398, 403, 413-15 (D. Minn. 1998) (same); *In re Donnkenny, Inc. Sec. Litig.,* 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (same); *Holley v. Kitty Hawk, Inc.* 200 F.R.D. 275, 282 (N.D. Tex. 2001) (same); *Greebel v. FTP Software*, 939 F. Supp. at 64 (same).

**MILBERG WEISS BERSHAD**
   **& SCHULMAN LLP**
Steven G. Schulman
Anita B. Kartalopoulos
Peter E. Seidman
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300


**ENTWISTLE & CAPPUCCI LLP**
Vincent R. Cappucci
Stephen D. Oestreich
Robert N. Cappucci
299 Park Avenue
New York, NY  10171
(212) 894-7200

*Proposed Co-Lead Counsel*


## CERTIFICATE OF SERVICE

    I, Nancy Freeman Gans, hereby certify that a true copy of the above document was served upon the attorney of record for each party.

                    /s/ Nancy Freeman Gans
                    Nancy Freeman Gans