UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES BROWN, Individually and On Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>vs.<br><br>BIOGEN IDEC INC., et al.,<br><br>  Defendants. | ) Civil Action No. 05-10400-RCL<br>)<br>) <u>CLASS ACTION</u><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| CARY GRILL, Individually and On Behalf of All Others Similarly Situated,<br><br>  Plaintiff,<br><br>vs.<br><br>BIOGEN IDEC INC., et al.,<br><br>  Defendants. | ) Civil Action No. 05-10453-RCL<br>)<br>) <u>CLASS ACTION</u><br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

[Caption continued on following page.]

MEMORANDUM IN SUPPORT OF THE MOTION OF THE LONDON PENSIONS FUND AUTHORITY AND NATIONAL ELEVATOR INDUSTRY PENSION FUND FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS AND FOR APPROVAL OF SELECTION OF LEAD AND LIAISON COUNSEL

| | |
|---|---|
| ROCHELLE LOBEL, Individually and On Behalf of All Others Similarly Situated,<br><br>                  Plaintiff,<br><br>  vs.<br><br>BIOGEN IDEC INC., et al.,<br><br>                  Defendants. | Civil Action No. 05-10801-RCL<br><br><u>CLASS ACTION</u> |

I.      **PRELIMINARY STATEMENT**

Presently pending before this Court are at least three-related securities class action lawsuits (the "Actions") brought on behalf of all those who purchased or otherwise acquired Biogen Idec Inc. ("Biogen" or the "Company") securities between February 18, 2004 and February 25, 2005, inclusive (the "Class Period") and allege violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C. § 78(j)(b) and 78(t)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5).

Institutional Investors The London Pensions Fund Authority and National Elevator Industry Pension Fund hereby move this Court for an order to: (i) consolidate the Actions; (ii) appoint The London Pensions Fund Authority and National Elevator Industry Pension Fund as Lead Plaintiffs in the Actions under Section 21D(a)(3)(B) of the Exchange Act; and (iii) approve The London Pensions Fund Authority and National Elevator Industry Pension Fund's selection of the law firm of Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin") to serve as Lead Counsel and the law firm of Shapiro Haber & Urmy LLP ("Shapiro Haber") to serve as Liaison Counsel.

This motion is made on the grounds that The London Pensions Fund Authority and National Elevator Industry Pension Fund are the most adequate plaintiffs, as defined by the PSLRA. The London Pensions Fund Authority and National Elevator Industry Pension Fund are precisely the type of investors that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari v. Impath, Inc.*, 2004 U.S. Dist. LEXIS 13898, *10 (S.D.N.Y. July 15, 2004) (holding that the institutional investors proposed as lead plaintiffs are exactly the type of lead plaintiffs that Congress wanted to encourage to participate in the litigation of these actions). Moreover, as institutional investors, The London Pensions Fund Authority and National Elevator Industry Pension Fund are

accustomed to acting as fiduciaries and their experience in legal and financial matters will substantially benefit the class.

The London Pensions Fund Authority and National Elevator Industry Pension Fund suffered losses of $3,758,992.74 in connection with their purchases of hundreds of thousands of Biogen shares during the Class Period. *See* Hess-Mahan Decl. Ex. B.[1] To the best of our knowledge, this is the greatest loss sustained by any moving class member or class member group who has brought suit or filed an application to serve as Lead Plaintiff in these Actions. In addition, The London Pensions Fund Authority and National Elevator Industry Pension Fund, for the purposes of this motion, adequately satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure in that their claims are typical of the claims of the putative class and that they will fairly and adequately represent the interests of the class.

## II. FACTUAL BACKGROUND

Biogen develops, manufactures and commercializes novel therapies. The Company also receives revenues from royalties on sales by its licenses of a number of products covered under patents that it controls including sales of Rituxan outside the United States. The Company was formed via the merger of Biogen, Inc. and IDEC Pharmaceuticals Corporation.

The Company partnered with Elan Corporation to develop TYSABRI for the treatment of Multiple Sclerosis, Crohn's Disease and rheumatoid arthritis. TYSABRI, which was approved by the Food and Drug Administration ("FDA") in November 2004, had been hailed as a breakthrough in the treatment of Multiple Sclerosis.

