**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS (BOSTON)**

| | | |
|---|---|---|
| CHARLES BROWN, Individually and On Behalf of All Others Similarly Situated, | : | 1:05-cv-10400 (RCL) |
| Plaintiff, | : | |
| vs. | : | |
| BIOGEN IDEC, INC., WILLIAM RASTETTER, and JAMES MULLEN, | : | |
| Defendants. | : | |
| CARY GRILL, Individually and On Behalf of All Others Similarly Situated, | : | 1:05-cv-10453 (RCL) |
| Plaintiff, | : | |
| vs. | : | |
| BIOGEN IDEC, INC., WILLIAM RASTETTER and JAMES MULLEN, | : | |
| Defendants. | : | |
| ROCHELLE LOBEL, Individually and On Behalf of All Others Similarly Situated, | : | 1:05-cv-10801 (RCL) |
| Plaintiff, | : | |
| vs. | : | |
| BIOGEN IDEC, INC., WILLIAM RASTETTER and JAMES MULLEN, | : | |
| Defendants. | : | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF THE BIOGEN INSTITUTIONAL INVESTOR GROUP FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF CO-LEAD COUNSEL AND LIAISON COUNSEL AND <u>IN OPPOSITION TO THE OTHER MOTIONS</u>**

The New Jersey Carpenters Pension and Annuity Funds, Folksam Asset Management, Third Millennium Trading LLP, the Deerfield Beach Non-Uniformed Municipal Employees Retirement Plan, the Plumbers, Pipefitters Local No. 520 Pension Fund and Horatio Capital, LLC (collectively, the "Biogen Institutional Investor Group" or "Movants") submit this memorandum in opposition to the competing motions and in further support of its motion for an order: (1) consolidating the above-captioned actions (the "Actions"), (2) appointing Movants Lead Plaintiff in the Actions, and (3) approving Movants' selection of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and Entwistle & Cappucci LLP ("Entwistle & Cappucci") as Co-Lead Counsel, and Moulton and Gans, P.C. ("Moulton & Gans") as Liaison Counsel.

The Biogen Institutional Investor Group's motion should be granted, and the other motions denied, because it "has the largest financial interest in the relief sought by the class" and otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii). The Biogen Institutional Investor Group's loss of **$4,964,110** is larger than the interest reported by the other movants, who claim losses of $3,758,992, $1,047,986 and $20,904. In addition to having the largest financial interest as a group, Biogen Institutional Investor Group member Third Millenium Trading LLP ("Third Millenium"), with a financial interest of $3,068,480, presents the largest interest of any single movant. Under these circumstances, and because the Biogen Institutional Group meets the adequacy and typicality requirements of Fed. R. Civ. P.23, and is comprised of institutional investors, which are preferred lead plaintiffs, the Court should grant the Biogen Institutional Investor Group's motion in its entirety. Moreover, the Biogen Institutional Investor Group has already taken important steps to protect the interests of the class. As detailed below, the ongoing investigation of its counsel has uncovered important facts that

would benefit the prosecution of this action. For these reasons, among others, all other motions should be denied.

### POINT I.

### THE BIOGEN INSTITUTIONAL INVESTOR GROUP HAS THE LARGEST FINANCIAL INTEREST IN THE LITIGATION

The criteria for appointment of lead plaintiff is straightforward. The Ninth Circuit has described the procedure as follows:

> [T]he district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit. It must then focus its attention on that plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of "typicality" and "adequacy." If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff.

*In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002) (footnotes omitted). *See also In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d 39, 42 (D. Mass. 2001) (Saris, J.). The following chart lists the movants before the Court and their financial interests, as reported in their motion papers:

[intentionally blank, chart appears on next page]

| Movant Group | Reported Losses |
|---|---|
| **Biogen Institutional Investor Group (Total)** | **$4,964,110.74** |
| New Jersey Carpenters Annuity & Pension Funds | $279,715.06 |
| Folksam Asset Management | $857,697.61 |
| Third Millenium | $3,068,480.56 |
| Deerfield Beach Nonuniformed | $130,680.96 |
| Plumbers & Pipefitters Local 520 Totals | $111,467.73 |
| Horatio Capital | $516,068.83 |
| **London Pension/Nat'l Elevator (Total)** | **$3,758,992.74** |
| London [England] Pension Fund Authority | $2,055,785.11 |
| National Elevator Industry Pension Fund | $1,703,207.63 |
| **Louisiana SERS & PERS Total (Total)[1]** | **$1,047,986.13** |
| Louisiana School Employees' Retirement System | $575,409.30 |
| Municipal Police Employees' Retirement System of Louisiana | $472,576.83 |
| **Rochelle Lobel** | **$20,904.50** |

