# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES BROWN, Individually and On Behalf of All Others Similarly Situated, <br><br>          Plaintiff, <br><br>     vs. <br><br> BIOGEN IDEC INC., et al., <br><br>         Defendants. | ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 05-10400-RCL <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |
| CARY GRILL, Individually and On Behalf of All Others Similarly Situated, <br><br>          Plaintiff, <br><br>     vs. <br><br> BIOGEN IDEC INC., et al., <br><br>         Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> )    Civil Action No. 05-10453-RCL <br> ) <br> ) <br> ) <br> ) <br> ) |

[Caption continued on following page.]

ASSENTED TO MOTION BY THE LONDON PENSIONS FUND AUTHORITY AND NATIONAL ELEVATOR INDUSTRY PENSION FUND FOR LEAVE TO FILE REPLY MEMORANDUM IN RESPONSE TO BIOGEN INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM IN OPPOSITION TO THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND FOR APPROVAL OF THEIR SELECTION OF LEAD AND LIAISON COUNSEL

ROCHELLE LOBEL, Individually and On )
Behalf of All Others Similarly Situated, )
                                        )
                        Plaintiff,      )
                                        )
            vs.                         )
                                        )    Civil Action No. 05-10801-RCL
BIOGEN IDEC INC., et al.,               )
                                        )
                        Defendants.     )
                                        )
_____ )

Pursuant to Local Rule 7.1(B)(3), class members The London Pensions Fund Authority and National Elevator Industry Pension Fund, hereby move this Court for leave to file a reply memorandum in response to the Biogen Institutional Investor Group's memorandum in opposition to their motion for appointment as lead plaintiffs and approval of their selection of lead and liaison counsel.  Counsel for the parties have conferred and counsel for the Biogen Institutional Investor Group have assented to the relief requested in this motion.

DATED: June 1, 2005                      Respectfully submitted,

                                         **/s/Theodore M. Hess-Mahan**
                                         Thomas G. Shapiro BBO #454680
                                         Theodore M. Hess-Mahan BBO #557109
                                          53 State Street
                                         Boston, MA  02109
                                         Telephone:  617/439-3939
                                         617/439-0134 (fax)

                                         [Proposed] Liaison Counsel

                                         LERACH COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                         SAMUEL H. RUDMAN
                                         DAVID A. ROSENFELD
                                         MARIO ALBA JR.
                                         200 Broadhollow Road, Suite 406
                                         Melville, NY 11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)

                                         LERACH COUGHLIN STOIA GELLER
                                            RUDMAN & ROBBINS LLP
                                         WILLIAM S. LERACH
                                         DARREN J. ROBBINS
                                         PATRICK W. DANIELS
                                         401 B Street, Suite 1600
                                         San Diego, CA  92101
                                         Telephone:  619/231-1058
                                         619/231-7423 (fax)

                                         [Proposed] Lead Counsel for Plaintiffs

## <u>LOCAL RULE 7.1(A)(2) CERTIFICATION</u>

I hereby certify that the parties' counsel have conferred in a good faith effort to narrow or resolve the issues raised in this motion. Counsel for the Biogen Institutional Investor Group have assented to the relief requested in this motion.


**<u>/s/Theodore M. Hess-Mahan</u>**
Theodore M. Hess-Mahan

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHARLES BROWN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 05-10400-RCL |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| BIOGEN IDEC INC., et al., | ) ) | |
| Defendants. | ) ) ) | |
| CARY GRILL, Individually and On Behalf of All Others Similarly Situated, | ) ) | Civil Action No. 05-10453-RCL |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| BIOGEN IDEC INC., et al., | ) ) | |
| Defendants. | ) ) | |

[Caption continued on following page.]

LONDON PENSIONS FUND/NATIONAL ELEVATOR'S REPLY MEMORANDUM IN RESPONSE TO BIOGEN INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM IN OPPOSITION TO THEIR MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND FOR APPROVAL OF THEIR SELECTION OF LEAD AND LIAISON COUNSEL

ROCHELLE LOBEL, Individually and On
Behalf of All Others Similarly Situated,

                     Plaintiff,

      vs.

BIOGEN IDEC INC., et al.,

                Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

Civil Action No. 05-10801-RCL

<u>CLASS ACTION</u>

Institutional Investors The London Pensions Fund Authority and National Elevator Industry Pension Fund ("London Pensions Fund/National Elevator") respectfully submit this reply memorandum in response to Biogen Institutional Investor Group's memorandum in opposition to their motion for appointment as lead plaintiffs and for approval of their selection of lead and liaison counsel.

## I.     PRELIMINARY STATEMENT

Of the four motions that were originally filed seeking appointment as Lead Plaintiff and approval of their respective selection of Lead and Liaison Counsel, only two movants have continued to pursue their motions by filing memoranda opposing the competing motions: (1) London Pensions Fund/National Elevator; and (2) the Biogen Institutional Investor Group.

In opposing the motion of the Biogen Institutional Investor Group, London Pensions Fund/National Elevator raised serious concerns about the Biogen Institutional Investor Group's financial interest in this litigation and its ability to adequately represent the interests of the rest of the Class.  Specifically, London Pensions Fund/National Elevator questioned whether Third Millennium Trading LLP ("Third Millennium"), which represents the bulk of the Biogen Institutional Investor Group's claimed financial interest: (i) had provided all of the details of its transactions in Biogen IDEC securities during the Class Period; (ii) had even suffered a loss at all on its trading of Biogen IDEC securities; (iii) was an adequate lead plaintiff because of its status as an options trader; (iv) was an adequate lead plaintiff because of its status as a market maker; and (v) suffered from an irreconcilable conflict of interest because of its proprietary relationship with Merrill Lynch, one of Biogen IDEC's underwriters.  Despite repeated requests for more information on these issues, these questions remain unanswered.

Additionally, the Biogen Institutional Investor Group's recent submission of the certification of Horatio Capital LLC ("Horatio") with its opposition memorandum is excessively tardy and raises

new issues about its claimed losses and adequacy to serve as lead plaintiff and, if allowed, will likely delay the proper consideration of all of these motions. *See In re Vaxgen Sec. Litig.*, C 03-1129 JSW, *slip op.* at \*7-\*8 (N.D. Cal. Apr. 14, 2004) (attached as Exhibit to Declaration of Nancy Freeman Gans, dated May 16, 2005) (finding that assertion of a financial interest for the first time in an opposition brief should not be allowed because it "invited additional rounds of replies and sur-replies up to and even following the Hearing on the underlying motions").

By contrast, in Biogen Institutional Investor Group's memorandum in opposition, it claimed that London Pensions Fund/National Elevator's motion should be rejected simply because the Biogen Institutional Investor Group claimed to represent a larger financial interest. As previously explained, however, this is not the case. Rather, London Pensions Fund/National Elevator represents the largest financial interest of all *bona fide* movants.

Knowing that London Pensions Fund/National Elevator had already raised legitimate concerns about its claimed financial interest, *see* Letter from Samuel H. Rudman to counsel for the Biogen Institutional Investor Group (attached as Exhibit B to the Hess-Mahan Decl. in Further Support, previously filed on May 16, 2005), the Biogen Institutional Investor Group, on the last page of their brief, claimed that London Pensions Fund/National Elevator's motion should be stricken as untimely because it was filed 19 minutes past the deadline set forth in the Court's Electronic Case Filing Administrative Procedures. As set forth in detail herein, and as demonstrated by the Reply Declaration of Theodore M. Hess-Mahan, London Pensions Fund/National Elevator's motion was time-stamped at 6:01 p.m. EST (or 7:01 p.m. DST). In truth and in fact, it was therefore only delayed by a mere 60 seconds. Moreover, this slight delay, as explained herein, was due to an unforeseen technical error which has not prejudiced any of the parties in this case. *See e.g. In re Peregrine Sys.*, 314 B.R. 31, 40 n.12 (Bank. D. Del. 2004) ("The Notices of Electronic Filing

establish that at most the affidavits were [electronically] filed one hour and one minute late. There is

no prejudice to AA WPG and its request [to strike] is denied").

Accordingly, for these reasons and as set forth in its previous submissions, the London

Pensions Fund/National Elevator's motion should be granted in all respects.

## II.     ARGUMENT

### A.     London Pensions Fund/National Elevator Represents the Largest Financial Interest of All *Bona Fide* Movants

Despite the claims to the contrary advanced by the Biogen Institutional Investor Group in its

memorandum in opposition, London Pensions Fund/National Elevator represents the largest

financial interest of all *bona fide* movants seeking appointment as lead plaintiff here.  Indeed, the

losses of London Pensions Fund/National Elevator are approximately $3.75 million, significantly

greater than the Biogen Institutional Investor Group's losses of only $1.3779 million.  *See* London

Pensions Fund/National Elevator Opp. at 5.[1]

Moreover, despite repeated requests for additional information about the trading details of

Third Millennium and concerns about its status as a market maker and an options trader, no

information has been forthcoming.  Indeed, based on the available information that has been

provided by Third Millennium, it is impossible to determine if Third Millennium, which represents

the bulk of the Biogen Institutional Investor Group's claimed financial interest, lost ***any money at all***

on its trading of Biogen IDEC securities.  *See* London Pensions Fund/National Elevator Opp. at 8-9.

---

[1]     References to "London Pensions Fund/National Elevator Opp. at ___" are to the Memorandum In Further Support Of The Motion Of The London Pensions Fund Authority And National Elevator Industry Pension Fund For Consolidation, Appointment As Lead Plaintiff And For Approval Of Selection Of Lead And Liaison Counsel And In Opposition To The Competing Motions, dated May 16, 2005.

Accordingly, since the losses of Millennium Trading cannot properly be included as part of the Biogen Institutional Investor Group's motion at this point, and for the reasons previously set forth in London Pensions Fund/National Elevators' earlier submissions, the Biogen Institutional Investor Group does not have the largest financial interest in this litigation – London Pensions Fund/National Elevator does.

