**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS (BOSTON)**

| | |
|---|---|
| In Re:  BIOGEN IDEC, INC. SECURTIES LITIGATION | 1:05-cv-10400 (RCL) |

**MEMORANDUM OF THE BIOGEN INSTITUTIONAL INVESTOR GROUP IN OPPOSITION TO THE MOTION OF THE LONDON PENSIONS FUND AUTHORITY AND NATIONAL ELEVATOR INDUSTRY PENSION FUND FOR PARTICULARIZED DISCOVERY PURSUANT TO 15 U.S.C. § 78U-4(A)(3)(B)(IV)**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT .......................................................... 1

II.   PROCEDURAL HISTORY.............................................................. 8

III.  ARGUMENT .................................................................................. 12

    A.    The London Pensions Fund/National Elevator Industry Are Not
        Entitled To Additional Discovery............................................... 12

        1.    Third Millennium And Horatio Have Disclosed The Full Extent
            Of Their Options Transactions And Thus Service Of A
            Subpoena On Pax Is Unnecessary And Improper........................ 12

        2.    The London Group Has Waived Its Right To A Deposition By
            Rejecting The Biogen Group's Two Offers To Proceed With
            Such Deposition........................................................................... 13

        3.    The London Group's Request To Depose Neil Kazaross Is
            Duplicative And Should Also Be Rejected.................................. 14

    B.    The Transactions Of Third Millennium And Horatio In Biogen
        Common Stock And Options Evidence That They Are Typical
        Investors...................................................................................... 15

    C.    Biogen Group Members Third Millennium And Horatio Have
        Already Been Appointed As Lead Plaintiffs In The Companion Case
        Against Elan Corporation PLC And Thus Should Be Appointed Here
        For Efficiency ............................................................................ 17

    D.    The London Pension Fund Group Has Failed To Disclose That It Is
        Heavily Indexed And Regularly "Re-balanced," Thus Subjecting It To
        Attacks On Typicality ................................................................ 18

IV.   CONCLUSION ............................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Fischler v. Amsouth Bancorporation*,
No. 96-1567-Civ-T-17A, 1997 U.S. Dist. LEXIS 2875
(M.D. Fla., Feb. 6, 1997) ......................................................................... 3, 12

*Gluck v. Cellstar Corp.*, 976 F. Supp. 542
(N.D. Tex. 1997) ........................................................................................ 3, 11

*In re Party City Securities Litigation,* 189 F.R.D. 91
(D.N.J. 1999) ................................................................................................... 1

**Statutes**

15 U.S.C. § 78u-4 (a)(3)(B)(iii) ..................................................................... 13
15 U.S.C. § 78U-4(A)(3)(B)(IV) ...................................................................... 1

**Rules**

Fed. R. Civ. P. 23(g) ....................................................................................... 16
Fed. R. Evid. 801-802 ..................................................................................... 15

The Biogen Institutional Investor Group[1] respectfully submits this memorandum in opposition to the Motion of the London Pensions Fund Authority and National Elevator Industry Pension Fund for Particularized Discovery Pursuant to 15 U.S.C. § 78U-4(A)(3)(B)(IV) ("Motion").  For the reasons set forth herein, the Motion should be denied.

## I.     PRELIMINARY STATEMENT

In a classic "fishing expedition," designed to bail out the meritless contention that the Biogen Institutional Investor Group is inadequate to serve as a Lead Plaintiff, the London Pensions Fund Authority and National Elevator Industry Pension Fund (collectively, the "London Group") now seeks expanded discovery, well beyond that originally permitted by the Court, and in violation of the PSLRA's[2] grant of "limited discovery" in the exception of cases.  *See In re Party City Secs. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999).  Indeed, the Biogen Group has complied fully with the Court's Order ("Order"), dated July 26, 2005, by producing all documents responsive to requests submitted by the London Group, all pointing to the same proposition pointed out months ago to this Court that members of the Biogen Group are typical institutional investors who similarly suffered economic harm when the wonder drug, Tysabri, was suspended by Biogen IDEC, Inc. ("Biogen" or the "Company") from clinical trials.[3]  Pursuant to the London Group's request, the Biogen Group made available for deposition, on <u>two</u>

