**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS (BOSTON)**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS (BOSTON)**

| | | |
|---|---|---|
| In Re: BIOGEN IDEC, INC., SECURITIES LITIGATION | : | 1:05-cv-10400 (RCL) |
| | : | |
| | : | |

**LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO**
**THE LONDON PENSIONS FUND AUTHORITY'S AND**
**NATIONAL ELEVATOR INDUSTRY PENSION FUND'S**
<u>**OBJECTIONS TO THE MAGISTRATE JUDGE'S LEAD PLAINTIFF ORDER**</u>

**PRELIMINARY STATEMENT**

The New Jersey Carpenters Pension and Annuity Funds, Folksam Asset Management, Third Millennium Trading LLP ("Third Millenium"), the Deerfield Beach Non-Uniformed Municipal Employees Retirement Plan, the Plumbers and Pipefitters Local No. 520 Pension Fund and Horatio Capital, LLC ("Horatio") (collectively, the "Biogen Institutional Investor Group" or the "Lead Plaintiff") respectfully submit this Opposition to the London Pensions Fund Authority's (the "London Fund") and National Elevator Industry Pension Fund's (collectively, the "London Group") Objection to the Magistrate Judge's Order Appointing Lead Plaintiffs and Lead Counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4.

**INTRODUCTION**

On September 23, 2005, after several rounds of briefing, Court-ordered discovery and two lengthy hearings, Magistrate Judge Bowler appointed the Biogen Institutional Investor Group -- a group of sophisticated and very well qualified domestic institutional investors -- as Lead Plaintiff and the firms of Milberg Weiss Bershad & Schulman LLP and Entwistle & Cappucci LLP as Lead Counsel and Moulton & Gans, P.C. as Liaison Counsel (the "Order"), finding that the Biogen Institutional Investor Group was the "most adequate plaintiff" to represent the interests of the class herein under the PSLRA. The London Group has filed objections pursuant to Fed. R. Civ. P. 72 to the Order appointing Lead Plaintiff and Lead Counsel, in what amounts to an impermissible motion for reconsideration, violative of the clear jurisprudence in this Circuit, relying on submissions not previously before the Court. The objections should be rejected to permit orderly proceedings before Magistrate Judge Bowler and the continued prosecution of this important litigation.

1

Far from being "clearly erroneous or contrary to law," the standard applicable to a district court's review of the subject non-dispositive motion (*see Harvard Pilgrim Health Care of New Eng. v. Thompson*, 318 F. Supp. 2d 1, 12 (D. R.I. 2004)), Magistrate Judge Bowler correctly decided the issues based on an unusually full record that was developed over the course of complete briefing, discovery and two hearings conducted on July 21, 2005 and September 23, 2005. Fed. R. Civ. P. 72(a).[1] The London Group lodges the following two objections: (1) the Lead Plaintiff does not have the largest financial interest because it supposedly understated profits made in trading Biogen options which, when offset against its losses on Biogen common stock, purportedly nets a figure lower than that of the London Group; and (2) the Lead Plaintiff is atypical and inadequate because it engaged in so-called unique trading strategies.

These arguments, heard exhaustively below and now raised again, lack merit for the following reasons: (1) the London Group's attack on Lead Plaintiff's financial interest is based on a declaration submitted, for the first time, with its objections by Frank Partnoy (the "Partnoy Declaration"). The Partnoy Declaration is outside the record and cannot support the conclusion that the Order was "clearly erroneous or contrary to law," and its proffer now is particularly inappropriate because the purported evidence could have been timely submitted (*i.e.*, before Magistrate Judge Bowler ruled). Fed R. Civ. P. 72(a). Even if considered, however, the argument is a losing one. The record before Magistrate Judge Bowler demonstrates that the London Institutional Investor Group has the largest financial interest. The London Group's attempts to discredit the analysis by claiming that Lead Plaintiff's presentation of its financial interest kept changing fails. Lead Plaintiff did not include options transactions in its opening

---

[1] Fed. R. Civ. P. 72(a) applies to "pretrial matter[s] not dispositive of a claim or defense of a party." The lead plaintiff and lead counsel rulings do not bear on any claim or defense and readily fall under Rule 72(a).

