### UNITED STATES DISTRICT COURT
### DISTRICT OF MASSACHUSETTS

)
**IN RE BIOGEN IDEC, INC.**                )          **CIVIL ACTION**
**SECURITIES LITIGATION**                )          **NO.  05-10400-RCL**
)

### MEMORANDUM IN SUPPORT OF DEFENDANT
### THOMAS J. BUCKNUM'S MOTION TO DISMISS
### THE CONSOLIDATED CLASS ACTION COMPLAINT

### INTRODUCTION

Defendant, Thomas J. Bucknum ("Bucknum"), submits the following memorandum of law in support of his motion to dismiss the Consolidated Class Action Complaint ("Amended Complaint") filed by Lead Plaintiffs ("Plaintiffs").  In that Amended Complaint, which weighs in at a preposterous 149 pages and 435 paragraphs, Plaintiffs have asserted only one claim against Bucknum:  Count III, asserting that Bucknum is liable to contemporaneous traders under Section 20A of The Securities Exchange Act of 1934 ("Section 20A;" the "Exchange Act") for allegedly selling shares in Biogen Idec, Inc. ("Biogen") while in the possession of material non-public information.  That claim against Bucknum, however, should be dismissed on several, independent grounds.

First, it is an absolute precondition to the maintenance of a claim under Section 20A that a moving party plead and prove that the defendant (Bucknum) committed a predicate violation of the Exchange Act, independent of Section 20A.  Here, it is indisputable that Plaintiffs have not plead (never mind adequately plead) such a predicate

violation against Bucknum.[1]  Instead, Plaintiffs have suggested in a separate filing, without citation to any relevant or proper authority, that they need not plead a predicate violation against Bucknum to maintain a Section 20A claim against him, so long as they have plead a predicate violation against another defendant.  (*See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Revised Motion to Dismiss the Consolidated Class Action Complaint, p. 29).  The suggestion, however, is frivolous.  Having failed to plead a predicate violation against Bucknum, Plaintiffs cannot maintain a Section 20A claim against him.[2]

Second, it is also a prerequisite to the maintenance of the Section 20A claim that Plaintiffs plead, with particularity, facts sufficient to establish that they traded "contemporaneously" with respect to each of the four allegedly wrongful sales by Bucknum.  However, not only have Plaintiffs failed to plead with particularity that they traded contemporaneously with Bucknum, but it is clear from the Amended Complaint that they cannot establish this essential element, which is construed very narrowly in this jurisdiction.  Plaintiffs' failure to satisfy this requirement serves as an independent basis for dismissing the sole claim against Bucknum.

Third, Plaintiffs have failed to allege their Section 20A claim against Bucknum with sufficient specificity to satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Nowhere in Plaintiffs' endless Amended Complaint do they provide any specific

---

[1] As Plaintiffs expressly stated in the Amended Complaint:  "Plaintiffs bring a claim against Defendant Bucknam solely pursuant to Section 20A of the Exchange Act." (Amended Complaint, ¶ 38).

[2] Even if Plaintiffs' suggestion had merit, their claim against Bucknum must still be dismissed, as they have not adequately plead predicate violations against the other defendants.  To that end, Bucknum hereby incorporates the arguments made in support of the motion to dismiss filed by and on behalf of defendants Biogen, James C. Mullen, Burt A. Adelman, Peter N. Kellogg, William H. Rastetter, and William Rohn.

information as to exactly what "inside" information Bucknum allegedly possessed, when he possessed it, how he came to possess it, or, even assuming that he did, how he allegedly used it in furtherance of his own trades. Instead, Plaintiffs make assertions that are entirely conclusory in nature. In fact, as best one can discern from their tortured pleadings, Plaintiffs would imply that because Bucknum sold Biogen shares at a time when the other defendants (referred to as "Individual Defendants" in the Amended Complaint) were allegedly aware of the "true risks" of Tysabri, he is somehow liable for insider trading under Section 20A. Even assuming, *arguendo*, that Plaintiffs had sufficiently plead that these risks with Tysabri existed, that this constituted material information, and that the Individual Defendants were aware of that information and wrongfully failed to disclose it to investors (which is disputed), there is absolutely no basis in the Amended Complaint for connecting that information to Bucknum and his trades.

Finally, regarding the one trade by Bucknum as to which the Amended Complaint provides even the barest of information (the February 18, 2005 trade), Bucknum has fully disgorged all of his profits relating to that trade in a settlement with the United States Securities and Exchange Commission ("SEC") and is entitled, under the express provisions of Section 20A, to a full offset against Plaintiffs. With respect to the February 18, 2005 trade, therefore, Bucknum's disgorgement of all profits to the SEC constitutes a bar to any further recovery by Plaintiffs and an additional reason why that claim must be dismissed.

Indeed, it is obvious that Plaintiffs have only added Bucknum to this action at this late date in the hope of utilizing the mere fact of his settlement with the SEC (pursuant to

which he admitted no wrongdoing) to obscure the deficiencies in their pleadings and claims. Those deficiencies, however, are glaring and fatal and Plaintiffs claim against Bucknum must be dismissed.

## BACKGROUND

On October 13, 2006, over 19 months after the original complaint was filed, Plaintiffs filed the present Amended Complaint purporting to assert three counts: Count I against Biogen and the so-called Individual Defendants (which does <u>not</u> include Bucknum) pursuant to Section 10(b) of the Exchange Act; Count II against the Individual Defendants (which does <u>not</u> include Bucknum) pursuant to Section 20(a) of the Exchange Act; and Count III against the so-called "Section 20A Defendants" (which includes Bucknum) pursuant to Section 20A of the Exchange Act. (Amended Complaint, ¶¶ 39-40, 413-35). Bucknum was not a party defendant prior to the filing of the Amended Complaint.

Notwithstanding the length of the Amended Complaint, it sets forth very few allegations related to Bucknum, and the few that exist are conclusory and inadequate in nature. To put Plaintiffs' claim against Bucknum in proper perspective, however, it is best to start with a summary of the allegations in the Amended Complaint that are <u>not</u> made against him.

At bottom, the Plaintiffs allege that Biogen and the Individual Defendants (again which does <u>not</u> include Bucknum) were aware throughout the purported Class Period of certain risks or safety issues related to the company's product, Tysabri. (*See generally* Amended Complaint). Nowhere in the Amended Complaint do Plaintiffs allege (nor could they) that Bucknum was aware of these alleged risks or safety issues, that he was in

a position to be aware of this alleged information, or that he was capable of understanding the alleged significance of the information even if he was exposed to it. (*Id*.).  Plaintiffs further allege that Biogen and the Individual Defendants withheld this information from investors and instead issued and made misleading public statements about Tysabri and the potential market for that drug.  (*Id*.).  Moreover, Plaintiffs do not allege (nor could they) that Bucknum was engaged in making any such misleading statements.  (*Id*.).  Finally, Plaintiffs allege that the Individual Defendants engaged in this allegedly wrongful conduct in order to, among other things, inflate Biogen's stock price, so that they and other unidentified "Biogen insiders" could sell their personally held shares in the company at inflated prices.  (*Id*.).  Plaintiffs do not allege (nor could they) that Bucknum engaged in this allegedly wrongful conduct for this purpose.  (*Id*.).  Further, plaintiffs fail to even identify him as one of the unidentified "Biogen insiders" who profited from this alleged scheme by the Individual Defendants.  (*Id*.).

Ultimately, Plaintiffs' allegations against Bucknum in the 435 paragraph Amended Complaint are reduced to the bald, non-specific assertion that he sold Biogen stock during the Class Period "while privy to material, non-public information, which had not been disclosed to the investing public, including Plaintiffs and Class members who purchased Biogen common stock contemporaneously with [his] sales . . ."  (Amended Complaint, ¶ 38).  The alleged offending trades by Bucknum took place on May 4, 2004,[3] May 25, 2004, November 30, 2004, and February 18, 2005.  (Amended Complaint, ¶ 391).  Nowhere in the Amended Complaint, however, do Plaintiffs identify the alleged

---

[3] Although a chart on page 135 of the Amended Complaint lists May 4, 2004 as one of the dates on which Bucknum sold Biogen stock, on at least one occasion, this date is seemingly identified as March 4, 2004.  (*See* Amended Complaint, ¶ 394).

"material, non-public information." (*See generally* Amended Complaint). Nor do they (or could they) provide any information to suggest how or when Bucknum came to be privy to that information. (*Id.*). Moreover, at no point do Plaintiffs provide any nexus between his alleged possession of that "material, non-public information" and any trades. (*Id.*).

The only Bucknum trade with respect to which Plaintiffs provide any factual information is a sale on February 18, 2005. (Amended Complaint, ¶¶ 9-10, 339-40, 394). According to the Amended Complaint, Bucknum sold shares on that date after learning at 12:00 p.m. that day in a meeting with other Biogen senior officers that a patient participating in a Tysabri clinical trial had been diagnosed with PML. The Amended Complaint further alleges, however, that Bucknum entered into a civil settlement with the SEC regarding that sale, pursuant to which he disgorged all of his profits from that sale. (Amended Complaint, ¶¶ 10, 340). While Plaintiffs undoubtedly have seized upon that settlement to draw Bucknum into this action and attempt to use the mere fact of that settlement to obscure the failings in their pleadings, they fail to note in their Amended Complaint, though it is clear from the documents that they reference, that Bucknum admitted no wrongdoing as part of that settlement. Moreover, his disgorgement of his profits from that sale forever precludes Plaintiffs from recovering damages against him relating to that sale.

In an effort to satisfy the temporal requirement of their Section 20A claim, Plaintiffs allege in conclusory fashion that they "purchased Biogen common stock contemporaneously with the sales of the Company's stock by the Section 20A Defendants." (Amended Complaint, ¶ 427.) Rather than make specific contemporaneous

trade allegations, Plaintiffs, in one paragraph, simply list 46 different trade dates (some of which span multiple days) and generally state that "Plaintiffs and Class members . . . purchased Biogen common stock contemporaneously with the sales by the Section 20A Defendants on at least the following dates," without identifying which Plaintiff allegedly traded contemporaneously with which Section 20A Defendant on which date(s) and without even identifying whether the Plaintiff purchased or sold the securities. (Amended Complaint, ¶ 430).

Instead of specifically alleging in the text of the Amended Complaint which Plaintiffs' trades were contemporaneous with trades by which particular Section 20A Defendants, the Amended Complaint simply provides for each of the six Plaintiffs (without identification of any particular date or e-filing system document identification number) that each of the Plaintiffs "previously filed a certification in this Court in connection with the Motion of the Biogen Institutional Investor Group for Consolidation, Appointment as Lead Plaintiff, and Approval of Lead Plaintiffs' Selection of Co-Lead Counsel and Liason Counsel . . . reflecting its transactions in Biogen common stock during the Class Period, which is incorporated by reference herein." (Amended Complaint, ¶ 24; *see also* Amended Complaint, ¶¶ 25-29). Having been given little guidance from the Amended Complaint regarding which of the close to 100 docket entries in this case Plaintiffs intended to "incorporate[] by reference," undersigned counsel was finally able to locate a chart prepared by Plaintiffs that purports to list the various dates on which Plaintiffs allegedly purchased and sold Biogen stock during the Class Period. (Amended Complaint, ¶¶ 24-29). The chart was attached as Exhibit B to the "Declaration of Nancy Freeman Gans in Further Support of the Motion of the Biogen

Institutional Investor Group for Consolidation, Appointment of Lead Plaintiff, and

Approval of Lead Plaintiff's Selection of Co-Lead Counsel and Liaison Counsel and in

Opposition to the Other Motions," e-filing document number 33-3, filed in this action on

May 16, 2005 (the "Gans Affidavit").  For the Court's convenience, a true and accurate

copy of the chart attached to the Gans Affidavit is attached hereto as Exhibit A.

## ARGUMENT

## I.    <u>THE STANDARD ON A MOTION TO DISMISS</u>

Although Plaintiffs' well-pleaded allegations (to the extent there are any) are

taken as true solely for purposes of this motion to dismiss under Fed. R. Civ. P. 12(b)(6)

and 12(b)(1), the bald assertions, unsubstantiated conclusions and unsupported

characterizations that permeate the Amended Complaint must be disregarded.  *See, e.g.,*

*In re Credit Suisse First Boston Corp.*, 431 F.3d 36, 45 (1st Cir. 2005) (affirming

dismissal of complaint); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360

F.3d 220, 224 (1st Cir. 2004) (same); *Arruda v. Sears, Roebuck & Co.*, 310 F.3d 13, 18

(1st Cir. 2002) (same); *In re Segue Software, Inc. Sec. Litig.*, 106 F. Supp. 2d 161, 165

(D. Mass. 2000) (dismissing complaint).  It is well-settled that a court should grant a

motion to dismiss where "'it clearly appears, according to the facts alleged, that the

plaintiff cannot recover on any viable theory.'"  *Pomerleau v. West Springfield Pub.*

*School*, 362 F.3d 143, 145 (1st Cir. 2004) (citation omitted); *see also Roeder v. Alpha*

*Indus., Inc.,* 814 F.2d 22, 25 (1st Cir. 1987) (observing dismissal proper where "it

appears beyond doubt that the plaintiff can prove no set of facts in support of his claim

which would entitle him to relief") (quotations and citation omitted).  Here, it is clear that

Plaintiffs' Section 20A claim (their sole claim) against Bucknum is not viable under any

theory and that there are several, independent grounds warranting dismissal of the

Amended Complaint.

## II.    THE AMENDED COMPLAINT FAILS TO STATE A CLAIM AGAINST BUCKNUM UNDER SECTION 20A OF THE EXCHANGE ACT.

Section 20A of the Securities Exchange Act of 1934, pursuant to which Plaintiffs

have asserted their only claim against Bucknum, provides, in pertinent part, as follows:

> Any person who violates any provision of this chapter or the rules or
> regulations thereunder by purchasing or selling a security while in
> possession of material, nonpublic information shall be liable in an action
> in any court of competent jurisdiction to any person who,
> contemporaneously with the purchase or sale of securities that is the
> subject of such violation, has purchased (where such violation is based on
> a sale of securities) or sold (where such violation is based on a purchase of
> securities) securities of the same class.

15 U.S.C. § 78t-1(a).  Thus, to state a claim under Section 20A, Plaintiffs must allege in

the Amended Complaint, with the requisite heightened particularity, (1) that Bucknum

was a corporate insider who traded Biogen stock; (2) that Plaintiffs purchased Biogen

stock contemporaneously with Bucknum's alleged sales; and (3) that Bucknum traded

while in possession of material non-public information, in violation of some provision of

the Exchange Act other than Section 20A.  *Id.  See also In re Parametric Tech. Corp.*

*Sec. Litig.*, 300 F. Supp. 2d 206, 224 (D. Mass. 2001).  As discussed below, Plaintiffs

have failed to satisfy this burden on multiple fronts, any and all of which require

dismissal of the Amended Complaint.

### A.    The Section 20A Claim Against Bucknum Must Be Dismissed Because Plaintiffs Have Not Plead And Cannot Prove That He Committed A Predicate Violation Of The Exchange Act.

Since its enactment in 1988, it has been universally acknowledged that liability

under Section 20A is derivative in nature, and that a plaintiff must adequately plead a

predicate violation of the Exchange Act, separate and distinct from Section 20A itself, to

state a viable claim.  *See Carney v. Cambridge Tech. Partners, Inc.*, 135 F. Supp. 2d 235, 243 (D. Mass. 2001) (observing that it is "quite plain" that "plaintiffs must first adequately plead a predicate violation of the Exchange Act or its rules and regulations" to state a claim under Section 20A); *In re Parametric*, 300 F. Supp. 2d at 224 (noting that "[t]o establish an individual's liability under section 20A, the plaintiff must allege and prove a predicate violation of the Exchange Act"); *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 541 (3d Cir. 1999) (noting that "claims under section 20(A) are derivative, requiring proof of a separate underlying violation of the Exchange Act"); *Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697, 703 (2d Cir. 1994) (rejecting "Jackson National's invitation to disregard the statute's plain language and apply the statute in the absence of an independent violation of the '34 Act"); *In re Verifone Sec. Litig.*, 11 F.3d 865, 872 (9th Cir. 1993) ("Shareholders concede that if they have failed to allege an actionable independent underlying violation of the '34 Act, they similarly cannot maintain a claim under § 20A."); and *Hogan v. Piasecki*, No. 96 C 7399, 1997 WL 260345, at *1 (N.D. Ill. May 7, 1997) (dismissing with prejudice plaintiffs' Section 20A claim due to their complete and utter failure to "set forth [a] claim under any other provision of the 1934 Act").  In the present case, it is undisputed that Plaintiffs have not plead, adequately or otherwise, a predicate violation of the Exchange Act against Bucknum.  The Section 20A claim against him, therefore, fails to satisfy this fundamental requirement and must be dismissed.

Typically, where courts have dismissed Section 20A claims for failure to plead a predicate violation of the Exchange Act, the plaintiffs have at least attempted to plead a predicate violation, only to have that predicate claim dismissed as inadequate.  *See, e.g.,*

*Carney*, 135 F. Supp. 2d at 257 ("Because the plaintiffs have not stated a [viable] claim under Section 10(b), their Section 20A claim also fails."); *In re Parametric*, 300 F. Supp. 2d at 224 (holding that since plaintiffs' attempt to plead a predicate violation under Section 10(b) of the Exchange Act "has been unsuccessful, they are necessarily unable to plead a claim for liability under Section 20A"); *In re Advanta Corp.*, 180 F.3d at 541 ("Because plaintiffs have failed to plead a predicate violation of Section 10(b) or Rule 10b-5, the Section 20(A) claim must also be dismissed."; and *In re Verifone*, 11 F.3d at 872 (dismissing plaintiffs' Section 20A claim after rejecting their predicate claims under Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder). Here, Plaintiffs have not even attempted to plead, never mind <u>adequately</u> plead, a predicate violation against Bucknum (nor could they). (*See* Amended Complaint, ¶ 38 ("Plaintiffs bring a claim against Defendant Bucknum <u>solely pursuant to Section 20A of the Exchange Act</u>.")(emphasis added)). Having unquestionably failed to plead a predicate Exchange Act violation by Bucknum, Plaintiffs' Section 20A claim against him must necessarily fail.

Instead, Plaintiffs, in complete disregard of the language of Section 20A and the controlling case law, suggest that they are not required to assert an independent Exchange Act claim against Bucknum because "Section 20A does not require [that they plead] a predicate Exchange Act violation by ***each*** insider." (Plaintiffs' Memorandum of Law in Opposition to Defendants' Revised Motion to Dismiss the Consolidated Class Action Complaint, p. 29 (emphasis in original)). According to the Plaintiffs, therefore, they need not plead a predicate violation against Bucknum, provided that they have plead a

predicate violation against one or more of the other defendants (i.e., Mullen, Adelman, Kellogg, Rastetter, and/or Rohn).  The contention, however, is wholly without merit.

In support of their legally erroneous position, Plaintiffs baldly cite to Section 20A (15 U.S.C. § 78t-1(a)) and three cases, *Quaak v. Dexia, S.A.*, 445 F. Supp. 2d 130 (D. Mass. 2006); *Johnson v. Aljian*, 394 F. Supp. 2d 1184, 1194-95; and *In re Enron Corp. Derivative ERISA Litig.*, 258 F. Supp. 2d 576, 598 (S.D. Tex. 2003).  (*See* Plaintiffs' Memorandum of Law in Opposition to Defendants' Revised Motion to Dismiss the Consolidated Class Action Complaint, p. 29 and n.31).  Not surprisingly, Plaintiffs have simply cited these four authorities without explaining how any of them support their contention.  The reason is obvious--not even a tortured interpretation of any of this authority could even remotely support Plaintiffs' position.

