UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

-------------------------------------------------------x
                                        :

*In re Biogen Idec, Inc. Securities Litigation*      :

                                         :
-------------------------------------------------------x

**Civil Action No. 05-cv-10400 (RCL)**

**CLASS ACTION**

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
TO DEFENDANT THOMAS J. BUCKNUM'S MOTION TO
<u>DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 5

ARGUMENT ........................................................................................................................ 9

I.    THE REQUIREMENTS FOR PLEADING AN INSIDER TRADING
      CLAIM IN THE CONTEXT OF A MOTION TO DISMISS ........................................... 9

      A.    Defendant Bucknum Cannot Meet His
            Heavy Burden Under Rule 12(b)(6)…………………………………………… 9

      B.    Defendant Bucknum Is Liable Under Section 20A……………………………  9

            1.    Plaintiffs Must Plead the Elements of a Predicate
                  Exchange Act Violation But Are Not Required to
                  Bring a Separate Count Under the Exchange Act.................................... 10

            2.    The Complaint Alleges Particularized Facts Demonstrating That
                  Defendant Bucknum Sold Biogen Stock While in Possession of
                  Material Non-Public Information Showing Tysabri Would Not Be
                  A Widely Marketable Drug Because of Its Serious Side Effects ............. 14

            3.    Defendant Bucknum Sold His Biogen Stock Contemporaneously
                  With Plaintiffs' Purchases of Biogen Stock............................................. 17

                  a.    Bucknum's February 18, 2005 Sale................................................ 18

                  b.    Bucknum's November 30, 2004 Sale ............................................ 19

                  c.    Bucknum's May 25, 2004 Sale...................................................... 19

                  d.    Bucknum's May 4, 2004 Sale........................................................ 19

II.   DEFENDANT BUCKNUM'S PURPORTED DISGORGEMENT OF
      PROFITS RECEIVED FROM HIS FEBRUARY 18, 2005 SALE DOES
      NOT PRECLUDE A PRIVATE RIGHT OF ACTION UNDER SECTION 20A ........... 20

CONCLUSION...................................................................................................................... 23

## TABLE OF AUTHORITIES

## CASES

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002).........................................................................................9

*Carney v. Cambridge Tech. Partners, Inc.*,
  135 F. Supp. 2d 235 (D. Mass. 2001) .....................................................................13

*Dirks v. SEC*,
  463 U.S. 646 (1983)................................................................................................10

*Froid v. Berner*,
  649 F. Supp. 1418 (D.N.J. 1986) .......................................................................18, 19

*Hogan v. Piasecki*,
  No. 96 C 7399, 1997 WL 260345 (N.D. Ill. May 7, 1997) ......................................13

*In re AFC Enterprises, Inc. Sec. Litig.*,
  348 F. Supp. 2d 1363 (N.D. Ga. 2004) .............................................................11, 16

*In re. Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999).....................................................................................13

*In re American Bus. Computers Corp. Sec. Litig.*,
  MDL No. 913 (CLB), 1994 U.S. Dist. LEXIS 21467 (S.D.N.Y. Feb. 24, 1994).................18, 20

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
  324 F. Supp. 2d 474 (S.D.N.Y. 2004).......................................................................17

*In re Cabletron Systems, Inc.*,
  311 F.3d 11 (1st Cir. 2002).........................................................................9, 17, 22

*In re Cypress Semiconductor Sec. Litig.*,
  836 F. Supp. 711 (N.D. Cal. 1993) .....................................................................18, 19

*In re Cytyc Corp. Sec. Litig.*,
  No. 02-12399-NMG, 2005 U.S. Dist. LEXIS 6166 (D. Mass Mar. 1, 2005).......................22, 23

*In re Engineering Animation Sec. Litig.*,
  110 F. Supp. 2d 1183 (S.D. Iowa 2000) ...................................................................18

*In re Enron Corp. Sec., Deriv. & ERISA Litig.*,
  258 F. Supp. 2d 576 (S.D. Tex. 2003) .............................................................. passim

*In re Oxford Health Plans, Inc. Sec. Litig.*,
   187 F.R.D. 133 (S.D.N.Y. 1999) .......................................................................18, 19

*In re Parametric Tech Corp. Sec. Litig.*,
   300 F. Supp. 2d 206 (D. Mass. 2001) ......................................................................13

*In re Silicon Graphics, Inc., Sec. Litig.*,
   970 F. Supp. 746 (N.D. Cal . 1997) ..........................................................................19

*In re SmarTalk Teleservices, Inc. Sec. Litig.*,
   124 F. Supp. 2d 527 (S.D. Ohio 2000) ...................................................................16

*In re StockerYale Sec. Litig.*,
   453 F. Supp. 2d 345 (D.N.H. 2006)...................................................................10, 11

*In re Verifone Sec. Litig.*,
   11 F.3d 865 (9th Cir. 1993) .....................................................................................13

*In re Verifone Sec. Litig.*,
   784 F. Supp. 1471 (N.D. Cal. 1992) .............................................................18, 19, 20

*In re Xcelera.com Sec. Litig.*,
   No. 00-11649-RWZ, 2004 U.S. Dist. LEXIS 29064 (D. Mass. Sept. 30, 2004)........18

*Jackson National Life Insurance Co. v. Merrill Lynch & Co., Inc.*,
   32 F.3d 697 (2d Cir. 1994).......................................................................................13

*Johnson v. Aljian*,
   394 F. Supp. 2d 1184 (C.D. Cal. 2004) ..............................................................11, 12

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
   501 U.S. 350 (1991)..................................................................................................12

*McGhee v. Joutras*,
   No. 94 C 7052, 1995 U.S. Dist. LEXIS 2040 (N.D. Ill. Feb. 19, 1995)...............21, 22

*O'Connor & Associate v. Dean Witter Reynolds, Inc.*,
   559 F. Supp. 800 (S.D.N.Y. 1983)......................................................................18, 19

*Roeder v. Alpha Industrial, Inc.*,
   814 F.2d 22 (1st Cir. 1987)........................................................................................9

*Schaffer v. Timberland Co.*,
   924 F. Supp. 1298 (D.N.H. 1996)..............................................................................9

*Shaw v. Digital Equip. Corp.*,
  82 F.3d 1194 (1st Cir. 1996) ............................................................................7, 10, 16

## <u>STATUTES</u>

15 U.S.C. § 78(t)-1(b)(2) ...........................................................................................20, 21