---

[1] References to the "Hess-Mahan Decl., Ex. __" are to the exhibits attached to the accompanying Declaration of Theodore M. Hess-Mahan dated May 2, 2005 and submitted herewith.

The complaint charges Biogen, William Rastetter, and James Mullen with violations of the Securities Exchange Act of 1934. More specifically, the Complaint alleges that the Company failed to disclose and misrepresented the following material adverse facts which were known to defendants or recklessly disregarded by them: (1) that TYSABRI posed serious immune-system side effects; (2) that TYSABRI, like other Multiple Sclerosis drugs, made patients susceptible to progressive multifocal leukoencephalopathy ("PML") by changing the way certain white blood cells function, thereby allowing PML, a normally dormant virus, to run rampant within the human body; (3) that defendants knew and/or recklessly disregarded documented facts that Multiple Sclerosis drugs can cause greater incidents of PML to occur; and (4) that defendants concealed these facts in order to fast track TYSABRI for FDA approval so that they could reap the financial benefits from the sales of the drug.

On February 28, 2005, before the market opened, Biogen announced a voluntary suspension in the marketing of TYSABRI® (natalizumab), a treatment for multiple sclerosis ("MS"), because of two serious adverse events that have occurred in patients treated with TYSABRI in combination with AVONEX® (Interferon beta-1a) in clinical trials. News of this shocked the market. Shares of Biogen fell $28.63 per share, or 42.44 percent, to close at $38.65 on unusually high trading volume.

Prior to this disclosure, Company insiders sold 786,244 shares of their personally-held Biogen stock and reaped more than $37 million in gross proceeds.

On March 30, 2005, Biogen further revealed that the death of a patient in an earlier 2003 drug trial for ANTEGREN(r) (natalizumab) was misdiagnosed at the time as linked to malignant astrocytoma. That death has now been confirmed as having resulted from the same PML infection as the death and infection in the current TYSABRI (natalizumab) studies that were suspended on

February 28, 2005. The Company further announced that prior studies of natalizumab - which is branded ANTEGREN for Crohn's Disease and TYSABRI for MS are under full review.

On April 29, 2005, it was further disclosed that U.S. securities regulators are formally probing whether there were any violations of securities laws related to suspension of its Multiple Sclerosis drug TYSABRI.

### III.    ARGUMENT

#### A.    THE ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

The Actions each assert class claims on behalf of the purchasers of Biogen shares for alleged violations of the Exchange Act during the relevant time period. The Actions name the same defendants and involve the same factual and legal issues. They are each brought by investors who purchased Biogen shares during the relevant time period in reliance on the integrity of the market for such securities and were injured by the fraud on the market that was perpetrated through the issuance of materially false and misleading statements and concealment of material information, thus artificially inflating the prices of Biogen stock at all relevant times. Consolidation is appropriate where there are actions involving common questions of law or fact. Fed. R. Civ. P. 42 (a). *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (3d Cir. 1990). That test is met here and, accordingly, the Actions should be consolidated.

#### B.    THE LONDON PENSIONS FUND AUTHORITY AND NATIONAL ELEVATOR INDUSTRY PENSION FUND SHOULD BE APPOINTED LEAD PLAINTIFFS

##### 1.    The Procedure Required By The PSLRA

The PSLRA has established a procedure that governs the appointment of a Lead Plaintiff in "each private action arising under the [Securities Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as Lead Plaintiff. 15 U.S.C. §§ 78u-4(a)(3)(A)(i). Plaintiff in the *Brown* Action caused the first notice regarding the pendency of these actions to be published on *PR Newswire*, a national, business-oriented newswire service, on March 2, 2005. *See* Hess-Mahan Decl. Ex. A. Within 60 days after publication of the notice, any person or group of persons who are members of the proposed class may apply to the Court to be appointed as Lead Plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §§ 78u-4(a)(3)(A) and (B).