The Biogen Institutional Investor Group has by far the largest financial interest in the litigation and, moreover, its member, Third Millenium, has by far the largest financial interest of

---

[1] On May 16, 2005, the Louisiana Funds filed a statement acknowledging that they lack the requisite financial interest to be appointed Lead Plaintiff, and request that the Court appoint them only if it finds that the movant with the largest interest is inadequate. As detailed herein and in its prior submission, the Biogen Institutional Investor Group, which has the largest financial interest, readily meets the relevant Fed. R. Civ. P. 23 requirements.

any individual movant.[2] Thus, only the Biogen Institutional Investor Group satisfies the PSLRA's "largest financial interest" requirement. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

## POINT II.

### THE BIOGEN INSTITUTIONAL INVESTOR GROUP IS ADEQUATE AND TYPICAL

Once the court has identified the movant with the largest financial interest in the relief sought by the class it "must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.' " *In re Cavanaugh*, 306 F.3d at 730 (emphasis in original). As has been demonstrated in its opening brief, the Biogen Institutional Investor Group meets the adequacy and typicality elements of Fed. R. Civ. P. 23. *See* Biogen Institutional Investor Group Mem. at 8-10. *See also In re Lernout & Hauspie Sec. Litig.*, 138 F. Supp. 2d at 45 ("Only the last two prongs [of Rule 23], typicality and adequacy, need to be satisfied for purposes of this inquiry.") (citations omitted). Specifically, the members of the Biogen Institutional Investor Group are typical because they stand in the shoes of all other Class members and make the same allegations: that they were damaged by transacting in Biogen securities during the Class Period at prices that were artificially inflated by defendants' materially false and misleading statements and the subsequent decline in the price of the Company's stock, and that defendants violated Sections 10(b) and 20(a) of the Exchange Act,

---

[2] The losses and certification of Horatio Capital, LLC were not included in the Biogen Institutional Investor Group's opening papers. *See* Biogen Institutional Investor Group Mem. at 2, n.1. Horatio Capital's certification is enclosed as Exhibit A hereto and a loss chart including Horatio Capital's financial interest is enclosed as Exhibit B. (Exhibits are attached to the Declaration of Nancy Freeman Gans). Notably, even without including the losses sustained by Horatio Capital, the financial interest of the Biogen Institutional Investor Group ($4,448,041) is larger than that of any other movant or movant group. *See Greebel v. FTP Software,* 939 F. Supp. 57, 61 ("Accordingly, the court concludes that a purported class member seeking to serve as lead plaintiff is not required to file a certification, pursuant to section 21D(a)(2)(a), with his or her motion.") (D. Mass. 1996) (Tauro, J.).

and Rule 10b-5. *See In re Tyco Int.l, Ltd. Sec. Litig*. No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390 at *21-22 ("To satisfy Rule 23's typicality requirement, a class representative's injuries must arise from the same event or course of conduct as the injuries allegedly suffered by other class members, and its claims must be based on the same legal theory.") *citing Modell v. Eliot Sav. Bank*, 139 F.R.D. 17, 22 (D. Mass. 1991). The Biogen Institutional Investor Group is adequate, as that term is defined in this context, because its interests do not conflict with the interests of other class members and because its selected Co-Lead Counsel, Milberg Weiss and Entwistle & Cappucci, have successfully represented plaintiffs in some of the largest securities class actions in history and are unquestionably well suited to serve the class as Lead Counsel. *See In re Tyco Intl., Ltd. Sec. Litig*., 2000 U.S. Dist. LEXIS 13390 at *23 ("Whether a class representative 'will fairly and adequately protect the . . . class' . . . depends upon (1) whether the interests of the representative will conflict with the interests of any class members, and (2) whether the representative is represented by qualified, experienced counsel capable of vigorously prosecuting the proposed litigation.") (citations omitted). As discussed below, in addition to meeting the requirements of the statute, the Biogen Institutional Investor Group would make an ideal Lead Plaintiff.

      A.     **The Biogen Institutional Lead Plaintiff Group Is The Ideal Lead Plaintiff**

The Biogen Institutional Lead Plaintiff Group is comprised entirely of institutional investors. One of the PSLRA's main goals was to encourage institutional investors to take the reins in securities class actions:

> Both the Conference Committee Report and the Senate Report state that the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff, predicting that their involvement would significantly benefit absent class members. See H.R. Conf. Rep. No. 104-369, at 34 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 733; S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690.

*In re Cendant Corp. Litig*., 264 F.3d 201, 262 (3d Cir. 2001). Appointing the Biogen Institutional Investor Group, which is a small, cohesive group comprised of institutional investors, each of which has a large financial stake in this litigation, would satisfy the PSLRA's aim of having the plaintiff class represented by sophisticated institutional investors.