### B.     Horatio's Motion Should Be Denied

As previously explained, Horatio's failure to file any supporting data for its transactions in Biogen IDEC securities in a timely manner should disqualify it from seeking appointment as a lead plaintiff here. *See* London Pensions Fund/National Elevators Opp. at 11.

Moreover, the signatory of Horatio's certification is Jeffrey Wolfson, who appears to be the Vice Chairman of Pax Clearing Corporation (*see* Exhibit B to the Reply Declaration of Theodore Hess-Mahan), which as previously stated, is now owned by Merrill Lynch, one of Biogen IDEC's underwriters. *See* London Pensions Fund/National Elevator Opp. at 14-15 (discussing a possible conflict of interest based on Third Millennium's relationship with Pax Clearing Corporation and Merrill Lynch). This certainly raises issues about possible conflicts of interest if Mr. Wolfson and/or Third Millennium were to be appointed to represent the class here. *See id*. Additionally, since Mr. Wolfson's prior experience at Pax involved clearing for options traders, it is probable that Horatio has also engaged in options trades which have not been disclosed. *See id.* at 8-11 (discussing significance of omitted trade information in calculating a movant's financial interest). Accordingly, until such information is provided, it is impossible to determine if Horatio has any loss at all on its trades of Biogen IDEC securities.

Nevertheless, even if the Court were to include the tardy and questionable submission of Horatio, which we respectfully submit it should not, the losses of the Biogen Institutional Investor Group are still significantly smaller than the losses of London Pensions Fund/National Elevator.

C.    **London Pensions Fund/National Elevator's Motion Was in the Court Prior to the Deadline**

1.    **The Motion was Time-Stamped at 6:01 EST**

While the Biogen Institutional Investor Group claims that London Pensions Fund/National Elevator's motion was filed 19 minutes late, in reality it was only filed 60 seconds late, with supporting documentation following shortly thereafter. Indeed, counsel for London Pensions Fund/National Elevator logged onto the Court's website prior to 6:00 p.m. EST, as required by the administrative procedures.[2] This is the equivalent of walking into the Clerk of the Court's office prior to the closing deadline. After selecting the appropriate document description and uploading the pleadings, at least one minute had passed, so that the actual filing was not completed until 6:01 p.m. EST (or 7:01 p.m. DST). *See* Exhibit C the Reply Declaration of Theodore Hess-Mahan, dated June 1, 2005 (stating that "The following transaction [London Pensions Fund/National Elevator's motion] was entered on 5/2/05 at 7:01 PM" DST). Moreover, as explained below, the lateness of the filing was the result of an unforeseen technical delay caused by local counsel's computer virus protection service.[3]

---

[2]    The Administrative Procedures provide that all filings should be completed by 6:00 p.m. EST in order to be considered filed on that same day. As the Biogen Institutional Investor Group has already pointed out, as of the date of the filing of the motions in this action, the clocks had already been adjusted to Daylight Savings Time ("DST"). Accordingly, the 6:00 p.m. EST deadline is the same as 7:00 p.m. DST.

[3]    In any event, many courts, under appropriate circumstances, have considered motions seeking appointment of lead plaintiff that have been filed after the 60-day deadline has passed. *See Coopersmith v. Lehman Bros.*, 344 F. Supp. 2d 783, 790 (D. Mass. 2004) ("The PSLRA does not limit lead plaintiffs to those who have filed motions within 60 days of the publication of the notice.").

For example, in *Coopersmith*, Magistrate Judge Dein concluded that the 60-day deadline is not appropriately enforced in every case. Indeed, Magistrate Judge Dein reasoned that "the fact that the appointment of lead plaintiff is not to be made until after rulings are made on motions to

- 5 -

2.     **Any Delay in the Filing Is the Result of An Unforeseen Technical Error**

As explained in the Reply Declaration of Theodore Hess-Mahan, filed herewith, the only reason that London Pensions Fund/National Elevator's motion was filed one minute after the 6:00 p.m. EST deadline is because of a technical problem with counsel's email. Specifically, Kelly Stadelmann, a paralegal at Lerach Coughlin, proposed lead counsel for London Pensions Fund/National Elevator, emailed a copy of the motion and supporting papers to Theodore M. Hess-Mahan, proposed liaison counsel for London Pensions Fund/National Elevator, 43 minutes prior to the filing deadline. As can be seen from Exhibit A to the Reply Declaration of Theodore Hess-Mahan, anti-virus software on Mr. Hess-Mahan's computer detected a possible virus in one of the email attachments included in Ms. Stadelmann's email. As a result of this detection, Mr. Hess-Mahan was forced to go to a password-protected website to retrieve the attachments (which it turned out did not contain any viruses). This process caused the delay which resulted in the filing of the motion at 6:01 p.m. EST.

3.     **No Party Has Been Prejudiced By the Filing of London Pensions Fund/National Elevators' Motion 60 Seconds Past the Deadline**

No one has been or will be prejudiced by the 60-second delay in the filing of London Pensions Fund/National Elevators' motion for appointment of lead plaintiff. Indeed, the lone case relied on by the Biogen Institutional Investor Group to argue that "all motions for lead plaintiff must be filed within sixty days of the published notice for the first-filed action" is *In re Vaxgen Securities*

---

consolidate is further evidence that the requirement of filing a motion for appointment as lead plaintiff within 60 days of the initial notice is not sacrosanct." 344 F. Supp. 2d at 791; *see also Slutsky v. Endocare*, No. 02-8429, *slip op*. (N.D. Cal. Feb. 10, 2003) (attached as Exhibit D to the Reply Declaration of Theodore M. Hess-Mahan, dated June 1, 2005).

*Litigation*, 03-1129 JSW.  Biogen Inst. Inv. Opp. at 8.[4]  However, the reason for the deadline, as stated by the court in *Vaxgen*, "is to ensure that the lead plaintiff is appointed at the earliest possible time and to expedite the lead plaintiff process."  *Vaxgen* at \*4.  Filing of a motion **a mere sixty seconds** after the 6:00 p.m. EST deadline will certainly have no negative effect on the "expedi[ency]" of the "lead plaintiff process," especially since every party was served with a copy of the motion in a timely manner.  *See e.g. Peregrine Sys*., 314 B.R. at 40 n.12 ("The Notices of Electronic Filing establish that at most the affidavits were [electronically] filed one hour and one minute late.  There is no prejudice to AA WPG and its request [to strike] is denied").

Similarly, in *Hyperphase Technologies, LLC v. Microsoft Corporation*, 02-C-647-C, *slip op*. (W.D. Wash. July 1, 2003) (attached as Exhibit E to the Reply Declaration of Theodore Hess-Mahan, dated June 1, 2005), the court was confronted with a motion to strike after a movant, Microsoft Corp., filed a motion for summary judgment which, together with its supporting documentation, was electronically filed 4 minutes and 27 minutes and 71 minutes and 15 seconds, respectively, past the midnight filing deadline.  In agreeing to "transcend the affront and forgive the tardiness," the court denied the motion to strike and further stated that "to demonstrate the even-handedness of its magnanimity, the court will allow Hyperphase on some future occasion in this case to e-file a motion four minutes and thirty seconds late, with supporting documents to follow up to seventy-two minutes later."  *Id*. at \*2.[5]

---

[4]     References to "Biogen Inst. Inv. Opp. at ___" are to the Memorandum of Law in Further Support of the Motion of the Biogen Institutional Investor Group For Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Plaintiff's Selection of Co-Lead Counsel and Liaison Counsel and In Opposition to the Other Competing Motions, dated May 16, 2005.

[5]     Moreover, the "rule" imposing the 6:00 p.m. EDT deadline is not a rule but rather an "administrative procedure."  *See e.g. Endocare*, No. 02-8429 at \*17 (holding that a movant's filing for lead plaintiff which failed to comply with the formal requirements of the local rules was still

Moreover, a careful reading of the *Vaxgen* opinion lends further support to the argument previously advanced in London Pensions Fund/National Elevator's motion that the Biogen Institutional Investor Group's belated filing of Horatio's certification is improper.  *See* London Pensions Fund/National Elevator Opp. at 11.  Indeed, the court in *Vaxgen* specifically states that it is **improper to assert a financial interest for the first time** after the sixty day deadline had passed:

> "The plain language of the statute precludes consideration of a financial interest asserted for the first time in a complaint, or any other pleading, for that matter, filed after the sixty (60) day window has closed."

*Id., quoting In re Telxon Corp. Sec. Litig*., 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999).  *See also Endocare,* No. 02-8429 at *16 ("In other cases barring the motions, the district court reasoned that the PSLRA imposes strict time requirements to ensure that the lead plaintiff is appointed at the earliest possible time and to expedite the lead plaintiff process . . . .  Here, consideration of the Massachusetts Group's motion does not hinder the lead plaintiff process; all motions are being heard at the same time").

While no one has been prejudiced in any way by London Pensions Fund/National Elevator's motion being filed one minute late, not the same can be said for the certification and loss chart which was filed by Horatio **more than 2 weeks after the 60-day deadline had passed**.  Indeed, by filing its certification and underlying transactional data for the first time with the submission of its opposition memorandum, Horatio has "asserted" its financial interest "for the first time . . . after the sixty (60) day window has closed."  *Id*.  Such conduct is the real and only problem with a filing after the 60-

considered to be timely filed).  Indeed, the Court here has already allowed the motions of Louisiana School Employees' Retirement System and Municipal Police Employees' Retirement System of Louisiana and Rochelle Lobel, which failed to comply with a local rule at the time they were filed, to be re-filed past the 60-day deadline.  *See* Docket Entry 5/3/05 (denying motions without prejudice because they "failed to comply with Local Rule 7.1"); and docket entry 26 on 5/13/05 (previously-denied motion was re-filed).

day deadline and is what can delay the lead plaintiff from being "appointed at the earliest possible time." *Id*. Indeed, the arguments raised herein against Horatio were raised for the first time after counsel had an opportunity to review Horatio's certification, which had only recently been filed as part of the Biogen Institutional Investor Group's opposition. Horatio will now likely seek leave to respond to the arguments that were raised against it, further delaying any resolution of these motions. For this reason alone, its motion should be denied. *See Vaxgen*, C 03-1129 JSW, *slip op*. at *7-*8 (finding that assertion of a financial interest for the first time in an opposition brief should not be allowed because it "invited additional rounds of replies and sur-replies up to and even following the Hearing on the underlying motions").