---

[1] The Biogen Institutional Investor Group is also referred to herein as the "Biogen Group."
[2] Private Securities Litigation Reform Act of 1995 (also referred to herein as the "Reform Act").
[3] These requests were limited to documents concerning the trading strategies and policies of Third Millennium Trading LLP ("Third Millennium") and Horatio Capital LLC ("Horatio") and to documents setting forth each firm's trades in any Biogen security, including common stock and options, as well as "all documents concerning any trades of any derivative instrument related in any way to [each firm's] Biogen trading."  *See* Letter from Sam Rudman to Steven G. Schulman and Vincent R. Cappucci, dated July 27, 2005, attached as Exhibit A to the Hess-Mahan Declaration ("Hess-Mahan Decl."), dated September 9, 2005.

separate occasions, senior partners of Third Millennium, to address and dispose of all issues previously raised by the London Group concerning Third Millennium's typicality and adequacy.  Nonetheless, the London Group continues to pursue its Motion, hoping to uncover information supporting its untenable position rather than testing the merits of its hypothesis through direct examination of principals of Third Millennium who are committed to prosecuting this action.

Specifically, the London Group seeks broadened discovery of Third Millennium and Horatio, including:  (i) the ability to serve a subpoena on Pax Clearing Corp. ("Pax"), the clearing firm for Third Millennium and Horatio, seeking documents concerning all of Third Millennium's and Horatio's transactions in Biogen securities; (ii) depositions of the "trader(s) who were responsible for" the transactions in Biogen securities at Third Millennium and Horatio; and (iii) the deposition of Neil Kazaross, a senior partner of Third Millennium, who previously submitted a sworn affidavit in this matter.

Despite the fact that Third Millennium and Horatio have produced all documents responsive to the London Group's document requests, already fully demonstrating their transactions in Biogen common stock and options, and thus have provided a "full and complete picture" of such transactions, the London Group continues to insist on a deposition of the clearing firm, Pax.  That deposition not only would go well beyond the scope of discovery ordered by the Court, but also would be duplicative and unduly burdensome, particularly in light of written assurances obtained by Third Millennium and Horatio from Pax which confirm that the clearing firm has searched for and provided supporting documentation reflecting *all* transactions by these firms in Biogen options. *See* Letter from Pax Clearing Corp., dated September 21, 2005, attached as Exhibit F to

the Declaration of Robert N. Cappucci In Opposition To The London Group's Motion

For Particularized Discovery ("Cappucci Decl."), dated September 21, 2005, filed

contemporaneously herewith.  In light of these facts, a subpoena on Pax is completely

unnecessary.  The London Group's request to subpoena Pax is designed to harass Third

Millennium and Horatio by requiring their clearing firm to respond to a federal subpoena.

Moreover, the expanded discovery requested by the London Group is clearly

improper and inconsistent with the Congressional intent behind the Reform Act.  *See*

*Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) ("Congress clearly did

not intend to burden prospective Lead Plaintiffs by requiring extensive evidentiary proof

of typicality or adequacy in a 'Reform Act' designed to reduce the costs of securities

class actions and to induce institutional investors to become Lead Plaintiffs.  Evidence

regarding the requirements of Rule 23 will, of course, be heard in full at the class

certification hearing.  There is no need to require anything more than a preliminary

showing at this stage."); *Fischler v. Amsouth Bancorporation*, No. 96-1567-Civ-T-17A,

1997 U.S. Dist. LEXIS 2875, at *2 (M.D. Fla., Feb. 6, 1997) ("A wide-ranging analysis

under Rule 23 is not appropriate and should be left for consideration of a motion for class

certification.").  Accordingly, the London Group's request to serve such a subpoena here

is improper and should be rejected.

As to the London Group's request for depositions of Third Millennium and

Horatio, the Biogen Group already has made available for deposition, on *two separate*

*occasions*, senior partners Neil Kazaross and Noel Smith of Third Millennium, each of

whom has direct knowledge of the firm's transactions in Biogen common stock and

options, and is equipped to testify as to those matters as well as the remaining issues

4

raised by the London Group.  *See* Letter from Robert N. Cappucci to Samuel H. Rudman, dated September 8, 2005, and Letter from Vincent R. Cappucci to Samuel H. Rudman, dated September 16, 2005, attached as Exhibits A and B, respectively, to the Cappucci Decl.  The London Group has rejected the Biogen Group's offers to produce these individuals for deposition, purportedly due to a "compacted" schedule or "time crunch."[4] *See* Letter from Samuel H. Rudman to Robert N. Cappucci, dated September 9, 2005, Letter from Samuel H. Rudman to Vincent R. Cappucci, dated September 16, 2005, and Letter from Samuel H. Rudman to Vincent R. Cappucci, dated September 19, 2005, attached as Exhibits C, D and E, respectively, to Cappucci Decl.  As discussed below, however, any abridged schedule here was the result of the London Group's own delay and inaction.