2

motion, and options transactions should not be included, because (i) none of the published notices announcing the filing of this action pursuant to the PSLRA advised that option transactions were covered by the action and (ii) none of the plaintiffs who filed complaints were alleged to have traded options in Biogen and thus all lacked standing to assert claims on their behalf.

Pursuant to Magistrate Judge Bowler's Order, dated July 26, 2005, both Third Millennium and Horatio were required to produce additional documents with respect to any transactions in Biogen options, which they did after a full search of trading records. That production proved the London Group's efforts below to be a fishing expedition. Indeed, the London Group was further offered the opportunity to take the deposition of one of Third Millenium's principals, proffered on September 12, 2005 and September 20, 2005, a further opportunity afforded in the proceedings below, which the London Group declined to take.

In addition, Third Millenium and Horatio are not rendered atypical or inadequate because of their trading strategies. As was also already demonstrated, the overwhelming weight of authority in the First Circuit holds that trading strategies are irrelevant to the adequacy and typicality analysis because reliance is presumed based on the fraud-on the-market theory adopted in *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988). *See Tolan v. Computervision Corp.*, 696 F. Supp. 771, 780 (D. Mass. 1988) ("it is of no consequence that the putative plaintiffs devised different investment strategies as a consequence of their reliance [on the market]."); *Kirby*, 116 F.R.D. 303, 308 (D. Mass. 1987) ("investment strategy is of little importance" to class certification decision); *Schaffer v. Timberland Co.*, Civil No. 94-634-JD, 1996 U.S. Dist. LEXIS 5372, at *16-17 (D.N.H. Mar. 19, 1996) ("Third, the court rejects the defendants' contention that Kreuser is an atypical plaintiff because he engaged in 'bizarre' trading practices."). We have not

3

found, and the London Group has not identified, any decisions within the First Circuit contrary to the above-cited cases; the London Group bases its argument on two cases from district courts in other circuits. The Order cannot be deemed "clearly erroneous or contrary to law" because it is consistent with apparently uniform and on-point First Circuit authority. Moreover, The London Group has not shown, factually, that Third Millenium or Horatio are atypical.

Accordingly, the objections should be denied in their entirety.

## ARGUMENT

### POINT I

**MAGISTRATE JUDGE BOWLER'S CONCLUSION THAT THE BIOGEN INSITUTIONAL INVESTOR GROUP DEMONSTRATED THE LARGEST FINANCIAL INTEREST IS SUPPORTED BY THE RECORD**

A.    The Rule 72(a) Standard

Rule 72(a) applies to matters "not dispositive of a claim or defense of a party" and sets a high standard for the setting aside or modification of a magistrate judge's ruling by a district court. Fed. R. Civ. P. 72(a). A lead plaintiff motion is not dispositive because it does not bear on any claim or defense of a party in the action. *See Harvard Pilgrim Health Care of New Eng. v. Thompson*, 318 F. Supp. 2d 1, 12 (D.R.I. 2004) ("non-dispositive motion addresses a pre-trial matter while leaving a party's claim or defense intact and is reviewed by a district court under the 'clearly erroneous' standard."). Moreover, the Federal Magistrate Act identifies eight dispositive motions that, while not inclusive of all dispositive motions, demonstrate that a lead plaintiff motion should not be considered dispositive. *See* 28 U.S.C. § 636(b)(1)(A) (a district judge may reconsider any pretrial matter under the "clearly erroneous or contrary to law" standard except "a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress

evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.") *See also Morin v. Combustion Eng'g*, No. C-87-367-L, 1989 U.S. Dist. LEXIS 19007, at *6-7 (D.N.H. May 3, 1989) ("The Advisory Committee notes consider the distinction in Rule 72 to parallel the distinction made in 28 U.S.C. § 636(b)(1). A motion to amend a complaint is not one of the listed motions in section 636(b)(1)(A) and is not equivalent to one of the listed motions.").