First, there is nothing in the text of Section 20A that in any way suggests that a plaintiff can rely upon a violation of the Exchange Act by one defendant as the predicate violation to sustain a Section 20A claim against another defendant.  *See* 15 U.S.C. § 78t-1(a).  Moreover, Bucknum is unaware of a single case, including the three cited by Plaintiffs, that have interpreted Section 20A in that fashion.

While Plaintiffs first cite to the *Quaak* case, they failed to even include a jump cite to the page of the case where support for their contention can be found.  Nor could they, since a plain reading of that case reveals that there is none.  In fact, the plaintiffs in *Quaak*, unlike Plaintiffs here, did include in their complaint a predicate claim against the Section 20A defendant in that case under Section 10(b) of the Exchange Act.  *See* 445 F. Supp. 2d at 139, 149-51.  Further, the plaintiffs in *Quaak* asserted their Section 10(b) and 20A claims against a single defendant.  How this case, therefore, could stand for the

proposition that Plaintiffs need not plead a predicate Exchange Act violation against the

Section 20A defendant provided a predicate Exchange Act claim is asserted against

another named defendant, particularly where there was only one defendant in the case, is

difficult to comprehend.

Likewise, there is absolutely nothing in the *Johnson* case cited by Plaintiffs that

supports their facially invalid assertion. *See* 394 F. Supp. 2d 1184. Once again, unlike

the present Plaintiffs, the *Johnson* plaintiffs <u>did</u> include in their complaint a predicate

claim against the Section 20A defendant under Section 10(b) of the Exchange Act, and

the question in that case (unlike in the instant case) was whether the running of the statute

of limitation on the predicate claim barred a claim under Section 20A. *See id.* at 1196.

Indeed, the *Johnson* decision only serves to reinforce the need to plead adequately a

predicate violation to sustain a Section 20A claim. *See id.* ("Unquestionably, Plaintiff

<u>must</u> <u>plead</u> <u>and</u> <u>prove</u> the predicate claim in order to prevail on his § 20A claim . . . .")

(emphasis added).

Finally, nowhere in *In re Enron* cited by Plaintiffs is there support for the

argument that Section 20A allows them to proceed with a Section 20A claim against

Bucknum by virtue of their having plead a predicate claim under the Exchange Act

against another defendant. *See* 258 F. Supp. 2d 576. In *In re Enron*, as in *Quaak* and

*Johnson,* the plaintiffs again asserted an independent claim (pursuant to Section 10(b))

against the Section 20A defendants, and the court recognized that the pleading of such an

independent violation was central to plaintiffs' Section 20A claim. *See id.* at 599 ("To

plead a § 20A cause of action, the plaintiff must . . . allege a requisite independent,

13

predicate violation of the Exchange Act (or its rules and regulations) . . . ."). *In re Enron*, 258 F. Supp. 2d at 599.

In sum, it is an absolute precondition to the maintenance of a Section 20A claim that the moving party plead and prove a predicate violation of the Exchange Act, independent of Section 20A itself, by the defendant against whom the Section 20A claim is brought. It is undisputed that Plaintiffs have failed to clear this most basic hurdle. Their Section 20A claim against Bucknum (their only claim against Bucknum), therefore, must be dismissed.

**B.      Plaintiffs Cannot Satisfy The Contemporaneous Trading Requirement Of Section 20A.**

As previously noted, Section 20A requires that the Plaintiffs allege that their purchase of Biogen stock was appropriately "contemporaneous" with the four allegedly violative sales by Bucknum on (1) May 4, 2004; (2) May 25, 2004; (3) November 30, 2004; and (5) February 18, 2005. *See* 15 U.S.C. §78t-1(a). (Amended Complaint, ¶ 391) For the reasons set forth below, the Plaintiffs failed to satisfy their burden with respect to any of the four transactions and, therefore, lack standing to pursue the present Section 20A claim.

**1.      Courts in the First Circuit require a plaintiff to allege a trade within one day after defendant's transaction.**

Section 20A only provides for a private right of action to buyers and sellers of securities that trade "contemporaneously" with an insider in possession of material nonpublic information. *See* 15 U.S.C. § 78t-1(a). This contemporaneous requirement is a product of the fact that identifying the party in actual privity with the alleged defendant

insider is virtually impossible when dealing with trades that take place in the public

market.  Thus, as one court recently explained:

> [B]y requiring a showing of contemporaneity in the trades by the insider
> and the suing investor, Section 20A seeks to ensure that, where
> contractual privity would otherwise be impractical if not impossible to
> show, there nonetheless was a sufficiently close temporal relationship
> between the trades that the investors interests were implicated by trades
> made by the insider while in possession of material, nonpublic
> information.

*In re MicroStrategy, Inc. Sec. Litig.,* 115 F. Supp. 2d 620, 662, (E.D. Va. 2000).

While different courts have adopted varying timeframes for the contemporaneous

requirement, the "growing trend among district courts in a number of circuits . . . is to

adopt a restrictive reading of the term 'contemporaneous' at least with respect to shares

heavily traded on a national exchange."  *Id.*, quoting from *In re AST Research Sec. Litig.,*

887 F. Supp. 231, 233 (C.D. Cal. 1995).  In describing the reason for a restrictive

temporal requirement, one court stated:

> [A]n evolution of the contemporaneity requirement to require a shorter
> temporal separation between the trades of investors and insiders is
> reasonable, if not inevitable, as the modern realities of the securities
> markets support an increasingly strict application of contemporaneity in
> order at once to satisfy the requirement's privity - substitute function and
> to guard against "mak[ing] the insider liable to all the world."

*Id.* at 663 (citation omitted).

Courts in the First Circuit have followed the trend toward a very restrictive view

of the contemporaneous requirement, and have held that a plaintiff must allege a purchase

of stock on the same day or the next trading day (but in any case, less than two trading

days) from an alleged insider sale to qualify as a contemporaneous trader.  *See Carney*,

135 F. Supp. 2d at 257 n. 10 ("Case law in this circuit holds that an interval of just two

days between a plaintiff's purchase and sales by insiders is sufficient to <u>deny</u> the plaintiff

standing as a contemporaneous trader.") (citing *Backman v. Polaroid Corp.,* 540 F. Supp. 667, 671 (D. Mass. 1982) ("The purchases of Polaroid stock by Anderson 4 days (2 trading days) after the Jurodin sale, and by Model 11 days (7 trading days) after the sale are outside of the period of insider trading; therefore, those plaintiffs lack standing to sue on their claims against Silver and Jurodin. The motions to dismiss must be allowed as to the claims regarding the stock purchases of Anderson and Model."); *see also In re Stratus Computer, Inc. Sec. Litig.*, No. 89-2075-Z, 1992 WL 73555, at *6 (D. Mass. Mar. 27, 1992) (finding plaintiff must allege trade on the "<u>same</u> <u>day</u>" as defendant's trade to be contemporaneous) (emphasis added).

        In addition to the one day temporal requirement, courts in this district and elsewhere have uniformly interpreted the contemporaneous trading requirement to apply only to plaintiff's trades that occur <u>after</u> the alleged wrongful insider transaction. *See, e.g., Backman*, 540 F. Supp. at 670 ("Notwithstanding plaintiffs' allegations of concerted action, Jurodin cannot be liable for purchases which occurred before it sold its 19,600 shares, allegedly upon inside information"); *In re Verifone*, 784 F. Supp. at 1489 ("No liability can attach for trades made by plaintiffs before the insider engages in trading activity."); *In re Enron*, 258 F. Supp. 2d at 600 (observing "the plaintiff's trades must have taken place after the challenged insider trading transaction"); *In re MicroStrategy,* 115 F. Supp. 2d at 664 n.91 ("According to the Complaint, Defendants Saylor, Bansal, Lynch, and Terkowitz traded *after* Plaintiff Schwartz traded.   Schwartz cannot, therefore, raise a Section 20A claim against these Defendants, as her trade was not contemporaneous with these Defendants' trades.") (emphasis in original); *Alfus v. Pyramid Tech. Corp.*, 745 F. Supp. 1511, 1522 (N.D. Cal. 1990) (observing "courts have

interpreted the 'contemporaneous trading' requirement [of Section 20A] quite strictly . . .

a plaintiff's trade must have occurred *after* the wrongful insider transaction") (emphasis

in original).

<blockquote>

**2.    The Amended Complaint fails to allege contemporaneous trades by Plaintiffs as to any of the four allegedly wrongful sales by Bucknum.**

</blockquote>

Notwithstanding the need to plead the contemporaneous trading requirement of

Section 20A with particularity, *see, e.g., Newbronner v. Milken*, 6 F.3d 666, 670 (9th Cir.

1993) ("contemporaneous trading is necessarily a 'circumstance constituting fraud'

because an insider can not be liable to a private party under Section 10(b) and Rule 10b-5

without having traded contemporaneously; thus, contemporaneous trading must be

pleaded with particularity under [Rule 9(b)]."), the Amended Complaint simply alleges in

conclusory fashion that Plaintiffs "purchased Biogen common stock contemporaneously

with the sales of the Company's stock by the Section 20A Defendants" (Amended

Complaint, ¶ 427).  Nowhere in the 435-paragraph Amended Complaint do Plaintiffs

identify the actual dates of the alleged "contemporaneous" trades with Bucknum.  (*See*

*generally* Amended Complaint).  Moreover, rather than specific contemporaneous trade

allegations, the Amended Complaint, in paragraph 430, simply lists 46 different trade

dates (some of which span multiple days) and generally provides that "Plaintiffs and

Class members" "purchased Biogen common stock contemporaneously" with "the

Section 20A Defendants" collectively on these 46 different trade dates, wholly failing to

identify which Plaintiff allegedly traded contemporaneously with which Section 20A

Defendant on which date.  (Amended Complaint, ¶ 430).  This absence of particularity

alone should be fatal to their Section 20A claim.  *See Carney*, 135 F. Supp. 2d at 257

17

n.10 ("The plaintiffs' claim also fails for an independent reason: the complaint does not allege when the Lead Plaintiffs' stock purchases were made.").

A comparison of the scant information concerning Plaintiffs' trades with the four alleged sales of Biogen stock by Bucknum on (a) May 4, 2004, (b) May 25, 2004, (c) November 30, 2004, and (d) February 18, 2005, as set forth on page 135 of the Amended Complaint, makes clear that Plaintiffs have failed to allege that plaintiffs traded contemporaneously with respect to any of the four alleged sales by Bucknum.

### a. Bucknum's May 4, 2004 Sale.

As previously noted, paragraph 430 of the Amended Complaint lists 46 dates on which the Plaintiffs allegedly contemporaneously traded with the various Section 20A Defendants. Neither May 4, 2004, nor any date within 10 days of May 4, 2004, is identified in paragraph 430 of the Amended Complaint.[4] The chart purportedly incorporated by reference into the Amended Complaint (a copy of which is attached hereto as Exhibit A) also fails to identify a purchase by plaintiffs contemporaneous to the May 4, 2004 alleged sale by Bucknum. The earliest purchase by Plaintiffs after May 4, 2004, identified in the chart was also a purchase on May 14, 2004. Having failed to identify an allegedly contemporaneous purchase by plaintiffs within 10 days of May 4, 2004, the Amended Complaint fails to state a claim under Section 20A with respect to the alleged sale by Bucknum on May 4, 2004.[5]

_____

[4] Paragraph 430 identifies a trade allegedly made by a Plaintiff on May 14, 2004.

[5] As noted earlier, the Amended Complaint (at ¶ 394) appears to contain a typographical error and refers to the alleged sale on May 4, 2004, as being made on March 4, 2004. Even assuming plaintiffs intended to allege a sale by Bucknum on March 4, 2004, however, the claim would similarly fail. Neither March 4, 2004, nor any date within 26 days of March 4, 2004, is identified in paragraph 430. The date closest to March 4, 2004, is March 31, 2004, 27 days later. Although paragraph 430 identifies a March 3, 2004

### b.    Bucknum's May 25, 2004 Sale.

Paragraph 430 of the Amended Complaint also fails to identify a trade by any Plaintiff contemporaneous to the allegedly wrongful sale of stock by Bucknum on May 25, 2004.  A June 2, 2004 trade is the earliest transaction on or after May 25, 2004 identified in either paragraph 430 of Amended Complaint or the chart attached as Exhibit A.  A trade on June 2, 2004, a full eight days after the May 25, 2004 sale by Bucknum clearly fails to meet the one day contemporaneous requirement articulated by courts in this Circuit.

### c.    Bucknum's November 30, 2004 Sale.

The Amended Complaint also fails to state a claim with respect to the allegedly wrongful trade by Bucknum on November 30, 2004.  Although paragraph 430 of the Amended Complaint, as well as the chart attached as Exhibit A, identifies a purported purchase by Plaintiffs on December 2, 2004, that transaction is also beyond the one day insider trading window established by this Court.  Thus, though Plaintiffs have come closer to satisfying the contemporaneous requirement with respect to the November 30, 2004 sale by Bucknum, they have nonetheless failed to satisfy the stringent one-day contemporaneity requirement established in this district.

### d.    Bucknum's February 18, 2005 Sale.

Although paragraph 430 of the Amended Complaint identifies February 18, 2005, as the date on which an allegedly contemporaneous trade occurred, a review of the more

---

transaction, this trade could not be considered a trade contemporaneous with Bucknum's March 4, 2004 sales because, as explained above, it occurred prior to the allegedly wrongful trade.  Moreover, like paragraph 430 of the Amended Complaint, the chart attached hereto as Exhibit A also fails to identify March 4, 2004 or any date earlier than March 31, 2004.

detailed chart attached as Exhibit A, makes clear that the trades by Plaintiffs on February 18, 2005 were <u>sales</u> of Biogen stock, not purchases of that stock.  As noted hereinabove, however, to satisfy the contemporaneity requirement with respect to Bucknum's <u>sale</u> of stock on February 18, 2005, Plaintiffs must allege a <u>purchase</u> made contemporaneous with the Bucknum sale.  *See* 15 U.S.C. §78t-1(a).  The purchase closest in time to the February 18, 2005 sale by Bucknum is identified in the chart attached as Exhibit A, a purchase on February 22, 2005, four full days after the allegedly wrongful sale and well beyond the one day contemporaneity requirement.  Like the transactions on May 4, 2004, May 25, 2004, and November 30, 2004, the allegedly wrongful trade by Bucknum on February 18, 2005 must be dismissed for failure to meet the contemporaneity requirement of Section 20A.

**III.    PLAINTIFFS HAVE FAILED TO PLEAD THEIR SECTION 20A CLAIM AGAINST BUCKNUM WITH THE HEIGHTENED PARTICULARITY REQUIRED BY RULE 9(B).**

Because Plaintiffs' Section 20A claim against Bucknum sounds in fraud, the Amended Complaint is subject to the heightened pleading requirements of Rule 9(b).  *See* Fed R. Civ. P. 9(b); *see also, Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F. Supp. 1101, 1131 (W.D. Mich. 1996) ("Section 20A claims sound in fraud and must therefore be pled with particularity under Fed. R. Civ. P. 9(b)."); *AST Research Sec. Litig.*, 887 F. Supp. 231, 235 (C.D. Cal. 1995) (similar).  Here, Plaintiffs have completely and utterly failed to plead their Section 20A claim with the requisite particularity. Indeed, Plaintiffs have provided virtually no particularity at all.  Instead, they rely upon

purely conclusory allegations, which are insufficient to adequately plead a Section 20A claim.[6]

        With the exception of certain minimal facts provided with respect to the February 18, 2005 trade, Plaintiffs provide no specific information as to exactly what "inside" information Bucknum allegedly possessed, when he possessed it, how he came to possess it, whether he was in a position, or otherwise had the capacity, to understand the implication of it, or, even assuming that he did, how he allegedly used it in furtherance of his own trades.  Instead, Plaintiffs appear to hope that the Court's view of their allegations (or lack thereof) against Bucknum will be blurred by the endless allegations in the Amended Complaint that Biogen and the Individual Defendants were aware of certain risks or safety issues with Tysabri and withheld that information from investors, while making misleading public statements about Tysabri and the potential market for that drug.  While they provide no nexus between Bucknum and this alleged information and these alleged misleading statements, they either hope that the Court does not notice or apparently would imply that because Bucknum sold Biogen shares at a time when the Individual Defendants were allegedly aware of the "true risks" of Tysabri, he is somehow liable for insider trading under Section 20A.  In either case, Plaintiffs have failed to plead a Section 20A claim against Bucknum with proper particularity.  Even assuming,

---

[6] The Amended Complaint does not even come close to alleging facts, with specificity, sufficient to show that Bucknum violated the Exchange Act through insider trading, such as alleging that Bucknum traded with the requisite scienter.  *See In re Atlantic Fin. Mgt., Inc. Sec. Litig.*, MDL No. 584, 1988 WL 163038, at *2 (D. Mass. Dec. 6, 1988) ("In order to prove that a corporate insider engaged in prohibited insider trading, a plaintiff must show (1) that the defendant possessed material inside information which the investing public did not; and (2) that he acted with scienter when he sold his shares in possession of that knowledge; and (3) that the plaintiff trade contemporaneously with him, and hence was injured thereby." (citing *S.E.C. v. MacDonald*, 699 F.2d 47 (1st Cir. 1983)).

therefore, that they can satisfy the predicate Exchange Act violation and contemporaneity requirements (which they can't), this serves as an independent basis for dismissing Plaintiffs' claim.

IV.    **BUCKNUM HAS ALREADY DISGORGED ANY PROFITS HE RECEIVED RELATED TO HIS FEBRUARY 18, 2005 TRADE, AND THUS, PLAINTIFFS MAY NOT RECOVER ANY DAMAGES REGARDING THIS TRADE.**

The fact that Bucknum has disgorged all profits he received relating to his February 18, 2005 sale of Biogen stock constitutes an independent basis for dismissing the Section 20A claim as to that transaction.  Section 20A expressly provides as follows: "[t]he total amount of damages imposed against any person under [Section 20A] shall be diminished by the amounts, if any, that such person may be required to disgorge, pursuant to a court order obtained at the instance of the [SEC] in a proceeding brought under section 78u(d) of this title relating to the same transaction or transactions."  15 U.S.C. § 78t-1(b)(2).  Additionally, Section 20A provides that "[t]he total amount of damages imposed [under Section 20A] shall no exceed the profit gained or loss avoided in the transaction or transactions that are the subject of the violation."  15 U.S.C. § 78t-1(b)(1); *see also In re Enron*, 258 F. Supp. 2d at 601.

Plaintiffs concede in the Amended Complaint that Bucknum has already disgorged all profits relating to his February 18, 2005 transaction as part of a settlement agreement with the SEC.  *Compare* Amended Complaint, ¶¶ 10, 340 (discussing SEC settlement and Bucknum's payment to SEC of "$3 million in disgorgement, interest and penalties") and Amended Complaint, ¶ 394 (alleging Bucknum made a profit of approximately *$1.9* million from his February 18, 2005 trade), *with* Exhibit B, Final Judgment, at 3 (ordering Bucknum to disgorge "*$1,938,465,* representing profits gained"

from Bucknum's February 18, 2005 trade) (emphasis added).  Thus, no damages are further recoverable from Bucknum under Section 20A relating to the February 18, 2005 transaction.  *See* Donald C. Langevoort, 18 Insider Trading Regulation, Enforcement and Prevention § 9.6 (2006) ("To the extent the SEC has already obtained full disgorgement, the ability to recover disappears entirely.").