15 U.S.C. § 78(t)-1(a) .......................................................................................1, 10, 12, 17

H. R. Rep. No. 100-910 ....................................................................................................12

Pub. L. No. 107-204 § 804(a), 116 Stat. 745 (2002) .......................................................12

## PRELIMINARY STATEMENT

Lead Plaintiffs ("Plaintiffs") submit this memorandum of law in opposition to Defendant Thomas J. Bucknum's Motion to Dismiss the Consolidated Class Action Complaint ("Defendant's Memorandum" or "Def.'s Mem.").  Plaintiffs allege that Defendant Bucknum, Biogen's Executive Vice President General Counsel, Secretary and Clerk during the Class Period,[1] violated Section 20A of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78(t)-1(a), by engaging in substantial illegal insider trading of Biogen Idec, Inc. ("Biogen" or the "Company") common stock, while in possession of adverse material, non-public information concerning the purported safety and marketability of Tysabri.  ¶ 69.[2]  Tysabri, a drug co-developed by Biogen and Elan PLC ("Elan") to treat patients afflicted by multiple sclerosis ("MS"), Crohn's Disease ("Crohn's") and Rheumatoid Arthritis, was critical to the Company's continued growth and ability to access an expanded market of patients afflicted with those diseases.  *Id.*  Neither Defendant Bucknum, nor any other Biogen insider, publicly disclosed the adverse facts concerning Tysabri's safety and marketability, causing the price of Biogen common stock to be artificially inflated throughout the Class Period.[3]

By concealing these adverse material facts about Tysabri from investors, Defendant Bucknum was able to take advantage of the artificially inflated price of Biogen stock by selling

---

[1]  February 18, 2004 through February 28, 2005, inclusive.

[2]  References to "¶__" and "¶¶__" are to paragraphs of the Consolidated Class Action Complaint ("Complaint" or "Compl.").

[3]  *See* Plaintiffs' Memorandum of Law in Opposition To Defendants' Revised Motion to Dismiss The Consolidated Class Action Complaint, at 18-19 (Docket No. 92) (discussing allegations that the Defendants' false and misleading statements and omissions concerning the safety and marketability of Tysabri caused Biogen's stock to be artificially inflated throughout the Class Period); Complaint, ¶¶ 48, 374-77 (same).

***188,600 shares of his Biogen shares for almost $12 million in illegally gained proceeds***.  ¶¶ 391, 394.

Defendant Bucknum was ultimately forced to disgorge the profits he received from one of his insider sales, which occurred on February 18, 2005, to the Securities and Exchange Commission ("SEC") in connection with the settlement of an SEC enforcement action alleging insider trading violations against Buckum (the "SEC Action").  Specifically, the SEC Action alleged that, at approximately 12:00 noon on February 18, 2005, Defendant Bucknum attended a meeting with other senior officers of Biogen where he learned that a patient participating in the MS clinical trials of Tysabri had been diagnosed with a rare and fatal brain disease, Progressive Multifocal Leukoencephalopathy ("PML"), and that another patient taking the drug had contracted the disease.  ¶¶ 135, 339.[4]  Within an hour after the meeting, Bucknum instructed his broker's associate to sell 89,700 shares of his Biogen stock without ever disclosing the material adverse information concerning the serious risks of Tysabri or the two known cases of PML in his possession to the public.  *Id.*  As a result of that sale, alone, Bucknum reaped proceeds of at least $6,021,032 and a net profit of at least $1,900,000.  *Id*

Pursuant to a settlement agreement with the SEC (the "SEC Settlement Agreement"), Bucknum purportedly ***paid $3,000,000 in disgorgement fees, interest and penalties, and was prohibited from serving as an officer or director of a public company for five years***.  ¶ 340.  On March 9, 2005, Defendant Bucknum "resigned" from the Company as a result of his illegal insider trading of Company stock.  ¶ 339.

---

[4]  The Individual Defendants subsequently admitted in an internal memorandum sent to physicians participating in the Tysabri clinical trials that these two patients ***had actually begun exhibiting signs and symptoms of PML as early as October 2004***.  ¶ 322.

As General Counsel of Biogen, Defendant Bucknum provided legal guidance and advice to senior Biogen executives regarding, among other things, the Company's liability resulting from incidents concerning the drugs Biogen tests in clinical trials and then sells to the public upon approval by the Food and Drug Administration ("FDA"), as well as the Company's compliance with relevant laws and regulations. *See, e.g.*, ¶ 339. Since Tysabri's serious side effects subjected the Company to significant legal liability, Defendant Bucknum was undoubtedly aware of them. Thus, there is a strong inference that Defendant Bucknum, given his position and duties as General Counsel of Biogen, knew of the serious risks associated with Tysabri when he engaged in his illegal insider sales during the Class Period, particularly since Bucknum knew of Tysabri's serious side effects before the Class Period began, as those risks had already materialized into ***serious opportunistic infections and even deaths*** by January 2004 when the drug's clinical trials were substantially completed. ¶¶ 133, 172. Defendant Bucknum, in his role as Biogen's Secretary and Clerk, would have also attended all Board of Director's meetings prior to and during the Class Period, including those meetings discussing the Company's potential legal liability resulting from the deaths and serious opportunistic infections caused by Tysabri with other senior Biogen officials. ¶ 339.

As General Counsel of Biogen, Defendant Bucknum reviewed all of the Company's press releases and public filings with the SEC prior to their issuance, to purportedly ensure their compliance with applicable laws and regulations. Accordingly, Bucknum knew of Tysabri's undisclosed risks and life-threatening side effects and that those material adverse facts had not been disclosed to investors, when he sold his Biogen stock.

Rather than disclose Tysabri's serious side effects to investors, Defendant Bucknum consciously chose to capitalize on his insider knowledge by selling 188,600 shares of his

personal holdings of Biogen common stock on four separate occasions during the Class Period:
May 4, 2004 (35,000 shares); May 25, 2004 (30,000 shares); November 30, 2004 (33,900
shares); and February 18, 2005 (89,700 shares).

Defendant's Memorandum, which is replete with misstatements of the Complaint's
allegations and the governing law, can be reduced to four unavailing arguments -- that Plaintiffs:
(i) are required to bring a separate and distinct count under the Exchange Act against Bucknum
as a pre-requisite to bringing their Section 20A claim; (ii) have failed to plead with adequate
particularity the requisite elements of their insider trading claim; (iii) did not purchase Biogen
stock "contemporaneously" with Defendant Bucknum's insider sales; and (iv) are not entitled to
bring a private action against Defendant Bucknum for his insider sale on February 18, 2005
because Bucknum purportedly fully disgorged the profits he received from that sale to the SEC.