Second, the PSLRA provides that, within 90 days after publication of the notice, the Court shall consider any motion made by a class member and shall appoint as Lead Plaintiff the member or members of the class that the Court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. § 78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is the person or group of persons that
>
> (aa) has either filed the complaint or made a motion in response to a notice...
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. 78u-4(a)(3)(B)(iii). *See generally Greebel v. FTP Software*, 939 F. Supp. 57, 64 (D. Mass. 1996).

      **2.**    **The London Pensions Fund Authority and National Elevator Industry Pension Fund Satisfy The "Lead Plaintiff" Requirements Of The Exchange Act**

          **a.**    **The London Pensions Fund Authority and National Elevator Industry Pension Fund Have Complied With The Exchange Act And Should Be Appointed Lead Plaintiffs**

The time period in which class members may move to be appointed Lead Plaintiff herein under 15 U.S.C. § 78u-4(a)(3)(A) and (B) expires on May 2, 2005. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice (published on March 2, 2005), The London Pensions Fund Authority and National Elevator Industry Pension Fund timely move this Court to be appointed Lead Plaintiffs on behalf of all members of the class.

The London Pensions Fund Authority and National Elevator Industry Pension Fund have duly signed and filed certifications stating that they are willing to serve as the representative parties on behalf of the class. *See* Hess-Mahan Decl. Ex. C. In addition, The London Pensions Fund Authority and National Elevator Industry Pension Fund have selected and retained competent counsel to represent them and the class. *See* Hess-Mahan Decl. Exs. D-E. Accordingly, The London Pensions Fund Authority and National Elevator Industry Pension Fund have satisfied the individual requirements of 15 U.S.C. § 78u-4(a)(3)(B) and are entitled to have their application for appointment as Lead Plaintiffs and selection of Lead and Liaison Counsel as set forth herein, considered and approved by the Court.

          **b.**    **The London Pensions Fund Authority and National Elevator Industry Pension Fund Are Precisely the Type of Lead Plaintiffs Congress Envisioned When It Passed the PSLRA**

The Congressional objective in enacting the lead plaintiff provisions was to encourage large, sophisticated institutional investors to play a more prominent role in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 733 ("The

Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions.").

Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. The London Pensions Fund Authority and National Elevator Industry Pension Fund, as institutional investors, are precisely the type of lead plaintiffs Congress envisioned when it passed the PSLRA. *See id*. ("Institutional investors and other class members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake.").

     **c.** **The London Pensions Fund Authority and National Elevator Industry Pension Fund Have The Requisite Financial Interest In The Relief Sought By The Class**

During the Class Period, as evidenced by, among other things, the accompanying signed certifications, *see* Hess-Mahan Decl. Ex. C, The London Pensions Fund Authority and National Elevator Industry Pension Fund purchased hundred of thousands of Biogen shares in reliance upon the materially false and misleading statements issued by the defendants and were injured thereby. In addition, The London Pensions Fund Authority and National Elevator Industry Pension Fund incurred a substantial $3,758,992.74 loss on their transactions in Biogen shares. The London Pensions Fund Authority and National Elevator Industry Pension Fund thus have a significant financial interest in this case. Therefore, The London Pensions Fund Authority and National Elevator Industry Pension Fund satisfy all of the PSLRA's prerequisites for appointment as Lead Plaintiffs in this action and should be appointed Lead Plaintiffs pursuant to 15 U.S.C. 78u-4(a)(3)(B).

> d. **The London Pensions Fund Authority and National Elevator Industry Pension Fund Otherwise Satisfy Rule 23**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the Lead Plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Of the four prerequisites to class certification, only two -- typicality and adequacy -- directly address the personal characteristics of the class representative. Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Lax v. First Merchants Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866 at *20, (N.D. Ill. Aug. 6, 1997). The London Pensions Fund Authority and National Elevator Industry Pension Fund satisfy both the typicality and adequacy requirements of Rule 23, thereby justifying their appointment as Lead Plaintiffs.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiffs' claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Typicality does not require that there be no factual differences between the class representatives and the class members because it is the generalized nature of the claims asserted which determines whether the class representatives are

- 8 -

typical. *See Priest v. Zayre Corp.*, 118 F.R.D. 552, 555 (D. Mass. 1988) ("With respect to typicality under Rule 23(a)(3), plaintiffs need not show substantial identity between their claims and those of absent class members, but need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent [class] members") (citations omitted). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Phillips v. Joint Legislative Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1024 (5th Cir. 1981).