      **B.**    **The Biogen Institutional Investor Group
                  Has Already Taken Important Steps to Protect the Interests of the Class**

The Biogen Institutional Investor Group, through its counsel, has expended, and continues to expend, vast resources in the investigation of Biogen's alleged securities fraud. The results of the investigation, which will be particularized in the consolidated amended complaint if the Biogen Institutional Investor Group is appointed Lead Plaintiff, will strengthen the case against defendants, to the benefit of all class members. Shortly after news of the first of the two deaths tied to Biogen's medication became public, counsel for the Biogen Institutional Investor Group formed a team and launched an extensive investigation of Biogen and Elan (Biogen's partner in marketing Tysabri). As part of the investigation, the investigative team retained a physician with a specialty in the treatment of multiple sclerosis and, in consultation with him, conducted an extensive review of the relevant scientific literature and articles appearing in the popular press. The investigative team then interviewed dozens of witnesses, at length, including researchers involved in the early development of the drug, participants in the development of the Tysabri trials, and leading specialists in the field of neurology. The investigative team also obtained clinical trial data related to the Tysabri clinical trials for analysis. Thus, the Biogen Institutional Investor Group has *already* demonstrated its commitment to the prosecution of this action and its investigation is believed to be well ahead of any other plaintiff or lead plaintiff movant. Its motion should be granted.

### POINT III.

**THE MOTION OF THE LONDON [ENGLAND] PENSION FUND AUTHORITY AND
NATIONAL ELEVATOR INDUSTRY PENSION FUND IS UNTIMELY**

Pursuant to the PSLRA, lead plaintiff motions must be filed within 60 days of the issuance of the PSLRA notice advising class members of their right to move. *See* 15 U.S.C. §§ 78u-4(a)(3)(A) and (B). In the instant matter, the requisite notice was published on March 2, 2005, establishing a motion deadline of May 2, 2005. *See* Biogen Institutional Lead Plaintiff Group Mem. at 5-6. Thus, in order to be considered, a motion for Lead Plaintiff in this matter had to have been filed on May 2, 2005, at the latest. Pursuant to local rule, a filing made after 6 p.m. is deemed to have been filed the following day: "All electronic transactions must be completed ***prior to 6:00 p.m. Eastern Standard Time*** in order to be considered timely filed that day." The motion of the London [England] Pension Fund and Elevator Industry Pension Fund is untimely because it was filed after 6 p.m. on May 2, 2005. CM/ECF/ADMINISTRATIVEPROCEDURES/G/Deadlines. *See* Gans Exhibit B (electronic filing receipt showing that the motion was filed at 7:19 p.m. Daylight Standard Time, which is 6:19 Eastern Standard Time, on May 2, 2005. Accordingly, the motion of London [England] Pension Fund Authority and National Elevator Industry Pension Fund is untimely and must be rejected. *See In re Vaxgen Sec. Litig.* No. C-03-1129 (JSW) (N.D. Cal. Apr. 14, 2004) ("The PSLRA is unequivocal and allows for no exceptions, all motions for lead plaintiff must be filed within sixty days of the published notice for the first-filed action.") (the opinion is attached as Exhibit C).

**CONCLUSION**

For the foregoing reasons, the Biogen Institutional Investor Group satisfies the PSLRA's requirements for appointment as Lead Plaintiff in this action and should be appointed Lead

Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B). Movant respectfully request that this Court: (1) consolidate the actions presently pending in the District of Massachusetts; (2) appoint it as Lead Plaintiff pursuant to § 21D(a)(3)(B); and (3) approve its selection of Milberg Weiss and Entwistle & Cappucci as Co-Lead Counsel, and Moulton & Gans as Liaison Counsel.

DATED: May 16, 2005                             Respectfully submitted,

**MOULTON & GANS, P.C.**

By: /s/ Nancy Freeman Gans
Nancy Freeman Gans, BBO #184540
33 Broad Street, Suite 1100
Boston, MA  02109
Telephone:  (617) 369-7979

*Proposed Liaison Counsel*

- 9 -

**MILBERG WEISS BERSHAD
 & SCHULMAN LLP**
Steven G. Schulman
Anita B. Kartalopoulos
Peter E. Seidman
One Pennsylvania Plaza
New York, NY 10119
(212) 594-5300

**ENTWISTLE & CAPPUCCI LLP**
Vincent R. Cappucci
Stephen D. Oestreich
Robert N. Cappucci
299 Park Avenue
New York, NY 10171
(212) 894-7200

*Proposed Co-Lead Counsel*

DOCS\283059v1

### CERTIFICATE OF SERVICE

I, Andre Rado, hereby certify that a true copy of the above document was served upon the attorney of record for each party.

/s/ Andre Rado
Andre Rado

- 10 -