## III.   CONCLUSION

For all the foregoing reasons, London Pensions Fund/National Elevator respectfully requests that the Court: (i) appoint them as Lead Plaintiffs in the related Actions; (ii) approve their selection of Lerach Coughlin Stoia Geller Rudman & Robbins LLP as Lead Counsel and Shapiro Haber & Urmy LLP as Liaison Counsel; and (iii) grant such other relief as the Court may deem just and proper.

DATED: June 1, 2005                       SHAPIRO HABER & URMY LLP


                                          _____/s/  Theodore Hess-Mahan_____
                                          THEODORE M. HESS-MAHAN

                                          THEODORE M. HESS-MAHAN
                                          53 State Street
                                          Boston, MA  02109
                                          Telephone:  617/439-3939
                                          617/439-0134 (fax)

                                          [Proposed] Liaison Counsel

- 9 -

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA JR.
200 Broadhollow Road, Suite 406
Melville, NY 11747
Telephone:  631/367-7100
631/367-1173 (fax)

LERACH COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
PATRICK W. DANIELS
401 B Street, Suite 1600
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

I:\Biogen\LP Motion\LP Reply Brief.doc

UNITED STATES DISTRICT COURT

DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHARLES BROWN, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 05-10400-RCL |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| BIOGEN IDEC INC., et al., | ) ) | |
| Defendants. | ) ) ) | |
| CARY GRILL, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | Civil Action No. 05-10453-RCL |
| | ) | <u>CLASS ACTION</u> |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| BIOGEN IDEC INC., et al., | ) ) | |
| Defendants. | ) ) ) | |

[Caption continued on following page.]

REPLY DECLARATION OF THEODORE M. HESS-MAHAN IN FURTHER
SUPPORT OF THE REPLY MEMORANDUM IN RESPONSE TO BIOGEN
INSTITUTIONAL INVESTOR GROUP'S MEMORANDUM IN OPPOSITION TO THEIR
MOTION FOR APPOINTMENT AS LEAD PLAINTIFFS AND FOR APPROVAL OF THEIR
SELECTION OF LEAD AND LIAISON COUNSEL

ROCHELLE LOBEL, Individually and On          )    Civil Action No. 05-10801-RCL
Behalf of All Others Similarly Situated,     )
                                             )    <u>CLASS ACTION</u>
                            Plaintiff,       )
                                             )
             vs.                             )
                                             )
BIOGEN IDEC INC., et al.,                    )
                                             )
                            Defendants.      )
                                             )
_____        )

Theodore M. Hess-Mahan, declares, under penalty of perjury:

1.      I am an associate at Shapiro Haber & Urmy LLP ("Shapiro Haber"), proposed liaison counsel for London Pensions Fund/ National Elevators.  I submit this Reply Declaration in further support of London Pensions Fund/ National Elevators' response to Biogen Institutional Investor Group's memorandum in opposition to their motion for appointment as lead plaintiffs and for approval of their selection of lead and liaison counsel.

2.      On May 2, 2005, at approximately 6:17 p.m. Eastern Daylight Time ["EDT"] (i.e., 5:17 p.m. Eastern Standard Time ["EST"]), I received an email from Shapiro Haber's virus protection service regarding an email from Kelly Stadelmann, a paralegal at Lerach Coughlin Stoia Geller Rudman & Robbins LLP, proposed lead counsel for London Pensions Fund/National Elevator, which contained a copy of the documents to be filed for London Pensions Fund/National Elevator's motion.  The email from the virus protection service alerted me that it had detected a possible virus in one of the attachments included in Ms. Stadelmann's email.  Following receipt of this message (a true and accurate copy of which is attached hereto as Exhibit A), I was required to go to a password-protected website to retrieve the attachments (which it turned out did not contain any viruses).  This process caused the delay which resulted in the filing of the motion at 7:01 p.m. EDT (6:01 p.m. EST).

3.      Attached hereto as Exhibit B is a true and accurate copy of the printout of the webpage http://www.sff-law.com/why_sff.html, which describes Jeffrey Wolfson as the Vice Chairman of Pax Clearing Corporation.

4.      Attached hereto as Exhibit C is a true and accurate copy of an email confirming the filing of London Pensions Fund/National Elevators' motion for appointment as lead plaintiff at 6:01

p.m. EST and 7:01 EDT  (stating that "The following transaction [London Pensions Fund/National Elevator's motion] was entered on 5/2/05 at 7:01 PM").

      5.      Attached hereto as Exhibit D is a true and accurate copy of the slip opinion in *Slutsky v. Endocare*, No. 02-8429, *slip op*. (N.D. Cal. Feb. 10, 2003).

      6.      Attached hereto as Exhibit E is a true and accurate copy of the slip opinion in *Hyperphase Technologies, LLC v. Microsoft Corporation*, 02-C-647-C, *slip op*. (W.D. Wash. July 1, 2003).

DATED:  June 1, 2005

 

                                   /S/ Theodore M. Hess-Mahan
                                   THEODORE M. HESS-MAHAN

**Ted Hess-Mahan**

| | |
|---|---|
| **From:** | VP Solutions Inc Support [vince@vpsi.com] |
| **Sent:** | Monday, May 02, 2005 6:17 PM |
| **To:** | Ted Hess-Mahan |
| **Subject:** | VP Solutions Inc Detected Potential Virus |

Dear thess-mahan@shulaw.com,

VP Solutions Inc's virus protection service has detected a potential
email virus. This suspicious message has been quarantined in
your VP Solutions Inc Message Center:

    From: "Kelly Stadelmann" <kstadelmann@lerachlaw.com>
    Subject: RE: Biogen
    Virus: AUTH-HTML/ObjData@expl

You can read the message without infecting your computer.
Click on the link to access your VP Solutions Inc Message Center:

    http://login.postini.com/exec/login?email=thess-mahan@shulaw.com

Thank You!
VP Solutions Inc





## We value the trust our clients bestow on us.





| Sheldon Baskin | Andrew D. Bunta, MD | Norm Katz |
|---|---|---|
| **Sheldon Baskin and Partners, Real Estate Investment & Development** | **Vice Chairman, Dept. of Orthopaedic Surgery, Northwestern Medical Faculty Fdtn.** | **President Everest Partners LLC** |
| Our association began more than 19 years ago. We have worked together extensively and intensively on the most complex matters. Their creativity and enthusiasm are unsurpassed. They have been responsive and effective under all circumstances and they have always been fair with us. | At a time of significant change in my professional life, Sugar, Friedberg & Felsenthal provided thoughtful and wise counsel on multiple issues. Their personal concern, legal expertise and negotiating skills resulted in a truly seamless transition for me. | We have worked together for almost eight years since we started Everest Partners. I thought it was time to let you know how instrumental you have been in the success of our business. In thinking about this letter I took an inventory of the number of lawyers from your firm I have used in various transactions and believe it or not… *Continued…* |






| Ulrich Meyer | Kurt Walsh & Renee Betzelos | Charles M. Friend |
|---|---|---|
| **Chairman Bubbleland Inc.** | **ProTen Realty** | **President C.P.A., CF & Associates** |
| SFF represented our prior business and helped us in a very successful sale. They helped us in all the formative stages of our new business including financing. We have worked with them for more than 17 years now and never make a major move without consulting them. | Sugar, Friedberg & Felsenthal helped us launch ProTen Realty Group. They have given us outstanding advice. They continue to protect our interests and assist us with growth. They are the best of the best! | Sugar, Friedberg & Felsenthal provides sound tax advice that harmonizes with my business objectives. |





| Gary A. Rosenberg | Gregory Kay | Jeffrey Wolfson |
|---|---|---|

| President and CEO Canterbury Development Corporation | CEO of TL Galleries, Inc. Lightology LLC | Vice Chairman, Pax Clearing Corporation |
|---|---|---|
| Thank you for 22 years of great service. The value of your service immeasurably exceeds its cost with your well-grounded solutions and creativity. | We have relied on SFF over the years to analyze our issues on a strict cost/benefit basis. They have counseled us in reaching our business goals, and then helped us reach those goals with personal attention like no other law firm. | SFF is an outstanding law firm. They've always been there when I've needed them. They have been totally dedicated to my needs and those of my business. The firm understands both business strategies and personal issues. They've accommodated all of my legal needs, from the most simple partnership and real estate transactions to the sale of complex businesses. |
|  |  |  |
| **Harold E. Foreman Jr.** | **Gagerman Family** | **W. P. O'Brien Howard K. Chapman R. K. Weil** |
| Private Investor | Jerome Gagerman | H. Kramer & Company |
| I have used Sugar, Friedberg & Felsenthal as my personal attorneys since they opened their doors over 20 years ago. I have the highest regard for them both as lawyers and as persons. | My family has trusted our personal affairs to Sugar, Friedberg & Felsenthal for three generations. We have relied on them for the most complicated and challenging legal matters, which they have always handled with ease, efficiency and timelessness. We look forward to SFF counseling a fourth generation as well. | At SFF it's the people. Law is law; some understand better than others; it's the people. When legal questions interrupt your daily routine and you need reliable and insightful thought, it's the people. We have been associated with SFF long enough to know we want to stay, it's the people. |

### Additional Comments

| Les Rosenthal | | |
|---|---|---|
| **Managing Member Rosenthal Collins Group** | | |

I have used Sugar, Friedberg & Felsenthal for my tax and estate planning matters for more than 20 years. They are bright, creative and attentive. Above all else, they really understand the law and my needs as a client.

| Estelle Blaseos | | |
|---|---|---|
| **Board Member and Secretary/Treasurer Cancer Comfort Foundation** | | |

One of the dreams of my brother was to establish a foundation to help alleviate the anxiety, suffering and isolation that cancer patients experience. My brother was an extraordinary businessman who came to rely on Sugar, Friedberg & Felsenthal for counsel during his successful career in the food manufacturing business. When my brother died, SFF helped us realize my brother's dream by doing the legal work to establish the Cancer Comfort Foundation. We appreciate the attention, care and proficiency which SFF showed in helping us organize and launch the Cancer Comfort Foundation.

| James R. Eldridge | | |
|---|---|---|
| **Chairman and CEO The Allant Group** | | |

I was reflecting recently on our long-time association, and realized that I had never formally acknowledged the contribution you and your colleagues have made to the success story that is The Allant Group. So let me make up for that oversight by letting you know how much I value the counsel your firm has provided over these many years. The expertise of your firm has allowed us to successfully traverse some very delicate legal straits in the past, and enabled us to avoid some of those snares altogether. As the owner of a firm that has built a reputation as a premier service provider in our industry, I recognize responsive service when I'm the recipient, and Sugar, Friedberg and Felsenthal has always worked quickly and competently to address our legal needs.

Please pass along my thanks to your colleagues. They have played no small role in my business affairs, and I am greatly appreciative of their efforts on Allant's behalf.

| **Midwest Young Artists** | | |
| --- | --- | --- |
| **Dr. Allan W. Dennis** **Executive Director** | | |

We are deeply grateful to Sugar, Friedberg & Felsenthal for all they have done to make the programs of the Midwest Young Artists the Midwest leading youth music program, a success. We relied on SFF to work with the U.S. Department of Education, the Department of Defense, the builder, and local municipalities, in order to acquire and rehabilitate the real estate that became our rehearsal facility. It was a long and tedious six year process which could never have been successfully accomplished without the legal help of SFF. We came to admire the negotiating skills, as well as the litigation experience of the law firm. As a result of their accomplishments, we now have a home which accommodates more than 500 students, affording us to reach out to many more youngsters, and presenting a musical opportunity to youngsters like none they can get elsewhere.

| **Philip L. Kianka** | | |
| --- | --- | --- |
| **Vice President** **Lexington Corporate** **Properties Trust** | | |

Sugar, Friedberg & Felsenthal represented us in our Kmart bankruptcy lease claims concerning a warehouse/distribution property held in our portfolio. Their commitment to providing us with the best possible advice regarding our claim was one of the best investments we have ever secured. The attention and promptness to details plus the understanding of ownership's concerns involving the matter were absolutely outstanding.  We could not have been more pleased with their efforts.

| **Norm Katz** *(Cont.)* | | |
| --- | --- | --- |
| **President** **Everest Partners LLC** | | |

almost half the firm has played key roles in our complex deals. Whether the services have been real estate, tax, corporate or litigation, each member of your firm adds unique capacities and knowledge that have served me and my partners very well.

Knowing that you treated our transactions with the intensity and connectedness of an owner and that the deal's success was viewed by you as your responsibility always gave me the confidence that solutions could and would be found to some very thorny transaction issues. Lenders have great confidence in the competence of the firm and that has meant a lot in the heat of battle. There is no way to quantify the value of your services but I hope the fact that we continue to use you exclusively is an indication of the value we place on the relationship.

*Back to top…*

| Top | Disclaimer | Copyright 2003-05 Sugar, Friedberg & Felsenthal LLP

| Design & Maintenance by: Webcr8r.com |

**Ted Hess-Mahan**

| | |
|---|---|
| **From:** | ECFnotice@mad.uscourts.gov |
| **Sent:** | Monday, May 02, 2005 7:02 PM |
| **To:** | CourtCopy@mad.uscourts.gov |
| **Subject:** | Activity in Case 1:05-cv-10400-RCL Brown v. Biogen Idec Inc. et al "Motion to Consolidate Cases" |

```
***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To
avoid later charges, download a copy of each document during this first viewing.
<!-- rcsid='\$Header: /ecf/district/html/TextHead,v 3.1 2003-04-25 07:56:43-04 loy Exp
\$' -->
United States District Court
District of Massachusetts

Notice of Electronic Filing
The following transaction was entered on 5/2/2005 at 7:01 PM EDT and filed on 5/2/2005

#ident 'rcsid=\$Header: /ecf/district/server/TextBody,v 3.1 2003-04-25 07:52:35-04 loy Exp
\$'
Case Name: Brown v. Biogen Idec Inc. et al
Case Number: 1:05-cv-10400 https://ecf.mad.uscourts.gov/cgi-bin/DktRpt.pl?96779

Document Number: 22
Copy the URL address from the line below into the location bar of your Web browser to view
the document: https://ecf.mad.uscourts.gov/cgi-bin/show_case_doc?22,96779,,81407821,

Docket Text:
   MOTION to Consolidate Cases <I> and for Appointment as Lead Plaintiffs and for Approval
of Selection of Lead and Liaison Counsel</I> by London Pensions Fund Authority, National
Elevator Industry Pension Fund. (Attachments: # (1) Text of Proposed Order Proposed Order)
(Hess-Mahan, Theodore)

The following document(s) are associated with this transaction:
Document description: Main Document
 Original filename: yes
 Electronic document Stamp:
 [STAMP dcecfStamp_ID=1029851931 [Date=5/2/2005] [FileNumber=957536-0]
[805ead32e2319371e8135aeaa26110a8f009186ca13ed5bad0ff0f725b1100f2f35fc7cd336e1de5e01bbc011
3172a827a59195da862f53ff2ecf2e97131f5eb]]
Document description: Text of Proposed Order Proposed Order
 Original filename: yes
 Electronic document Stamp:
 [STAMP dcecfStamp_ID=1029851931 [Date=5/2/2005] [FileNumber=957536-1]
[b8155db65cfc2b311d19e6a30e43a5e69dfc554eccc034dc5b1c470e9ee8e559e5b20233666076e2c344c3d9a
fff98780d64320caadaf23191c2f88e7e30ae90]]


<!-- rcsid='\$Header: /ecf/district/server/TextAtyList,v 3.2 2003-06-02 17:37:56-04 bibeau
Exp \$' -->
1:05-cv-10400 Notice will be electronically mailed to:
```

| | |
|---|---|
| Jeffrey C Block | jblock@bermanesq.com |
| Douglas M. Brooks | dmbrooks@gilmanpastor.com |
| James R. Carroll<br>tholden@skadden.com | jcarroll@skadden.com, |
| Nancy F. Gans | nfgans@aol.com |
| Theodore M. Hess-Mahan | ted@shulaw.com |
| David Pastor | dpastor@gilmanpastor.com, |

Jhiggins@gilmanpastor.com

1:05-cv-10400 Notice will not be electronically mailed to:



1
2
3
4
5

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

FILED
CLERK, U.S. DISTRICT COURT

FEB 10 2003

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

SCANNED

Priority
Send
Enter
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only

6
7
8    UNITED STATES DISTRICT COURT
9    CENTRAL DISTRICT OF CALIFORNIA
10
11   GARY M. SLUTSKY and STACEY G.
     SLUTSKY, On Behalf of Themselves
12   and All Others Similarly Situated,
13              Plaintiffs,
14   vs.
15
16   ENDOCARE, INC., PAUL MIKUS and
     JOHN V. CRACCHIOLO,
17
18              Defendants.
19

CASE NO. CV 02-8429 DT (CTx)

ORDER:
(1) **GRANTING** PLAINTIFFS
MASSACHUSETTS STATE FUNDS AND
BILL AND JAYNI CROW'S MOTION TO BE
APPOINTED AS LEAD PLAINTIFF AND TO
APPROVE LEAD PLAINTIFFS' CHOICE OF
COUNSEL AND TO CONSOLIDATE
RELATED ACTIONS
(2) **DENYING** PLAINTIFF THE GENERAL
RETIREMENT SYSTEM OF THE CITY OF
DETROIT'S MOTION TO BE APPOINTED
LEAD PLAINTIFF AND TO APPROVE
LEAD PLAINTIFF'S CHOICE OF COUNSEL
AND **GRANTING** MOTION TO
CONSOLIDATE RELATED ACTIONS
(3) **DENYING** PLAINTIFFS OSCAR
GONZALEZ AND PRESIDENTS TRUST
LLC'S MOTION TO BE APPOINTED AS
LEAD PLAINTIFFS AND FOR APPROVAL
OF THEIR SELECTION OF LEAD
COUNSEL AND **GRANTING** MOTION TO
CONSOLIDATE RELATED CASES
(4) **DENYING** PLAINTIFF JERRY
WRIGHT'S MOTION FOR APPOINTMENT
AS LEAD PLAINTIFF AND APPROVAL OF
HIS SELECTION OF COUNSEL AND
**GRANTING** MOTION FOR
CONSOLIDATION OF RELATED CASES
(5) **GRANTING** PLAINTIFFS BARBARA
AND ROBERT BEUERLEIN'S MOTION TO
CONSOLIDATE RELATED ACTIONS

ENTERED
CLERK, U.S. DISTRICT COURT
FEB 11 2003
CENTRAL DISTRICT OF CALIFORNIA
BY            DEPUTY

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d)

CONSOLIDATED WITH: CV02-8455,
CV 02-8905-DT, CV 02-9669-DT,
CV 03-499-DT, CV 03-598-DT,
AND CV 03-822-DT

# I.  Background

## A.  Factual Summary

Plaintiffs Gary M. Slutsky and Stacey G. Slutsky, on behalf of themselves and all others similarly situated ("Plaintiffs"), bring this action against Defendants Endocare, Inc ("Endocare"), Paul Mikus ("Mikus"), and John Cracchiolo ("Cracchiolo")(collectively "Defendants") for violations of sections 10(b) and 20(a) of the Securities and Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder.  (See Complaint, ¶ 5.)  They bring this action on behalf of investors who purchased Endocare Securities on the open market between October 23, 2001 and October 31, 2002 ("Class Period").

The following facts are alleged in the Complaint:

Endocare develops, manufactures, and markets cryosurgical and stent technological devices used in the treatment of prostate cancer and benign prostate hyperplasia.  (See id. at ¶ 7.)  Mikus was Chairman, President and CEO of Endocare.  (See id. at ¶ 8.)  Cracchiolo was CFO/COO of Endocare.  (See id. at ¶ 9.)  Mikus and Cracchiolo are the "Individual Defendants" and are allegedly liable for the false statements pleaded in ¶¶ 12-17 of the Complaint.

During the Class Period, Defendants caused Endocare's shares to trade at artificially inflated levels through the issuance of false and misleading financial statements.  (See id. at ¶ 2.)  As a result of the artificial inflation of Endocare's shares, Endocare was able to complete a public offering of 4 million shares, raising proceeds of $68 million on November 16, 2001.  (See id.)

The false and misleading statements during the Class Period included press releases on October 23, 2001, February 19, 2002, April 23, 2002, July 24, 2002, October 24, 2002, and October 30, 2002.  (See id. at ¶¶ 12-17.)

SCANNED

1            On October 23, 2001, Endocare issued a press release entitled,

2 "Endocare Reports Record Third Quarter Revenues Up 139 Percent; Net Loss Cut

3 by 55 Percent." (See id. at ¶ 12.)

4            On February 19, 2002, Endocare issued a press release entitled

5 "Endocare Reports Record Fourth Quarter; Year End Results; 106 Percent Growth

6 in Procedures for Year; Quarter revenues Up 156 Percent; Net Loss Cut by 92

7 Percent as Company Nears Profitability." (See id. at ¶ 13.)

8            On April 23, 2002, Endocare issued a press release entitled,

9 "Endocare Reports·Results for the First Quarter of 2002; Record Growth, First

10 Profitable Quarter; Revenues Up 182 Percent from Same Period Last Year,

11 Procedures Grow·220 Percent Year-Over-Year." (See id. at ¶ 14.)

12       On July 24, 2002, Endocare issued a press release entitled, "Endocare

13 Reports Second·Quarter, Six Months Results; Revenues Up 200 Percent From

14 Same Period Last Year, Disposable Revenues Grow 250 Percent Year-Over-

15 Year." (See id. at ¶ 15.)

16       On October 24, 2002, Endocare issued a press release entitled,

17 "Endocare Comments on Third Quarter 2002 Results; Announces Date of Release

18 and Conference Call." (See id. at ¶ 16.)

19            On October 30, 2002, Endocare issued a press release entitled,

20 "Endocare Will Delay Release of Third Quarter Results Until Completion of Its

21 Review Process." (See id. at ¶ 17.)

22            In order to inflate the price of Endocare's stock and complete the $68

23 million secondary offering, Defendants caused Endocare to falsely report its

24 results for Q3 2001 to Q2 2002 through improper revenue recognition. (See id. at

25 ¶ 18.) Endocare will have to admit that it inappropriately recorded transactions

26 included in its Q3 2001 to Q2 2002 results, and will have to restate those results to

27

28                                3

SCANNED

1    remove millions in improperly recorded revenues as the Q3 2001 to Q2 2002

2    financial statements were not a fair presentation fo Endocare's results and were

3    presented in violation of Generally Accepted Accounting Principles ("GAAP")

4    and SEC rules. (See id. at ¶ 20.)

5         Financial statements filed with the SEC which are not prepared in

6    compliance with GAAP are presumed to be misleading and inaccurate, despite

7    footnote or other disclosure. (See id. at ¶ 21.) In Endocare's 2001 Form 10-K, it

8    represented that it recognized revenue in accordance with GAAP. (See id. at ¶

9    22.) During the Class Period, Endocare improperly recognized revenue in

10    contravention of GAAP. (See id. at ¶ 24.)

11        On October 30, 2002, Endocare announced its Q3 results would be

12    delayed when, in actuality, Endocare will need to restate its Q3 2001 to Q2 2002

13    results to eliminate millions in revenue that had been improperly recorded

14    revenues and increase its past-stated costs. (See id. at ¶ 25.) The fact that

15    Endocare will restate its financial statements for those quarters is an admission

16    that the financial statements originally issued were false and that the overstatement

17    of revenues and income was material. (See id. at ¶ 26.) The type of restatement

18    announced by Endocare was to correct for material errors in its previously issued

19    financial statements. (See id.) GAAP provides that financial statements should

20    only be restated in limited circumstances, i.e. when there is a change in the

21    reporting entity, when there is a change in accounting principle or to correct an

22    error in previously issued financial statements. (See id. at ¶ 26.) As Endocare's

23    change in reporting is not due to a change in reporting entity or a change in

24    accounting principle, but was due to errors in previously issued financial

25    statements, it is an admission by Endocare that its previously issued financial

26    results and its public statements about those results were false. (See id.)

27

28                          4

1    During the class period, Defendants disseminated or approved the

2  false statements specified above, which they knew or recklessly disregarded were

3  materially false and misleading in that they contained material misrepresentations

4  and failed to disclose material facts necessary in order to make the statements

5  made not misleading in light of the circumstances under which they were made.

6  (See id. at ¶ 30.)  Defendants violated §10(b) of the 1934 Act and Rule 10b-5 in

7  that they:

8       (a)    employed devices, schemes, and artifices to defraud;

9       (b)    made untrue statements of material facts or omitted to state material

10              facts necessary in order to make the statements made, in light of the

11              circumstances under which they were made, not misleading; or

12       (c)    engaged in acts, practices, and a course of business that operated as a

13              fraud or deceit upon plaintiffs and other similarly situated in

14              connection with their purchases of Endocare publicly traded

15              securities during the Class Period.

16  (See id. at ¶ 31.)

17    The executive officers of Endocare prepared or were responsible for

18  preparing, Endocare's press releases and SEC filings.  (See id. at ¶ 35.)  The

19  Individual Defendants controlled other employees of Endocare.  (See id.)

20  Endocare controlled the Individual Defendants and each of its officers, executives,

21  and all other employees.  (See id.)  By reason of such conduct, Defendants are

22  liable pursuant to § 20(a) of the 1934 Act.  (See id.)

23    Plaintiffs bring this action as a class action.  The members of the

24  Class are so numerous that joinder of all members is impracticable.  (See id. at ¶

25  37.)  During the Class Period, Endocare had more than 24 million shares of stock

26  outstanding, owned by thousands of persons.  (See id.)  There is a well defined

27

28                                          5

1  On January 2, 2003, Plaintiff Jerry Wright ("Wright") filed a Motion
2  for Appointment as Lead Plaintiff, Approval of His Selection of Counsel, and
3  Consolidation of Related Cases.  This Motion is presently before the Court.

4  On January 2, 2003, Oscar Gonzalez ("Gonzalez") and Presidents
5  Trust LLC ("Presidents Trust") (collectively the "Presidents Trust Group"), filed a
6  Motion to Consolidate Related Cases, Be Appointed as Lead Plaintiffs, and For
7  Approval of Their Selection of Lead Counsel. This Motion is presently before the
8  Court.

9  On January 2, 2003, the General Retirement System of the City of
10  Detroit ("Detroit General") filed a Motion to Consolidate all Related Actions, to
11  be Appointed Lead Plaintiff Pursuant to § 21D(a)(3)(B) of the Securities
12  Exchange Act of 1934, and to Approve Lead Plaintiff's Choice of Counsel.  This
13  Motion is presently before the Court.

14  On January 2, 2003 Barbara D. and Robert P. Beuerlein (the
15  "Beuerleins") filed a Motion to Consolidate Related Actions for All Purposes and
16  a Motion for Appointment to Lead Plaintiff and for Appointment of Lead Counsel
17  Pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934.  The Motion
18  to Consolidate all Related Actions is presently before the Court.

19  On January 7, 2003, the Beuerleins filed a Notice of Withdrawal of its
20  Motion for Appointment to Lead Plaintiff and for Appointment of Lead Counsel
21  Pursuant to § 21D(a)(3)(B) of the Securities Exchange Act of 1934.  They claim
22  that withdrawal was appropriate because the Massachusetts Group has the largest
23  financial interest of all movants seeking appointment to lead plaintiff.

24  On January 7, 2003, Massachusetts State Funds and Bill and Jayni
25  Crow (the "Massachusetts Group") filed a Motion to Appoint them as Lead
26  Plaintiff and to Approve Lead Plaintiffs' Choice of Counsel and a Motion to

27
28  7

1 │ Consolidate Related Actions and Preserve Documents. These Motions are

2 │ presently before the Court.

3 │        On January 27, Detroit General filed an Opposition to Motions by

4 │ Other Plaintiffs for Appointment as Lead Plaintiff.

5 │        On January 27, 2003, the Massachusetts Group filed an Opposition to

6 │ Competing Motions for Lead Plaintiff.

7 │        On January 27, 2003 Defendants filed a Response and Opposition to

8 │ Motions for Appointment of Lead Plaintiff, Selection of Lead Plaintiffs' Counsel,

9 │ Consolidation, and Document Preservation Order.

10 │        On February 6, 2003, less than 2 court days before the hearing on

11 │ these motions, counsel for Detroit General notified this Court that it would be

12 │ filing a notice of withdrawal of its motions. At that time, this Order had already

13 │ been prepared based on the completed briefing schedule. This Court expended

14 │ considerable time and expended judicial resources in fully analyzing and

15 │ addressing the arguments raised by Detroit General, as it was one of only two

16 │ moving parties which filed oppositions. Detroit General's belated withdrawal

17 │ undermines the credibility of its position taken in its briefs and calls into question

18 │ the veracity of its counsel and simply confirms this Court's determination that

19 │ Detroit General should not be appointed the most adequate lead plaintiff with

20 │ approval of its choice of counsel.

21 │ **II.**   **Motions to Consolidate Related Cases**

22 │     **A.**   **Standard**

23 │        Consolidation is controlled by Rule 42(a) of the Federal Rules of

24 │ Civil Procedure[1] and is proper when the actions involve common questions of law

25 │

26 │ _____

27 │    [1]Rule 42(a) permits the consolidation of separate actions:
           When actions involving a common question of law or fact are

28 │

1   community of interest in the questions of law and fact involved in this case. (See

2   id. at ¶ 38.) Questions of law and fact common to members of the Class which

3   predominate over questions which may affect individual Class members include:

4       (a)    whether the 1934 Act was violated by Defendants;

5       (b)    whether the Defendants omitted and/ or misrepresented material facts;

6       (c)    whether Defendants' statements omitted material facts necessary to

7             make the statements made, in light of the circumstances under which

8             they were made, not misleading; and

9       (d)    whether Defendants knew or recklessly disregarded that their

10            statements were false and misleading.

11  (See id. at ¶ 38.)

12          Plaintiffs and the class have suffered damages in that, in reliance on

13  the integrity of the market, they paid artificially inflated prices for Endocare

14  publicly traded securities. (See id. at ¶ 32.) Plaintiffs and the class would not

15  have purchased Endocare publicly traded securities at the prices they paid, or at

16  all, if they had been aware that the market prices had been artificially and falsely

17  inflated by the Defendants' misleading statements. (See id.) As a direct and

18  proximate cause of the Defendants' wrongful conduct, Plaintiffs and the class have

19  suffered damages in connection with their purchases of Endocare publicly traded

20  securities during the Class Period. (See id. at ¶ 33.)

21          Plaintiffs pray for judgment as follows: declaring this action to be a

22  proper class action; awarding damages, including interest; and such other relief as

23  the Court may deem proper. (See id. at p. 14.)

24    **B.**    **Procedural History**

25          On November 11, 2002, Plaintiffs filed a Class Action Complaint for

26  Violation of the Federal Securities Laws and a Demand for Jury Trial.

27

28                        6

SCANNED

1  and fact.  See <u>Yousefi v. Lockheed Martin Corp.</u>, 70 F. Supp. 2d 1061, 1064 (C.D.

2  Cal. 1999); <u>Aronson v. McKesson HBOC, Inc.</u>, 79 F. Supp. 1146, 1150 (N.D. Cal.

3  1999); <u>In re Equity Funding Corp. of Am. Sec. Litig.</u>, 416 F. Supp. 161, 175 (C.D.

4  Cal. 1976).  The Court has broad discretion under Rule 42(a) to consolidate cases

5  pending within its District.  <u>Investors Research Co. v. United States District Court</u>,

6  877 F.2d 777 (9th Cir. 1989).  Class action shareholder suits are ideal for

7  consolidation because expediting the proceedings reduces duplication and

8  minimized the expenditure of resources.  See <u>In re Equity Funding</u>, 416 F. Supp at

9  176.

10      **B.**    <u>**Analysis**</u>

11           Seven cases have been filed alleging claims for violations of sections

12  10(b) and 20(a) of the Exchange Act, and Rule 10b-5 promulgated thereunder, on

13  behalf of investors who purchased Endocare Securities.  The first case, <u>Slutsky</u>,

14  was assigned to this Court, and the remaining cases have been transferred to this

15  Court as related cases.  They are as follows[2]:

16  (1) <u>Slutsky v. Endocare, Inc. et al.</u>        Case No. CV 02-8429 DT

17  (2) <u>Ferrari v. Endocare, Inc. et al.</u>        Case No. CV 02-8455 DT

18  (3) <u>Bradford v. Endocare, Inc. et al.</u>       Case No. CV 02-8905 DT

19  (4) <u>Kuper v. Endocare, Inc. et al.</u>         Case No. CV 02-9669 DT

20  _____

21           pending before the court, it may order a joint hearing or trial of
         any or all the matters in issue in the actions; it may order all the
22         actions consolidated; and it may make such orders concerning
         proceedings therein as may tend to avoid unnecessary costs or
23         delay.
24

25       [2] Four of these cases - <u>Desert Orchid Partners</u>, <u>Berman</u>, <u>Kuper</u> and <u>Bolton</u>-
26  were transferred from the Southern District and received new case numbers upon
27  transfer.

28                                    9

SCANNED

1 | (5) <u>Desert Orchid Partners v. Endocare, Inc. et al.</u>   Case No. CV 03-499 DT

2 | (6) <u>Berman v. Endocare, Inc. et al.</u>              Case No. CV 03-598 DT

3 | (7) <u>Bolton v. Mikus, et al.</u>                      Case No. CV 03-922 DT

4 |         It is undisputed that these cases involve the same subject matter and

5 | present substantially the same legal issues.  Questions of law and fact are

6 | undoubtedly common in each case.  Indeed, each case alleges the same violation

7 | of the Exchange Act against Endocare and certain officers and/or directors.[3]  As

8 | such, consolidation will promote efficiency, simplify pretrial matters and reduce

9 | confusion.  Therefore, this Court finds that consolidation of these related cases is

10 | warranted and **grants** all moving plaintiffs' motions to consolidate.

11 |         The above-referenced cases will proceed under the lowest number

12 | case, which is <u>Slutsky v. Endocare, et al.</u>, Case No. CV 02-8429 DT.  The caption

13 | of each document shall maintain the <u>Slutsky</u> caption and should provide:

14 |       Case No. CV 02-8429 DT (CTX)

15 |       Consolidated with: CV 02-8455 DT, CV 02-8905 DT, CV 02-9669 DT, CV

16 |       03-499 DT, CV 03-598 DT, CV 03-922 DT[4]

17 |

18 |

19 |

20 |

21 |

22 |

23 | ————————————————

24 |        [3] All of the actions except the <u>Bolton</u> action allege the same Class Period.

25 |        [4] It is not necessary for the filed documents to specify which case it "relates

26 | to", because, as explained below, an amended consolidated class action complaint
   | will be filed and every document thereafter will be filed under the lowest case

27 | number.

28 |                                         10

**III.    Motions for Appointment of Lead Plaintiff and Approval of Lead Counsel**

    **A.    Standard**

        **1.    Appointment of Lead Plaintiff**

The procedure for appointing lead plaintiff in a private action arising under the Exchange Act and brought as a plaintiff class action is established in the Private Securities Litigation Reform Act of 1995 ("PSLRA"). See 15 U.S.C. §§ 78u-4(a)(1), 78u-4(a)(3)(B)(ii). The plaintiff filing the initial action must publish notice informing class members of their right to file a motion for appointment to lead plaintiff within 20 days of filing the original complaint. See id. at § 78u-4(a)(3)(A)(i). Within 60 days of the publication of the notice, any person who is a member of the proposed class may apply to the Court for appointment to lead plaintiff. See id. at §§ 78u-4(a)(3)(A), 78u-4(a)(3)(B). The court shall consider any motions brought by plaintiffs or purported class members to appoint lead plaintiff and will appoint the "most adequate plaintiff" to serve as lead plaintiff. See id. at § 78u-4(a)(3)(B)(iii)(I). In appointing lead plaintiff, "the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this title is the person or group of persons that:

    (aa)   has either filed the complaint or made a motion in response to a notice;

    (bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

    (cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure."

Id. That presumption can only be rebutted upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the

SCANNED

1  interests of the class" or "is subject to unique defenses that render such plaintiff

2  incapable of representing the class." See id. at § 78u-4(a)(3)(B)(iii)(II).

3             Rule 23 of the Federal Rules of Civil Procedure[6] requires that the

4  representative's claim be typical of those in the class and that the representative

5  will fairly and adequately protect the interests of the class. See In re Cavanaugh,

6  306 F.3d 726, 730 (9th Cir. 2002). Typicality is satisfied where the named

7  plaintiff has (1) suffered the same injuries as the absent class members, (2) as a

8  result of the same course of conduct by the defendants, and (3) his/ her claims are

9  based upon the same legal issues as the class members. See Hanon v.

10  Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992); Haley v. Medtronic, Inc.,

11  169 F.R.D. 643, 649 (C.D. Cal. 1994); Schwartz v. Harp, 108 F.R.D. 279, 282

12  (C.D. Cal. 1985). The typicality requirement does not require that the named

13  plaintiff "be identically situated with all other class members. It is enough if their

14  situations involve 'common issues of law or fact.'" O'Connor v. Boeing North

15  Am., Inc., 184 F.R.D. 311, 332 (C.D. Cal. 1998). Adequacy of representation

16  "depends upon the qualifications of counsel for the representatives, an absence of

17  antagonism, a sharing of interests between representatives and absentees, and the

18  unlikelihood that the suit is collusive." Brown v. Ticor Title Ins. Co., 982 F.2d

19  386, 390 (9th Cir. 1992); see also Crawford v. Honig, 38 F.3d 485, 487 (9th Cir.

20  1994). This purpose of this requirement is to uncover any conflicts of interest

21  between named parties and the members of the class they seek to represent. Von

22  ─────────────

23       [6]Rule 23(a) provides that a party may serve as a class representative if the
following prerequisites are met:

24          (1) that the class is so numerous that joinder of all members is

25          impracticable, (2) there are questions of law or fact common to the class, (3)
the claims or defenses of the representative parties are typical of the claims

26          or defenses of the class, and (4) the representative parties will fairly and

27          adequately protect the interests of the class.

28                          12

1 | Collin v. County of Ventura, 189 F.R.D. 583, 592 (C.D. Cal. 1992)(quoting

2 | Amchem Prod., Inc. v. Windsor, 521 U.S. 591, 625 (1997)).

3 |         2.     **Approval of Lead Counsel**

4 |         Under § 21D(a)(3)(B)(v) of the Exchange Act, the lead plaintiff shall,

5 | subject to court approval, select and retain counsel to represent the class. 15

6 | U.S.C. § 78u-4(a)(3)(B)(v). The court should only interfere with the lead

7 | plaintiff's selection of counsel only where it is necessary to "protect the interests

8 | of the class." See id. at § 78u-4(a)(3)(B)(iii)(II)(aa).

9 |     **B.**    <u>**Analysis**</u>

10 |         1.    **The Massachusetts Group is the most adequate plaintiff**

11 |         The moving plaintiffs are as follows: (1) Oscar Gonzales and

12 | Presidents Trust, LLC ("the Presidents Trust Group"); (2) Massachusetts State

13 | Guaranteed Annuity Fund, Massachusetts State Carpenters Pension Fund and Bill

14 | and Jayni Crow ("the Massachusetts Group"); (3) Jerry Wright ("Wright"); and (4)

15 | the General Retirement System of the City of Detroit ("Detroit General"). Thus,

16 | these plaintiffs fulfill the first factor of the most adequate plaintiff presumption -

17 | i.e., they have made a motion in response to a notice. The next factor involves

18 | determining who has the largest financial interest in the relief sought by the class.

19 | Under Section 21D(e)(1) of the Exchange Act, the calculated damages for

20 | plaintiffs holding their shares after the end of the class period is "the difference

21 | between the purchase or sale price paid or received . . . and the mean trading price

22 | [of Endocare stock] during the 90-day period beginning on the date on which the

23 | information correcting the misstatement or omission that is the basis for the action

24 | is disseminated to the market." 15 U.S.C. § 78u-4(e)(1). Each of the movants

25 | initially claims that it has the largest financial stake in the relief sought:

26 |

27 |

28 |

1  ● The Massachusetts Group represents that it suffered losses of over $1

2     million (the Massachusetts State Funds' loss is over $582,000, and the

3     Crows' loss is $510,652)[7]

4  ● Detroit General represents that it suffered estimate losses of $500,000[8]

5  ● The Presidents Trust Group represents that it suffered estimated losses of

6     $100,409.79[9]

7  ● Wright represents that he suffered estimated losses of $30,172.66[10]

8  Based on the above, then, the moving plaintiff with the largest financial stake is

9  the Massachusetts Group.[11]  None of the other moving plaintiffs disputes this.  As

10 such, at this point, the presumption is that the Massachusetts Group is the most

11 adequate plaintiff.

12

13 _____

14    [7] The Massachusetts Group calculates its losses by multiplying the shares
   held at the end of the period from October 23, 2001 to October 30, 2002 (the Class
15 Period) by the average share price during the 90 days after the Class Period.  (See
   Seefer Decl., Exh. A.)  The Massachusetts Group states that the price used was
16 $0.00 because trading in Endocare's stock was halted on December 31, 2002.  It
17 states that therefore there was no market for Endocare stock on December 31,
   2002.
18

19    [8] Detroit General calculates a mean trading price of $2.97 for Endocare
20 common stock from October 31, 2002 through December 26, 2002 because 90
   days have not passed since September 24, 2002 (the date of the corrective
21 disclosure).  See Stickney Decl., Exh. D.)
22

23    [9] The Presidents Trust Group calculates its losses by using a mean trading
   price of $2.97.
24

25    [10] Wright calculates his loss by using the mean trading price of $2.97.

26    [11] The Massachusetts Group states that its losses exceed the losses of all the
   other movants irrespective of what average share price is utilized.  Its losses are
27 $878,384 using the $2.97 mean trading price.  (See Greenstein Decl., Exh. 1.)

28                                        14

1    Detroit General opposed the Massachusetts Group's motion. It

2  argued that while the Massachusetts Group claims a greater aggregated loss than

3  Detroit General, the Massachusetts Group filed its motion five days after the

4  statutory deadline, and therefore, the Massachusetts Group should be barred from

5  consideration as the lead plaintiff. As explained below, this Court disagrees with

6  Detroit General.

7    On November 1, 2002, the plaintiff in the first-filed action, Slutsky,

8  published a statutory notice on the Business Wire. (See Exh. B to Stickney Decl.

9  of Detroit General's Motion.) This notice stated, "If you wish to serve as lead

10  plaintiff, you must move the Court no later than 60 days from today." Sixty days

11  from November 1, 2002 was December 31, 2002. Detroit General contends that

12  because the Intake Section of the District Court was open on a limited basis only

13  on December 31, 2002 and the next day was New Year's Day, which was a legal

14  holiday, the statutory deadline to file a lead plaintiff motion was January 2, 2003.[12]

15  All moving parties except the Massachusetts Group filed their motions on the date

16  of January 2, 2003. The Massachusetts Group filed its motion on January 7, 2003.

17    The Massachusetts Group responds that its motion was timely filed

18  on December 31, 2002, when it was received by the Clerk of the Court. It relies

19  on cases which have held that for purposes of the statute of limitations, a

20  complaint is regarded as "filed" if it arrives in the custody of the clerk within the

21

22

23

24  [12] Under Rule 6(a), which governs the computation of time for statutory
deadlines, "the last day of the period . . . shall be included, unless it is a Saturday,

25  a Sunday or a legal holiday, or, when the act to be done is the filing of a paper in
court, a day on which . . . conditions have made the office of the clerk of the

26  district court inaccessible, in which event the period runs until the end of the next

27  day which is not one of the aforementioned days."

28    15

1  statutory period but fails to conform with formal requirements in local rules.  See

2  Loya v. Desert Sands Unified School Dist., 721 F.2d 279, 280 (9<sup>th</sup> Cir. 1983).

3          First, this Court clarifies what occurred with the filing of the

4  Massachusetts Group's motion.  On December 31, 2002, the Massachusetts Group

5  did attempt to file its motion.  The Intake Section "received" but did not file the

6  motion and prepared a Notice of Document Discrepancies wherein it noted that the

7  timeliness of notice was incorrect.  As a result, this Court rejected the motion on

8  January 2, 2003, and the motion was returned to the Massachusetts Group on

9  Friday, January 3, 2003.  The Massachusetts Group then filed the motion on

10  January 7, 2003.  As such, the Massachusetts Group's motion would have been

11  filed on December 31, 2002 but for the discrepancy.  Detroit General asks this

12  Court to strictly enforce the 60-day statutory deadline, and it cites other district

13  court cases which barred motions which were filed after the 60-day statutory

14  period.  However, this Court finds these other non-binding cases unpersuasive

15  under the circumstances presented here.  In the other cases barring the motions,

16  the district court reasoned that the PSLRA imposes strict time requirements to

17  ensure that the lead plaintiff is appointed at the earliest possible time and to

18  expedite the lead plaintiff process.  See, e.g., In re Telxon Corp. Sec. Litig., 67 F.

19  Supp. 2d 803, 819 (N.D. Ohio 1999); Netsky v. Capstead Mortg. Corp., 2000 U.S.

20  Dist. Lexis 9941, at * 16 (N.D. Tex. July 12, 2000); In re MicroStrategy Inc. Secs.

21  Litig., 110 F. Supp. 2d 427, 433 (E.D. Va. 2000).  Here, consideration of the

22  Massachusetts Group's motion does not hinder the lead plaintiff process; all

23  motions are being heard at the same time.[13]

24

25

_____

26          [13] Furthermore, as the Massachusetts Group points out, some of the cases

27  cited by Detroit General suggest that late filings may be excused.

28                                                · 16

Furthermore, this is not a case wherein the moving plaintiff first attempted to file the motion after the statutory deadline. As explained above, the Massachusetts Group attempted to file its motion within the statutory time; however, non-compliance with a local rule precluded the timely filing. While the cases relied on by the Massachusetts Group[14] are not directly applicable here, they are instructive. They hold that a complaint is filed when it is placed in the actual or constructive custody of the clerk, despite any subsequent rejection of the pleading for non-compliance with a provision of the local rules. See Loya, 721 F.2d at 280. They reason that to elevate a local rule to the status of a jurisdictional requirement would conflict with the mandate of the Federal Rule of Civil Procedure 1 to provide a just and speedy determination of every action. See id. at 280-81. Thus, although these cases explicitly addressed the filing of the complaint, the Ninth Circuit's observation that local rules serve important interests but should not be applied as an over-rigorous sanction is important here. See Loya, 721 F.2d at 281; see also Cinton, 813 F.2d at 920 (noting that "the consensus" is that all pleadings, and not just the complaint, are considered filed when they are placed in the possession of the clerk of the court).[15]

In sum, then, given the circumstances presented, this Court finds that the Massachusetts Group's filing of its motion on January 7, 2003 does not preclude it from consideration as the lead plaintiff. Having properly filed a motion and having the greatest financial interest, the Massachusetts Group remains the presumptively most adequate plaintiff. The next question is whether the

---

[14] Loya, 721 F.2d 279, United States v. Dae Rim Fishery Co., Ltd., 794 F.2d 1392 (9th Cir. 1986), and Cinton v. Union Pacific R. Co., 813 F.2d 917 (9th Cir. 1987).

[15] This Court notes that it is not making any blanket finding that failure to comply with the local rules should be excused.

17

1   Massachusetts Group satisfies the requirements of Rule 23 - typicality and

2   adequacy of representation.

3          This Court finds that the Massachusetts Group has shown that it

4   meets the requirements of Rule 23. The Massachusetts Group asserts claims that

5   are typical of the claims of the members of the proposed class. It alleges that

6   Defendants violated the Exchange Act by publicly disseminating materially false

7   and misleading statements about Endocare during the Class Period. It alleges that

8   it acquired Endocare securities at prices artificially inflated by Defendants'

9   fraudulent misrepresentations and omissions and were damaged thereby. Because

10  its claims are based on the same legal theories and arise "from the same event or

11  course of conduct giving rise to the claims of other class members," typicality is

12  satisfied. With respect to adequacy of representation, the Massachusetts Group's

13  interests are aligned with the members of the proposed class, as it shares

14  substantially similar questions of law and fact with the members of the proposed

15  class, and its claims are typical. The Massachusetts Group has submitted sworn

16  certifications affirming its willingness to serve as, and assume the responsibilities

17  of lead plaintiff. (See Seefer Decl., Exh. B; Crow Decl.; Harrington Decl.) Based

18  on the foregoing, and the lack of any challenge by the other movants with respect

19  to these factors, the Massachusetts Group has satisfied the requirements of Rule

20  23.

21         Defendants filed a response and limited opposition to these motions.

22  They claim that they have standing to do so, and the Massachusetts Group argues

23  that they do not have standing to do so. Obviously, based on the parties' citations,

24  courts are split as to defendants' standing with respect to lead plaintiff motions.

25  This Court does not need to discuss its view on this issue at this time since

26  Defendants admittedly "do not express a view on the merits of the competing lead

27

28                                    18

1  plaintiff motions." Rather, Defendants "note" that substantial authority rejects the

2  appointment of unrelated, lawyer-aggregated parties as lead plaintiff, and they

3  object to certain proposed scheduling, which this Court addresses later.

4        With respect to aggregation for lead plaintiffs, Defendants rely on

5  cases which have refused to consider for lead plaintiff a group of individuals

6  brought together for aggregation. They argue that the Massachusetts Group offers

7  no evidence that its proposed group is anything other than artificial or are in any

8  way necessary for appointment. This Court acknowledges that courts are divided

9  on the question of whether individual losses of unrelated investors may be

10 aggregated to satisfy the largest financial interest requirement. See In re

11 Cavanaugh, 306 F.3d 726, 731 (9th Cir. 2002). This Court has previously adopted

12 a "case-by-case approach" which allows it "maximum flexibility to select a lead

13 plaintiff who will best represent the interests of the class and exercise control of

14 the litigation." In re Heritage Bond Litigation, slip op. at 16, attached as Exh. B to

15 Seefer Suppl. Decl. (quoting In re Versata, 2001 WL 34012374, at * 5 (N.D. Cal.

16 Aug. 17, 2001)). Under said approach, a group is permitted to aggregate its losses

17 and serve as lead plaintiff, regardless of whether a pre-existing relationship

18 existed, if the characteristics required to adequately represent a class are present in

19 the group. Here, as explained above, the Massachusetts Group adequately

20 represents the class, and no party suggests otherwise. It consists of 2 large

21 sophisticated institutional investors and a married couple, and it asserts that the

22 institutional investors are the exact type which Congress intended to spearhead

23 securities class action litigation, and the couple provide an ideal complement and

24 have a significant financial incentive to prosecute this action. Thus, the

25 Massachusetts Group is permitted to aggregate its losses and serve as lead

26 plaintiff.

27

28                                    19

1    2.    **The Massachusetts Group's counsel is approved**

2    The Massachusetts Group has selected the law firm of Milberg Weiss

3   Bershad Hynes & Lerach LLP to represent the class, and it submits the firm's

4   resume in support of its choice.  (See Seefer Decl., Exh. D.)  This Court agrees

5   that Milberg Weiss has extensive experience litigating securities class actions and

6   has prosecuted numerous securities fraud class actions.  As such, this Court

7   approves the Massachusetts Group's choice of counsel.

8        3.    **Defendants' objections**

9        Having determined that the Massachusetts Group is the lead plaintiff,

10  this Court addresses certain provisions in its Proposed Order Consolidating

11  Related Actions, Preserving Documents, and Setting Briefing Schedule

12  ("Proposed Order") to which Defendants object.

13        a.    Filing of a consolidated class-action complaint

14        The Proposed Order proposes that lead plaintiffs be granted 60 days

15  to file an amended consolidated complaint.  Defendants argue that 60 days is too

16  long and that 30 days should be ample time since plaintiffs have already filed

17  complaints.  The Massachusetts Group responds that it has not filed a complaint

18  and that other events have occurred since the complaints were filed which need to

19  be investigated.  This Court finds that 60 days is an appropriate amount of time to

20  allow the Massachusetts Group to fully and adequately prepare an amended

21  consolidated class action complaint.  Thereafter, Defendants shall have 45 days to

22  respond.

23        b.    Class certification motion

24        The Proposed Order proposes that the lead plaintiff shall file a motion

25  for class certification within 30 days after the earlier of (a) the service of

26  Defendants' answer to the consolidated complaint; or (b) the entry of an order

27

28                                    20

SCANNED.

1   denying Defendants' motion to dismiss. It further proposes that counsel shall

2   propose to the Court a mutually agreeable schedule for class certification

3   discovery and for briefing and hearing of such motion. Defendants argue that the

4   30 days is insufficient because they are entitled to take discovery on the Rule 23

5   class certification factors. They also argue that this proposal is premature. This

6   Court agrees with this last argument. A consolidated complaint is to be filed in 60

7   days, and then Defendants' response is to be filed 45 days thereafter. If

8   Defendants' response is a motion to dismiss, as they represent it will be, then said

9   motion is to be briefed and decided. Depending upon the outcome, the parties can

10   then discuss guidelines and scheduling for a motion for class certification and

11   related discovery.

12                    c.    Document preservation

13          The Massachusetts Group also moves for an order regarding

14   document preservation. In its Proposed Order, it proposes that counsel for the

15   parties shall notify their clients of their document preservation obligations

16   pursuant to the federal securities laws. Defendants argue that such a request is

17   superfluous in light of existing statutes. This Court finds that to the extent that the

18   Proposed Order purports to alter the obligations created under PSLRA, it is

19   improper and any language to that effect must be omitted. To the extent that the

20   Proposed Order restates the obligations created under the PSLRA, it may be

21   redundant but not improper and therefore allowable.

22

23

24

25

26

27

28                                      21

SCANNED

**C.    Conclusion**

Accordingly, this Court:

● **Grants** Plaintiffs Massachusetts State Funds and Bill and Jayni Crow's Motion to Be Appointed as Lead Plaintiff and to Approve Lead Plaintiffs' Choice of Counsel

● **Denies** Plaintiff the General Retirement System of the City of Detroit's Motion to be Appointed Lead Plaintiff and to Approve Lead Plaintiff's Choice of Counsel

● **Denies** Plaintiffs Oscar Gonzalez and Presidents Trust LLC's Motion to Be Appointed as Lead Plaintiffs and for Approval of Their Selection of Lead Counsel

● **Denies** Plaintiff Jerry Wright's Motion for Appointment as Lead Plaintiff and Approval of His Selection of Counsel

This Court **orders** Lead Plaintiff to file a First Amended Consolidated Class Action Complaint within 60 days of the date of this Order. Defendants shall respond within 45 days from the date of the filing of said complaint.

·IT IS SO ORDERED.

DATED:  2/10/03

DICKRAN TEVRIZIAN
Dickran Tevrizian, Judge
United States District Court

22

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

HYPERPHRASE TECHNOLOGIES, LLC
and HYPERPHRASE INC.,

              Plaintiffs,

   v.

MICROSOFT CORPORATION,

              Defendant.

ORDER

02-C-647-C

---

Pursuant to the modified scheduling order, the parties in this case had until June 25, 2003 to file summary judgment motions.  Any electronic document may be e-filed until midnight on the due date.  In a scandalous affront to this court's deadlines, Microsoft did not file its summary judgment motion until 12:04:27 a.m. on June 26, 2003, with some supporting documents trickling in as late as 1:11:15 a.m.  I don't know this personally because I was home sleeping, but that's what the court's computer docketing program says, so I'll accept it as true.

Microsoft's insouciance so flustered Hyperphrase that nine of its attorneys, namely Mark A. Cameli, Lynn M. Stathas, Andrew W. Erlandson, Raymond P. Niro, Paul K. Vickrey, Raymond P. Niro, Jr., Robert Greenspoon, Matthew G. McAndrews, and William W. Flachsbart, promptly filed a motion to strike the summary judgment motion as untimely. Counsel used bolded italics to make their point, a clear sign of grievous iniquity by one's foe.

Copy of this document has been provided to: *All Counsel* *BBC* this *1st* day of *July* 20 *03* by *CAKorth* C.A. Korth, Secretary to Magistrate Judge Crocker

True, this court did enter an order on June 20, 2003 ordering the parties not to flyspeck each other, but how could such an order apply to a motion filed almost five minutes late? Microsoft's temerity was nothing short of a frontal assault on the precept of punctuality so cherished by and vital to this court.

Wounded though this court may be by Microsoft's four minute and twenty-seven second dereliction of duty, it will transcend the affront and forgive the tardiness. Indeed, to demonstrate the even-handedness of its magnanimity, the court will allow Hyperphrase on some future occasion in this case to e-file a motion four minutes and *thirty* seconds late, with supporting documents to follow up to *seventy-two* minutes later.

Having spent more than that amount of time on Hyperphrase's motion, it is now time to move on to the other Gordian problems confronting this court. Plaintiff's motion to strike is denied.

Entered this 1st day of July, 2003.

BY THE COURT:

STEPHEN L. CROCKER
Magistrate Judge