All questions raised by the London Group concerning the adequacy or typicality of Third Millennium and Horatio clearly have been disposed of by the documents already produced to the London Group by these firms.  Such documents fully support the losses indicated in Third Millennium's and Horatio's lead plaintiff moving papers and fail to indicate any atypical trading pattern.  In this regard, the damage analysis, filed contemporaneously herewith, of Third Millennium's options transactions confirms that its financial interest in this case -- even taking into account the modest gain it experienced in Biogen options (to the extent that gains or losses in Biogen options are even relevant, which, we believe, they are not) -- still amounts to *$2,764,990.56*.  This figure is consistent with the information set forth in the Reply Affidavit of Neil Kazaross ("Kazaross Reply Aff."), filed with the Court on September 9, 2005, which indicated that

---

[4] Given the London Group's rejection of these proposals, offers to produce Horatio for deposition presumably would have been met with a similar response and have, thus, been deemed to be futile.

Third Millennium made *approximately* $500,000 as a result of its Biogen options transactions, but still suffered cumulative losses of over $2,500,000. *See* Kazaross Reply Aff., at ¶ 8.[5] Accordingly, Third Millennium's damages are not in question and are completely consistent with prior representations to the Court.

In addition, Third Millennium's transactions in Biogen common stock and options do not reflect any atypical trading pattern. This conclusion is supported by the facts and conclusions set forth by financial expert, Kevin F. Dages, of Chicago Partners, LLC,[6] who has concluded that Third Millennium's and Horatio's transactions are no less typical than any institutional investor which engages in sophisticated investing. *See* Dages Aff, ¶ 33. Indeed, as described in the Dages Affidavit and set forth more fully below, the investments of the London Pensions Fund Authority ("London Fund" or "Fund"), itself, are heavily indexed and regularly re-balanced, such that its own trading strategy in Biogen securities was complex. Dages Aff., ¶ 24 n.16.

Moreover, the Affidavit of Neil Kazaross In Opposition To The London Group's Motion For Particularized Discovery ("Second Kazaross Affidavit"), dated September 21, 2005, and filed contemporaneously herewith, demonstrates that Third Millennium, like other investors, relied on news and other information disseminated by Biogen when purchasing the Company's common stock during the relevant period. *See* Second Kazaross Affidavit, at ¶ 4. Furthermore, the Second Kazaross Affidavit demonstrates

---

[5] While Third Millennium previously estimated that it experienced a gain of *approximately* $500,000.00 as a result of its purchases and sales of Biogen options during the relevant period, it subsequently determined that the specific gain firm experienced by Third Millennium was only $303,490.00, as a result of such transactions. *See* analysis of Third Millennium's options transactions, attached as Appendix C to Affidavit Of Kevin Dages In Further Support Of The Motion Of The Biogen Institutional Investor Group For Consolidation, Appointment As Lead Plaintiff And Approval Of Lead Plaintiff's Selection Of Co-Lead And Liaison Counsel ("Dages Affidavit" or "Dages Aff."), dated September 21, 2005 and filed contemporaneously herewith.
[6] A description of the background and qualifications of Mr. Dages and Chicago Partners is attached as Appendix A to the Dages Affidavit.

that Third Millennium assumed that the price it was paying for Biogen common stock accurately reflected all information in the marketplace, and was based on truthful and complete disclosure by the Company of all material information, especially that relating to the drug, Tysabri. *See id.* Mr. Kazaross also has attested to the fact that Third Millennium's common stock purchases constituted substantial direct investments in the underlying Company and consequently suffered losses of $3,068,480.56 as a result of such investments (as well as cumulative losses of $2,764,990.56, when factoring in the firm's options positions). *See id.*

The foregoing facts, provided by Mr. Kazaross, a senior partner of Third Millennium, who is directly involved in the business and operations of the firm, refute the suggestions in the Declaration of R. Steven Aronica ("Aronica Declaration"), dated September 9, 2005, that Third Millennium did not purchase its Biogen common stock, as a typical investor would, based upon market news and other publicly available information. *See id.*, at ¶ 5. Moreover, the assertions contained in the Aronica Declaration are purportedly based upon overbroad and incorrect statements of unidentified former employees, fail to provide sufficient details regarding Third Millennium's specific investments in Biogen common stock and options, and are simply false. *See id.* Accordingly, the assertions in the Aronica Declaration should be rejected.

For the foregoing reasons and those set forth below, the London Group's Motion constitutes nothing more than a "fishing expedition," designed to harass Third Millennium and Horatio, and to support the London Group's manufactured theory that these investors are somehow inadequate to represent the interests of the Class.

Accordingly, the London Group's Motion for additional discovery should be denied and the Biogen Institutional Investor Group's lead plaintiff motion should be granted.

## II.    PROCEDURAL HISTORY

Following the Court's July 26, 2005 Order on discovery, the London Group forwarded a letter to the Biogen Group, requesting all documents reflecting the trading of Third Millennium and Horatio in Biogen common stock and options, as well as any derivative instrument related to both firms' trading in Biogen securities. *See* Letter from Samuel H. Rudman to Steven G. Schulman, dated July 27, 2005, attached as Exhibit A to the Declaration of Theodore M. Hess-Mahan in Support of the Motion of the London Pensions Fund Authority and National Elevator Industry Pension Fund for Particularized Discovery Pursuant to 15 U.S.C. § 78U-4(A)(3)(B)(IV) ("Hess-Mahan Decl."). Following that request, Third Millennium and Horatio immediately searched for all responsive documents for production in light of the August 8, 2005 hearing date. As recognized by the London Group in its Memorandum, due to "scheduling conflicts," the August 8, 2005 hearing was rescheduled for September 12, 2005 and counsel mutually agreed that they would treat the extension of the hearing as an extension of the discovery time period. Mem.,[7] at 3.

In keeping with the September 12, 2005 deadline, Third Millennium and Horatio continued to search for documents responsive to the London Group's requests. Prior to that production, however, counsel for the London Group contacted counsel for the Biogen Group on August 5, 2005 and requested even broader discovery regarding the transactions by Third Millennium and Horatio, specifically requesting documents reflecting transactions in *any* derivative instruments "which may not be directly

---

[7] References to "Mem., at ___" are to the London Group's Memorandum in support of its Motion.

8

connected to Biogen securities," but, nevertheless, may have been part of a strategy involving such securities. *See* Letter from Samuel H. Rudman to Robert N. Cappucci, dated August 5, 2005, attached as Exhibit E to Hess-Mahan Decl. While counsel for the Biogen Group believed such documents to be not only irrelevant, but also outside the scope of the discovery permitted by the Court, they nevertheless instructed their clients to search for documents responsive to that request,[8] thus requiring additional time and further delaying the production. Although it was subsequently determined that no such documents existed, counsel for the Biogen Group assured the London Group that it would deem the London Group's requests for documents as continuing and to the extent it discovered any additional responsive materials it would produce them. *See* Letter from Vincent R. Cappucci to Samuel H. Rudman, dated August 16, 2005, attached as Exhibit L to Hess-Mahan Decl. Accordingly, on August 16, 2005, still almost a month before the September 12, 2005 deadline for discovery, the Biogen Group produced documents responsive to the London Group's requests. *See id.*

Following the Biogen Group's production, on August 18, 2005, counsel for the London Group forwarded a letter to the Biogen Group, complaining about the timing of the production and arguing that certain documents had not been produced for various options trades. *See* Letter from Samuel H. Rudman to Vincent R. Cappucci, dated August 18, 2005, attached as Exhibit N to Hess-Mahan Decl. The London Group also reiterated its request to take the depositions of the "trader(s)" of Third Millennium and Horatio involved in the subject Biogen transactions. *See id.* In response, on August 24, 2005, counsel for the Biogen Group reminded the London Group of the prior agreement among all counsel to adjourn the hearing date, thereby extending the discovery cutoff

---

[8] *See* Second Kazaross Decl., at ¶ 6 n.1.

date to September 12, 2005.  *See* Letter from Robert N. Cappucci to Samuel H. Rudman,

dated August 24, 2005, attached as Exhibit O to Hess-Mahan Decl.[9]  The Biogen Group

also reiterated that the London Group's request for expanded discovery on August 5,

2005, caused the production to be delayed until August 16, 2005.  *See id.*  Finally, the

Biogen Group indicated that in light of the extensive further search for responsive

documents and results thereof, that it continued to believe that depositions of Third

Millennium and Horatio were unnecessary.  *See id.*

   After forwarding its response to the London Group on August 24, 2005, counsel

for the Biogen Group did not receive a response from the London Group for *more than*

*two weeks*.  *See* Letter from Robert N. Cappucci to Samuel H. Rudman, dated September

8, 2005, attached as Exhibit A to Cappucci Decl.  Given the lack of any response from

the London Group, the Biogen Group assumed that the London Group was satisfied with

the document production and was no longer pressing for depositions.  *See id.*  However,

on September 7, 2005, the London Group suddenly informed counsel for the Biogen

Group that it wished to proceed with such depositions.  The Biogen Group immediately

made arrangements for the deposition of Third Millenium senior partner Neil Kazaross

and offered the London Group the opportunity to take that deposition.  *See id.*  However,

the London Group rejected that offer.

   On September 9, 2005, the parties agreed to and requested an adjournment of the

September 12, 2005 hearing.  Recognizing the narrow adjournment approved by the

Court, the Biogen Group, for the second time, offered to produce a representative of

---

[9] As part of that response, the Biogen Group also requested certain discovery of the London Group in light of recent developments and facts obtained in the Biogen Group's ongoing investigation in this matter.  *See id.*  However, the London Group has refused that request.  *See* Letter from Samuel H. Rudman to Robert N. Cappucci, dated September 9, 2005, attached as Exhibit C to Cappucci Decl.

Third Millennium for deposition on Tuesday, September 20, 2005. *See id.* Specifically, the Biogen Group offered Noel Smith, a senior partner of the firm, who was prepared to testify as to: "(1) the structure and business of the firm; (2) Third Millennium's trading in Biogen . . . securities; (3) losses sustained by the firm; (4) the firm's limited position in Biogen options; and (5) the firm's investment strategy with respect to all transactions in Biogen securities." *See id.* In addition, pursuant to its continuing obligation to produce responsive documents and the London Group's comments that the documents previously produced by Third Millennium and Horatio did not support the gain in options mentioned in the Kazaross Affidavit, Third Millennium and Horatio requested that an additional search be performed by their clearing firm, Pax, to ensure the identification of transactions in *all* Biogen options during the relevant period. The continued search conducted by Pax resulted in the discovery of a limited number of additional trades, reflected in documents that were subsequently produced to the London Group on September 16, 2005. Accordingly, Third Millennium and Horatio have made a thorough inquiry with their clearing firm regarding the full extent of their transactions in Biogen common stock and options, and the London Group has a complete record of all such transactions.

In response to the Biogen Group's September 16, 2005 letter offering to produce a representative of Third Millennium for deposition on Tuesday, September 20, 2005 (well in advance of the next appearance before the Court) and providing a supplemental production of limited documents, the London Group, once again, rejected the offer to move forward with the Third Millennium deposition. *See* Letter from Samuel H. Rudman to Vincent R. Cappucci, dated September 16, 2005, and Letter from Samuel H.

Rudman to Vincent R. Cappucci, dated September 19, 2005, attached as Exhibits D and E, respectively, to Cappucci Decl.  Specifically, the London Group contended that the deposition would take place on too "tight" a schedule and, therefore, it did not wish to move forward with the examination.  *See id.*  That response constituted the second time in which the London Group rejected an offer by the Biogen Group to produce a representative of Third Millennium for deposition.

### III.    ARGUMENT

#### A.    The London Pensions Fund/National Elevator Industry Are Not Entitled To Additional Discovery

##### 1.    Third Millennium And Horatio Have Disclosed The Full Extent Of Their Options Transactions And Thus Service Of A Subpoena On Pax Is Unnecessary And Improper

As discussed above, counsel for Third Millennium and Horatio have obtained full documentation from their clearing firm, Pax, which provided written confirmation that no additional trades took place during the relevant period, beyond those reflected in the documentation already provided to the London Group.  *See* Letter from Pax Clearing Corp., dated September 21, 2005, attached as Exhibit F to Cappucci Decl.  Indeed, Third Millennium and Horatio produced the exact documentation they received from Pax regarding their Biogen common stock and options transactions to the London Group. Accordingly, a subpoena on Pax is unnecessary.  Moreover, such discovery on Pax is clearly outside the scope of the discovery permitted by the Court and would serve only to harass Third Millennium and Horatio by requiring their clearing firm to respond to a federal subpoena.  *See Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) ("Congress clearly did not intend to burden prospective Lead Plaintiffs by requiring extensive evidentiary proof of typicality or adequacy in a 'Reform Act' designed to

reduce the costs of securities class actions and to induce institutional investors to become Lead Plaintiffs.  Evidence regarding the requirements of Rule 23 will, of course, be heard in full at the class certification hearing.  There is no need to require anything more than a preliminary showing at this stage."); *Fischler v. Amsouth Bancorporation*, No. 96-1567-Civ-T-17A, 1997 U.S. Dist. LEXIS 2875, at *2 (M.D. Fla., Feb. 6, 1997) ("A wide-ranging analysis under Rule 23 is not appropriate and should be left for consideration of a motion for class certification.").  Accordingly, the London Group's request to subpoena Pax should be denied.

> 2.    **The London Group Has Waived Its Right To A Deposition By Rejecting The Biogen Group's Two Offers To Proceed With Such Deposition**

As set forth above, the Biogen Group has provided the London Group with two opportunities to depose a representative of Third Millennium.  *See* Letter from Robert N. Cappucci to Samuel H. Rudman, dated September 8, 2005, and Letter from Vincent R. Cappucci to Samuel H. Rudman, dated September 16, 2005, attached as Exhibits A and B, respectively, to Cappucci Decl.  The London Group has rejected both of those offers, citing a purportedly "compacted" or "tight" time frame.  *See* Letter from Samuel H. Rudman to Robert N. Cappucci, dated September 9, 2005, Letter from Samuel H. Rudman to Vincent R. Cappucci, dated September 16, 2005, and Letter from Samuel H. Rudman to Vincent R. Cappucci, dated September 19, 2005, attached as Exhibits C, D and E, respectively, to Cappucci Decl.  Given that the London Group has failed to move forward with the depositions it requested, it has waived its continued right to do so. Accordingly, the London Group's Motion to move forward with the depositions of Third Millennium and Horatio should be denied.

In any event, the London Group has failed to demonstrate that Third Millennium or Horatio are inadequate or atypical. No evidence has been presented which questions the losses indicated in Third Millennium's and Horatio's lead plaintiff moving papers and the Biogen Group remains the presumptive plaintiff with the largest financial interest. 15 U.S.C. § 78u-4 (a)(3)(B)(iii). In this regard, the damage analysis, filed contemporaneously herewith, of Third Millennium's options transactions confirms that its financial interest in this case -- even taking into account the gain it experienced in Biogen options (to the extent that gains or losses in Biogen options are actually relevant, which, we believe, they are not) -- still amounts to *$2,764,990.56*. This figure is consistent with the information set forth in the Reply Affidavit of Neil Kazaross, filed with the Court on September 9, 2005, which estimated that Third Millennium made *approximately* $500,000 as a result of its Biogen options transactions, but still suffered cumulative losses of over $2,500,000. Accordingly, Third Millennium's damages are not in question and are completely consistent with prior representations to the Court.

### 3.    The London Group's Request To Depose Neil Kazaross Is Duplicative And Should Also Be Rejected

Despite the London Group's contentions, it has already been provided with a sufficient opportunity to depose Neil Kazaross. *See* Letter from Robert N. Cappucci to Samuel H. Rudman, dated September 8, 2005, attached as Exhibit A to Cappucci Decl. In fact, as described above, when provided with that opportunity, the London Group flatly declined to proceed with the deposition. *See* Letter from Samuel H. Rudman to Robert N. Cappucci, dated September 9, 2005, attached as Exhibit C to Cappucci Decl.

Moreover, the only reason the London Group has stated for seeking the deposition of Mr. Kazaross was to challenge certain sworn testimony contained in the Kazaross

Affidavit, which appeared to be inconsistent with the initial production of documents. Mem., at 7. However, since additional documentation has been produced to the London Group resolving any purported inconsistencies, Mr. Kazaross' Affidavit is consistent with the trading data. Thus, the London Group's continued request for such deposition is improper.

**B.    The Transactions Of Third Millennium And Horatio In Biogen Common Stock And Options Evidence That They Are Typical Investors**

As evidenced by the transactions in Biogen common stock provided to the Court in their certifications, and reflected in the supporting documentation provided to the London Group demonstrating the transactions of Third Millennium and Horatio in Biogen common stock and options, these firms are not atypical. This conclusion is further supported by the expert analyses conducted by Kevin Dages of Chicago Partners, who concludes that: "[t]he fact that Biogen Institutional Investor Group members Third Millennium and Horatio Capital engaged in trades in options on Biogen stock does not render them atypical of institutional investors." Dages Aff., ¶ 33. Moreover, Mr. Dages concludes that the "Biogen Institutional Investor Group's investment activities in BIIB [Biogen] common stock mimic other institutional investors of BIIB stock across the class period." *Id.*, at ¶ 31.

In addition, the Second Kazaross Affidavit demonstrates that Third Millennium, like other investors, relied on news and other information disseminated by Biogen when purchasing the Company's common stock during the relevant period. *See* Second Kazaross Affidavit, at ¶ 4. Furthermore, the Second Kazaross Affidavit demonstrates that Third Millennium relied on the prices it was paying for Biogen common stock and

15

believed those prices accurately reflected all information in the marketplace, and were based on truthful and complete disclosure by the Company of all material information, especially that relating to the drug, Tysabri. *See id*. Mr. Kazaross has also attested to the fact that Third Millennium's common stock purchases constituted substantial direct investments in the underlying Company and consequently suffered losses of $3,068,480.56 as a result of such investments (as well as cumulative losses of $2,764,990.56, when factoring in the firm's options positions). *See id*.

The foregoing facts, provided by Mr. Kazaross, a senior partner of Third Millennium, who is directly involved in the business and operations of the firm, refute the suggestions in the Aronica Declaration that Third Millennium did not purchase its Biogen common stock, as a typical investor would, based upon market news and other publicly available information. *See id.*, at ¶ 5. Moreover, the assertions contained in the Aronica Declaration are based upon overbroad and incorrect statements of unidentified former employees, do not address trading in Biogen common stock and options, but purport (erroneously) to represent the general practice, and are simply false. *See id.* Moreover, the purported evidence is patently hearsay and is provided by someone who does not purport to have any experience with options trading, raising the palpable risk that his reporting of the purported conversations is unreliable and misinformed. *See* Fed. R. Evid. 801-802. Accordingly, the assertions in the Aronica Declaration should be stricken. *See id.*

Finally, as set forth in the Biogen Group's Reply Memorandum in further support of its lead plaintiff motion, institutional investors such as Third Millennium and Horatio, which have sophisticated investment strategies, are not atypical. *See* Reply

Memorandum Of Law In Further Support Of the Motion Of The Biogen Institutional Investor Group For Consolidation, Appointment As Lead Plaintiff, And Approval Of Lead Plaintiff's Selection Of Co-Lead And Liaison Counsel, filed June 1, 2005, at 8-10. Third Millennium and Horatio are typical and adequate to represent the Class and thus should be appointed as Lead Plaintiffs.

      **C.**      **Biogen Group Members Third Millennium And Horatio Have Already Been Appointed As Lead Plaintiffs In The Companion Case Against Elan Corporation PLC And Thus Should Be Appointed Here For Efficiency**

As set forth in its Motion for Supplemental Authority, filed with the Court on June 9, 2005, Third Millennium and Horatio, and four other movants, were appointed as Lead Plaintiffs by the Honorable Joseph L. Tauro on June 6, 2005 in the companion *Elan* securities litigation. This fact supports the appointment of Third Millennium and Horatio in the instant case and undermines the attacks leveled against them by the London Group. Moreover, the two sets of cases are clearly connected in that they both involve similar representations made by Biogen and Elan (and their respective officers and directors) concerning the safety of the same drug, Tysabri, which was primarily developed by Elan and marketed jointly with Biogen. Thus, a central issue in the cases -- whether Tysabri was as safe as defendants represented -- will be similar. Accordingly, significant efficiencies and synergies could be realized from having the same leadership structure in each set of actions.[10] Doing so would also be consistent with Fed. R. Civ. P. 23(g), which requires courts to appoint class counsel that will fairly and adequately represent the interests of the subject class.

---

[10] Despite the London Group's arguments to the contrary, the fact that no other movant, including the London Group, has attacked Third Millennium's or Horatio's application in the *Elan* case is telling and evidences their suitability to act as Lead Plaintiffs in this matter.

     **D.**     **The London Pension Fund Group Has Failed To Disclose That It Is Heavily Indexed And Regularly "Re-balanced," Thus Subjecting It To Attacks On Typicality**

While attempting to focus the Court's attention on the Biogen Group's purported inadequacies, which have been proven to be completely unfounded, the London Group has failed to disclose that at least one of its members, the London Fund, has potentially disabling conflicts of interest by virtue of its own structure as a managed investment fund. Specifically, the London Fund is heavily indexed and regularly re-balanced, such that its own trading strategy is not simply the result of purchases of common stock based upon Company news and other publicly reported information. *See* Dages Aff., ¶ 24 n.16, and Exhibit B, thereto, Investment Statistics for the period ending December 31, 2004, at pp. 2 and 15. According to the London Fund's Investment Report for 2004-2005 and other publicly available documents on its website, the London Fund does not manage its own money. *See* Appendix B to Dages Affidavit, Investment Report, at p. 8. Rather, the Fund's investments are handled by outside money managers, Goldman Sachs & Co., Inc. and Henderson Global Investors. *See id.* The Fund has two pools of investments: one fund is indexed; the other is operated pursuant to a benchmark. *See id.*, at pp. 6-7. In connection with its indexed pool of investments, the Fund does not rely on a given company's news and public filings in connection with its investment decisions. Rather, the Fund's indexed investments, by definition, are purchased and sold based on a specific index that has nothing do with a given company's public statements. As to the Fund's benchmarked pool of investments, which include its investments in Biogen common stock, such investments are regularly re-balanced based upon the benchmark of the S&P

500, regardless of the news or other information the subject company is providing. *See* Dages Aff., ¶ 24 n.16.

According to its Investment Statistics report, the London Fund re-balanced its investments on September 30, 2004. *See id.* As a result, one of the Fund's largest purchases of Biogen common stock, for 31,400 shares (as reflected on its certification), occurred on September 30, 2004 and was thus the result of a re-balancing that had <u>nothing</u> to do with Biogen's public statements. *See id.* Moreover, according to the Fund's public documents, it invests in futures, options and other similar investment vehicles (*see* Appendix B to Dages Aff., Investment Statistics for December 31, 2004, at pp. 2 and 15). Accordingly, if the London Group's arguments regarding complex investing are accepted (which they should not be), the London Group, itself, would be disqualified.

## IV.  CONCLUSION

For the reasons stated above, the Biogen Group respectfully requests that the Court deny the London Group's Motion and grant the Biogen Group's lead plaintiff motion.

Dated:  September 22, 2005                     Respectfully submitted:

                                              **MOULTON & GANS, P.C.**

                                              By: /s/ Nancy Freeman Gans
                                              Nancy Freeman Gans, BBO #184540
                                              33 Broad Street, Suite 1100
                                              Boston, MA  02109
                                              Telephone:  (617) 369-7979

                                              **ENTWISTLE & CAPPUCCI LLP**
                                              Vincent R. Cappucci
                                              Stephen D. Oestreich
                                              Robert N. Cappucci
                                              299 Park Avenue
                                              New York, NY  10171
                                              Telephone:  (212) 894-7200

                                              **MILBERG WEISS BERSHAD
                                               & SCHULMAN LLP**
                                              Sanford P. Dumain
                                              Richard H. Weiss
                                              One Pennsylvania Plaza
                                              New York, NY  10119
                                              Telephone:  (212) 594-5300

                                              **Counsel for the Biogen Institutional
                                              Investor Group**


## CERTIFICATE OF SERVICE

I, Nancy Freeman Gans, hereby certify that a true copy of the above document was served upon the attorney of record for each party.

                                              /s/ Nancy Freeman Gans
                                              Nancy Freeman Gans