Pursuant to Rule 72(a), it is not enough that the district court would have ruled differently than the magistrate judge had it been presented with the same arguments and evidence. Rather, in order to set aside the magistrate judge's order, the district court must find the ruling was "**clearly erroneous or contrary to law**." Fed. R. Civ. P. 72(a). Under this standard, the district court "must accept both the trier's findings of fact and the conclusions drawn therefrom unless, after scrutinizing the entire record, we 'form a strong, unyielding belief that a mistake has been made.'" *Phinney v. Wentworth Douglas Hosp.*, 199 F.3d 1, 7 (1st Cir. 1999) *quoting Cumpiano v. Banco Santander P.R.*, 902 F.2d 148, 152 (1st Cir. 1990).

### 1. The Partnoy Declaration Is New Evidence That Was Not Before Magistrate Judge Bowler And Should Not <u>Be Considered By This Court</u>

The clear error standard of review to be applied by the district court in reviewing a magistrate judge's order pursuant to Rule 72(a) forbids the introduction of new evidence that was not considered by the magistrate judge. *See SmithKline Beecham Corp. v. Apotex Corp.*, No. 98-C-3952, 2000 U.S. Dist. LEXIS 13606, at *7 (N.D. Ill. Sept. 12, 2000) ("***In reviewing a magistrate judge's nondispositive order for clear error, we may only properly consider the evidence that was before the magistrate judge at the time of the order***. If we were to permit the introduction of new evidence at this stage, we would essentially be conducting an ***impermissible*** de novo review of the order.") (Emphasis added). The Rule 72(a) "clear error" standard by

5

which a district court is to review a ruling by the magistrate judge is the same standard applied by circuit courts on appeals of district court orders. *See Phinney* 199 F.3d at 7 ("Like the district court, we review these factual findings under the 'clearly erroneous' rubric.") The district court must review the same record that was before the magistrate judge. *See generally United States v. Doyle*, No. 94-1605, 1995 U.S. App. LEXIS 1834, at * 9 (1st Cir. Jan. 31. 1995) ("As the affidavits were not before the district court when it considered appellant's Rule 2255 motion, they cannot be considered on appeal.") *Citing United States v. Pacheco-Ortiz*, 889 F.2d 301, 307 n.3 (1st Cir. 1989) ("But ***we are not at liberty to consider the new declaration***. It was not before the District Court for her determination. It can accordingly play no part in ours.") (Emphasis added).

The London Group's objection that Lead Plaintiff did not demonstrate the largest financial interest rests entirely on the Partnoy Declaration, submitted with the London Group's objections. This purported evidence cannot support the conclusion that Magistrate Judge Bowler's Order was clearly erroneous because that evidence was not part of the record at the time Magistrate Judge Bowler decided the motion. Accordingly, Partnoy's speculative claims regarding Third Millenium's purported profits on its options trades (Partnoy Decl. at 4) should not be considered on the London Group's Rule 72(a) motion. As shown below, the record upon which Magistrate Judge Bowler based her opinion shows that the Biogen Institutional Investor Group demonstrated the largest loss. Moreover, there can be no dispute that this group of sophisticated domestic financial institutions will more than adequately protect the interests of the class.

B.  **Lead Plaintiff Has Demonstrated the
    <u>Largest Financial Interest in the Litigation</u>**

Lead Plaintiff's financial interest is well documented in the record.  *See* Declaration of Nancy Freeman Gans in Support of [Lead Plaintiff's Motion] at Exhibits B-C (submitted with the initial moving papers); Biogen Institutional Investor Group Reply Mem. at 5; Affidavit of Kevin F. Dages at ¶ 30 ("Dages Aff.") (Submitted with Lead Plaintiffs' opposition to the London Group's Motion for Particularized Discovery).  The London Group's attempts to show that the figure is unreliable ignore the record.  In its opening motion, the Biogen Institutional Investor Group presented a financial interest of $4,964,110.  That figure did not include transactions relating Biogen options because options were not covered by the actions.  *See* Biogen Reply Br. at 6-8.[2]  After this was contested in the London Group's opposition, and in the interest of full disclosure, the Biogen Institutional Investor Group netted-out gains earned in trading options, which still left it with a financial interest larger than that of the London Group.  Decl. of Neil Kazaross (submitted with the Biogen Institutional Group's Reply) at ¶ 8; Decl. of Neil Kazaross at ¶ 8; Dages Decl. at Ex. C.  The Biogen Institutional Investor Group's presentation was

---

[2] One of the most significant errors contained in the Partnoy Declaration is its assumption that transactions in Biogen options should be considered when calculating the competing movants' financial interests. *See, e.g.*, Partnoy Decl., 5, 7.  As the Biogen Institutional Investor Group has previously submitted, Biogen options are not part of this case, nor will they ever be.  *See* Biogen Reply Br. at 5-8.  Pursuant to the PSLRA, the certification submitted with the lead plaintiff motion must "set[] forth all of the transactions of the plaintiff in the security that is the subject of the complaint during the class period specified in the complaint." 15 U.S.C. § 78u-4(a)(2)(A)(iv) (emphasis added).  The Biogen Institutional Investor Group concluded that options were not the subject of the complaint because all of the Biogen actions are brought on behalf of those who purchased or otherwise acquired the "securities of Biogen." *See Brown v. Biogen, Idec Inc*., 1:05-cv-10400 (RCL); *Grill v. Biogen Idec, Inc., et al.*, 1:05-cv-10453 (RCL); and *Lobel v. Biogen Idec, Inc*., 1:05-cv-10801.  The class definition does not include Biogen options because they are not securities of the Company.  *See Biogen* Reply Br. at 5-8.  Rather, they are contracts issued by various writers of options on organized exchanges.  *See id*.  In contrast, Biogen common stock is issued by Biogen, itself, and, therefore, is a security of the Company that is covered by this action.  In addition, all of plaintiffs that filed complaints in this case purchased only Biogen common stock.  *See id*.  Accordingly, none of them had standing to assert claims on behalf of options purchasers. The London Group lacks this standing as well.

7

consistent; it was simply presented twice because the London Group insisted that option transactions be included.[3]

There was no evidence, at the time Magistrate Judge Bowler ruled on the motion, which credibly disputed the financial interest of the Biogen Institutional Investor Lead Plaintiff Group in this litigation or the levels of losses sustained due to the alleged wrongdoing. The Partnoy Declaration, an after-the-fact submission which is entirely speculative is no more credible nor persuasive than the London Group's arguments heard below, should not be considered by the Court in deciding whether the Order was "clearly erroneous or contrary to law." Fed. R. Civ. 72(a). Magistrate Judge Bowler's conclusion that Lead Plaintiff demonstrated the largest financial interest is amply supported by the record.

### C. The Biogen Institutional Investor Group's Appointment as Lead Plaintiff was Not Premature

The London Group claims that Magistrate Judge Bowler "prematurely" selected the Biogen Institutional Investor Group as Lead Plaintiff. London Group Objections Mem. at 3. This contention lacks merit. The scrutiny given by Magistrate Judge Bowler to the lead plaintiff motion was extraordinary. In general, lead plaintiff motions are decided without discovery and with the benefit of only one -- if any -- hearing. This is because the lead plaintiff and lead counsel selection process is the first step in securities class actions and the analysis of adequacy and typicality is preliminary. *See Winn v. Symons Int'l Group,* No. IP 00-0310-C-B/S, 2001 U.S. Dist. LEXIS 3437, at *5 (S.D. Ind. Mar. 21, 2001) ("Because courts must appoint the lead plaintiff in a relatively short period of time, courts generally regard the appointment of lead

---

[3] The London Group's argument that providing the option information after the initial motion is a disqualifying deficiency lacks merit. As explained, options were not part of the complaints. In any event, the London Group cites no authority, and we are aware of none, for the proposition that a movant cannot supplement information submitted in a motion.

8

plaintiff as a threshold determination."); *In re Cendant Corp. Litig.*, 264 F.3d 201, 218 (3d Cir. 2001) ("Under the Reform Act, one of a district court's first tasks is to select a lead plaintiff.") The more rigorous analysis takes place at the class certification stage, which is preceded by discovery into class-related issues by defendants. *See In re Tyco Int'l, Ltd. Sec. Litig.*, No. 00-MD-1335-B, 2000 U.S. Dist. LEXIS 13390, at *20 (D.N.H. Aug. 17, 2000) ("At this early stage of the proceedings, the plaintiffs seeking appointment need only make a ***preliminary showing*** that they satisfy the typicality and adequacy requirements of Rule 23(a)(3) and (a)(4).") (Emphasis added); *Fischler v. Amsouth Bancorporation*, No. 96-1567-CIV-T-17A, 1997 U.S. Dist. LEXIS 2875, at *7-8 (M.D. Fla. Feb. 6, 1997) ("A wide-ranging analysis under Rule 23 is not appropriate [at the lead plaintiff stage of the litigation] and should be left for consideration of a motion for class certification").

The PSLRA's time table supports the proposition that a lead plaintiff determination should not be overly complicated and time consuming.  For example, the PSLRA requires that a notice describing the action issue "not later than 20 days after the date on which the complaint is filed." 15 U.S.C. § 78u-4 (a)(3)(A)(i).  Then, "[n]ot later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff." 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Within 90 days of the notice, the PSLRA anticipates that the court will consider any lead plaintiff motion. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). Magistrate Judge Bowler was mindful of the PSLRA's concern for the quick appointment of a lead plaintiff, allowing for "a limited period to conduct discovery." *Brown v. Biogen IDEC, Inc.*, No. 05-10400-RCL, 2005 U.S. Dist. LEXIS 19350, at *7 (D. Mass. July 26, 2005).

The scrutiny received by Third Millenium and Horatio on the lead plaintiff motion is akin to the more rigorous analysis undertaken at the class certification stage. Magistrate Judge Bowler reached her decision after discovery of Third Millenium and Horatio's trading had taken place and after holding *two* hearings on the matter. Given the uncommon scrutiny to which Third Millenium and Horatio have been subjected, the argument that Magistrate Judge Bowler's decision was premature or against the evidence lacks merit and must be rejected.

### D.     The London Group Waived its Objection to the Denial of its Motion for Particularized Discovery

In addition to appointing lead plaintiff and lead counsel, the Order also denied the London Group's motion for additional discovery, wherein it unsuccessfully argued that it had not received all of the information required by the original discovery order. The London Group's objections are to the portion of the Order "appointing Lead Plaintiffs and Lead Counsel." London Group Objections Mem. at 1. Accordingly, the London Group has waived any possible objection to the portion of the Order denying its discovery motion.[4] However, because the London Group devotes a considerable portion of its brief recounting the back-and-forth between the London Group and Lead Plaintiff concerning the discovery provided by Third Millenium and Horatio, we briefly address the discovery issue.

In short, by its own admission, the London Group had all of the relevant options transactions no later than September 19, 2005, and received other documents weeks before. *See* London Group Objections Mem. at 6. The record on the Motion for Particularized discovery also establishes that Third Millenium and Horatio produced all of the documents requested by

---

[4] Pursuant to Rule 72, objections to a magistrate judge's order must be made "within 10 days after being served with a copy of the magistrate judge's order." Fed. R. Civ. P. 72(a). The Order was served electronically on September 23, 2005. Any attempts to object to other portions of the Order are now time barred.

the London Group as soon as these became available. Moreover, the record shows that Third Millenium proffered one of its principals for a deposition by the London Group's counsel and that the London Group elected not to take the deposition. *See* Letter from Robert N. Cappucci to Samuel H. Rudman, attached as Exhibit A to Cappucci Decl., filed in support of the Biogen Institutional Investor Group in Opposition [to the London Group's] Motion for Particularized Discovery. Magistrate Judge Bowler correctly held that Lead Plaintiff complied with the discovery order and disclosed all of the relevant transactions. The London Group's insinuations to the contrary must be rejected, especially because it did not affirmatively challenge the ruling on the discovery motion.

## POINT II

### THIRD MILLENIUM AND HORATIO HAVE DEMONSTRATED THEIR ADEQUACY AND TYPICALITY

Magistrate Judge Bowler correctly rejected the London Group's argument that Third Millenium and Horatio are inadequate and atypical because they purportedly engaged in "trading strategies that greatly differed from the trading strategies employed by the rest of the class." London Group Objections Mem. at 11. Indeed, it was unrefuted below that Third Millenium and Horatio, possessing substantial resources, sophistication and a commitment to prosecute this action, will vigorously protect the interests of the class. As demonstrated in Lead Plaintiff's reply memorandum, the overwhelming weight of authority within the First Circuit holds that trading style is irrelevant to the adequacy and typicality determination in actions where reliance is presumed pursuant to the Fraud-On-The-Market theory, which assumes that all publicly available information about a publicly traded company is reflected in the price of securities, if such securities trade in an efficient market. *See* Biogen Institutional Investor Group Reply Mem.

at 8-10; *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988).[5]  In reaching her decision, Magistrate Judge Bowler relied on numerous, on-point decisions from within the First Circuit.  For example, *Schaffer v. Timberland Co.*, Civil No. 94-634-JD, 1996 U.S. Dist. LEXIS 5372, at *16-17 (D.N.H. Mar. 19, 1996) rejected, in a class certification context, precisely the argument made by the London Group and properly rejected by Magistrate Judge Bowler:

> Third, the court rejects the defendants' contention that Kreuser is an atypical plaintiff because he engaged in **"bizarre" trading practices**.  According to the defendants, Kreuser's strategy as a "day trader" who sought to realize a gain from fractional increases in stock price and who acted on subjective impulses, as opposed to a long-term investment strategy, "standing alone [is] enough to differentiate him from the typical class member." Defendants' Memorandum at 13.
>
> The fact that a named plaintiff employs an investment strategy different from those of the class does not render him atypical because "***it is of no consequence that the putative plaintiffs devised different investment strategies as a consequence of their reliance [on the market]***." *Tolan v. Computervision Corp.*, 696 F. Supp. 771, 780 (D. Mass. 1988); *see Kirby*, 116 F.R.D. 303, 308 (D. Mass. 1987) (named plaintiff's "***investment strategy is of little importance***" to class certification decision).  This is because named plaintiffs "need only show that their claims arise from the same course of conduct that gave rise to the claims of the absent members." Priest, 118 F.R.D. 552, 555 (citing *In re Elscint Ltd. Sec. Litig.*, No. 85-2622-K, slip op. at 18 (D. Mass. June 22, 1987)).

*Id.* at *16-17 (emphasis added).[6]  Third Millenium has submitted the affidavit of Neil Kazaross with its reply memorandum proving that, in fact, it relied on the integrity of the market, and

---

[5] The London Group does not, and cannot, claim that Biogen's securities do not trade in an efficient market. Biogen has over 338 million shares of common stock issued and outstanding, which trades over the Nasdaq National Market, at an average of over 3.7 million shares per day.  *See generally In re Polymedica Corp. Sec. Litig.*, 224 F.R.D. 27, 38-40 (D. Mass. 2004) (Keeton, J.) (discussing the requirements of establishing that a market is efficient for purposes of the Fraud-on-the-Market presumption).

[6] *See also Tolan* 696 F. Supp. at 780 (Most investors . . . act under the assumption that [corporate] information is reflected in the market price of the corporation's stock . . . Thus, the investor who relies on the integrity of a stock's

Biogen's public statements, prior to investing in Biogen securities. *See* Kazaross Aff. at ¶ 7. The London Group has submitted no credible "proof" to the contrary. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). The overwhelming weight of authority within the First Circuit supports Magistrate Judge Bowler's conclusion that Third Millenium and Horatio are adequate and typical. The London Group's citation to two decisions outside of the First Circuit does not render Magistrate Judge Bowler's conclusion on this point "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).

Even more fundamentally, pursuant to Fed. R. Civ. P. 23(a), typicality is a term of art that refers to a movant's claims or defenses. Specifically, Rule 23 requires that: "the ***claims or defenses*** of the representative parties [be] typical of the ***claims or defenses*** of the class." (Emphasis added). The rule does not measure typicality based on a comparison of trading strategies or on the nature of the representative in a categorical sense. In order to show that Third Millenium and Horatio are atypical, the London Group had to have identified a dissimilarity or conflict between the claims or defenses of Third Millenium or Horatio and other class members. The London Group has not even attempted to do this. Rather, the London Group's argument is that Third Millenium and Horatio are firms that trade options, that the average class member is not a firm that trades options, and, therefore, that Third Millenium and Horatio are not typical. That is not how typicality is defined by Rule 23.

In addition, the London Group has not established that Third Millenium and Horatio's trading was atypical or unique. Pursuant to the PSLRA, a class member can challenge the

---

market price shows the necessary causal connection between the misrepresentation and his injury when false or incomplete information have colored the market's perception of the corporation's worth."); *In re Sunbeam Sec. Litig.*, No. 98-8258, 2001 U.S. Dist. LEXIS 25703, at *10 (S.D. Fla. July 3, 2001) ("Defendants argue that day traders, market makers, and short sellers do not rely on the integrity of stock market prices, but rather are motivated

adequacy and typicality of a competing lead plaintiff movant "***only upon proof*** . . . that the presumptively most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) *quoting* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). (emphasis added). The London Group has submitted no evidence showing how the typical Biogen investor traded in Biogen securities. Rather, it assumes that most class members are long-term, buy-and-hold common stock investors. Given the reality of the market today, and the PSLRA's requirement of "proof," the Court should not accept this assumption. *Id.* Approximately 76% of Biogen's common stock is held by institutional investors. It is likely that a material portion of these institutions engaged in trading strategies that are different from, and more sophisticated than, those employed by individual investors. Lead Plaintiff presented evidence showing the behavior of typical purchasers of Biogen stock during the Class Period. *See* Dages Aff. at 8-21. As was demonstrated, many of these institutions were not buy-and-hold investors and Third Millenium and Horatio were typical of other institutions. *See id.*

The Partnoy Declaration does not dispute the analysis in the Dages Affidavit. Rather, Mr. Partnoy makes numerous conclusions that contradict the obvious and indisputable. For example, he claims that Third Millenium engaged in "riskless" arbitrage. Partnoy Decl. at 19. There is no such thing as riskless trading. In paragraph 20 Mr. Partnoy claims that it did not matter to Third Millenium "whether the price of the underlying share went up or down." However, an investor, or trader, particularly a sophisticated one, would not, under any

---

by other trading strategies. ***I find this argument unpersuasive for purposes of fraud on the market analysis***.") (Emphasis added).

circumstances, purchase a stock that it believed would drop, whatever other transactions it undertook based on that belief. If Mr. Partnoy was right, options traders would never lose money, "even if the share price were artificially inflated due to misstatements." Partnoy Decl. at ¶ 20. The record shows that this is incorrect. Moreover, Mr. Partnoy's conclusions are not based on any facts; they are speculative interpretations of *hypothetical* investment strategies that *could* have been employed by Third Millenium. As these matters are outside the record, they should be rejected, if not stricken.

As was already demonstrated, the London Group is no stranger to complex institutional trading strategies. The London Fund's investments are indexed, so that securities are automatically purchased or sold to reflect the rebalancing by the benchmark index to include more or less of a particular security. *See* Biogen Institutional Investor Group Opp. to the London Group's Motion for Particularized Discovery at 18. Indeed, the London Fund's purchase of 31,400 shares occurred on September 30, 2004, the same day the fund rebalanced its investments, which means that its largest purchase of Biogen stock had nothing to do with Biogen's statements. *See id.* at 19. Like Third Millenium and Horatio, the London Fund trades in futures and options. *See id.* Accordingly, the London Fund's trading is no less dissimilar from that of the hypothetical buy-and-hold individual investor than any other institutional investor. The strategies used by Third Millenium and Horatio are typical of those used by other sophisticated institutional investors, who routinely limit risk by trading options and other methods. The most that can be said is that the methods are more sophisticated and complicated than those used by the average individual investor. To deny a lead plaintiff motion on that basis would contravene both the letter and spirit of the PSLRA and on-point First Circuit authority. *See In re Cendant Corp. Litig.*, 264 F.3d at 262 ("Both the Conference Committee Report and

15

the Senate Report state that *the purpose of the legislation was to encourage institutional investors to serve as lead plaintiff.*") (Emphasis added); *Schaffer,* 1996 U.S. Dist. LEXIS 5372, at *16-17.

### A. Lead Plaintiff Has Already Demonstrated Its Commitment To This Litigation

Third Millenium and Horatio's ready cooperation on this uncommonly demanding lead plaintiff process should assure the Court that Lead Plaintiff is strongly motivated to actively participate in this litigation and is willing to expend the necessary resources to ensure that the interests of absent class members are aggressively pursued. Third Millennium, through its Senior Partner, Noel Smith, appeared before the Court at the second lead plaintiff hearing and was available to answer any questions concerning its trading.  Third Millennium was also made available for deposition on two separate occasions, thus providing the London Group with a full opportunity to ask any questions concerning Third Millennium's investments.

The Biogen Institutional Investor Group has already proceeded with the prosecution of this case by conferring with defense counsel on the filing of the consolidated class action complaint and the related briefing schedule on the motion to dismiss, and taking steps to preserve documents and other evidence.  In addition, Third Millennium and Horatio Capital, as well as Lead Counsel here, are currently prosecuting the related securities class action against Elan Corporation plc ("Elan") (Civ Nos. 05 Civ. 2860, 05 Civ. 3166 (RJH) (S.D.N.Y.), asserting federal securities law claims against Elan and related defendants that arise from substantially similar circumstances that underlie the claims asserted against the defendants in this case.  The prosecution of both the *Elan* action and the instant action by Third Millennium, Horatio and their counsel, is, and will continue to be, more efficient than if the London Group and its counsel were litigating it. This will inure to the benefit of class members.

16

## **CONCLUSION**

The London Group has not met its heavy burden of demonstrating that Magistrate Judge Bowler's appointment of the Biogen Institutional Investor Group as Lead Plaintiff was "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). Accordingly, the Order must stand.

DATED:  October 25, 2005                           Respectfully submitted,

                                                          **MOULTON & GANS, P.C.**

                                                          By: /s/ Nancy Freeman Gans
                                                          Nancy Freeman Gans, BBO #184540
                                                          33 Broad Street, Suite 1100
                                                          Boston, MA  02109
                                                          Telephone:  (617) 369-7979

                                                          *Liaison Counsel*

                                                          **MILBERG WEISS BERSHAD**
                                                            **& SCHULMAN LLP**
                                                          Sanford P. Dumain
                                                          Richard H. Weiss
                                                          Ann M. Lipton
                                                          Shannon Hopkins
                                                          One Pennsylvania Plaza
                                                          New York, NY 10119
                                                          (212) 594-5300

                                                          **ENTWISTLE & CAPPUCCI LLP**
                                                          Vincent R. Cappucci
                                                          Stephen D. Oestreich
                                                          Robert N. Cappucci
                                                          299 Park Avenue
                                                          New York, NY  10171
                                                          (212) 894-7200

                                                          *Co-Lead Counsel*

## CERTIFICATE OF SERVICE

I, Andrei Rado, hereby certify that a true copy of the above document was served upon the attorney of record for each party.

/s/ Andrei Rado
Andrei Rado

Case 1:05-cv-10400-WGY   Document 65   Filed 10/25/2005   Page 19 of 19