### CONCLUSION

For the foregoing reasons, the Court should grant this present motion and dismiss Count III of the Amended Complaint against Bucknum with prejudice.

Respectfully submitted,

/s/  Mark A. Berthiaume
Mark A. Berthiaume (BBO 041715)
Timothy E. Maguire (BBO #630773)
Edward E. Hale, Jr. (BBO #651272)
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
Tel:  (617) 310-6000
Fax:  (617) 310-6001

Dated: January 10, 2007

### CERTIFICATE OF SERVICE

I, Edward E. Hale, Jr., hereby certify that on January 10, 2007, a true copy of the foregoing document was filed through the ECF system and served electronically upon registered ECF participants as identified on the Notice of Electronic Filing, and I further certify that paper copies of the foregoing document will be sent to counsel of record not registered with ECF on January 10, 2007.

/s/ Edward E. Hale, Jr.
Edward E. Hale, Jr.

# EXHIBIT A

Class Period: 02/18/04 - 02/25/05

Hold price: $37.0870

Case 1:05-cv-10400-RCL    Document 33    Filed 05/16/2005    Page 1 of 13

Biogen Idec, Inc. (NasdaqNM:BIIB)

| | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS (1) | | | | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PLAINTIFF | DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | | | |
| **NEW JERSEY CARPENTERS PENSION** | | | | | | | | | | | |
| | 05/14/04 | 300 | 59.0470 | 17,714.10 | 12/15/04 | 1,400 | 65.3682 | 91,515.48 | (1,100) | (40,795.75) | 33,005.63 |
| | 06/02/04 | 600 | 62.8380 | 37,702.80 | 01/20/05 | 1,100 | 67.4972 | 74,246.92 | (600) | (18,543.52) | 18,000.60 |
| | 06/10/04 | 500 | 59.6315 | 29,815.75 | 03/14/05 | 1,100 | 38.8955 | 42,895.05 | (600) | (22,252.23) | (9,172.93) |
| | 06/21/04 | 500 | 57.7320 | 28,866.00 | 03/22/05 | 1,100 | 38.6471 | 42,511.81 | (600) | (22,252.23) | (8,606.42) |
| | 06/29/04 | 500 | 62.6740 | 31,337.00 | | | | | 500 | 18,543.52 | (12,793.48) |
| | 07/08/04 | 300 | 63.1941 | 18,958.23 | | | | | 300 | 11,126.11 | (7,832.12) |
| | 07/16/04 | 500 | 58.6929 | 29,346.45 | | | | | 500 | 18,543.52 | (10,802.93) |
| | 07/26/04 | 500 | 53.5107 | 26,755.35 | | | | | 500 | 18,543.52 | (8,211.83) |
| | 08/27/04 | 700 | 60.6706 | 42,469.42 | | | | | 700 | 25,960.93 | (16,508.49) |
| | 09/08/04 | 1,400 | 60.3911 | 84,547.54 | | | | | 1,400 | 51,921.86 | (32,625.68) |
| | 09/24/04 | 1,500 | 60.2917 | 90,437.55 | | | | | 1,500 | 55,630.57 | (34,806.98) |
| | 10/05/04 | 1,200 | 62.2071 | 74,646.52 | | | | | 1,200 | 44,504.45 | (30,144.07) |
| | 10/21/04 | 1,200 | 57.6654 | 69,198.48 | | | | | 1,200 | 44,504.45 | (24,694.03) |
| | 11/24/04 | 1,100 | 58.4870 | 64,335.70 | | | | | 1,100 | 40,795.75 | (23,539.95) |
| **NEW JERSEY CARPENTERS PENSION Totals** | | 10,800 | | 646,230.89 | | 4,700 | | 251,169.26 | 6,100 | 226,230.98 | (168,732.65) |
| **NEW JERSEY CARPENTERS ANNUITY** | | | | | | | | | | | |
| | 05/14/04 | 200 | 59.0400 | 11,808.00 | 12/15/04 | 700 | 65.3682 | 45,757.74 | (500) | (18,543.52) | 15,406.22 |
| | 06/02/04 | 400 | 62.8380 | 25,135.20 | 01/11/05 | 600 | 66.2042 | 39,722.52 | (200) | (7,417.41) | 7,169.91 |
| | 06/10/04 | 300 | 59.6315 | 17,889.45 | 03/14/05 | 700 | 38.9955 | 27,296.85 | (400) | (14,834.82) | (5,427.42) |
| | 06/21/04 | 300 | 57.7320 | 17,319.60 | 03/22/05 | 700 | 38.8471 | 27,052.97 | (400) | (14,834.82) | (5,101.45) |
| | 06/29/04 | 300 | 62.6740 | 18,802.20 | | | | | 300 | 11,126.11 | (5,221.41) |
| | 07/08/04 | 200 | 63.1941 | 12,638.82 | | | | | 200 | 7,417.41 | (7,676.09) |
| | 07/16/04 | 300 | 58.6929 | 17,607.87 | | | | | 300 | 11,126.11 | (6,481.76) |
| | 07/26/04 | 300 | 53.5107 | 16,053.21 | | | | | 300 | 11,126.11 | (4,927.10) |
| | 08/27/04 | 500 | 60.6706 | 30,335.30 | | | | | 300 | 11,126.11 | (11,791.78) |
| | 09/08/04 | 800 | 60.3911 | 48,312.88 | | | | | 800 | 29,669.64 | (18,643.24) |
| | 09/24/04 | 900 | 60.2917 | 54,262.53 | | | | | 900 | 33,378.34 | (20,884.19) |
| | 10/05/04 | 800 | 62.2071 | 49,765.68 | | | | | 800 | 29,669.64 | (20,086.04) |
| | 10/21/04 | 700 | 57.6654 | 40,365.78 | | | | | 700 | 25,960.93 | (14,404.85) |
| | 11/16/04 | 600 | 58.5924 | 35,155.44 | | | | | 600 | 22,252.23 | (12,903.21) |
| **NEW JERSEY CARPENTERS ANNUITY Totals** | | 6,600 | | 395,451.96 | | 2,700 | | 139,830.08 | 3,900 | 144,639.48 | (110,982.40) |
| **NJ CARPENTERS ANNUITY & PENSION TOTALS** | | 17,400 | | 1,041,584.85 | | 7,400 | | 390,999.34 | 10,000 | 370,870.45 | (279,715.06) |
| Folksam Asset Management | pre-class | 16,270 | | | 03/03/04 | 442 | 57.8004 | 25,547.78 | (2,119) | (78,587.45) | 56,793.49 |
| | 02/18/04 | 358 | 51.3604 | 18,387.02 | 07/01/04 | 2,156 | 62.0783 | 133,840.82 | 1,737 | 64,420.20 | (34,436.83) |
| | 03/03/04 | 2,157 | 57.9184 | 124,929.91 | 07/01/04 | 4,799 | 62.0783 | 297,913.78 | 4,171 | 154,690.07 | (84,279.13) |
| | 03/03/04 | 4,798 | 57.9184 | 277,892.29 | 07/01/04 | 8,873 | 62.0783 | 550,820.79 | 9,084 | 336,898.72 | (183,341.19) |
| | 03/03/04 | 10,500 | 57.9184 | 608,142.79 | Total | 16,270 | | | 360 | 13,351.34 | (7,199.43) |
| | 03/03/04 | 479 | 57.9184 | 27,742.90 | 07/01/04 | 2,477 | 62.0783 | 153,767.96 | (2,008) | (74,470.79) | 60,379.84 |
| | 03/03/04 | 66 | 57.9183 | 3,822.61 | 07/01/04 | 420 | 62.0783 | 26,072.88 | (1,547) | (57,373.66) | 70,176.88 |
| | 03/03/04 | 2,696 | 57.9184 | 156,147.90 | 07/01/04 | 627 | 62.0783 | 38,923.09 | (8,461) | (313,793.49) | 271,063.78 |
| | 03/03/04 | 2,139 | 57.9184 | 123,887.37 | 07/12/04 | 1,416 | 60.4381 | 87,902.88 | 153 | 5,674.32 | 1,061.37 |
| | 03/03/04 | 628 | 57.9184 | 36,372.73 | 01/03/05 | 119 | 60.4381 | 7,192.13 | 777 | 28,816.63 | (11,409.67) |
| | 03/03/04 | 1,311 | 57.9184 | 75,930.98 | 01/03/05 | 2,074 | 66.8627 | 136,673.24 | | | |
| | | | | | 01/03/05 | 4,243 | 66.8627 | 283,698.44 | | | |
| | | | | | 01/03/05 | 10,600 | 66.8627 | 708,744.64 | | | |
| | | | | | 01/03/05 | 475 | 66.8627 | 31,759.78 | | | |
| | | | | | 01/03/05 | 534 | 66.8627 | 35,704.68 | | | |

Case 1:05-cv-10400-RCL    Document 33    Filed 05/16/2005    Page 2 of 13

Biogen Idec, Inc. (NasdaqNM:BIIB)

Class Period: 02/18/04 - 02/25/05

Hold price:   $37.0870

| PLAINTIFF | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS (1) | | | | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | | | |
| | 03/17/04 | 595 | 52.4435 | 31,203.87 | 01/03/05 | 1,361 | 66.8627 | 91,000.13 | (766) | (28,408.68) | 31,387.58 |
| | 03/31/04 | 1,058 | 56.0420 | 59,292.44 | 01/24/05 | 2,352 | 64.1365 | 150,849.15 | (1,294) | (47,990.64) | 43,566.07 |
| | 04/02/04 | 535 | 57.7719 | 30,907.98 | 01/24/05 | 4,572 | 64.1365 | 293,232.29 | (4,037) | (149,720.40) | 112,603.91 |
| | 04/02/04 | 187 | 57.7719 | 10,803.35 | 01/24/05 | 11,871 | 64.1365 | 761,364.93 | (11,684) | (433,325.04) | 317,236.54 |
| | 06/03/04 | 1,004 | 62.2717 | 62,520.76 | 01/24/05 | 498 | 64.1365 | 31,940.00 | 506 | 18,766.05 | (11,814.72) |
| | 06/03/04 | 1,222 | 62.2717 | 76,095.98 | 01/24/05 | 561 | 64.1366 | 35,980.61 | 661 | 24,514.54 | (15,600.63) |
| | 06/16/04 | 744 | 59.3938 | 44,188.85 | 01/24/05 | 1,613 | 64.1365 | 103,452.25 | (198) | (7,343.24) | 27,034.66 |
| | 07/07/04 | 61 | 62.1520 | 3,791.27 | 01/27/05 | 259 | 63.7902 | 16,521.65 | (869) | (32,228.64) | 5,387.15 |
| | 08/27/04 | 2,023 | 60.4715 | 122,333.87 | 01/27/05 | 504 | 63.7901 | 32,150.23 | 1,519 | 56,335.22 | (33,846.42) |
| | 08/27/04 | 4,502 | 60.4715 | 272,242.74 | 01/27/05 | 1,307 | 63.7902 | 83,373.72 | 3,195 | 118,493.11 | (70,375.91) |
| | 08/27/04 | 10,392 | 60.4715 | 628,419.94 | 01/27/05 | 55 | 63.7902 | 3,508.46 | 10,337 | 383,368.79 | (241,542.69) |
| | 08/27/04 | 395 | 60.4715 | 23,886.24 | 01/27/05 | 62 | 63.7902 | 3,954.99 | 333 | 12,349.89 | (7,581.26) |
| | 08/27/04 | 537 | 60.4715 | 32,473.20 | 01/27/05 | 177 | 63.7901 | 11,290.85 | 360 | 13,351.34 | (7,831.01) |
| | 08/27/04 | 1,329 | 60.4715 | 80,366.64 | 04/08/05 | 72 | 37.7476 | 2,717.83 | 1,257 | 46,618.42 | (31,030.40) |
| | 09/03/04 | 792 | 61.4505 | 48,668.79 | | | | | 792 | 29,372.84 | (19,295.85) |
| | 10/06/04 | 2,899 | 61.8728 | 179,369.28 | | | | | 2,899 | 107,515.34 | (71,853.94) |
| | 12/08/04 | 863 | 64.1834 | 55,390.25 | | | | | 863 | 32,006.12 | (23,384.13) |
| | 12/08/04 | 152 | 63.3032 | 9,622.09 | | | | | 152 | 5,637.23 | (3,984.86) |
| | 12/08/04 | 983 | 64.1834 | 63,092.26 | | | | | 983 | 36,456.57 | (26,635.69) |
| | 12/08/04 | 8,387 | 64.1834 | 538,305.97 | | | | | 8,387 | 311,049.05 | (227,256.92) |
| | 12/20/04 | 320 | 65.1887 | 20,860.38 | | | | | 320 | 11,867.85 | (8,992.53) |
| | 12/20/04 | 1,573 | 65.1887 | 102,541.80 | | | | | 1,573 | 58,337.92 | (44,203.88) |
| | 12/20/04 | 44 | 65.1886 | 2,868.30 | | | | | 44 | 1,631.83 | (1,236.47) |
| | 12/20/04 | 70 | 65.1887 | 4,563.21 | | | | | 70 | 2,596.09 | (1,967.12) |
| | 12/20/04 | 208 | 65.1887 | 13,559.25 | | | | | 208 | 7,714.11 | (5,845.14) |
| | 01/10/05 | 1,091 | 66.5792 | 72,637.88 | | | | | 1,091 | 40,461.97 | (32,175.91) |
| | 01/10/05 | 1,924 | 66.5792 | 128,098.32 | | | | | 1,924 | 71,355.48 | (56,742.84) |
| | 01/10/05 | 5,378 | 66.5792 | 358,062.79 | | | | | 5,378 | 199,454.13 | (158,608.66) |
| | 01/10/05 | 198 | 66.5791 | 13,182.67 | | | | | 198 | 7,343.24 | (5,839.44) |
| | 01/10/05 | 223 | 66.5791 | 14,847.15 | | | | | 223 | 8,270.41 | (6,576.74) |
| | 01/10/05 | 803 | 66.5792 | 53,463.07 | | | | | 803 | 29,780.90 | (23,682.17) |
| | 01/18/05 | 1,393 | 67.3836 | 93,865.38 | | | | | 1,393 | 51,662.25 | (42,203.13) |
| | 01/18/05 | 2,708 | 67.3836 | 182,474.83 | | | | | 2,708 | 100,431.72 | (82,043.11) |
| | 01/18/05 | 7,031 | 67.3836 | 473,774.21 | | | | | 7,031 | 260,759.02 | (213,015.19) |
| | 01/18/05 | 295 | 67.3836 | 19,878.17 | | | | | 295 | 10,940.68 | (8,937.49) |
| | 01/18/05 | 332 | 67.3836 | 22,371.36 | | | | | 332 | 12,312.80 | (10,058.46) |
| | 01/18/05 | 955 | 67.3836 | 64,351.36 | | | | | 955 | 35,418.13 | (28,933.23) |
| | 02/02/05 | 385 | 64.6831 | 24,902.99 | | | | | 385 | 14,278.51 | (10,624.48) |
| **Folksam Asset Management Totals** | | **88,723** | | **5,492,535.49** | | **48,249** | | **3,133,776.81** | **40,474** | **1,501,061.08** | **(857,697.61)** |
| Third Millennium Trading LLP | pre-class | 38,000 | | | | | | | | | |
| | | | | | 02/18/04 | 1,000 | 35.0000 | 35,000.00 | | | |
| | | | | | 02/19/04 | 800 | 35.0000 | 28,000.00 | | | |
| | | | | | 02/20/04 | 3,700 | 35.0000 | 129,500.00 | | | |
| | | | | | 02/20/04 | 25,500 | 35.0000 | 892,500.00 | | | |
| | | | | | 03/18/04 | 100 | 53.2500 | 5,325.00 | | | |
| | | | | | 03/18/04 | 608 | 53.2600 | 32,376.00 | | | |
| | | | | | 03/18/04 | 292 | 53.2600 | 15,551.92 | | | |
| | | | | | 03/18/04 | 100 | 53.2500 | 5,325.00 | | | |
| | | | | | 03/18/04 | 1,900 | 53.2500 | 101,175.00 | | | |
| | | | | | 03/18/04 | 200 | 53.2500 | 10,650.00 | | | |
| | | | | | 03/18/04 | 100 | 53.2500 | 5,325.00 | | | |
| | | | | | 03/18/04 | 8 | 53.2500 | 426.00 | | | |

Class Period: 02/18/04 - 02/25/05 · Case 1:05-cv-10400-RCL    Document 33    Filed 05/16/2005    Page 3 of 13

Biogen Idec, Inc. (NasdaqNM:BIIB)

Hold price: $37.0870

| PLAINTIFF | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS (1) | | | | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | | | |
| | 03/19/04 | 25,000 | 45.0000 | 1,125,000.00 | 03/18/04 | 300 | 53.2500 | 15,975.00 | 0 | 0.00 | 125,000.00 |
| | 04/05/04 | 25 | 57.4500 | 1,436.25 | 03/18/04 | 2,092 | 53.2500 | 111,399.00 | (75) | (2,781.53) | 2,080.22 |
| | 04/05/04 | 1,000 | 57.4500 | 57,450.00 | 03/18/04 | 200 | 53.2500 | 10,650.00 | 700 | 25,960.93 | (12,601.07) |
| | 04/05/04 | 975 | 57.4500 | 56,013.75 | 03/18/04 | 100 | 53.3100 | 5,331.00 | (225) | (8,344.59) | 11,193.66 |
| | 04/16/04 | 1,000 | 59.9000 | 59,900.00 | 03/18/04 | 900 | 53.3100 | 47,979.00 | (1,700) | (12,016.20) | 11,442.84 |
| | 04/16/04 | 100 | 58.8900 | 5,989.00 | 03/18/04 | 100 | 53.2500 | 5,325.00 | (324) | (63,047.98) | 44,327.02 |
| | 04/16/04 | 100 | 58.8800 | 5,988.00 | Total | 38,000 | | | 3,624 | 134,403.45 | 310.00 |
| | 04/16/04 | 3,800 | 59.9000 | 227,620.00 | 04/16/04 | 25,000 | 50.0000 | 1,250,000.00 | 4,300 | 159,474.30 | (82,135.59) |
| | 05/21/04 | 4,700 | 60.0000 | 282,000.00 | 05/27/04 | 100 | 62.9800 | 6,298.00 | 206 | 7,639.93 | (98,545.70) |
| | 05/21/04 | 300 | 60.0000 | 18,000.00 | 05/27/04 | 300 | 62.9600 | 18,888.00 | 24,900 | 923,467.43 | (4,724.77) |
| | 05/21/04 | 25,000 | 60.0000 | 1,500,000.00 | 05/27/04 | 1,200 | 62.9600 | 75,552.00 | (400) | 0.00 | (570,537.57) |
| | 09/22/04 | 100 | 59.9100 | 5,991.00 | 05/27/04 | 1,324 | 62.9600 | 83,359.04 | 200 | (14,834.82) | 5.00 |
| | 09/22/04 | 200 | 59.8900 | 11,978.00 | 05/27/04 | 1,800 | 62.9600 | 113,364.00 | 94 | 7,417.41 | 9,163.18 |
| | 09/22/04 | 300 | 59.9100 | 17,973.00 | 05/27/04 | 100 | 62.9800 | 6,298.00 | 0 | 3,486.18 | (4,559.59) |
| | 09/22/04 | 100 | 59.9100 | 5,991.00 | 06/14/04 | 176 | 62.9600 | 11,080.96 | 400 | 0.00 | (2,145.06) |
| | 09/22/04 | 100 | 58.8900 | 5,989.00 | 06/14/04 | 400 | 59.9500 | 23,980.00 | 0 | 14,834.82 | 6.00 |
| | 09/22/04 | 200 | 59.8900 | 11,978.00 | 06/14/04 | 94 | 59.9500 | 5,635.30 | (600) | 0.00 | 12.00 |
| | 09/22/04 | 500 | 58.8900 | 29,945.00 | 06/14/04 | 100 | 59.9600 | 5,996.00 | 1,000 | (22,252.23) | (9,115.18) |
| | 09/22/04 | 100 | 59.9100 | 5,991.00 | 06/14/04 | 600 | 59.9600 | 35,976.00 | 0 | 37,087.05 | 5.00 |
| | 09/22/04 | 200 | 59.9200 | 11,984.00 | 06/14/04 | 100 | 59.9600 | 5,996.00 | (600) | 0.00 | 13,723.77 |
| | 09/22/04 | 1,800 | 59.9200 | 107,856.00 | 06/14/04 | 6 | 59.9600 | 359.76 | 0 | (22,252.23) | (22,806.95) |
| | 09/22/04 | 100 | 59.9100 | 5,991.00 | 06/14/04 | 100 | 59.9500 | 5,995.00 | 0 | 0.00 | 5.00 |
| | 10/22/04 | 500 | 57.4800 | 28,740.00 | 06/14/04 | 200 | 59.9500 | 11,990.00 | (100) | 0.00 | 14,963.77 |
| | 10/22/04 | 100 | 57.5200 | 5,752.00 | 06/14/04 | 100 | 59.9500 | 5,995.00 | (1,000) | (3,708.70) | 0.00 |
| | 10/22/04 | 500 | 57.4800 | 28,740.00 | 06/14/04 | 100 | 59.9600 | 5,996.00 | 4,800 | (37,087.05) | 244.00 |
| | 10/22/04 | 200 | 57.5200 | 11,504.00 | 06/14/04 | 800 | 59.9500 | 47,960.00 | 438 | 178,017.82 | 486.00 |
| | 10/22/04 | 500 | 57.4800 | 28,740.00 | 06/14/04 | 800 | 59.9500 | 47,960.00 | (100) | 0.00 | 450.00 |
| | 10/22/04 | 100 | 57.4800 | 5,748.00 | 06/18/04 | 100 | 59.9500 | 5,995.00 | 360 | 16,244.13 | 2,219.30 |
| | 10/22/04 | 4,900 | 57.5500 | 281,995.00 | 06/18/04 | 1,100 | 59.9600 | 65,956.00 | (4,560) | (3,708.70) | 21,742.95 |
| | 10/22/04 | 200 | 57.6100 | 11,522.00 | 06/18/04 | 100 | 59.9600 | 5,996.00 | (106) | 13,351.34 | (98,089.18) |
| | 10/22/04 | 500 | 57.6100 | 28,805.00 | 06/18/04 | 200 | 59.9500 | 11,990.00 | (500) | (169,116.83) | 254.00 |
| | 10/22/04 | 100 | 57.5500 | 5,755.00 | 06/18/04 | 500 | 58.3800 | 29,190.00 | 1,000 | (3,931.23) | (8,941.31) |
| | 10/22/04 | 500 | 57.5500 | 28,775.00 | 06/18/04 | 200 | 58.3800 | 11,676.00 | (900) | (18,543.52) | 2,244.30 |
| | 10/22/04 | 100 | 57.5500 | 5,755.00 | 06/18/04 | 1,500 | 58.3800 | 87,570.00 | (950) | 37,087.05 | (7,228.06) |
| | 10/22/04 | 100 | 57.5100 | 5,751.00 | 06/18/04 | 100 | 58.8800 | 5,888.00 | (350) | (33,378.34) | 97,924.47 |
| | 10/22/04 | 100 | 57.5500 | 5,755.00 | 06/18/04 | 200 | 58.8800 | 11,776.00 | (36) | (35,232.69) | 2,426.45 |
| | 10/22/04 | 1,100 | 57.5400 | 63,294.00 | 06/18/04 | 62 | 58.3800 | 3,619.56 | (58) | (12,980.47) | 10,969.48 |
| | 10/22/04 | 100 | 57.6100 | 5,761.00 | 06/18/04 | 200 | 58.5400 | 11,708.00 | (300) | (1,335.13) | (20,329.95) |
| | 10/22/04 | 50 | 57.9000 | 2,895.00 | 06/18/04 | 140 | 58.5400 | 8,195.60 | (238) | (2,151.05) | 19,640.66 |
| | 10/22/04 | 50 | 57.9000 | 2,895.00 | 06/18/04 | 4,660 | 58.5400 | 272,796.40 | | 0.00 | 20,622.31 |
| | 10/22/04 | 400 | 57.8900 | 23,156.00 | 06/18/04 | 206 | 58.7800 | 12,108.68 | | (11,126.11) | 7,636.53 |
| | 10/22/04 | 42 | 57.6300 | 2,420.46 | 06/18/04 | 600 | 58.7800 | 35,268.00 | | 0.00 | 1,132.59 |
| | 10/22/04 | 100 | 57.6100 | 5,761.00 | 06/18/04 | 100 | 58.7700 | 5,877.00 | | (8,826.72) | 1,305.49 |
| | 10/22/04 | 100 | 57.9100 | 5,791.00 | 06/18/04 | 1,000 | 58.7800 | 58,780.00 | | | 116.00 |
| | 10/22/04 | 500 | 57.9000 | 28,950.00 | 06/18/04 | 1,000 | 58.7500 | 58,750.00 | | | 6,434.89 |
| | 10/22/04 | 400 | 57.9000 | 23,160.00 | 06/18/04 | 400 | 58.7800 | 23,512.00 | | | 240.00 |
| | | | | | 06/18/04 | 436 | 58.7700 | 25,623.72 | | | 5,259.72 |
| | | | | | 06/18/04 | 100 | 58.7700 | 5,877.00 | | | |
| | | | | | 06/18/04 | 400 | 58.3800 | 23,352.00 | | | |
| | | | | | 06/18/04 | 500 | 58.3800 | 29,190.00 | | | |
| | | | | | 06/18/04 | 638 | 58.3800 | 37,246.44 | | | |

Case 1:05-cv-10400-RCL    Document 33    Filed 05/16/2005    Page 4 of 13

**Biogen Idec, Inc. (NasdaqNM:BIIB)**

Class Period: 02/18/04 - 02/25/05

Hold price: $37.0870

| PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS (1) | | | | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | | | |
| 10/22/04 | 2,200 | 57.9000 | 127,380.00 | 06/18/04 | 300 | 58.3800 | 17,514.00 | 1,900 | 70,465.39 | (39,400.61) |
| 10/22/04 | 800 | 57.9000 | 46,320.00 | 06/18/04 | 500 | 58.3800 | 29,190.00 | 300 | 11,120.11 | (6,003.89) |
| 10/22/04 | 200 | 57.9000 | 11,580.00 | 06/18/04 | 400 | 58.3800 | 23,352.00 | (200) | (7,417.41) | 4,354.59 |
| 10/22/04 | 400 | 57.5500 | 23,020.00 | 06/18/04 | 800 | 58.8800 | 47,104.00 | (400) | (14,834.82) | 9,249.18 |
| 10/22/04 | 500 | 57.5400 | 28,770.00 | 06/18/04 | 300 | 58.8800 | 17,664.00 | 200 | 7,417.41 | (3,668.59) |
| 10/22/04 | 300 | 57.9000 | 17,370.00 | 06/18/04 | 136 | 58.8800 | 8,007.68 | 164 | 6,082.28 | (3,280.04) |
| 10/22/04 | 100 | 57.5400 | 5,754.00 | 06/18/04 | 300 | 58.8800 | 17,664.00 | (200) | (7,417.41) | 4,492.59 |
| 10/22/04 | 100 | 57.5400 | 5,754.00 | 06/18/04 | 1,700 | 58.8800 | 100,096.00 | (1,600) | (59,339.27) | 35,002.73 |
| 10/22/04 | 100 | 57.6100 | 5,761.00 | 06/18/04 | 800 | 58.8800 | 47,104.00 | (700) | (25,960.93) | 15,382.07 |
| 10/22/04 | 100 | 57.4800 | 5,748.00 | 06/18/04 | 88 | 58.8800 | 5,181.44 | 12 | 445.04 | (121.52) |
| 10/22/04 | 100 | 57.4600 | 5,746.00 | 06/18/04 | 300 | 58.8800 | 17,664.00 | (200) | (7,417.41) | 4,500.59 |
| 10/22/04 | 100 | 57.4800 | 5,748.00 | 06/18/04 | 100 | 58.8800 | 5,888.00 | 0 | 0.00 | 140.00 |
| 10/22/04 | 100 | 57.5200 | 5,752.00 | 06/18/04 | 100 | 58.8800 | 5,888.00 | 0 | 0.00 | 136.00 |
| 10/22/04 | 100 | 57.4600 | 5,746.00 | 06/18/04 | 200 | 58.8800 | 11,776.00 | (100) | (3,708.70) | 2,321.30 |
| 10/22/04 | 100 | 57.4800 | 5,748.00 | 06/18/04 | 176 | 58.8800 | 10,362.88 | (76) | (2,818.62) | 1,796.26 |
| 10/22/04 | 500 | 57.5400 | 28,770.00 | 06/18/04 | 100 | 58.8800 | 5,888.00 | 400 | 14,834.82 | (8,047.18) |
| 10/22/04 | 100 | 57.4800 | 5,748.00 | 06/18/04 | 300 | 58.8800 | 17,664.00 | (200) | (7,417.41) | 4,498.59 |
| 10/22/04 | 100 | 57.4800 | 5,748.00 | 06/18/04 | 300 | 58.8800 | 17,664.00 | (200) | (7,417.41) | 4,498.59 |
| 10/22/04 | 100 | 57.5400 | 5,754.00 | 06/18/04 | 58 | 58.7550 | 3,407.50 | 42 | 1,557.66 | (788.84) |
| 10/22/04 | 500 | 57.5400 | 28,770.00 | 06/18/04 | 23 | 60.7400 | 1,397.02 | 477 | 17,690.52 | (9,682.46) |
| 10/22/04 | 500 | 57.5400 | 28,770.00 | 09/03/04 | 8,300 | 62.3400 | 517,422.00 | (7,800) | (289,278.95) | 199,373.05 |
| 10/25/04 | 100 | 56.1000 | 5,610.00 | 09/16/04 | 200 | 61.5900 | 12,318.00 | (100) | (3,708.70) | 2,999.30 |
| 10/25/04 | 54 | 56.0800 | 3,025.08 | 09/16/04 | 500 | 61.6000 | 30,800.00 | (446) | (16,540.82) | 11,234.10 |
| 10/25/04 | 348 | 56.0800 | 19,515.84 | 09/16/04 | 2,800 | 61.6000 | 172,480.00 | (2,452) | (90,937.44) | 62,026.72 |
| 10/25/04 | 500 | 56.0800 | 28,040.00 | 09/16/04 | 500 | 61.5900 | 30,795.00 | 0 | 0.00 | 2,755.00 |
| 10/25/04 | 400 | 56.0200 | 22,408.00 | 09/16/04 | 59 | 61.6900 | 3,639.71 | 341 | 12,646.68 | (6,121.61) |
| 10/25/04 | 100 | 56.0200 | 5,602.00 | 09/16/04 | 400 | 61.6300 | 24,652.00 | (300) | (11,126.11) | 7,923.89 |
| 10/25/04 | 100 | 56.1000 | 5,610.00 | 09/16/04 | 100 | 61.6000 | 6,160.00 | 0 | 0.00 | 550.00 |
| 10/25/04 | 1,900 | 56.1000 | 106,590.00 | 09/16/04 | 4,900 | 61.6900 | 302,281.00 | (3,000) | (111,261.00) | 84,429.86 |
| 10/25/04 | 2,200 | 56.0200 | 123,244.00 | 09/16/04 | 100 | 61.6900 | 6,169.00 | 2,100 | 77,882.70 | (39,192.20) |
| 10/25/04 | 100 | 56.0200 | 5,602.00 | 09/16/04 | 100 | 61.6900 | 6,169.00 | 0 | 0.00 | 567.00 |
| 10/26/04 | 1,452 | 56.1000 | 81,457.20 | 09/16/04 | 39 | 61.6300 | 2,403.57 | 1,413 | 52,404.00 | (26,649.63) |
| 10/26/04 | 900 | 56.0200 | 50,418.00 | 09/16/04 | 100 | 61.7000 | 6,170.00 | 800 | 29,669.64 | (14,578.36) |
| 10/26/04 | 100 | 56.0900 | 5,609.00 | 09/16/04 | 300 | 61.6100 | 18,483.00 | (200) | (7,417.41) | 5,456.59 |
| 10/26/04 | 200 | 56.0200 | 11,204.00 | 09/16/04 | 100 | 61.5900 | 6,159.00 | 100 | 3,708.70 | (1,336.30) |
| 10/26/04 | 100 | 56.0200 | 5,602.00 | 09/16/04 | 364 | 61.5900 | 22,418.76 | (264) | (9,790.98) | 7,025.78 |
| 10/26/04 | 500 | 56.0200 | 28,010.00 | 09/16/04 | 500 | 61.6100 | 30,805.00 | 0 | 0.00 | 2,795.00 |
| 10/26/04 | 200 | 56.0800 | 11,216.00 | 09/16/04 | 200 | 61.6100 | 12,322.00 | 0 | 0.00 | 1,106.00 |
| 10/26/04 | 200 | 56.0900 | 11,218.00 | 09/16/04 | 36 | 61.5900 | 2,217.24 | 164 | 6,082.28 | (2,918.48) |
| 10/26/04 | 300 | 56.3500 | 16,905.00 | 09/16/04 | 1,400 | 61.6100 | 86,254.00 | (1,100) | (40,795.75) | 28,553.25 |
| 10/26/04 | 100 | 56.3500 | 5,635.00 | 09/16/04 | 184 | 61.7000 | 11,352.80 | (84) | (3,115.31) | 2,602.49 |
| 10/26/04 | 100 | 56.3500 | 5,635.00 | 09/16/04 | 500 | 61.6100 | 30,805.00 | (400) | (14,834.82) | 10,335.18 |
| 10/26/04 | 100 | 56.3400 | 5,634.00 | 09/16/04 | 100 | 61.6100 | 6,161.00 | 0 | 0.00 | 526.00 |
| 10/26/04 | 500 | 56.3400 | 28,170.00 | 09/16/04 | 200 | 61.7200 | 12,344.00 | 300 | 11,126.11 | (4,699.89) |
| 10/26/04 | 1,000 | 56.3400 | 56,340.00 | 09/16/04 | 500 | 61.7100 | 30,855.00 | 500 | 18,543.52 | (6,941.48) |
| 10/26/04 | 850 | 56.3400 | 47,889.00 | 09/16/04 | 100 | 61.7100 | 6,171.00 | 750 | 27,815.26 | (13,902.72) |
| 10/26/04 | 200 | 56.3400 | 11,268.00 | 09/16/04 | 500 | 61.7200 | 30,860.00 | (300) | (11,126.11) | 8,465.89 |
| 10/26/04 | 100 | 56.3400 | 5,634.00 | 09/16/04 | 100 | 61.6900 | 6,169.00 | 0 | 0.00 | 538.00 |
| 10/26/04 | 500 | 56.3500 | 28,175.00 | 09/16/04 | 2,800 | 61.7200 | 172,816.00 | (2,300) | (85,300.10) | 59,340.80 |
| 10/26/04 | 500 | 56.6600 | 28,330.00 | 09/16/04 | 1,300 | 61.6100 | 80,093.00 | (800) | (29,669.64) | 22,093.36 |
| 10/26/04 | 179 | 56.3400 | 10,084.86 | 09/16/04 | 600 | 61.6100 | 36,966.00 | (421) | (15,613.65) | 11,267.49 |
| 10/26/04 | 100 | 56.6500 | 5,665.00 | 09/23/04 | 100 | 59.2800 | 5,928.00 | 0 | 0.00 | 263.00 |

PLAINTIFF

Biogen Idec, Inc. (NasdaqNM:BIIB)

Class Period: 02/18/04 - 02/25/05

Hold price: $37.0870

PLAINTIFF

| | PURCHASE TRANSACTIONS | | | SALES TRANSACTIONS (1) | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
| 10/26/04 | 100 | 56.6600 | 5,666.00 | 09/23/04 | 22 | 59.2800 | 1,304.16 | 78 | 2,892.79 | (1,469.05) |
| 10/26/04 | 100 | 56.6600 | 5,666.00 | 09/23/04 | 409 | 59.2800 | 24,245.52 | (309) | (11,459.90) | 7,119.62 |
| 10/26/04 | 100 | 56.6400 | 5,664.00 | 09/23/04 | 1,469 | 59.2800 | 87,062.32 | (1,369) | (50,772.17) | 30,646.15 |
| 10/26/04 | 100 | 56.6400 | 5,664.00 | 10/08/04 | 200 | 58.1400 | 11,628.00 | (100) | (3,708.70) | 2,255.30 |
| 10/26/04 | 100 | 56.6500 | 5,665.00 | 10/08/04 | 104 | 58.1400 | 6,046.56 | (4) | (148.35) | 233.21 |
| 10/26/04 | 100 | 56.6500 | 5,665.00 | 10/08/04 | 100 | 58.1400 | 5,814.00 | 0 | 0.00 | 149.00 |
| 10/26/04 | 900 | 56.6500 | 50,985.00 | 10/08/04 | 100 | 58.1400 | 5,814.00 | 800 | 29,669.64 | (15,500.36) |
| 10/26/04 | 100 | 56.3400 | 5,634.00 | 10/08/04 | 500 | 58.1500 | 29,075.00 | (400) | (14,834.82) | 8,606.18 |
| 10/26/04 | 36 | 56.6400 | 2,039.04 | 10/08/04 | 100 | 58.1500 | 5,815.00 | (64) | (2,373.57) | 1,402.39 |
| 10/27/04 | 1,000 | 58.2500 | 58,250.00 | 10/08/04 | 200 | 58.1500 | 11,630.00 | 1,300 | 48,213.16 | (25,116.84) |
| 10/27/04 | 1,000 | 58.2500 | 58,250.00 | 10/08/04 | 200 | 58.1500 | 11,630.00 | 800 | 29,669.64 | (16,952.36) |
| 10/27/04 | 100 | 58.2500 | 5,825.00 | 10/08/04 | 500 | 58.1500 | 29,075.00 | (100) | (3,708.70) | 2,096.30 |
| 10/27/04 | 500 | 58.2500 | 29,125.00 | 10/08/04 | 100 | 58.1500 | 5,815.00 | 0 | 0.00 | (50.00) |
| 10/27/04 | 100 | 58.2500 | 5,825.00 | 10/08/04 | 100 | 58.1500 | 5,815.00 | 0 | 0.00 | (10.00) |
| 10/27/04 | 500 | 58.2500 | 29,125.00 | 10/08/04 | 100 | 58.1400 | 5,814.00 | 400 | 14,834.82 | (8,476.18) |
| 10/27/04 | 1,300 | 58.2500 | 75,725.00 | 10/08/04 | 196 | 58.1300 | 11,393.48 | 1,200 | 44,504.45 | (25,406.55) |
| 10/27/04 | 500 | 58.2500 | 29,125.00 | 10/08/04 | 100 | 58.1300 | 5,813.00 | 400 | 14,834.82 | (8,477.18) |
| 10/27/04 | 1,800 | 58.2500 | 104,850.00 | 10/08/04 | 200 | 58.1500 | 11,630.00 | 1,604 | 59,487.62 | (33,968.90) |
| 10/27/04 | 400 | 58.2500 | 23,300.00 | 11/08/04 | 100 | 60.5000 | 6,050.00 | 200 | 7,417.41 | (4,252.59) |
| 10/27/04 | 500 | 58.2500 | 29,125.00 | 11/08/04 | 100 | 60.5000 | 6,050.00 | 400 | 14,834.82 | (8,240.18) |
| 10/27/04 | 300 | 58.2500 | 17,475.00 | 11/08/04 | 1,000 | 60.4600 | 60,460.00 | 200 | 7,417.41 | (4,007.59) |
| 10/28/04 | 700 | 60.1500 | 42,105.00 | 11/08/04 | 100 | 60.5000 | 6,050.00 | (300) | (11,126.11) | 7,228.89 |
| 10/28/04 | 3,619 | 60.1500 | 217,682.65 | 11/08/04 | 800 | 60.4600 | 48,368.00 | 3,519 | 130,509.31 | (81,123.54) |
| 10/28/04 | 200 | 60.1500 | 12,030.00 | 11/08/04 | 400 | 60.4600 | 24,184.00 | (600) | (22,252.23) | 14,085.77 |
| 10/28/04 | 100 | 60.1500 | 6,015.00 | 11/17/04 | 2,700 | 56.8000 | 153,360.00 | (300) | (11,126.11) | 7,042.89 |
| 10/28/04 | 200 | 60.1500 | 12,030.00 | 11/17/04 | 800 | 56.7800 | 45,424.00 | (2,600) | (96,426.32) | 50,918.68 |
| 10/28/04 | 400 | 60.1500 | 24,060.00 | 11/17/04 | 300 | 56.7800 | 17,034.00 | (600) | (22,252.23) | 11,141.77 |
| 10/28/04 | 1,000 | 60.1500 | 60,150.00 | 11/17/04 | 500 | 56.8100 | 28,405.00 | (200) | (7,417.41) | 3,601.59 |
| 10/28/04 | 200 | 60.1500 | 12,030.00 | 11/17/04 | 1,600 | 56.7800 | 90,846.00 | 300 | 11,126.11 | (7,252.89) |
| 10/28/04 | 400 | 60.1500 | 24,060.00 | 11/17/04 | 400 | 56.7800 | 22,712.00 | (100) | (3,708.70) | 640.30 |
| 10/28/04 | 400 | 60.1400 | 24,056.00 | 11/17/04 | 200 | 56.8100 | 11,362.00 | (1,500) | (55,650.37) | 29,652.43 |
| 10/28/04 | 400 | 60.1500 | 24,060.00 | 11/19/04 | 21,600 | 60.0000 | 1,296,000.00 | (2,044) | (75,805.92) | 38,938.18 |
| 10/28/04 | 100 | 60.1500 | 6,015.00 | 11/22/04 | 2,125 | 56.2900 | 119,616.25 | (100) | (3,708.70) | 1,409.30 |
| 10/28/04 | 100 | 60.1500 | 6,015.00 | 11/22/04 | 100 | 56.2900 | 5,629.00 | (40) | (1,483.48) | 252.12 |
| 10/28/04 | 1,000 | 60.1500 | 60,150.00 | 11/22/04 | 200 | 56.2900 | 11,258.00 | 0 | 0.00 | (514.00) |
| 10/28/04 | 81 | 60.1500 | 4,872.15 | 11/22/04 | 140 | 56.2900 | 7,880.60 | (2,135) | (79,180.84) | 40,480.31 |
| 10/28/04 | 200 | 60.1500 | 12,030.00 | 11/22/04 | 2,235 | 56.2900 | 125,808.15 | 0 | 0.00 | (518.00) |
| 11/05/04 | 100 | 61.4000 | 6,140.00 | 11/22/04 | 100 | 56.2900 | 5,629.00 | (49,500) | (1,835,808.75) | 1,133,491.25 |
| 11/05/04 | 100 | 61.4500 | 6,145.00 | 01/21/05 | 50,000 | 60.0000 | 3,000,000.00 | (3,800) | (140,930.77) | 96,917.23 |
| 11/05/04 | 100 | 61.4300 | 6,143.00 | 01/28/05 | 3,900 | 62.5600 | 243,994.00 | (24,900) | (923,467.43) | 570,396.57 |
| 11/05/04 | 100 | 61.4700 | 6,147.00 | 02/18/05 | 25,000 | 60.0000 | 1,500,000.00 | (10,413) | (386,187.40) | 235,566.45 |
| 11/05/04 | 100 | 61.4700 | 6,147.00 | 02/18/05 | 12,500 | 60.0000 | 750,000.00 | (12,400) | (459,879.36) | 283,980.64 |
| 11/05/04 | 500 | 61.4000 | 30,700.00 | 02/18/05 | 12,500 | 60.0000 | 750,000.00 | 800 | 29,669.64 | (19,458.36) |
| 11/05/04 | 100 | 61.3600 | 6,136.00 | | | | | 200 | 7,417.41 | (4,868.59) |
| 11/05/04 | 2,087 | 61.4500 | 128,246.15 | | | | | 500 | 18,543.52 | (12,136.48) |
| 11/05/04 | 100 | 61.4000 | 6,140.00 | | | | | 100 | 3,708.70 | (2,427.30) |
| 11/05/04 | 200 | 61.4300 | 12,286.00 | | | | | 83 | 3,078.22 | (2,008.85) |
| 11/05/04 | 500 | 61.3600 | 30,680.00 | | | | | 100 | 3,708.70 | (2,433.30) |
| 11/05/04 | 83 | 61.2900 | 5,087.07 | | | | | 31 | 1,149.70 | (754.94) |
| 11/05/04 | 100 | 61.4200 | 6,142.00 | | | | | | | |
| 11/05/04 | 31 | 61.4400 | 1,904.64 | | | | | | | |

$37.0870

Case 1:05-cv-10400-RCL    Document 33    Filed 05/16/2005    Page 6 of 13

Biogen Idec, Inc. (NasdaqNM:BIIB)

Class Period: 02/18/04 - 02/25/05

Hold price:   $37.0870

| PLAINTIFF | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS (1) | | | | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | | | |
| | 11/05/04 | 200 | 61.4500 | 12,290.00 | | | | | 200 | 7,417.41 | (4,872.59) |
| | 11/05/04 | 100 | 61.4000 | 6,140.00 | | | | | 100 | 3,708.70 | (2,431.30) |
| | 11/05/04 | 769 | 61.4500 | 47,255.05 | | | | | 769 | 28,519.94 | (18,735.11) |
| | 11/05/04 | 100 | 61.4200 | 6,142.00 | | | | | 100 | 3,708.70 | (2,433.30) |
| | 11/05/04 | 100 | 61.3600 | 6,136.00 | | | | | 100 | 3,708.70 | (2,427.30) |
| | 11/05/04 | 200 | 61.4500 | 12,290.00 | | | | | 200 | 7,417.41 | (4,872.59) |
| | 11/05/04 | 500 | 61.4000 | 30,700.00 | | | | | 500 | 18,543.52 | (12,156.48) |
| | 11/05/04 | 200 | 61.3300 | 12,266.00 | | | | | 200 | 7,417.41 | (4,848.59) |
| | 11/05/04 | 100 | 61.3100 | 6,131.00 | | | | | 100 | 3,708.70 | (2,422.30) |
| | 11/05/04 | 500 | 61.3500 | 30,675.00 | | | | | 500 | 18,543.52 | (12,131.48) |
| | 11/05/04 | 100 | 61.2900 | 6,129.00 | | | | | 100 | 3,708.70 | (2,420.30) |
| | 11/05/04 | 100 | 61.3300 | 6,133.00 | | | | | 100 | 3,708.70 | (2,424.30) |
| | 11/05/04 | 200 | 61.3600 | 12,272.00 | | | | | 200 | 7,417.41 | (4,854.59) |
| | 11/05/04 | 200 | 61.4600 | 12,292.00 | | | | | 200 | 7,417.41 | (4,874.59) |
| | 11/05/04 | 100 | 61.2900 | 6,129.00 | | | | | 100 | 3,708.70 | (2,420.30) |
| | 11/05/04 | 100 | 61.3300 | 6,133.00 | | | | | 100 | 3,708.70 | (2,424.30) |
| | 11/05/04 | 200 | 61.3600 | 12,272.00 | | | | | 200 | 7,417.41 | (4,854.59) |
| | 11/05/04 | 417 | 61.4300 | 25,616.31 | | | | | 417 | 15,465.30 | (10,151.01) |
| | 11/05/04 | 100 | 61.2900 | 6,129.00 | | | | | 100 | 3,708.70 | (2,420.30) |
| | 11/05/04 | 500 | 61.2900 | 30,645.00 | | | | | 500 | 18,543.52 | (12,101.48) |
| | 11/08/04 | 700 | 61.3900 | 42,973.00 | | | | | 700 | 25,960.93 | (17,012.07) |
| | 11/08/04 | 100 | 61.3900 | 6,139.00 | | | | | 100 | 3,708.70 | (2,430.30) |
| | 11/08/04 | 700 | 61.2000 | 42,840.00 | | | | | 700 | 25,960.93 | (16,879.07) |
| | 11/08/04 | 102 | 61.0500 | 6,227.10 | | | | | 102 | 3,782.88 | (2,444.22) |
| | 11/08/04 | 200 | 61.0500 | 12,210.00 | | | | | 200 | 7,417.41 | (4,792.59) |
| | 11/08/04 | 700 | 61.3900 | 42,973.00 | | | | | 700 | 25,960.93 | (17,012.07) |
| | 11/08/04 | 1,900 | 61.2000 | 116,280.00 | | | | | 1,900 | 70,465.39 | (45,814.61) |
| | 11/08/04 | 1,900 | 61.2000 | 116,280.00 | | | | | 1,900 | 70,465.39 | (45,814.61) |
| | 11/08/04 | 100 | 61.0500 | 6,105.00 | | | | | 100 | 3,708.70 | (2,396.30) |
| | 11/08/04 | 617 | 61.2100 | 37,766.57 | | | | | 617 | 22,882.71 | (14,883.86) |
| | 11/08/04 | 83 | 61.2100 | 5,080.43 | | | | | 83 | 3,078.22 | (2,002.21) |
| | 11/08/04 | 1,200 | 61.2100 | 73,452.00 | | | | | 1,200 | 44,504.45 | (28,947.55) |
| | 11/08/04 | 500 | 61.2100 | 30,605.00 | | | | | 500 | 18,543.52 | (12,061.48) |
| | 11/08/04 | 100 | 61.0500 | 6,105.00 | | | | | 100 | 3,708.70 | (2,396.30) |
| | 11/08/04 | 100 | 61.0500 | 6,105.00 | | | | | 100 | 3,708.70 | (2,396.30) |
| | 11/08/04 | 100 | 61.2000 | 6,120.00 | | | | | 100 | 3,708.70 | (2,411.30) |
| | 11/08/04 | 1,900 | 61.0500 | 115,995.00 | | | | | 1,900 | 70,465.39 | (45,529.61) |
| | 11/08/04 | 100 | 61.0500 | 6,105.00 | | | | | 100 | 3,708.70 | (2,396.30) |
| | 11/08/04 | 400 | 61.0500 | 24,420.00 | | | | | 400 | 14,834.82 | (9,585.18) |
| | 11/08/04 | 500 | 61.2000 | 30,600.00 | | | | | 500 | 18,543.52 | (12,056.48) |
| | 11/08/04 | 100 | 61.2000 | 6,120.00 | | | | | 100 | 3,708.70 | (2,411.30) |
| | 11/08/04 | 100 | 61.0500 | 6,105.00 | | | | | 100 | 3,708.70 | (2,396.30) |
| | 11/08/04 | 600 | 61.2000 | 36,720.00 | | | | | 600 | 22,252.23 | (14,467.77) |
| | 11/08/04 | 398 | 61.3900 | 24,433.22 | | | | | 398 | 14,760.64 | (9,672.58) |
| | 11/11/04 | 600 | 61.2000 | 36,720.00 | | | | | 600 | 22,252.23 | (14,467.77) |
| | 11/11/04 | 600 | 61.2000 | 36,720.00 | | | | | 600 | 22,252.23 | (14,467.77) |
| | 11/08/04 | 500 | 61.2000 | 30,600.00 | | | | | 500 | 18,543.52 | (12,056.48) |
| | 11/08/04 | 600 | 61.2000 | 36,720.00 | | | | | 600 | 22,252.23 | (14,467.77) |
| | 11/11/04 | 2,729 | 60.3000 | 164,558.70 | | | | | 2,729 | 101,210.55 | (63,348.15) |
| | 11/11/04 | 271 | 60.3000 | 16,341.30 | | | | | 271 | 10,050.59 | (6,290.71) |
| | 11/24/04 | 200 | 58.4000 | 11,680.00 | | | | | 200 | 7,417.41 | (4,262.59) |
| | 11/24/04 | 100 | 58.4300 | 5,843.00 | | | | | 100 | 3,708.70 | (2,134.30) |
| | 11/24/04 | 100 | 58.4200 | 5,842.00 | | | | | 100 | 3,708.70 | (2,133.30) |
| | 11/24/04 | 100 | 58.4000 | 5,840.00 | | | | | 100 | 3,708.70 | (2,131.30) |

Case 1:05-cv-10400-RCL     Document 33     Filed 05/16/2005     Page 7 of 13

Biogen Idec, Inc. (NasdaqNM:BIIB)

Class Period: 02/18/04 - 02/25/05

Hold price:  $37.0870

| PLAINTIFF | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS (1) | | | | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | | | |
| | 11/24/04 | 100 | 58.4000 | 5,840.00 | | | | | 100 | 3,708.70 | (2,131.30) |
| | 11/24/04 | 200 | 58.4300 | 11,686.00 | | | | | 200 | 7,417.41 | (4,268.59) |
| | 11/24/04 | 1,000 | 58.4200 | 58,420.00 | | | | | 1,000 | 37,087.05 | (21,332.95) |
| | 11/24/04 | 200 | 58.4200 | 11,684.00 | | | | | 200 | 7,417.41 | (4,266.59) |
| | 11/24/04 | 100 | 58.4300 | 5,843.00 | | | | | 100 | 3,708.70 | (2,134.30) |
| | 11/24/04 | 200 | 58.4300 | 11,686.00 | | | | | 200 | 7,417.41 | (4,268.59) |
| | 11/24/04 | 200 | 58.4300 | 11,686.00 | | | | | 200 | 7,417.41 | (4,268.59) |
| | 11/24/04 | 300 | 58.4100 | 17,523.00 | | | | | 300 | 11,126.11 | (6,396.89) |
| | 11/24/04 | 200 | 58.4300 | 11,686.00 | | | | | 200 | 7,417.41 | (4,268.59) |
| | 11/24/04 | 1,000 | 58.4300 | 58,430.00 | | | | | 1,000 | 37,087.05 | (21,342.95) |
| | 11/24/04 | 33 | 58.4100 | 1,927.53 | | | | | 33 | 1,223.87 | (703.66) |
| | 11/24/04 | 100 | 58.4100 | 5,841.00 | | | | | 100 | 3,708.70 | (2,132.30) |
| | 11/24/04 | 100 | 58.4100 | 5,841.00 | | | | | 100 | 3,708.70 | (2,132.30) |
| | 11/24/04 | 100 | 58.4100 | 5,841.00 | | | | | 100 | 3,708.70 | (2,132.30) |
| | 11/24/04 | 300 | 58.4100 | 17,523.00 | | | | | 300 | 11,126.11 | (6,396.89) |
| | 11/24/04 | 1,700 | 58.4100 | 99,297.00 | | | | | 1,700 | 63,047.98 | (36,249.02) |
| | 11/24/04 | 400 | 58.4300 | 23,372.00 | | | | | 400 | 14,834.82 | (8,537.18) |
| | 11/24/04 | 100 | 58.4300 | 5,843.00 | | | | | 100 | 3,708.70 | (2,134.30) |
| | 11/24/04 | 100 | 58.4000 | 5,840.00 | | | | | 100 | 3,708.70 | (2,131.30) |
| | 11/24/04 | 23 | 58.4100 | 1,343.43 | | | | | 23 | 853.00 | (490.43) |
| | 11/24/04 | 100 | 58.4300 | 5,843.00 | | | | | 100 | 3,708.70 | (2,134.30) |
| | 11/24/04 | 400 | 58.6000 | 23,440.00 | | | | | 400 | 14,834.82 | (8,605.18) |
| | 11/24/04 | 300 | 58.4100 | 17,523.00 | | | | | 300 | 11,126.11 | (6,396.89) |
| | 11/24/04 | 544 | 58.4100 | 31,775.04 | | | | | 544 | 20,175.35 | (11,599.69) |
| | 11/24/04 | 600 | 58.6000 | 35,160.00 | | | | | 600 | 22,252.23 | (12,907.77) |
| | 11/24/04 | 800 | 58.6000 | 46,880.00 | | | | | 800 | 29,669.64 | (17,210.36) |
| | 11/24/04 | 100 | 58.6000 | 5,860.00 | | | | | 100 | 3,708.70 | (2,151.30) |
| | 11/24/04 | 100 | 58.6000 | 5,860.00 | | | | | 100 | 3,708.70 | (2,151.30) |
| | 11/24/04 | 100 | 58.6100 | 5,861.00 | | | | | 100 | 3,708.70 | (2,152.30) |
| | 11/24/04 | 500 | 58.6000 | 29,300.00 | | | | | 500 | 18,543.52 | (10,756.48) |
| | 11/24/04 | 300 | 58.6000 | 17,580.00 | | | | | 300 | 11,126.11 | (6,453.89) |
| | 11/24/04 | 100 | 58.6000 | 5,860.00 | | | | | 100 | 3,708.70 | (2,151.30) |
| | 12/02/04 | 200 | 61.8100 | 12,362.00 | | | | | 200 | 7,417.41 | (4,944.59) |
| | 12/02/04 | 962 | 61.8100 | 59,461.22 | | | | | 962 | 35,677.74 | (23,783.48) |
| | 12/02/04 | 38 | 61.8100 | 2,348.78 | | | | | 38 | 1,409.31 | (939.47) |
| | 12/02/04 | 300 | 61.8100 | 18,543.00 | | | | | 300 | 11,126.11 | (7,416.89) |
| | 12/02/04 | 100 | 61.8100 | 6,181.00 | | | | | 100 | 3,708.70 | (2,472.30) |
| | 12/02/04 | 100 | 61.7200 | 6,172.00 | | | | | 100 | 3,708.70 | (2,463.30) |
| | 12/02/04 | 300 | 61.8100 | 18,543.00 | | | | | 300 | 11,126.11 | (7,416.89) |
| | 12/02/04 | 100 | 61.8100 | 6,181.00 | | | | | 100 | 3,708.70 | (2,472.30) |
| | 12/02/04 | 100 | 61.7200 | 6,172.00 | | | | | 100 | 3,708.70 | (2,463.30) |
| | 12/02/04 | 300 | 61.7200 | 18,516.00 | | | | | 300 | 11,126.11 | (7,389.89) |
| | 12/02/04 | 800 | 61.6300 | 49,304.00 | | | | | 800 | 29,669.64 | (19,634.36) |
| | 12/02/04 | 100 | 61.7000 | 6,170.00 | | | | | 100 | 3,708.70 | (2,461.30) |
| | 12/02/04 | 89 | 61.7000 | 5,491.30 | | | | | 89 | 3,300.75 | (2,190.55) |
| | 12/02/04 | 150 | 61.6300 | 9,244.50 | | | | | 150 | 5,563.06 | (3,681.44) |
| | 12/02/04 | 100 | 61.6300 | 6,163.00 | | | | | 100 | 3,708.70 | (2,454.30) |
| | 12/02/04 | 400 | 61.6300 | 24,652.00 | | | | | 400 | 14,834.82 | (9,817.18) |
| | 12/02/04 | 400 | 61.6300 | 24,652.00 | | | | | 400 | 14,834.82 | (9,817.18) |
| | 12/02/04 | 100 | 61.6300 | 6,163.00 | | | | | 100 | 3,708.70 | (2,454.30) |
| | 12/02/04 | 1,152 | 61.4200 | 70,755.84 | | | | | 1,152 | 42,724.28 | (28,031.56) |

Case 1:05-cv-10400-RCL    Document 33    Filed 05/16/2005    Page 8 of 13

Biogen Idec, Inc. (NasdaqNM:BIIB)

Class Period: 02/18/04 - 02/25/05

Hold price: $37.0870

| PLAINTIFF | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS (1) | | | | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | | | |
| | 12/02/04 | 179 | 61.4200 | 10,994.18 | | | | | 179 | 6,638.58 | (4,355.60) |
| | 12/02/04 | 321 | 61.4200 | 19,715.82 | | | | | 321 | 11,904.94 | (7,810.88) |
| | 12/02/04 | 72 | 61.6200 | 4,436.64 | | | | | 72 | 2,670.27 | (1,766.37) |
| | 12/02/04 | 100 | 61.6300 | 6,163.00 | | | | | 100 | 3,708.70 | (2,454.30) |
| | 12/02/04 | 848 | 61.4200 | 52,084.16 | | | | | 848 | 31,449.81 | (20,634.35) |
| | 12/02/04 | 600 | 61.6300 | 36,978.00 | | | | | 600 | 22,252.23 | (14,725.77) |
| | 12/02/04 | 10 | 61.6300 | 616.30 | | | | | 10 | 370.87 | (245.43) |
| | 12/02/04 | 77 | 61.6300 | 4,745.51 | | | | | 77 | 2,855.70 | (1,889.81) |
| | 12/02/04 | 200 | 61.6300 | 12,326.00 | | | | | 200 | 7,417.41 | (4,908.59) |
| | 12/02/04 | 100 | 61.6300 | 6,163.00 | | | | | 100 | 3,708.70 | (2,454.30) |
| | 12/02/04 | 100 | 61.6300 | 6,163.00 | | | | | 100 | 3,708.70 | (2,454.30) |
| | 12/02/04 | 127 | 61.6300 | 7,827.01 | | | | | 127 | 4,710.05 | (3,116.96) |
| | 12/02/04 | 200 | 61.6300 | 12,326.00 | | | | | 200 | 7,417.41 | (4,908.59) |
| | 12/02/04 | 486 | 61.6300 | 29,952.18 | | | | | 486 | 18,024.30 | (11,927.88) |
| | 12/03/04 | 600 | 61.5700 | 36,942.00 | | | | | 600 | 22,252.23 | (14,689.77) |
| | 12/03/04 | 200 | 61.8700 | 12,374.00 | | | | | 200 | 7,417.41 | (4,956.59) |
| | 12/03/04 | 500 | 61.8800 | 30,940.00 | | | | | 500 | 18,543.52 | (12,396.48) |
| | 12/03/04 | 665 | 61.9400 | 41,190.10 | | | | | 665 | 24,662.89 | (16,527.21) |
| | 12/03/04 | 1,535 | 61.9400 | 95,077.90 | | | | | 1,535 | 56,928.61 | (38,149.29) |
| | 12/03/04 | 500 | 61.8800 | 30,940.00 | | | | | 500 | 18,543.52 | (12,396.48) |
| | 12/03/04 | 100 | 61.7100 | 6,171.00 | | | | | 100 | 3,708.70 | (2,462.30) |
| | 12/03/04 | 600 | 61.7700 | 37,062.00 | | | | | 600 | 22,252.23 | (14,809.77) |
| | 12/03/04 | 500 | 61.7800 | 30,890.00 | | | | | 500 | 18,543.52 | (12,346.48) |
| | 12/03/04 | 500 | 61.8700 | 30,935.00 | | | | | 500 | 18,543.52 | (12,391.48) |
| | 12/03/04 | 100 | 61.8700 | 6,187.00 | | | | | 100 | 3,708.70 | (2,478.30) |
| | 12/03/04 | 150 | 61.8700 | 9,280.50 | | | | | 150 | 5,563.06 | (3,717.44) |
| | 12/03/04 | 194 | 61.8600 | 12,000.84 | | | | | 194 | 7,194.89 | (4,805.95) |
| | 12/03/04 | 100 | 61.8700 | 6,187.00 | | | | | 100 | 3,708.70 | (2,478.30) |
| | 12/03/04 | 1,453 | 61.8700 | 89,897.11 | | | | | 1,453 | 53,887.48 | (36,009.63) |
| | 12/03/04 | 200 | 61.9100 | 12,382.00 | | | | | 200 | 7,417.41 | (4,964.59) |
| | 12/03/04 | 300 | 61.9000 | 18,570.00 | | | | | 300 | 11,126.11 | (7,443.89) |
| | 12/03/04 | 200 | 61.9200 | 12,384.00 | | | | | 200 | 7,417.41 | (4,966.59) |
| | 12/03/04 | 100 | 61.8700 | 6,187.00 | | | | | 100 | 3,708.70 | (2,478.30) |
| | 12/03/04 | 129 | 61.8000 | 7,985.10 | | | | | 129 | 4,784.23 | (3,200.87) |
| | 12/03/04 | 371 | 61.9000 | 22,964.90 | | | | | 371 | 13,759.29 | (9,205.61) |
| | 12/03/04 | 100 | 61.7100 | 6,171.00 | | | | | 100 | 3,708.70 | (2,462.30) |
| | 12/03/04 | 500 | 61.7100 | 30,855.00 | | | | | 500 | 18,543.52 | (12,311.48) |
| | 12/03/04 | 200 | 61.7100 | 12,342.00 | | | | | 200 | 7,417.41 | (4,924.59) |
| | 12/03/04 | 500 | 61.7100 | 30,855.00 | | | | | 500 | 18,543.52 | (12,311.48) |
| | 12/03/04 | 3 | 61.8700 | 185.61 | | | | | 3 | 111.26 | (74.35) |
| | 12/03/04 | 300 | 61.7100 | 18,513.00 | | | | | 300 | 11,126.11 | (7,386.89) |
| | 12/08/04 | 200 | 64.3800 | 12,876.00 | | | | | 200 | 7,417.41 | (5,458.59) |
| | 12/08/04 | 473 | 64.3800 | 30,451.74 | | | | | 473 | 17,542.17 | (12,909.57) |
| | 12/08/04 | 100 | 64.3800 | 6,438.00 | | | | | 100 | 3,708.70 | (2,729.30) |
| | 12/08/04 | 4,389 | 64.3700 | 282,519.93 | | | | | 4,389 | 162,775.04 | (119,744.89) |
| | 12/08/04 | 100 | 64.3400 | 6,434.00 | | | | | 100 | 3,708.70 | (2,725.30) |
| | 12/08/04 | 100 | 64.3400 | 6,434.00 | | | | | 100 | 3,708.70 | (2,725.30) |
| | 12/08/04 | 400 | 64.3800 | 25,752.00 | | | | | 400 | 14,834.82 | (10,917.18) |
| | 12/08/04 | 200 | 64.3800 | 12,876.00 | | | | | 200 | 7,417.41 | (5,458.59) |
| | 12/08/04 | 800 | 64.3800 | 51,504.00 | | | | | 800 | 29,669.64 | (21,834.36) |
| | 12/08/04 | 423 | 64.3700 | 27,228.51 | | | | | 423 | 15,687.82 | (11,540.69) |
| | 12/08/04 | 100 | 64.3700 | 6,437.00 | | | | | 100 | 3,708.70 | (2,728.30) |
| | 12/08/04 | 389 | 64.3700 | 25,039.93 | | | | | 389 | 14,426.66 | (10,613.07) |
| | 12/08/04 | 1,000 | 64.3800 | 64,380.00 | | | | | 1,000 | 37,087.05 | (27,292.95) |

Case 1:05-cv-10400-RCL    Document 33    Filed 05/16/2005    Page 9 of 13

Biogen Idec, Inc. (NasdaqNM:BIIB)

Class Period: 02/18/04 - 02/25/05

Hold price: $37.0870

| | PURCHASE TRANSACTIONS | | | SALES TRANSACTIONS (1) | | | | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|
| PLAINTIFF | | | | | | | | | | |
| DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | | | |
| 12/08/04 | 300 | 64.3800 | 19,314.00 | | | | | 300 | 11,126.11 | (8,187.89) |
| 12/08/04 | 289 | 64.3800 | 18,605.82 | | | | | 289 | 10,716.16 | (7,887.66) |
| 12/08/04 | 500 | 64.3800 | 32,190.00 | | | | | 500 | 18,543.52 | (13,646.48) |
| 12/08/04 | 1,100 | 64.3800 | 70,818.00 | | | | | 1,100 | 40,795.75 | (30,022.25) |
| 12/08/04 | 100 | 64.3800 | 6,438.00 | | | | | 100 | 3,708.70 | (2,729.30) |
| 12/08/04 | 600 | 64.3800 | 38,628.00 | | | | | 600 | 22,252.23 | (16,375.77) |
| 12/08/04 | 100 | 64.3800 | 6,438.00 | | | | | 100 | 3,708.70 | (2,729.30) |
| 12/08/04 | 23 | 64.3800 | 1,480.74 | | | | | 23 | 853.00 | (627.74) |
| 12/08/04 | 27 | 64.3800 | 1,738.26 | | | | | 27 | 1,001.35 | (736.91) |
| 12/08/04 | 1,000 | 64.3800 | 64,380.00 | | | | | 1,000 | 37,087.05 | (27,292.95) |
| 12/08/04 | 100 | 64.3800 | 6,438.00 | | | | | 100 | 3,708.70 | (2,729.30) |
| 12/08/04 | 500 | 64.3600 | 32,180.00 | | | | | 500 | 18,543.52 | (13,636.48) |
| 12/08/04 | 100 | 64.3600 | 6,436.00 | | | | | 100 | 3,708.70 | (2,727.30) |
| 12/08/04 | 1,200 | 64.3700 | 77,244.00 | | | | | 1,200 | 44,504.45 | (32,739.55) |
| 12/08/04 | 500 | 64.3700 | 32,185.00 | | | | | 500 | 18,543.52 | (13,641.48) |
| 12/08/04 | 77 | 64.3700 | 4,956.49 | | | | | 77 | 2,855.70 | (2,100.79) |
| 12/08/04 | 100 | 64.3500 | 6,435.00 | | | | | 100 | 3,708.70 | (2,726.30) |
| 12/08/04 | 100 | 64.3400 | 6,434.00 | | | | | 100 | 3,708.70 | (2,725.30) |
| 12/08/04 | 1,211 | 64.3700 | 77,952.07 | | | | | 1,211 | 44,912.41 | (33,039.66) |
| 12/08/04 | 400 | 64.3700 | 25,748.00 | | | | | 400 | 14,834.82 | (10,913.18) |
| 12/08/04 | 100 | 64.3800 | 6,438.00 | | | | | 100 | 3,708.70 | (2,729.30) |
| 12/08/04 | 61 | 64.3800 | 3,927.18 | | | | | 61 | 2,262.31 | (1,664.87) |
| 12/08/04 | 100 | 64.3400 | 6,434.00 | | | | | 100 | 3,708.70 | (2,725.30) |
| 12/08/04 | 1,827 | 64.3900 | 117,640.53 | | | | | 1,827 | 67,758.03 | (49,882.50) |
| 12/08/04 | 200 | 64.3700 | 12,874.00 | | | | | 200 | 7,417.41 | (5,456.59) |
| 12/08/04 | 11 | 64.3700 | 708.07 | | | | | 11 | 407.96 | (300.11) |
| 12/08/04 | 200 | 64.3800 | 12,876.00 | | | | | 200 | 7,417.41 | (5,458.59) |
| 12/08/04 | 200 | 64.3800 | 12,876.00 | | | | | 200 | 7,417.41 | (5,458.59) |
| 12/08/04 | 100 | 64.3800 | 6,438.00 | | | | | 100 | 3,708.70 | (2,729.30) |
| 12/08/04 | 200 | 64.3800 | 12,876.00 | | | | | 200 | 7,417.41 | (5,458.59) |
| 12/13/04 | 5,400 | 65.8500 | 355,590.00 | | | | | 5,400 | 200,270.05 | (155,319.95) |
| 12/27/04 | 3,000 | 66.3900 | 199,170.00 | | | | | 3,000 | 111,261.14 | (87,908.86) |
| 12/27/04 | 1,000 | 66.3800 | 66,380.00 | | | | | 1,000 | 37,087.05 | (29,302.95) |
| 12/28/04 | 100 | 67.3600 | 6,736.00 | | | | | 100 | 3,708.70 | (3,027.30) |
| 12/28/04 | 2,100 | 67.3600 | 141,456.00 | | | | | 2,100 | 77,882.80 | (63,573.20) |
| 12/28/04 | 100 | 67.3600 | 6,736.00 | | | | | 100 | 3,708.70 | (3,027.30) |
| 12/28/04 | 600 | 67.3600 | 40,416.00 | | | | | 600 | 22,252.23 | (18,163.77) |
| 12/28/04 | 200 | 67.3400 | 13,468.00 | | | | | 200 | 7,417.41 | (6,050.59) |
| 12/28/04 | 500 | 67.3600 | 33,680.00 | | | | | 500 | 18,543.52 | (15,136.48) |
| 12/28/04 | 300 | 67.3600 | 20,208.00 | | | | | 300 | 11,126.11 | (9,081.89) |
| 12/28/04 | 100 | 67.3300 | 6,733.00 | | | | | 100 | 3,708.70 | (3,024.30) |
| 12/29/04 | 535 | 67.8000 | 36,273.00 | | | | | 535 | 19,841.57 | (16,431.43) |
| 12/29/04 | 100 | 67.8000 | 6,780.00 | | | | | 100 | 3,708.70 | (3,071.30) |
| 12/29/04 | 100 | 67.8000 | 6,780.00 | | | | | 100 | 3,708.70 | (3,071.30) |
| 12/29/04 | 100 | 67.8000 | 6,780.00 | | | | | 100 | 3,708.70 | (3,071.30) |
| 12/29/04 | 200 | 67.7700 | 13,554.00 | | | | | 200 | 7,417.41 | (6,136.59) |
| 12/29/04 | 500 | 67.8000 | 33,900.00 | | | | | 500 | 18,543.52 | (15,356.48) |
| 12/29/04 | 400 | 67.8000 | 27,120.00 | | | | | 400 | 14,834.82 | (12,285.18) |
| 12/29/04 | 500 | 67.7700 | 33,885.00 | | | | | 500 | 18,543.52 | (15,341.48) |
| 12/29/04 | 500 | 67.7700 | 33,885.00 | | | | | 500 | 18,543.52 | (15,341.48) |
| 12/29/04 | 500 | 67.7700 | 33,885.00 | | | | | 500 | 18,543.52 | (15,341.48) |
| 12/29/04 | 200 | 67.8000 | 13,560.00 | | | | | 200 | 7,417.41 | (6,142.59) |
| 12/29/04 | 200 | 67.8000 | 13,560.00 | | | | | 200 | 7,417.41 | (6,142.59) |
| 12/29/04 | 400 | 67.7700 | 27,108.00 | | | | | 400 | 14,834.82 | (12,273.18) |

Case 1:05-cv-10400-RCL     Document 33     Filed 05/16/2005     Page 10 of 13

Biogen Idec, Inc. (NasdaqNM:BIIB)

Class Period: 02/18/04 - 02/25/05

Hold price: $37.0870

| PLAINTIFF | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS (1) | | | | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | | | |
| | 12/29/04 | 465 | 67.8000 | 31,527.00 | | | | | 465 | 17,245.48 | (14,281.52) |
| | 12/29/04 | 300 | 67.8000 | 20,340.00 | | | | | 300 | 11,126.11 | (9,213.89) |
| | 01/07/05 | 200 | 66.1500 | 13,230.00 | | | | | 200 | 7,417.41 | (5,812.59) |
| | 01/07/05 | 100 | 66.1500 | 6,615.00 | | | | | 100 | 3,708.70 | (2,906.30) |
| | 01/07/05 | 400 | 66.1500 | 26,460.00 | | | | | 400 | 14,834.82 | (11,625.18) |
| | 01/07/05 | 16 | 66.1300 | 1,058.08 | | | | | 16 | 593.39 | (464.69) |
| | 01/07/05 | 200 | 66.1500 | 13,230.00 | | | | | 200 | 7,417.41 | (5,812.59) |
| | 01/07/05 | 400 | 66.1500 | 26,460.00 | | | | | 400 | 14,834.82 | (11,625.18) |
| | 01/07/05 | 311 | 66.1100 | 20,560.21 | | | | | 311 | 11,534.07 | (9,026.14) |
| | 01/07/05 | 11 | 66.1100 | 727.21 | | | | | 11 | 407.96 | (319.25) |
| | 01/07/05 | 100 | 66.1200 | 6,612.00 | | | | | 100 | 3,708.70 | (2,903.30) |
| | 01/07/05 | 82 | 66.1100 | 5,421.02 | | | | | 82 | 3,041.14 | (2,379.88) |
| | 01/07/05 | 92 | 66.1100 | 6,082.12 | | | | | 92 | 3,412.01 | (2,670.11) |
| | 01/07/05 | 600 | 66.1100 | 39,666.00 | | | | | 600 | 22,252.23 | (17,413.77) |
| | 01/07/05 | 300 | 66.1600 | 19,848.00 | | | | | 300 | 11,126.11 | (8,721.89) |
| | 01/07/05 | 100 | 66.1600 | 6,616.00 | | | | | 100 | 3,708.70 | (2,907.30) |
| | 01/07/05 | 100 | 66.1700 | 6,617.00 | | | | | 100 | 3,708.70 | (2,908.30) |
| | 01/07/05 | 400 | 66.1500 | 26,460.00 | | | | | 400 | 14,834.82 | (11,625.18) |
| | 01/07/05 | 100 | 66.1500 | 6,615.00 | | | | | 100 | 3,708.70 | (2,906.30) |
| | 01/07/05 | 300 | 66.1400 | 19,842.00 | | | | | 300 | 11,126.11 | (8,715.89) |
| | 01/07/05 | 100 | 66.1700 | 6,617.00 | | | | | 100 | 3,708.70 | (2,908.30) |
| | 01/07/05 | 84 | 66.1700 | 5,558.28 | | | | | 84 | 3,115.31 | (2,442.97) |
| | 01/27/05 | 21,000 | 64.0000 | 1,344,000.00 | | | | | 21,000 | 778,827.95 | (565,172.05) |
| | 01/28/05 | 42,000 | 62.5000 | 2,625,000.00 | | | | | 42,000 | 1,557,655.91 | (1,067,344.09) |
| | 02/09/05 | 200 | 65.5200 | 13,104.00 | | | | | 200 | 7,417.41 | (5,686.59) |
| | 02/09/05 | 100 | 65.5200 | 6,552.00 | | | | | 100 | 3,708.70 | (2,843.30) |
| | 02/09/05 | 152 | 65.5000 | 9,956.00 | | | | | 152 | 5,637.23 | (4,318.77) |
| | 02/09/05 | 53 | 65.4900 | 3,470.97 | | | | | 53 | 1,965.61 | (1,505.36) |
| | 02/09/05 | 14 | 65.4900 | 916.86 | | | | | 14 | 519.22 | (397.64) |
| | 02/09/05 | 179 | 65.5000 | 11,724.50 | | | | | 179 | 6,638.58 | (5,085.92) |
| | 02/09/05 | 48 | 65.5000 | 3,144.00 | | | | | 48 | 1,780.18 | (1,363.82) |
| | 02/09/05 | 254 | 65.4600 | 16,626.84 | | | | | 254 | 9,420.11 | (7,206.73) |
| | 02/09/05 | 300 | 65.4800 | 19,644.00 | | | | | 300 | 11,126.11 | (8,517.89) |
| | 02/09/05 | 39 | 65.5200 | 2,555.28 | | | | | 39 | 1,446.39 | (1,108.89) |
| | 02/09/05 | 285 | 65.5200 | 18,673.20 | | | | | 285 | 10,569.81 | (8,103.39) |
| | 02/09/05 | 100 | 65.5200 | 6,552.00 | | | | | 100 | 3,708.70 | (2,843.30) |
| | 02/09/05 | 500 | 65.4800 | 32,740.00 | | | | | 500 | 18,543.52 | (14,196.48) |
| | 02/09/05 | 1,000 | 65.4600 | 65,460.00 | | | | | 1,000 | 37,087.05 | (28,372.95) |
| | 02/09/05 | 100 | 65.5200 | 6,552.00 | | | | | 100 | 3,708.70 | (2,843.30) |
| | 02/09/05 | 300 | 65.5200 | 19,656.00 | | | | | 300 | 11,126.11 | (8,529.89) |
| | 02/09/05 | 76 | 65.5200 | 4,979.52 | | | | | 76 | 2,818.62 | (2,160.90) |
| | 02/09/05 | 500 | 65.4800 | 32,740.00 | | | | | 500 | 18,543.52 | (14,196.48) |
| | 02/09/05 | 100 | 65.5200 | 6,552.00 | | | | | 100 | 3,708.70 | (2,843.30) |
| | 02/09/05 | 100 | 65.5200 | 6,552.00 | | | | | 100 | 3,708.70 | (2,843.30) |
| | 02/14/05 | 1,600 | 65.5200 | 104,832.00 | | | | | 1,600 | 59,339.27 | (45,492.73) |
| | 02/14/05 | 26,300 | 66.6000 | 1,751,580.00 | | | | | 26,300 | 975,389.30 | (776,190.70) |
| | 02/22/05 | 400 | 65.7000 | 26,280.00 | | | | | 400 | 14,834.82 | (11,445.18) |
| | 02/22/05 | 200 | 65.7000 | 13,140.00 | | | | | 200 | 7,417.41 | (5,722.59) |
| | 02/22/05 | 89 | 65.7000 | 5,847.30 | | | | | 89 | 3,300.75 | (2,546.55) |
| | 02/22/05 | 100 | 65.6900 | 6,569.00 | | | | | 100 | 3,708.70 | (2,860.30) |
| | 02/22/05 | 100 | 65.6900 | 6,569.00 | | | | | 100 | 3,708.70 | (2,860.30) |
| | 02/22/05 | 200 | 65.6900 | 13,138.00 | | | | | 200 | 7,417.41 | (5,720.59) |
| | 02/22/05 | 500 | 65.7000 | 32,850.00 | | | | | 500 | 18,543.52 | (14,306.48) |
| | 02/22/05 | 400 | 65.7000 | 26,280.00 | | | | | 400 | 14,834.82 | (11,445.18) |

Case 1:05-cv-10400-RCL    Document 33    Filed 05/16/2005    Page 11 of 13

Biogen Idec, Inc. (NasdaqNM:BIIB)

Class Period: 02/18/04 - 02/25/05

Hold price: $37.0870

| PLAINTIFF | PURCHASE TRANSACTIONS | | | SALES TRANSACTIONS (1) | | | | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|
| | DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | | | |
| | 02/22/05 | 35 | 65.6900 | 2,299.15 | | | | | 35 | 1,298.05 | (1,001.10) |
| | 02/22/05 | 100 | 65.7000 | 6,570.00 | | | | | 100 | 3,708.70 | (2,861.30) |
| | 02/22/05 | 300 | 65.7000 | 19,710.00 | | | | | 300 | 11,126.11 | (8,583.89) |
| | 02/22/05 | 119 | 65.7000 | 7,818.30 | | | | | 119 | 4,413.36 | (3,404.94) |
| | 02/22/05 | 200 | 65.7000 | 13,140.00 | | | | | 200 | 7,417.41 | (5,722.59) |
| | 02/22/05 | 165 | 65.7000 | 10,840.50 | | | | | 165 | 6,119.36 | (4,721.14) |
| | 02/22/05 | 100 | 65.7000 | 6,570.00 | | | | | 100 | 3,708.70 | (2,861.30) |
| | 02/22/05 | 200 | 65.7000 | 13,140.00 | | | | | 200 | 7,417.41 | (5,722.59) |
| | 02/22/05 | 200 | 65.7000 | 13,140.00 | | | | | 200 | 7,417.41 | (5,722.59) |
| | 02/22/05 | 100 | 65.7000 | 6,570.00 | | | | | 100 | 3,708.70 | (2,861.30) |
| | 02/22/05 | 200 | 65.7000 | 13,140.00 | | | | | 200 | 7,417.41 | (5,722.59) |
| | 02/22/05 | 200 | 65.7000 | 13,140.00 | | | | | 200 | 7,417.41 | (5,722.59) |
| | 02/22/05 | 100 | 65.7000 | 6,570.00 | | | | | 100 | 3,708.70 | (2,861.30) |
| | 02/22/05 | 100 | 65.7000 | 6,570.00 | | | | | 100 | 3,708.70 | (2,861.30) |
| | 02/22/05 | 179 | 65.7000 | 11,760.30 | | | | | 179 | 6,638.58 | (5,121.72) |
| | 02/22/05 | 200 | 65.7000 | 13,140.00 | | | | | 200 | 7,417.41 | (5,722.59) |
| | 02/22/05 | 94 | 65.6500 | 6,171.10 | | | | | 94 | 3,486.18 | (2,684.92) |
| | 02/22/05 | 100 | 65.6500 | 6,565.00 | | | | | 100 | 3,708.70 | (2,856.30) |
| | 02/22/05 | 100 | 65.6500 | 6,565.00 | | | | | 100 | 3,708.70 | (2,856.30) |
| | 02/22/05 | 900 | 65.7000 | 59,130.00 | | | | | 900 | 33,378.34 | (25,751.66) |
| | 02/22/05 | 55 | 65.6500 | 3,610.75 | | | | | 55 | 2,039.79 | (1,570.96) |
| | 02/22/05 | 100 | 65.6500 | 6,565.00 | | | | | 100 | 3,708.70 | (2,856.30) |
| | 02/22/05 | 1,696 | 65.6500 | 111,342.40 | | | | | 1,696 | 62,899.63 | (48,442.77) |
| | 02/22/05 | 100 | 65.7000 | 6,570.00 | | | | | 100 | 3,708.70 | (2,861.30) |
| | 02/22/05 | 1,000 | 65.7000 | 65,700.00 | | | | | 1,000 | 37,087.05 | (28,612.95) |
| | 02/22/05 | 83 | 65.6900 | 5,452.27 | | | | | 83 | 3,078.22 | (2,374.05) |
| | 02/22/05 | 100 | 65.7000 | 6,570.00 | | | | | 100 | 3,708.70 | (2,861.30) |
| | 02/22/05 | 100 | 65.6400 | 6,564.00 | | | | | 100 | 3,708.70 | (2,855.30) |
| | 02/22/05 | 30 | 65.6900 | 1,970.70 | | | | | 30 | 1,112.61 | (858.09) |
| | 02/22/05 | 400 | 65.6400 | 26,256.00 | | | | | 400 | 14,834.82 | (11,421.18) |
| | 02/22/05 | 200 | 65.6900 | 13,138.00 | | | | | 200 | 7,417.41 | (5,720.59) |
| | 02/23/05 | 55 | 65.6500 | 3,610.75 | | | | | 55 | 2,039.79 | (1,570.96) |
| | 02/23/05 | 200 | 65.6900 | 13,138.00 | | | | | 200 | 7,417.41 | (5,720.59) |
| | 02/23/05 | 100 | 65.6900 | 6,569.00 | | | | | 100 | 3,708.70 | (2,860.30) |
| | 02/23/05 | 100 | 65.6500 | 6,565.00 | | | | | 100 | 3,708.70 | (2,856.30) |
| | 02/23/05 | 100 | 65.6400 | 6,564.00 | | | | | 100 | 3,708.70 | (2,856.30) |
| | 02/23/05 | 100 | 65.6500 | 6,565.00 | | | | | 100 | 3,708.70 | (2,856.30) |
| | 02/23/05 | 100 | 65.7000 | 6,570.00 | | | | | 100 | 3,708.70 | (2,861.30) |
| | 02/23/05 | 59 | 65.6900 | 3,875.71 | | | | | 59 | 2,188.14 | (1,687.57) |
| | 02/23/05 | 218 | 65.6900 | 14,320.42 | | | | | 218 | 8,084.98 | (6,235.44) |
| | 02/23/05 | 500 | 65.6900 | 32,845.00 | | | | | 500 | 18,543.52 | (14,301.48) |
| | 02/23/05 | 3,723 | 65.7000 | 244,601.10 | | | | | 3,723 | 138,075.07 | (106,526.03) |
| | 02/24/05 | 500 | 65.2000 | 32,600.00 | | | | | 500 | 18,543.52 | (14,056.48) |
| | 02/24/05 | 100 | 65.2000 | 6,520.00 | | | | | 100 | 3,708.70 | (2,811.30) |
| | 02/24/05 | 500 | 65.2000 | 32,600.00 | | | | | 500 | 18,543.52 | (14,056.48) |
| | 02/24/05 | 200 | 65.2000 | 13,040.00 | | | | | 200 | 7,417.41 | (5,622.59) |
| | 02/24/05 | 100 | 65.2000 | 6,520.00 | | | | | 100 | 3,708.70 | (2,811.30) |
| | 02/24/05 | 100 | 65.2000 | 6,520.00 | | | | | 100 | 3,708.70 | (2,811.30) |
| | 02/24/05 | 1,000 | 65.2000 | 65,200.00 | | | | | 1,000 | 37,087.05 | (28,112.95) |
| | 02/24/05 | 700 | 65.2000 | 45,640.00 | | | | | 700 | 25,960.93 | (19,679.07) |
| | 02/24/05 | 100 | 65.2000 | 6,520.00 | | | | | 100 | 3,708.70 | (2,811.30) |
| | 02/24/05 | 1,560 | 65.2000 | 101,712.00 | | | | | 1,560 | 57,855.79 | (43,856.21) |
| | 02/24/05 | 100 | 65.2000 | 6,520.00 | | | | | 100 | 3,708.70 | (2,811.30) |

$37.0870

Case 1:05-cv-10400-RCL    Document 33    Filed 05/16/2005    Page 12 of 13

Biogen Idec, Inc. (NasdaqNM:BIIB)

Hold price: $37.0870

Class Period: 02/18/04 - 02/25/05

| PLAINTIFF | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS (1) | | | | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | | | |
| | 02/25/05 | 500 | 66.9200 | 33,460.00 | | | | | 500 | 18,543.52 | (14,916.48) |
| | 02/25/05 | 1,900 | 66.9200 | 127,148.00 | | | | | 1,900 | 70,465.39 | (56,682.61) |
| | 02/25/05 | 500 | 66.9200 | 33,460.00 | | | | | 500 | 18,543.52 | (14,916.48) |
| | 02/25/05 | 100 | 66.9200 | 6,692.00 | | | | | 100 | 3,708.70 | (2,983.30) |
| **Third Millennium Trading LLP Totals** | | 337,679 | | 20,573,839.87 | | 228,205 | | 13,445,292.10 | 109,474 | 4,060,067.21 | (3,068,480.56) |
| | | | | | | | | | | | |
| DEERFIELD BEACH NON UNIFORMED | 02/15/05 | 4,800 | 67.1802 | 322,464.96 | 03/01/05 | 4,800 | 39.9550 | 191,784.00 | 0 | 0.00 | (130,680.96) |
| **DEERFIELD BEACH NON UNIFORMED Totals** | | 4,800 | | 322,464.96 | | 4,800 | | 191,784.00 | 0 | 0.00 | (130,680.96) |
| | | | | | | | | | | | |
| Plumbers & Pipefitters Local 520 | 10/06/04 | 3,300 | 61.6010 | 203,283.30 | 01/23/05 | 300 | 65.0000 | 19,500.00 | 3,000 | 111,261.14 | (72,522.16) |
| | 10/28/04 | 600 | 57.8440 | 34,706.40 | 03/22/05 | 100 | 38.6471 | 3,864.71 | 500 | 18,543.52 | (12,286.17) |
| | 11/03/04 | 1,540 | 58.5950 | 90,236.30 | 03/31/05 | 5,040 | 38.3717 | 193,393.57 | (3,500) | (129,804.66) | (26,647.39) |
| **Plumbers & Pipefitters Local 520 Totals** | | 5,440 | | 328,226.00 | | 5,440 | | 216,758.27 | 0 | 0.00 | (111,467.73) |
| | | | | | | | | | | | |
| Horatio Capital | 12/17/04 | 60,000 | 60.0000 | 3,600,000.00 | 01/21/05 | 500 | 65.0000 | 32,500.00 | 59,500 | 2,206,679.20 | (1,360,820.60) |
| | 01/19/05 | 31 | 67.5300 | 2,093.43 | 02/14/05 | 48 | 66.6200 | 3,197.76 | (17) | (630.48) | 473.85 |
| | 01/19/05 | 100 | 67.5300 | 6,753.00 | 02/14/05 | 100 | 66.5500 | 6,655.00 | 0 | 0.00 | (98.00) |
| | 01/19/05 | 169 | 67.5300 | 11,412.57 | 02/14/05 | 100 | 66.5500 | 6,655.00 | 69 | 2,559.01 | (2,198.56) |
| | 01/19/05 | 200 | 67.5300 | 13,506.00 | 02/14/05 | 100 | 66.9600 | 6,696.00 | 100 | 3,708.70 | (3,101.30) |
| | 02/04/05 | 1,000 | 66.8000 | 66,800.00 | 02/14/05 | 100 | 66.8000 | 6,680.00 | 900 | 33,378.34 | (26,741.66) |
| | 02/07/05 | 38 | 66.2300 | 2,516.74 | 02/14/05 | 200 | 66.6800 | 13,336.00 | (62) | (2,299.40) | 1,863.86 |
| | 02/07/05 | 43 | 66.2300 | 2,847.89 | 02/14/05 | 300 | 66.5500 | 19,965.00 | (157) | (5,822.67) | 4,665.44 |
| | 02/07/05 | 100 | 66.2300 | 6,623.00 | 02/14/05 | 300 | 66.8000 | 20,040.00 | (200) | (7,417.41) | 5,924.59 |
| | 02/07/05 | 100 | 66.2300 | 6,623.00 | 02/14/05 | 400 | 66.9600 | 26,784.00 | (200) | (7,417.41) | 5,999.59 |
| | 02/07/05 | 219 | 66.2300 | 14,504.37 | 02/14/05 | 400 | 66.6800 | 26,672.00 | (181) | (6,712.76) | 5,566.87 |
| | 02/10/05 | 100 | 65.4700 | 6,547.00 | 02/14/05 | 400 | 66.6800 | 26,672.00 | (300) | (11,126.11) | 8,998.89 |
| | 02/10/05 | 100 | 65.4700 | 6,547.00 | 02/14/05 | 500 | 66.5500 | 33,275.00 | (300) | (11,126.11) | 8,998.89 |
| | 02/10/05 | 300 | 65.4700 | 19,641.00 | 02/14/05 | 500 | 66.9600 | 33,480.00 | (200) | (7,417.41) | 6,176.59 |
| | 02/11/05 | 11 | 66.9400 | 736.34 | 02/14/05 | 500 | 66.7700 | 33,386.00 | (489) | (18,137.41) | 13,838.09 |
| | 02/11/05 | 100 | 66.9400 | 6,694.00 | 02/14/05 | 952 | 66.6200 | 63,422.24 | (400) | (14,834.82) | 11,856.18 |
| | 02/11/05 | 100 | 66.9400 | 6,694.00 | 02/18/05 | 500 | 66.0000 | 32,500.00 | (852) | (31,598.16) | 25,130.08 |
| | 02/11/05 | 100 | 66.9400 | 6,694.00 | 02/18/05 | 600 | 60.0000 | 36,000.00 | (400) | (14,834.82) | 10,971.18 |
| | 02/11/05 | 100 | 66.9400 | 6,694.00 | 02/18/05 | 600 | 60.0000 | 36,000.00 | (500) | (18,543.52) | 10,762.48 |
| | 02/11/05 | 389 | 66.9400 | 26,039.66 | 02/18/05 | 800 | 60.0000 | 48,000.00 | (211) | (7,825.37) | 3,403.89 |
| | 02/11/05 | 500 | 66.9400 | 33,470.00 | 02/18/05 | 1,000 | 60.0000 | 60,000.00 | (300) | (11,126.11) | 2,134.97 |
| | 02/11/05 | 500 | 66.9400 | 33,470.00 | 02/18/05 | 1,000 | 60.0000 | 60,000.00 | (500) | (18,543.52) | 7,986.48 |
| | 02/11/05 | 800 | 66.9100 | 53,528.00 | 02/22/05 | 1,000 | 60.0000 | 60,000.00 | (200) | (7,417.41) | (945.41) |
| | 02/22/05 | 374 | 65.6200 | 24,541.88 | 02/22/05 | 1,100 | 65.0000 | 65,000.00 | (626) | (23,216.49) | 12,241.63 |
| | 02/22/05 | 1,626 | 65.6200 | 106,698.12 | 02/22/05 | 29,000 | 60.0000 | 1,740,000.00 | (1,083) | (40,165.27) | 18,481.63 |
| | 02/24/05 | 17 | 66.4400 | 1,129.48 | 02/22/05 | 100 | 65.6700 | 6,567.00 | (28,900) | (1,071,815.61) | 661,540.39 |
| | 02/24/05 | 100 | 66.4400 | 6,644.00 | 02/22/05 | 200 | 65.6700 | 13,134.00 | 140 | 5,192.19 | 30,205.25 |
| | 02/24/05 | 240 | 66.4300 | 15,943.20 | 02/22/05 | 300 | 65.6400 | 19,692.00 | 43 | 1,594.74 | (4,184.01) |
| | 02/24/05 | 243 | 66.4000 | 16,135.20 | 02/22/05 | 400 | 65.6800 | 26,272.00 | 100 | 3,708.70 | (1,406.46) |
| | 02/24/05 | 300 | 66.4300 | 19,929.00 | 02/22/05 | 500 | 65.6400 | 32,820.00 | 100 | 3,708.70 | (237.00) |
| | 02/24/05 | 500 | 66.4300 | 33,215.00 | 02/22/05 | 500 | 65.6400 | 32,820.00 | (400) | (14,834.82) | (3,234.30) |
| | 02/24/05 | 600 | 66.4400 | 39,864.00 | 02/22/05 | 500 | 65.5500 | 32,825.00 | (400) | (14,834.82) | (3,335.30) |
| | 02/25/05 | 100 | 66.7700 | 6,677.00 | | | | | | | 11,306.18 |
| | 02/25/05 | 100 | 66.7500 | 6,675.00 | | | | | | | 11,315.18 |

Case 1:05-cv-10400-RCL     Document 33     Filed 05/16/2005     Page 13 of 13

Biogen Idec, Inc. (NasdaqNM:BIIB)

Class Period: 02/18/04 - 02/25/05

Hold price: $37.0870

| | PURCHASE TRANSACTIONS | | | | SALES TRANSACTIONS (1) | | | | | |
| PLAINTIFF | DATE | SHARES | SHARE COST | PURCHASE AMOUNT | DATE | SHARES | SHARE PRICE (3) | SALES AMOUNT | SHARES HELD | ESTIMATED VALUE (2) | ESTIMATED LOSSES |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | 02/25/05 | 100 | 66.7500 | 6,675.00 | 02/22/05 | 500 | 65.6500 | 32,825.00 | (400) | (14,834.82) | 11,315.18 |
| | 02/25/05 | 200 | 66.7700 | 13,354.00 | 02/22/05 | 600 | 65.6400 | 39,384.00 | (400) | (14,834.82) | 11,195.18 |
| | 02/25/05 | 600 | 66.7500 | 40,050.00 | 02/22/05 | 2,400 | 65.6400 | 157,536.00 | (1,800) | (66,756.68) | 50,729.32 |
| | 02/25/05 | 900 | 66.7500 | 60,075.00 | | | | | 900 | 33,378.34 | (26,696.66) |
| Horatio Capital Totals | | 71,100 | | 4,338,040.88 | | 48,100 | | 2,968,970.00 | 23,000 | 853,002.05 | (516,068.83) |
| Movants Totals | | 525,142 | | 32,096,692.05 | | 342,194 | | 20,347,580.52 | 182,948 | 6,785,000.79 | (4,964,110.74) |

(1) Sales have been applied on a FIFO basis.
(2) Shares held through the date of this filing have been valued using the average price of $37.0870 per share.
(3) Shares sold in the 90 days following the class period were valued at the average of the daily closing prices from the end of the class period to the date of the actual sale

# EXHIBIT B



UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| v. | ) C.A. No. _____ |
|  | ) |
|  | ) |
| THOMAS J. BUCKNUM, | ) |
|  | ) |
| Defendant. | ) **06-10065 PBS** |
|  | ) |

---

## COMPLAINT

Plaintiff Securities and Exchange Commission ("Commission") alleges the following against defendant Thomas J. Bucknum ("Bucknum"):

### SUMMARY

1.    This enforcement action involves Bucknum's insider trading in the securities of Biogen Idec Inc. ("Biogen"), a publicly-traded biotechnology company headquartered in Cambridge, Massachusetts. During the relevant period, Bucknum was Biogen's executive vice president and general counsel.

2.    At approximately 8:45 a.m. on February 18, 2005, Bucknum had a telephone conversation with his broker in which he told the broker that he wanted to exercise options to purchase 89,700 shares of Biogen stock and sell the shares from that exercise. As a result of that conversation, the broker understood that Bucknum wanted to sell the shares at a price of $68 per share or better.

3.      At approximately 12:00 p.m. that day, Bucknum attended a meeting at which he and other senior officers of Biogen learned that a patient participating in a clinical trial of Biogen's multiple sclerosis drug had been diagnosed with a rare and fatal brain disease, and that another patient also may have contracted the disease. This was material, nonpublic information which had a significant negative impact on Biogen's stock price when Biogen later announced it to the public.

4.      At approximately 1:30 p.m. that day, Bucknum had a telephone conversation with his broker's associate in which he instructed the broker's associate to sell the 89,700 shares of his Biogen stock at the market price, which was then around $67 per share. Bucknum's shares were sold shortly thereafter.

5.      By virtue of his conduct, Bucknum engaged in fraud in the offer or sale of securities in violation of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], and in connection with the purchase or sale of securities in violation of Section 10(b) of the Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]. Accordingly, the Commission seeks the following relief against Bucknum: (i) the entry of a permanent injunction prohibiting Bucknum from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; (ii) disgorgement of Bucknum's ill-gotten gains from his insider trading, plus prejudgment interest thereon; (iii) the imposition of a civil monetary penalty; and (iv) an order prohibiting Bucknum from acting as an officer or director of a publicly-traded issuer.

2

## JURISDICTION AND VENUE

6.    This Court has jurisdiction over this action pursuant to Sections 20(b) and 22(a) of the Securities Act [15 U.S.C. §§ 77t(b) and 77v(a)] and Sections 21, 21A and 27 of the Exchange Act [15 U.S.C. §§ 78u, 78u-1, 78aa].

7.    The Commission seeks a permanent injunction and disgorgement pursuant to Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)].  The Commission seeks the imposition of a civil monetary penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21A of the Exchange Act [15 U.S.C. § 78u-1].  The Commission seeks an order prohibiting Bucknum from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or that is required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act [15 U.S.C. § 78*o*(d)], pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)].

8.    Venue is proper in this District because Biogen, the publicly-traded issuer, is located here, and many of the activities alleged in this Complaint took place here.

9.    In connection with the conduct described in this Complaint, Bucknum directly or indirectly made use of the mails or the means or instruments of transportation or communication in interstate commerce or the means or instrumentalities of interstate commerce or the facilities of a national securities exchange.

## DEFENDANT AND RELEVANT ENTITY

10.    **Bucknum**, age 59, was Biogen's general counsel from June 1999 through March 2005, when he resigned. He is currently a resident of Centerville, Delaware, but was a resident of Boston, Massachusetts during the relevant period.

11.    **Biogen** is a biotechnology company with headquarters in Cambridge, Massachusetts. Biogen's common stock is (and was during the relevant period) registered with the Commission pursuant to Section 12(g) of the Exchange Act [15 U.S.C. § 78*l*(g)] and is traded on the NASDAQ National Market System.

## STATEMENT OF FACTS

### Background Regarding Bucknum's Transaction

12.    At approximately 8:45 a.m. on February 18, 2005, before the opening of the market, Bucknum had a telephone conversation with his stock broker. Bucknum told the broker that he wanted to exercise options to purchase 89,700 shares of Biogen stock and sell the shares from that exercise. As a result of that conversation, the broker understood that Bucknum wanted to sell the shares at a price of $68 per share or better. Biogen's common stock had closed at a price of $67.57 per share on the previous day.

13.    Biogen's trading policies and procedures required that Bucknum obtain clearance from Biogen's legal department before trading Biogen stock. Following his conversation with Bucknum, the broker instructed his associate to contact Biogen's legal department, obtain the necessary clearance and complete Bucknum's transaction.

14.    The broker's associate received clearance from Biogen's legal department for Bucknum's transaction at approximately 10:00 a.m. Within the next hour, the broker's associate

4

telephoned Bucknum in an attempt to verify the details of the transaction before completing it.
The broker's associate did not reach Bucknum but left a message for him.

### Bucknum Learns Material, Nonpublic Information

15.    At approximately 12:00 p.m. that day, Bucknum and other Biogen senior officers
attended a meeting at which they learned that a patient participating in a clinical trial of Biogen's
multiple sclerosis drug, Tysabri, had been diagnosed with progressive multifocal
leukoencephalopathy ("PML"), a rare and often-fatal brain disease, and that another patient
participating in a Tysabri clinical trial had an unconfirmed PML diagnosis. Various Biogen
medical, regulatory and drug safety personnel attended this meeting.

16.    The information regarding the confirmed and unconfirmed PML diagnoses was
material, nonpublic information that was likely to have a negative impact on Biogen's stock
price. The information in fact did have such an impact after Biogen disclosed it publicly and
suspended the marketing of Tysabri ten days later.

17.    Immediately following the noon meeting, which ended at approximately 1:00
p.m., Bucknum met with Biogen's chief executive officer and executive chairman, and they
decided to schedule an emergency telephonic meeting of Biogen's Board of Directors for later
that day to inform the Board of the confirmed and unconfirmed PML diagnoses.

### Bucknum Sells Biogen Stock

18.    At approximately 1:30 p.m., Bucknum returned to his office and telephoned the
broker's associate, and they spoke for a few minutes. The broker's associate told Bucknum that
he had received clearance from Biogen for Bucknum's transaction and that the stock was trading
near $68. Bucknum then instructed the broker's associate to sell his shares at the market price.

19.    The broker's associate filled out an order ticket for the sale of Bucknum's 89,700 shares of Biogen stock at the market price, time-stamped the order ticket at 1:37 p.m. and sent the order ticket to the trading desk at the same time.

20.    The sale of Bucknum's 89,700 shares of Biogen stock occurred shortly after 2:00 p.m. The average sale price of the shares was $67.12 per share. Bucknum's gross profit on his transaction was $1,938,465.

## Biogen Publicly Announces the Information
## and Biogen's Stock Price Declines

21.    Ten days later, prior to the opening of the market on February 28, 2005, Biogen and its development partner announced that they were suspending the marketing of, and all clinical trials involving, Tysabri, because of the confirmed and unconfirmed PML diagnoses.

22.    On the trading day immediately preceding the announcement, the closing price of Biogen's stock was $67.28 per share. The closing price of Biogen's stock on the day of the announcement was $38.65 per share. This was a decline of $28.63 per share, or more than 42%.

## Bucknum Breached his Fiduciary Duty to Biogen and its Shareholders
## When He Sold Biogen Stock While in Possession of Material, Nonpublic Information

23.    At all relevant times, Bucknum was a Biogen insider who had a fiduciary duty to the company and its shareholders not to trade in the company's securities while in possession of material, nonpublic information about the company. Bucknum was subject to Biogen's insider trading policy, which prohibited trading on the basis of material, nonpublic information.

24.    Bucknum violated his fiduciary duty to Biogen and its shareholders when he instructed his broker to sell Biogen stock after learning material, nonpublic information concerning the confirmed and unconfirmed PML diagnoses.

6

25.     Bucknum knew or was reckless in not knowing that when he sold Biogen stock while in possession of material, nonpublic information, he breached a duty that he owed to Biogen and its shareholders.

### CLAIMS FOR RELIEF

#### First Claim for Relief
#### (Violation of Section 17(a) of the Securities Act)

26.     The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 25 of the Complaint as if set forth fully herein.

27.     As set forth above, Bucknum obtained material, nonpublic information about Biogen and then sold shares of Biogen stock while in possession of that information in breach of his fiduciary duty to Biogen and its shareholders.  Bucknum profited by selling his Biogen stock before Biogen's stock price declined following the public disclosure of the information.

28.     By reason of the foregoing, Bucknum, directly or indirectly, acting intentionally, knowingly or recklessly, by use of the means or instruments of transportation or communication in interstate commerce or of the mails, in the offer or sale of securities:  (a) employed a device, scheme or artifice to defraud; (b) obtained money or property by means of an untrue statement of material fact or omitting to state a material fact necessary to make the statement made, in light of the circumstances under which it was made, not misleading; or (c) engaged in a transaction, practice or course of business which operated as a fraud or deceit upon purchasers of Biogen stock.

29.     As a result, Bucknum violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

7

### Second Claim for Relief
### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder)

30.     The Commission repeats and incorporates by reference the allegations in paragraphs 1 through 25 of the Complaint as if set forth fully herein.

31.     As set forth above, Bucknum obtained material, nonpublic information about Biogen and then sold shares of Biogen stock while in possession of that information in breach of his fiduciary duty to Biogen and its shareholders.  Bucknum profited by selling his Biogen stock before Biogen's stock price declined following the public disclosure of the information.

32.     By reason of the foregoing, Bucknum, directly or indirectly, acting intentionally, knowingly or recklessly, by use of the means or instrumentalities of interstate commerce or of the mails or of the facilities of a national securities exchange, in connection with the purchase or sale of securities:  (a) employed a device, scheme or artifice to defraud; (b) made an untrue statement of material fact or omitted to state a material fact necessary to make the statement made, in the light of the circumstances under which it was made, not misleading; or (c) engaged in an act, practice or course of business which operated as a fraud or deceit upon other persons, including purchasers of Biogen stock.

33.     As a result, Bucknum violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

8

## **PRAYER FOR RELIEF**

WHEREFORE, the Commission requests that this Court:

A.     Enter a permanent injunction prohibiting Bucknum from directly or indirectly

violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Section 10(b) of the

Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

B.     Require Bucknum to disgorge the ill-gotten gains from his insider trading, plus

prejudgment interest thereon;

C.     Order Bucknum to pay a civil monetary penalty;

D.     Prohibit Bucknum from acting as an officer or director of any issuer that has a

class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78*l*] or that

is required to file reports with the Commission pursuant to Section 15(d) of the Exchange Act

[15 U.S.C. § 78*o*(d)];

E.    Retain jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

F.    Grant such other and further relief as the Court deems just and proper.

Respectfully submitted,


Walter G. Ricciardi
District Administrator

Martin F. Healey
Acting District Trial Counsel

Silvestre A. Fontes
Senior Trial Counsel

Attorneys for Plaintiff
**SECURITIES AND EXCHANGE COMMISSION**
73 Tremont Street, Sixth Floor
Boston, Massachusetts 02108
Telephone:      (617) 573-8900
                       (617) 573-8952 (Healey)
                       (617) 573-8991 (Fontes)
Facsimile:      (617) 424-5940

Dated: January 12, 2006

10

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, )<br><br>Plaintiff, )<br><br>v. )<br><br>THOMAS J. BUCKNUM, )<br><br>Defendant. ) | Civil Action No. 06-10065-PBS |

## FINAL JUDGMENT AS TO DEFENDANT THOMAS J. BUCKNUM

The Securities and Exchange Commission having filed a Complaint and Defendant Thomas J. Bucknum having entered a general appearance; consented to the Court's jurisdiction over Defendant and the subject matter of this action; consented to entry of this Final Judgment without admitting or denying the allegations of the Complaint (except as to jurisdiction); waived findings of fact and conclusions of law; and waived any right to appeal from this Final Judgment:

I.

It Is HEREBY Further Ordered, Adjudged, And Decreed that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] in the offer or sale of any security by the use of any means or instruments of transportation or communication in interstate commerce or by use of the mails, directly or indirectly:

(a)     to employ any device, scheme, or artifice to defraud;

    (b)    to obtain money or property by means of any untrue statement of a material fact or any omission of a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any transaction, practice, or course of business which operates or would operate as a fraud or deceit upon the purchaser.

II.

IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that Defendant and Defendant's agents, servants, employees, attorneys, and all persons in active concert or participation with them who receive actual notice of this Final Judgment by personal service or otherwise are permanently restrained and enjoined from violating, directly or indirectly, Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 promulgated thereunder [17 C.F.R. § 240.10b-5], by using any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, in connection with the purchase or sale of any security:

    (a)    to employ any device, scheme, or artifice to defraud;

    (b)    to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; or

    (c)    to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

2

III.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that, pursuant to Section

21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], Defendant is prohibited, for five years

following the date of entry of this Final Judgment, from acting as an officer or director,

including, but not limited to, acting as general counsel or compliance officer, of any issuer that

has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l]

or that is required to file reports pursuant to Section 15(d) of the Exchange Act [15 U.S.C.

§ 78o(d)].

IV.

IT IS HEREBY FURTHER ORDERED, ADJUDGED, AND DECREED that Defendant is liable

for disgorgement of $1,938,465, representing profits gained as a result of the conduct alleged in

the Complaint, together with prejudgment interest thereon in the amount of $102,005, and a civil

penalty in the amount of $969,232 pursuant to Section 21A of the Exchange Act. Defendant

shall satisfy this obligation by paying $3,009,702 within ten business days to the Clerk of this

Court, together with a cover letter identifying Thomas J. Bucknum as a defendant in this action;

setting forth the title and civil action number of this action and the name of this Court; and

specifying that payment is made pursuant to this Final Judgment. Defendant shall

simultaneously transmit photocopies of such payment and letter to the Commission's counsel in

this action. By making this payment, Defendant relinquishes all legal and equitable right, title,

and interest in such funds, and no part of the funds shall be returned to Defendant. Defendant

shall pay post-judgment interest on any delinquent amounts pursuant to 28 U.S.C. § 1961.

The Clerk shall deposit the funds into an interest bearing account with the Court Registry

Investment System ("CRIS"). These funds, together with any interest and income earned thereon (collectively, the "Fund"), shall be held by the CRIS until further order of the Court. In accordance with 28 U.S.C. § 1914 and the guidelines set by the Director of the Administrative Office of the United States Courts, the Clerk is directed, without further order of this Court, to deduct from the income earned on the money in the Fund a fee equal to ten percent of the income earned on the Fund. Such fee shall not exceed that authorized by the Judicial Conference of the United States.

The Commission may by motion propose a plan to distribute the Fund subject to the Court's approval. Such a plan may provide that the Fund shall be distributed pursuant to the Fair Fund provisions of Section 308(a) of the Sarbanes-Oxley Act of 2002. Regardless of whether any such Fair Fund distribution is made, amounts ordered to be paid as civil penalties pursuant to this Judgment shall be treated as penalties paid to the government for all purposes, including all tax purposes. To preserve the deterrent effect of the civil penalty, Defendant shall not, after offset or reduction of any award of compensatory damages in any Related Investor Action based on Defendant's payment of disgorgement in this action, further benefit by offset or reduction of such compensatory damages award by the amount of any part of Defendant's payment of a civil penalty in this action ("Penalty Offset"). If the court in any Related Investor Action grants such a Penalty Offset, Defendant shall, within 30 days after entry of a final order granting the Penalty Offset, notify the Commission's counsel in this action and pay the amount of the Penalty Offset to the United States Treasury or to a Fair Fund, as the Commission directs. Such a payment shall not be deemed an additional civil penalty and shall not be deemed to change the amount of the civil penalty imposed in this Judgment. For purposes of this paragraph, a "Related Investor

4

Action" means a private damages action brought against Defendant by or on behalf of one or more investors based on substantially the same facts as alleged in the Complaint in this action.

V.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the Consent is incorporated herein with the same force and effect as if fully set forth herein, and that Defendant shall comply with all of the undertakings and agreements set forth therein.

VI.

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that this Court shall retain jurisdiction of this matter for the purposes of enforcing the terms of this Final Judgment.

VII.

There being no just reason for delay, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Clerk is ordered to enter this Final Judgment forthwith and without further notice.

Dated: 2\9\06

UNITED STATES DISTRICT JUDGE

5