Defendants are wrong on all counts. First, despite Defendant Bucknum's blatant
misreading of the law, courts have never required plaintiffs to bring a separate count under the
Exchange Act against a defendant in order to sufficiently plead a Section 20A violation. Rather,
Plaintiffs need only **plead** all of the **elements** of a predicate violation under the Exchange Act
and Plaintiffs have clearly done so here. Second, as discussed more fully below, Plaintiffs have
pled specific facts detailing the precise dates Bucknum sold his Biogen stock, the material, non-
public information he possessed while engaging in such unlawful insider trading, when he
became aware of that information, and how he came into possession of the information. Nothing
more is required. Third, the law in this Circuit, and throughout the country, clearly finds that
Plaintiffs' purchases of Biogen stock are sufficiently contemporaneous with Bucknum's insider
sales. Finally, Defendant's argument that, because he purportedly fully disgorged all profits he

obtained from his unlawful sale of Biogen stock on February 18, 2005 Plaintiffs have no private

right of action, is contrary to Congressional intent in enacting Section 20A statute and the law.

For the reasons set forth herein, the Court should deny Defendant Bucknum's Motion to

Dismiss.

### STATEMENT OF FACTS

Defendant Bucknum served as Biogen's Executive Vice President, General Counsel,

Secretary and Clerk from October 2001 through March 9, 2005, when he "resigned" from the

Company as a result of his illegal insider trading relating to the matters at issue in this case.

¶¶ 38, 339. As the Company's General Counsel, Bucknum was responsible for providing legal

guidance and advice to senior Biogen executives, including the Individual Defendants,[5] on a

variety of legal issues, including the Company's: (i) potential exposure to liability resulting from

incidents occurring in patients taking drugs that Biogen developed and sold commercially, or in

patients participating in the clinical trials of such drugs prior to their approval by the FDA; (ii)

compliance with the federal securities laws; and (iii) compliance with regulations prescribed by

the FDA. Defendant Bucknum knew and discussed these legal issues during numerous Board of

Directors meetings he attended during the Class Period with senior Biogen officials, among other

ways. ¶ 339.

The Complaint alleges that, Tysabri, a drug that Biogen and Elan had been developing for

the treatment of MS, Crohn's Disease and Rheumatoid Arthritis since the early 1990's, was

highly dangerous because it severely suppressed the immune system. ¶¶ 64-67. The Complaint

---

[5]  The Individual Defendants are Defendant William H. Rastetter, PhD, the Company's
Executive Chairman and a Biogen Director; Defendant James C. Mullen, Biogen's Chief
Executive Officer and President; Defendant Peter N. Kellogg, the Company's Executive Vice
President, Finance and Chief Financial Officer; Defendant William Rohn, the Company's Chief
Operating Officer; and Defendant Burt A. Adelman, M.D., Biogen's Executive Vice President of
Development. ¶¶ 33-37, 39.

further alleges that, during the Tysabri clinical trials, Tysabri caused the ***deaths*** of, and at least ***11 different types of life-threatening opportunistic infections*** in, patients taking the drug. ¶¶ 133-34, 172.  Biogen and Elan, however, did not disclose Tysabri's serious safety risks or the deaths and opportunistic infections that occurred during the drug's clinical trials to the FDA or investors.  ¶¶ 129-31, 172.  As a result of the market's and the FDA's ignorance of these risks, the price of Biogen common stock was artificially inflated throughout the Class Period and the Company was able to obtain "fast-track" approval of Tysabri, allowing Defendants to accelerate the introduction of the drug to the broadest possible market during the Class Period.  ¶ 223.

As Biogen's General Counsel, Defendant Bucknum was in a position to know of the significant risks associated with Tysabri because those risks, which exposed Biogen to significant legal liability, had already materialized into serious opportunistic infections and even deaths by January 2004, when the clinical trials were all but completed.  ¶ 143, 162, 382. Indeed, the Individual Defendants admitted during an FDA Advisory Committee hearing on March 7-8, 2006 that, prior to Biogen's application to the FDA for approval of the drug, Biogen insiders were aware of numerous serious opportunistic infections that occurred during the drug's clinical trials and that such infections had even caused patient deaths.  ¶¶ 132-40.

Rather than publicly disclose his knowledge of the life-threatening side effects caused by Tysabri, Defendant Bucknum chose to capitalize on his insider knowledge, to the detriment of Plaintiffs and the Class, by selling 100% of his personal holdings of Biogen common stock that he held at the beginning of the Class Period, at artificially inflated prices.  ¶ 392.  During the Class Period, Defendant Bucknum sold an astounding 188,600 shares of Biogen stock for proceeds of approximately $11,948,082.  *Id.*  Notably, Defendant Bucknum ***did not purchase any*** Biogen securities during the Class Period.

Defendant Bucknum's most egregious insider sale occurred on February 18, 2005, when he purportedly learned at approximately 12:00 noon that day, during a meeting he attended with other senior officers of Biogen, that a patient participating in the MS clinical trials of Tysabri had been diagnosed with a rare and fatal brain disease, PML, and that another patient taking the drug had also contracted the disease.  ¶¶ 135, 339.[6]  Within an hour after the meeting, Bucknum instructed his broker's associate to sell 89,700 shares of his Biogen stock without ever disclosing the material information concerning the serious risks of Tysabri or the two known cases of PML in his possession to the public.  By trading on this material non-public information, Defendant Bucknum violated the "disclose or abstain rule" articulated in this Circuit, which requires that an insider disclose material facts to the public prior to selling his securities or abstain from selling them.[7]  As a result of that sale alone, Bucknum reaped proceeds of approximately $6,021,032 and a purported net profit of at least $1,900,000.  *Id.*

On February 28, 2005, **ten days** after purportedly learning of the two PML cases, Biogen finally disclosed the two PML cases to the public and withdrew Tysabri from the market.  ¶ 324. Following the February 28, 2005 withdrawal of Tysabri, the SEC commenced a formal investigation into Bucknum's highly suspicious stock sale on February 18, 2005.  ¶ 340. Defendant Bucknum quickly settled this action with the SEC and agreed to pay $3,000,000 in purported disgorged profits related to his February 18, 2005 stock sale, plus interest and penalties.  ¶ 340; *see also* Def.'s Mem., Exhibit B - Final Judgment As To Defendant Thomas J.

---

[6]  The Individual Defendants subsequently admitted in an internal memorandum sent to physicians participating in the Tysabri clinical trials that these two patients **had actually begun exhibiting signs and symptoms of PML as early as October 2004**.  ¶ 322.

[7]  *See Shaw v. Digital Equip. Corp.*, 82 F.3d 1194, 1203 (1st Cir. 1996) ("There is no doubt that an individual corporate insider in possession of material nonpublic information is prohibited by the federal securities laws from trading on that information unless he makes public disclosure.").

Bucknum (the "SEC Settlement Agreement").  The SEC Settlement Agreement also prohibited

Bucknum from serving as an officer or director of a public company for five years.  *Id.*

Unfortunately for Plaintiffs and the Class, Defendant Bucknum's February 18, 2005 sale

was not the first time he engaged in unlawful insider trading during the Class Period to the

detriment of innocent investors.  Indeed, Bucknum engaged in unlawful insider trading of

Company stock on four occasions during the Class Period:  May 4, 2004; May 25, 2004;

November 30, 2004; and February 18, 2005.  ¶ 391.  Each of Bucknum's insider sales was

strategically timed and designed to take advantage of the inside information he possessed and the

artificially inflated price of Biogen common stock.  For example, on May 4, 2004, only two

trading days after Biogen released its first quarter 2004 financial results and the Individual

Defendants proclaimed that Tysabri was the Company's next "blockbuster" drug, Defendant

Bucknum sold 35,000 shares of Biogen stock for proceeds of approximately $2.1 million.

¶¶ 199-205, 392.  On May 25, 2004, the day Biogen announced its submission to the FDA for

fast-track approval of Tysabri to treat MS, Defendant Bucknum sold 30,000 shares of Biogen

stock for proceeds of approximately $1.9 million.  ¶¶ 213-16, 392, 394.  Finally, on November

30, 2004, just five business days after Biogen announced that the FDA had granted approval of

Tysabri, Defendant Bucknum, once again, sold 33,900 shares of Biogen stock for proceeds of

approximately $2.1 million.  ¶¶ 271-75, 292, 394.  As discussed above, all of Bucknum's sales

were made with full knowledge of Tysabri's life-threatening side effects, which had materialized

during the drug's clinical trials.  In total, Defendant Bucknum sold approximately 188,600 shares

of Biogen common stock for proceeds of approximately $12 million at the expense of investors.

## ARGUMENT

I.    **THE REQUIREMENTS FOR PLEADING AN INSIDER TRADING CLAIM IN THE CONTEXT OF A MOTION TO DISMISS**

### A.    Defendant Bucknum Cannot Meet His Heavy Burden Under Rule 12(b)(6)

In reviewing a motion to dismiss, even in a PSLRA case, the court must "draw all reasonable inferences from the particular allegations in the plaintiff's favor . . . ." *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72, 78 (1st Cir. 2002). A motion to dismiss "is one of limited inquiry, focusing not on 'whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Schaffer v. Timberland Co.*, 924 F. Supp. 1298, 1305 (D.N.H. 1996). The Court may dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Roeder v. Alpha Indus., Inc.*, 814 F.2d 22, 25 (1st Cir. 1987) (citations omitted). Courts must also consider the allegations in the complaint in the aggregate. *In re Cabletron Systems, Inc.*, 311 F.3d 11, 32 (1st Cir. 2002). For the reasons stated below, Defendant Bucknum has not met his burden under Rule 12(b)(6).

### B.    Defendant Bucknum Is Liable Under Section 20A

Section 20A of the Securities Exchange Act of the 1934 ("Section 20A") provides, in pertinent part, as follows:

> Any person who violates any provision of this title or the rules or regulations thereunder by purchasing or selling a security while in possession or material, nonpublic information shall be liable in an action in any court of competent jurisdiction to any person who, contemporaneously with the purchase or sale of securities that is the subject of such violation, has purchased (where such violation is based on a sale of securities) or sold (where such violation is based on a purchase of securities) securities of the same class.

15 U.S.C. § 78(t)-1(a). Thus, to plead a Section 20A violation, Plaintiffs must: (1) allege a predicate violation of the Exchange Act (or its rules and regulations); (2) allege that Bucknum was a corporate insider who traded Biogen stock while in possession of material non-public information; and (3) allege that Plaintiffs purchased Biogen stock contemporaneously with Bucknum's insider sales. *Id.* As demonstrated below, Plaintiffs have satisfied their burden and the Complaint must be sustained.

      **1.**     **Plaintiffs Must Plead the Elements of a Predicate Exchange Act Violation But Are Not Required to Bring a Separate Count Under the Exchange Act**

To plead a Section 20A violation, Plaintiffs must allege a predicate violation of the Exchange Act (or its rules and regulations), such as a violation of Section 10(b). *In re StockerYale Sec. Litig.*, 453 F. Supp. 2d 345, 359 (D.N.H. 2006). Courts have routinely found that insider trading qualifies as a "deceptive device" under Section 10(b) of the Exchange Act and, thus, can constitute a Section 10(b) violation. *Shaw*, 82 F.3d at 1225; *In re Enron Corp. Sec., Deriv. & ERISA Litig.*, 258 F. Supp. 2d 576, 590 (S.D. Tex. 2003) (citations omitted). This is because such unlawful insider trading, as engaged in here by Defendant Bucknum, violates the disclose or abstain rule of insider trading and, thus, constitutes a deceptive act under Section 10(b). *Enron*, 258 F. Supp. 2d at 598 (citations omitted) (holding that insider trading may be used "[as] an alternative to constituting a primary violation of [Section] 10(b) as a 'deceptive device' . . . [and] *can also* constitute a derivative violation under [Section] 20A of the 1934 Act.") (emphasis added); *see also Dirks v. SEC*, 463 U.S. 646, 654 (1983).

Contrary to Defendant Bucknum's erroneous contention that Plaintiffs must actually bring a separate *count* under the Exchange Act (Def.'s Mem. 9-10), Plaintiffs are only required to *plead* facts demonstrating the elements of a predicate violation. Indeed, neither the plain language of the statute codifying Section 20A, 15 U.S.C. § 78t-1(a), nor any case law of which

Plaintiffs are aware -- or which Defendant Bucknum cites in his brief -- has ever required Plaintiffs to bring a separate Section 10(b) count as a pre-requisite for sufficiently pleading a Section 20A claim.  Rather, as discussed below, courts have repeatedly held that ***plaintiffs need only allege facts and successfully <u>plead</u> all of the <u>elements</u> of the predicate violation***.  *Johnson v. Aljian*, 394 F. Supp. 2d 1184, 1195-96 (C.D. Cal. 2004).

In this regard, courts routinely allow Section 20A claims to proceed without an accompanying Section 10(b) count, as long as the plaintiff has sufficiently pled a violation of the Exchange Act.  For example, in *StockerYale*, the plaintiffs brought a Section 10(b) count against ***three of the four*** individual defendants while bringing only a Section 20A count against the fourth defendant.  453 F. Supp. 2d at 360.  The *StockerYale* court upheld the Section 20A count brought against the fourth defendant, irrespective of the fact that a separate and distinct Section 10(b) count was not brought, because the plaintiffs successfully pled all of the elements of a predicate Exchange Act violation against the fourth defendant.  *Id.*

Similarly, in *In re AFC Enterprises, Inc. Sec. Litig.*, 348 F. Supp. 2d 1363 (N.D. Ga. 2004), plaintiffs brought a Section 20A claim against *three of the nine* individual defendants without a concurrent Section 10(b) count.  The *AFC* court dismissed plaintiffs' Section 20A claim ***only*** because there, unlike here, plaintiffs failed to plead scienter, one of the elements of a predicate Section 10(b) violation, and not because the plaintiffs did not bring a separate Section 10(b) count against the fourth defendant.  *Id.*  Likewise, in *Johnson*, the court upheld the Section 20A claim, despite its findings that the plaintiffs' Section 10(b) claim was barred by the statute of limitations, because the plaintiffs had sufficiently pled the elements of a Section 10(b) predicate violation.  394 F. Supp. 2d at 1195-96; *see also Enron*, 258 F. Supp. 2d at 588-601

(dismissing Section 20A claim because plaintiffs did not plead all of the elements of their

predicate Section 10(b) violation).

Congressional intent and public policy further support Plaintiffs' argument that they are

not required to bring a separate Section 10(b) count in order to successfully plead a Section 20A

violation.  In this regard, Congress specifically stated that its intent in enacting Section 20A was

to "strengthen shareholders' private rights of action against insider trading to prevent insiders

from taking unfair advantage of their access to inside information at the expense of investors."

H. R. Rep. No. 100-910, p. 7 (1988); *see also Johnson*, 394 F. Supp. 2d at 1196 (finding that the

congressional purpose of enacting Section 20A in 1988 was "to address the uniquely difficult

discovery problems inherent in insider trading cases, and to provide greater deterrence, detection,

and punishment for insider trading violations.") (citation omitted); *Enron*, 258 F. Supp. 2d at 599

(citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 352 (1991)

(stating that the Congressional purpose of enacting Section 20A was to "focus[] upon a specific

problem, namely, the 'purchasing or selling [of] a security while in possession of material,

nonpublic information.'").

Moreover, as the *Enron* court explained, there exists good reason why a plaintiff might

choose to bring a Section 20A claim rather than a Section 10(b) claim.  *Enron*, 258 F. Supp. 2d

at 588-601.  For example, Section 20A provides a longer, five-year statute of limitations period

(15 U.S.C. § 78t-1(b)(4)) whereas, under Section 10(b), the statute of limitations is "two years

after the discovery of the facts constituting the violations."  Pub. L. No. 107-204 § 804(a), 116

Stat. 745 (2002); *Enron*, 258 F. Supp. 2d at 601.  Thus, similar to *Johnson*, *supra*, a plaintiff

whose insider trading claim is barred by the Section 10(b) statute of limitations may still bring a

claim under the longer limitations period prescribed by Section 20A.  Clearly, Congress would

not have provided for a longer statute of limitations period under Section 20A if it intended that

Plaintiffs be required to bring a separate count under Section 10(b) as a pre-requisite to bringing

a Section 20A claim.[8]

Despite the legal authority and Congressional intent of enacting Section 20A discussed

above, Defendant Bucknum appears to argue that Plaintiffs must bring a "*separate and distinct*"

count under the Exchange Act.  Def.'s Mem. 9-10.  None of the cases Defendant Bucknum cites

support this failed argument.  Rather, in all of those cases, the Section 20A claim was dismissed

because there was a *substantive defect in the pleading of the elements* of the Section 10(b)

claim itself, not because the plaintiffs failed to bring a separate and distinct Section 10(b) count.[9]

Accordingly, as demonstrated above, the securities laws do not require Plaintiffs to bring

a separate count under the Exchange Act as a prerequisite to bringing their Section 20A claim.

As discussed more fully below, Plaintiffs have successfully pled all of the elements of a

predicate insider-trading claim under Section 10(b).

---

[8]   Another reason why a plaintiff might decide to bring an insider trading claim under one
statutory provision over another is because the two statutory sections each provide for a different
measure of damages.  *Enron*, 258 F. Supp. 2d at 601.

[9]   *See In re. Advanta Corp. Sec. Litig.*, 180 F.3d 525 (3d Cir. 1999) (dismissing the Section 20A
claim because plaintiffs failed to plead the essential element of scienter); *Jackson Nat'l Life Ins.
Co. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697 (2d Cir. 1994) (dismissing claim because plaintiffs
failed to plead any of the substantive elements of insider trading and, instead, brought their
derivative claims under the Securities Act of 1933); *In re Verifone Sec. Litig.*, 11 F.3d 865 (9th
Cir. 1993) (dismissing claim because plaintiff failed to plead materiality); *Carney v. Cambridge
Tech. Partners, Inc.*, 135 F. Supp. 2d 235 (D. Mass. 2001) (dismissing claim because plaintiffs
failed to plead all of the essential elements with the requisite specificity); *In re Parametric Tech
Corp. Sec. Litig.*, 300 F. Supp. 2d 206 (D. Mass. 2001) (dismissing claim because plaintiffs
failed to plead materiality and scienter with the requisite particularity); *Hogan v. Piasecki*, No.
96 C 7399, 1997 WL 260345, at *1 (N.D. Ill. May 7, 1997) (dismissing claim because plaintiff
did not explain "how their complaint [could] be read to contain" a predicate Exchange Act
violation).

2.    **The Complaint Alleges Particularized Facts Demonstrating That Defendant Bucknum Sold Biogen Stock While in Possession of Material Non-Public Information Showing Tysabri Would Not Be A Widely Marketable Drug Because of Its Serious Side Effects**

As discussed more fully below, the Complaint fully satisfies all the particularity requirements of the Private Securities Litigation Reform Act of 1995, and Federal Rule of Civil Procedure 9(b).

As an initial matter, Defendant Bucknum does not dispute and, thus, concedes, that:  (1) Bucknum was an *insider*;[10] (2) Bucknum sold Biogen stock during the Class Period on the dates and in the amounts alleged in the Complaint ¶¶ 391, 394; (3) Bucknum did not disclose facts concerning the life-threatening side effects caused by Tysabri and that, as a result, the market for the drug would be only a fraction of that Biogen represented to investors ¶¶ 143, 162, 382; and (4) the information Bucknum possessed was *material*.  Thus, the only issues before this Court are:  (i) whether Plaintiffs have alleged particularized facts demonstrating that Defendant Bucknum was *in possession* of material non-public information concerning Tysabri; and (ii) whether he acted with scienter when he sold his Biogen stock.

With respect to each of the four dates, on which Defendant Bucknum sold Biogen stock -- May 4, 2004, May 25, 2004, November 30, 2004 and February 18, 2005 -- the Complaint sufficiently alleges that Bucknum and the Individual Defendants knew of Tysabri's safety risks and, thus, that the drug would not be widely marketable, prior to and during the Class

---

[10]    Indeed, Defendant Bucknum does not, and cannot, dispute that he qualifies as a corporate insider under Section 20A and Section 10(b) of the Exchange Act by virtue of his position as Biogen's General Counsel in charge of all issues concerning the Company's legal affairs and liability.  As discussed above, Defendant Bucknum, as a result of his position, obtained confidential information concerning the serious side effects caused by Tysabri.  Accordingly, Bucknum is indisputably a corporate insider who had a duty to disclose the serious risks and life-threatening side effects of Tysabri, including his knowledge of the two diagnosed cases of PML and other opportunistic infections, prior to trading in Biogen stock.

14

Period.  ¶¶ 133, 391, 394.  Thus, Defendant Bucknum unequivocally possessed material non-public information concerning these material facts when he sold Biogen stock.  This adverse information, which was not disclosed to the public, artificially inflated the value of Biogen's stock and provided Defendant Bucknum with a window of opportunity to sell his stock at artificially inflated prices because the truth about Tysabri had not been disclosed to the public.

Notwithstanding the foregoing, Defendant Bucknum argues that Plaintiffs did not specifically plead particularized facts concerning Defendant Bucknum's knowledge "as to exactly *what* "inside" information [he] allegedly possessed, *when* he possessed it, *how* it came to possess it, whether he was in a position, or otherwise had the capacity, to understand the implication of it, or even assuming that he did, *how* he allegedly used it in furtherance of his own trades".  Def. Mem. 20-21.  Contrary to Defendant Bucknum's erroneous argument, with respect to each of Bucknum's illegal insider sales, the Complaint alleges, with particularity, each of these facts.

First, the Complaint alleges that Defendant Bucknum knew that Tysabri would not be a widely marketable drug because it caused deaths and other life threatening opportunistic infections in patients taking the drug.  ¶¶ 133, 172.  Second, the Complaint amply pleads that Defendant Bucknum obtained this information prior to and during the Class Period because Tysabri's serious side effects already had materialized into *serious opportunistic infections and even deaths* by January 2004, when the drug's clinical trials were substantially completed, before the Class Period began.  ¶¶ 133, 172.  Thus, Defendant Bucknum was aware of this adverse inside information prior to engaging in *any* of the insider sales that are alleged in the Complaint. ¶ 394.

Third, Defendant Bucknum came to possess the adverse material information concerning Tysabri's safety and marketability by virtue of his position as General Counsel, which required Bucknum to provide legal advice at the highest levels of the Company, on matters affecting the Company's liability, including issues concerning the drugs the Company developed. Given his position and duties as General Counsel of Biogen, Defendant Bucknum certainly knew of the serious side effects caused by Tysabri because those issues were highly material and involved the Company's liability. Moreover, Defendant Bucknum discussed the Company's potential legal liability resulting from the deaths and serious opportunistic infections caused by Tysabri with senior Biogen officials at various meetings. ¶ 339.[11] Defendant Bucknum knew that these adverse facts concerning Tysabri were not publicly disclosed because, in carrying out his duties as General Counsel, Bucknum reviewed all Company press releases and public filings with the SEC prior to them being available to the public to ensure compliance with applicable laws and regulations.

The Complaint also sufficiently alleges that Defendant Bucknum acted with scienter when he consummated his unlawful insider sales. Courts have consistently held that insider sales that are suspicious in timing and amount, as here, create a strong inference that the defendant acted with scienter. *See Shaw*, 82 F.3d at 1224; *In re SmarTalk Teleservices, Inc. Sec. Litig.*, 124 F. Supp. 2d 527 (S.D. Ohio 2000); *AFC*, 348 F. Supp. 2d at 1373. A stock sale may be deemed unusual when it is made at a time or in an amount that suggests the seller is maximizing personal benefit from inside information. *Id.*

---

[11] Since Bucknum admittedly attended the meeting on February 18, 2005 with senior Biogen officials to discuss the two cases of PML (¶ 339), issues that clearly concerned the Company's exposure to liability, there is a strong inference that Defendant Bucknum attended all meetings with senior Biogen officials to discuss material matters affecting the Company's legal liability.

Despite Bucknum's clear duty to refrain from trading in Biogen common stock while privy to inside information, he misused his position as a corporate insider of Biogen to benefit himself by selling $188,600 shares of Biogen common stock during the Class Period at artificially inflated prices for proceeds of approximately $12 million. ¶¶ 38, 391. Those sales, which represented 100% of Bucknum's Biogen shares held as of the beginning of the Class Period, are clearly suspicious in amount. Further, the timing of Defendant Bucknum's sales is extremely suspicious. Each of the four sales was made within days of a significant event. ¶ 394. Indeed, the SEC found that Defendant Bucknum's sales were highly suspicious and, accordingly, forced him to disgorge profits he received from his insider trading on February 18, 2005. ¶ 339.

These particulars, describing the *what*, *when* and *how* Defendant Bucknum knew of the opportunistic infections and serious risks of Tysabri, are more than sufficient to satisfy the PSLRA pleading standards. *See Cabletron*, 311 F.3d at 32 ("courts will allow private securities fraud complaints to advance past the pleadings stage when some questions remained unanswered, provided the complaint as a whole is sufficiently particular."); *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 488 (S.D.N.Y. 2004) ("A plaintiff need not plead dates, times and places with absolute precision.") (citation omitted).

### 3. Defendant Bucknum Sold His Biogen Stock Contemporaneously With Plaintiffs' Purchases of Biogen Stock

To succeed on a Section 20A claim, Plaintiffs must allege that Defendant Bucknum traded "contemporaneously" in time with Plaintiffs while in possession of material non-public information. 15 U.S.C. § 78t-1(a). Courts in this Circuit and throughout the country have found that broad intervals of time are sufficiently contemporaneous. As set fourth below, Defendant Bucknum's illegal insider sales of Biogen stock on: (1) February 18, 2005; (2) November 30, 2004; (3) May 25, 2004; and (4) May 4, 2004, which are detailed on page 135 of the Amended

Complaint, were contemporaneous with Plaintiffs' trades for purposes of pleading a Section 20A.

### a.    Bucknum's February 18, 2005 Sale

Defendant Bucknum sold 89,700 shares of Biogen stock on February 18, 2005 for total proceeds of $6,021,032.  ¶¶ 9, 323, 339, 391, 394.  Plaintiffs purchased 12,000 shares of Biogen common stock on February 22, 2005, only two trading days later.[12]  ¶ 430; Def.'s Mem. Ex. A. Courts have ruled that two, or even more, trading days is sufficiently contemporaneous. *Xcelera.com*, 2004 U.S. Dist. LEXIS 29064, at*6-7 (three trading days is contemporaneous); *Enron*, 258 F. Supp. 2d at 600 (interval between two days and a week is contemporaneous); *In re Eng'g Animation Sec. Litig.,*110 F. Supp. 2d 1183, 1196 (S.D. Iowa 2000) (three trading days is contemporaneous); *Oxford Health Plans,* 187 F.R.D. at 133 (five trading days is contemporaneous); *In re American Bus. Computers Corp. Sec. Litig.*, MDL No. 913 (CLB), 1994 U.S. Dist. LEXIS 21467, at*10 (S.D.N.Y. Feb. 24, 1994) (entire period while relevant material non-public information remained undisclosed may be considered contemporaneous); *In re Cypress Semiconductor Sec. Litig.*, 836 F. Supp. 711 (N.D. Cal. 1993) (five trading days is contemporaneous); *In re Verifone Sec. Litig.*, 784 F. Supp. 1471, 1488-89 (N.D. Cal. 1992) (trading interval of fourteen days or less may be considered contemporaneous); *Froid v. Berner*, 649 F. Supp. 1418, 1421 n.2 (D.N.J. 1986) (five trading days is contemporaneous); *O'Connor &*

---

[12]    ***Trading days***, and not calendar days, is the relevant measurement of contemporaneousness. *In re Xcelera.com Sec. Litig.,* No. 00-11649-RWZ, 2004 U.S. Dist. LEXIS 29064, at*6-7 (D. Mass. Sept. 30, 2004) (using trading days as the relevant measure of contemporaneousness); *In re Oxford Health Plans, Inc. Sec. Litig.*, 187 F.R.D. 133 (S.D.N.Y. 1999) (same).  As Defendant rightly points out, the "contemporaneous requirement is a product of the fact that identifying the party in actual privity with the alleged defendant insider is virtually impossibly when dealing with trades that take place in the public market." (Def. Br. 14-15).  Because the purpose of the contemporaneous requirement is to promote privity between the buyer and the seller of the respective security, *trading days* is the correct measure for contemporaneousness as shares do not change hands during weekends and holidays, when the market is closed.

*Assoc. v. Dean Witter Reynolds, Inc.*, 559 F. Supp. 800, 805 n.5 (S.D.N.Y. 1983) (four trading days is contemporaneous).

### b.    Bucknum's November 30, 2004 Sale

Defendant Bucknum sold 33,900 shares of Biogen stock on November 30, 2004 for proceeds of approximately $2.1 million.  ¶¶ 391, 394.  Plaintiffs purchased 10,011 shares on December 2, 2004, again just two trading days later.  ¶ 430; Def.'s Mem. Ex. A.  As shown in *Section I.B.3.a*, *supra*, two trading days is sufficiently contemporaneous.

### c.    Bucknum's May 25, 2004 Sale

Defendant Bucknum sold 30,000 shares of Biogen stock on May 25, 2004, for proceeds of approximately $1.9 million.  ¶¶ 391, 394.  Plaintiffs purchased 1,000 shares on June 2, 2004, representing a total interval of five trading days.  ¶ 430; Def.'s Mem. Ex. A.  Courts have held five trading days is sufficiently contemporaneous.  *See Enron*, 258 F. Supp. 2d at 600 (interval between two days and a week is "contemporaneous"); *Oxford Health Plans*, 187 F.R.D. at 144 ("Five trading days is a reasonable period between the insider's sale and the plaintiff's purchase to be considered contemporaneous."); *Cypress Semiconductor*, 836 F. Supp. at 714 (five trading days is contemporaneous); *Verifone*, 784 F. Supp. at 1488-1489 (trading interval of fourteen days or less may be considered contemporaneous); *Froid v. Berner*, 649 F. Supp. at 1421 n.2 (five trading days is contemporaneous).

### d.    Bucknum's May 4, 2004 Sale

Defendant Bucknum sold 35,000 shares of Biogen stock on May 4, 2004, for total proceeds of approximately $2.1 million.  ¶¶ 391, 394.  Plaintiffs purchased 500 shares on May 14, 2004, eight trading days later.  ¶ 430; Def.'s Mem. Ex. A.  Eight trading days is sufficiently contemporaneous.  *See In re Silicon Graphics, Inc., Sec. Litig.*, 970 F. Supp. 746, 761 (N.D. Cal . 1997) ("at least one court in this District has held that plaintiffs must show trades within fourteen

days of each other to plead contemporaneousness"); *Verifone*, 784 F. Supp. at 1488-1489 (stating

"that a reasonable period . . . could be as short as a few days, but no longer than a month");

*American Bus. Computers*, 1994 U.S. Dist. LEXIS 21467, at*10 (entire period while relevant

material non-public information remained undisclosed may be considered contemporaneous).

For the reasons set forth above, each of Defendant Bucknum's illegal insider sales is

sufficiently contemporaneous with Plaintiffs' purchases of Biogen stock.

## II.    DEFENDANT BUCKNUM'S PURPORTED DISGORGEMENT OF PROFITS RECEIVED FROM HIS FEBRUARY 18, 2005 SALE DOES NOT PRECLUDE A PRIVATE RIGHT OF ACTION UNDER SECTION 20A

Section 20A(b), 15 U.S.C. § 78(t)-1(b), governing the measure of damages in a Section

20A Exchange Act claim, provides that:

(1)    The total amount of damages imposed under subsection (a) of this section shall not exceed the profits gained . . . in the transaction or transactions that are the subject of the violation.

(2)    The total amount of damages imposed against any persons under subsection (a) of this section shall be diminished by the amounts, if any, that such person may be required to disgorge, pursuant to a court order obtained at the instance of the Commission, in a proceeding brought under Section 21(d) of this title relating to the same transaction or transactions.

As discussed above, Defendant Bucknum was ultimately forced to disgorge, to the SEC,

$1.9 million in purported ill-gotten profits from his sale of Biogen stock on February 18, 2005.

¶ 340.  Defendant Bucknum argues that, under Section 20A, this disgorgement precludes a

private right of action against him for his illegal trading on that date.  Def.s' Mem. 22-23.

Defendant's argument relies upon a patent misreading of the Section 20A statute and is not

supported by the case law.  Accordingly, as discussed more fully below, Defendant's argument

must be dismissed for the following three reasons:  (1) a plain reading of Section 20A(b)(2)

specifically contemplates that disgorgement of lost profits in an SEC action does not

automatically foreclose a private action; (2) Plaintiffs are entitled to adequate discovery to litigate their insider trading claim; and (3) whether Bucknum fully disgorged his profits to the SEC is an issue of fact relating to the ultimate computation of damages not appropriately decided on a motion to dismiss.

First, by providing an express right of offset for damages awarded in a separate SEC action, Congress clearly contemplated and intended that private litigants have the right to full and fair litigation of their claims.  15 U.S.C. § 78(t)-1(b)(2).  Otherwise, subsection (b)(2) would serve no purpose.  Indeed, as the *McGhee* court found, Section 20A(b)(2) clearly "contemplates that the disgorgement of lost profits in [an] SEC action ***does not automatically foreclose a private action brought under 1934 Act § 20A(a) --- else subsection (b)(2) could never have any room for operation at all."***  *McGhee v. Joutras*, No. 94 C 7052, 1995 U.S. Dist. LEXIS 2040, at *2 (N.D. Ill. Feb. 19, 1995).

Second, since Plaintiffs were not parties to the SEC action, they are entitled as a matter of right, to full and fair litigation of their claims and, thus, are not bound by the resolution of the SEC's enforcement action against Defendant Bucknum.  *McGhee*, 1995 U.S. Dist. LEXIS 2040, at *3.  Accordingly, Plaintiffs are entitled to discovery of relevant documents and to take the depositions of Defendant Bucknum and other relevant witnesses.  *Id.* (finding that the plaintiff "who was not a party to the SEC's disgorgement action -- is not of course bound by the resolution of that lawsuit . . . [and is] entitled to litigate the issue for himself.").

Third, Defendant Bucknum has not provided Plaintiffs with even a scintilla of evidence, other than providing a copy of the SEC Settlement Agreement (attached as Exhibit B to Defendant's Memorandum), demonstrating that he fully disgorged his profits to the SEC. Plaintiffs are entitled to develop a factual record through discovery to determine Defendant

Bucknum's illegal profits. Without an opportunity for discovery, Plaintiffs would be deprived of a full and fair opportunity to examine key evidence to determine whether Bucknum did, in fact, fully disgorge the profits he received from his February 18, 2005 sale of Biogen stock, including: (i) the method the SEC used to calculated the profits Bucknum received; (ii) the basis the SEC used in calculate Bucknum's ill-gotten profits; (iii) whether the SEC committed any mathematical errors in calculating the profits; (iv) the proper valuation date to determine Bucknum's basis in the Biogen stock sold; and (v) whether other factors the SEC used to determine the disgorgement amount were appropriate. These questions are issues of fact not appropriately decided on a motion to dismiss. *Cabletron*, 311 F.3d at 32; *McGee*, 1995 U.S. Dist. LEXIS 2040, at *3-4 (denying defendants' motion to dismiss because the determination of damages should be reserved for summary judgment and is not appropriately decided on a motion to dismiss).[13]

---

[13]    Defendant's Memorandum incorrectly claims that Plaintiffs have conceded that Defendant Bucknum disgorged all of his February 18, 2005 trading profits. Def.'s Mem. 22. Defendant is wrong. Plaintiffs have never made any such concession, but, rather, merely refer to the SEC Settlement Agreement for purposes of alleging the existence and settlement of the SEC enforcement action.

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny

Defendant's motion to dismiss in its entirety.[14]

Dated:  February 9, 2007

**MOULTON & GANS, P.C.**

By:  /s/ Nancy Freeman Gans

Nancy Freeman Gans, BBO # 184540

55 Cleveland Road

Wellesley, MA  02481

Telephone:  (781) 235-2246

Facsimile:  (781) 239-0353

*Liaison Counsel for Plaintiffs*

| | |
|---|---|
| **ENTWISTLE & CAPPUCCI LLP** | **MILBERG WEISS & BERSHAD LLP** |
| Vincent R. Cappucci | Sanford P. Dumain |
| Stephen D. Oestreich | Richard Weiss |
| Robert N. Cappucci | Ann E. Gittleman |
| Shannon L. Hopkins | One Pennsylvania Plaza |
| Seth A. Brookman | New York, NY  10119-0165 |
| 280 Park Avenue, 26th Floor West | Telephone:  (212) 594-5300 |
| New York, NY  10017 | Facsimile:  (212) 868-1229 |
| Telephone:  (212) 894-7200 | |
| Facsimile:  (212) 894-7272 | |

*Lead Counsel for Plaintiffs*

---

[14]  If the Court finds any deficiencies, Plaintiffs respectfully request leave to amend, which should be freely granted.  *See, e.g., In re Cytyc Corp. Sec. Litig.*, No. 02-12399-NMG, 2005 U.S. Dist. LEXIS 6166, at *108 (D. Mass Mar. 1, 2005) (The Honorable United States Magistrate Judge M. Bowler).

## <u>Certificate of Service</u>

I, Nancy Freeman Gans, hereby certify that a true copy of the above document was served upon the attorney of record for each party via ECF.

<u>/s/ Nancy Freeman Gans</u>
Nancy Freeman Gans