The London Pensions Fund Authority and National Elevator Industry Pension Fund satisfy this requirement because, just like all other class members, they: (1) purchased Biogen shares during the Class Period; (2) purchased Biogen shares in reliance upon the allegedly materially false and misleading statements issued by defendants; and (3) suffered damages thereby. Thus, The London Pensions Fund Authority and National Elevator Industry Pension Fund's claims are typical of those of other class members since their claims and the claims of other class members arise out of the same course of events. Under Rule 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of The London Pensions Fund Authority and National Elevator Industry Pension Fund to represent the class to the existence of any conflicts between the interests of The London Pensions Fund Authority and National Elevator Industry Pension Fund and the members of the class. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflict between the named plaintiffs and the class members; and (2) the class representatives' choice of counsel who are qualified, experienced and able to vigorously conduct the proposed litigation. *See Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 23 (D. Mass. 1991) (citing *Andrews v. Bechtel Power Corp.*, 780 F.2d 124, 130 (1st Cir. 1985)).

Here, The London Pensions Fund Authority and National Elevator Industry Pension Fund are adequate representatives of the class. As evidenced by the injuries suffered by The London Pensions Fund Authority and National Elevator Industry Pension Fund, who purchased Biogen shares at prices allegedly artificially inflated by defendants' materially false and misleading statements, the interests of The London Pensions Fund Authority and National Elevator Industry Pension Fund are clearly aligned with the members of the class, and there is no evidence of any antagonism between The London Pensions Fund Authority and National Elevator Industry Pension Fund's interests and those of the other members of the class. Further, The London Pensions Fund Authority and National Elevator Industry Pension Fund have taken significant steps which demonstrate they will protect the interests of the class: they have retained competent and experienced counsel to prosecute these claims. In addition, as shown below, The London Pensions Fund Authority and National Elevator Industry Pension Fund's proposed Lead and Liaison Counsel are highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, The London Pensions Fund Authority and National Elevator Industry Pension Fund *prima facie* satisfy the commonality, typicality and adequacy requirements of Rule 23 for the purposes of this motion.

      **C.**      **THE COURT SHOULD APPROVE THE LONDON PENSIONS FUND AUTHORITY AND NATIONAL ELEVATOR INDUSTRY PENSION FUND'S CHOICE OF COUNSEL**

Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v), the proposed lead plaintiff shall, subject to Court approval, select and retain counsel to represent the class it seeks to represent. In that regard, The London Pensions Fund Authority and National Elevator Industry Pension Fund have selected the law firm of Lerach Coughlin as Lead Counsel and the law firm of Shapiro Haber as Liaison Counsel, firms which have substantial experience in the prosecution of shareholder and securities class actions. *See* Hess-Mahan Decl. Exs. D-E. Accordingly, the Court should approve The London Pensions Fund Authority and National Elevator Industry Pension Fund's selection of counsel.

## IV.  CONCLUSION

For all the foregoing reasons, The London Pensions Fund Authority and National Elevator Industry Pension Fund respectfully request that the Court: (i) consolidate the Actions; (ii) appoint The London Pensions Fund Authority and National Elevator Industry Pension Fund as Lead Plaintiffs in the Actions; (iii) approve their selection of Lead and Liaison Counsel as set forth herein; and (iv) grant such other relief as the court may deem just and proper.

DATED:  May 2, 2005                                      SHAPIRO HABER & URMY LLP


**/s/Theodore M. Hess-Mahan**
Thomas G. Shapiro BBO #454680
Theodore M. Hess-Mahan BBO #557109
 53 State Street
Boston, MA  02109
Telephone:  617/439-3939
617/439-0134 (fax)

[Proposed] Liaison Counsel

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone:  631/367-7100
631/367-1173 (fax)

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
PATRICK W. DANIELS
401 B Street, Suite 1600
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs