UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
IN RE BIOGEN IDEC, INC.                )          CIVIL ACTION
SECURITIES LITIGATION                  )          NO.  05-10400-RCL
_____)

**ASSENTED-TO MOTION FOR LEAVE TO FILE A REPLY MEMORANDUM
OF LAW IN FURTHER SUPPORT OF DEFENDANT THOMAS J. BUCKNUM'S
MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

Defendant Thomas J. Bucknum ("Bucknum") hereby moves pursuant to Local

Rule 7.1(B)(3) for leave to submit a reply memorandum in further support of his Motion

To Dismiss The Consolidated Class Action Complaint. As grounds for this motion,

Defendants state as follows:

1.      On October 13, 2006, Plaintiffs filed a 435-paragraph, 149-page

Consolidated Class Action Complaint (Docket No. 77) ("Amended Complaint") asserting

claims against multiple defendants pursuant to Sections 10(b), 20(a) and 20(A) of the

Securities Exchange Act of 1934 (15 U.S.C. § 78a et seq.), and challenging 89 statements

made over a 12-month putative class period.  The Amended Complaint asserts a claim

against Bucknum in particular under Section 20A of the Securities Exchange Act of

1934.

2.      On January 10, 2007, Defendants filed a motion to dismiss the

Consolidated Class Action Complaint (Docket No. 96), along with a supporting

memorandum of law (Docket No. 97).

3.      On February 9, 2007, Plaintiffs filed an opposition memorandum (Docket

No. 101).

4.      Pursuant to this Court's electronic scheduling order dated December 19, 2006, Bucknum's motion for leave to file a reply memorandum, attaching the proposed reply memorandum, is to be filed by no later than February 26, 2007. Bucknum's proposed reply memorandum (attached hereto as Exhibit A) concisely addresses Plaintiffs' arguments and cases and contains analysis and authority that will assist the Court in its consideration of the pending motion. Plaintiffs assent to the relief sought by this motion.

Dated: February 26, 2007

Respectfully submitted,

  /s/  Mark A. Berthiaume
Mark A. Berthiaume (BBO #041715)
Timothy E. Maguire (BBO #630773)
Edward E. Hale, Jr. (BBO #651272)
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
Tel:  (617) 310-6000
Fax:  (617) 310-6001

Dated: February 26, 2007

## LOCAL RULE 7.1 CERTIFICATION

I, Mark A. Berthiaume, hereby certify that, in compliance with Local Rule 7.1(A)(2), I conferred with counsel for Plaintiffs regarding the filing of this motion and counsel for Plaintiffs assents to the relief sought by this motion.

Dated: February 26, 2007

  /s/  Mark A. Berthiaume
Mark A. Berthiaume

<u>**CERTIFICATE OF SERVICE**</u>

I, Mark A. Berthiaume, hereby certify that on February 26, 2007, a true copy of the foregoing document was filed through the ECF system and served electronically upon registered ECF participants as identified on the Notice of Electronic Filing, and I further certify that paper copies of the foregoing document will be sent to counsel of record not registered with ECF on February 26, 2007.

   /s/  Mark A. Berthiaume
Mark A. Berthiaume

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| | ) | |
| IN RE BIOGEN IDEC, INC. | ) | CIVIL ACTION |
| SECURITIES LITIGATION | ) | NO.  05-10400-RCL |
| | ) | |

**[PROPOSED] REPLY OF DEFENDANT THOMAS J. BUCKNUM TO
PLAINTIFFS' OPPOSITION TO THOMAS J. BUCKNUM'S MOTION TO DISMISS
THE CONSOLIDATED CLASS ACTION COMPLAINT**

**INTRODUCTION**

Defendant Thomas J. Bucknum ("Bucknum") submits the following reply to the Lead

Plaintiffs' ("Plaintiffs") opposition to Bucknum's Motion to Dismiss the Consolidated Class

Action Complaint ("Opposition").  In an effort to avoid dismissal, Plaintiffs, in their Opposition,

have completely abandoned prior arguments, grossly exaggerated and improperly expanded upon

the <u>actual</u> averments in the Consolidated Class Action Complaint ("Amended Complaint"), and

completely and conveniently ignored controlling precedent of this Court.  Notwithstanding

Plaintiffs' desperate effort, the one claim against Bucknum, which relates to four alleged insider

trades, remains subject to dismissal on several, independent grounds.

When previously confronted with the fact that they had failed to plead a predicate

Exchange Act violation against Bucknum as required for maintenance of a Section 20A claim,

Plaintiffs argued that they did not have to plead a predicate violation against Bucknum so long as

they had adequately pled a predicate violation against another defendant.  (*See* Plaintiffs'

Memorandum of Law in Opposition to Defendants' Revised Motion to Dismiss the Consolidated

Class Action Complaint, p. 29).  Contending that they had adequately pled Section 10(b)

material misstatement claims against other defendants, therefore, Plaintiffs suggested that it was

immaterial that they had <u>not</u> pled a predicate violation against Bucknum.  (*Id.*).  Now, having

realized the frivolousness of their prior position, Plaintiffs completely reverse course and suggest that they <u>have</u> pled a predicate violation against Bucknum in the form of a Section 10(b) insider trading claim.[1]  In addition to the obvious transparence of this sudden about-face, Plaintiffs' new position also fails to withstand scrutiny.

As an initial matter, whether one is dealing with Plaintiffs' primary claim of insider trading pursuant to Section 20A or their newfound predicate violation of insider trading under Section 10(b), Plaintiffs are required to adequately plead and establish, among other things, their standing as contemporaneous traders.  As this Court (Lindsay, J.) has pointed out, "[c]ase law in this circuit holds that an interval of just two days between a plaintiffs purchase and sales by insiders is sufficient to deny the plaintiff standing as a contemporaneous trader."  *Carney v. Cambridge Tech. Partners, Inc.*, 135 F. Supp. 2d 235, 257 n.10 (D. Mass. 2001) (citing *Backman v. Polaroid Corp.*, 540 F. Supp. 667, 671 (D. Mass. 1982), *aff'd,* 910 F.2d 10 (1st Cir. 1990).  At best, Plaintiffs, who wholly ignore this Court's precedent in their Opposition, have established that one of them traded within eight trading days of Bucknum's alleged May 4, 2004 sale, five trading days of the alleged May 25, 2004 sale, and two trading days of the alleged November 30, 2004 and February 18, 2005 sales.  Under either Section 20A or 10(b),[2] therefore, Plaintiffs have failed to establish in the Amended Complaint that they traded within one day of any of Bucknum's four alleged insider trades.  This alone is fatal to both their predicate violation (Section 10(b)) and primary claim (Section 20A).

---

[1]  While no court appears to have addressed the issue, it is wholly illogical to suggest that a Section 10(b) insider trading claim can serve as the predicate Exchange Act violation for a Section 20A insider trading claim.  It is akin to suggesting in a felony-murder case that the murder itself can serve as the predicate felony.

[2]  *Carney* involved a Section 20A insider trading claim, while *Backman* involved a Section 10(b) insider trading claim.

Moreover, while Plaintiffs have exaggerated and expanded upon the actual facts pled in their Amended Complaint, it is clear from a plain reading of that document that they have not come close to satisfying the strict pleading requirements under the PSLRA and Fed. R. Civ. P. 9(b) for either their Section 20A insider trading claim or their newly found, predicate insider trading violation under Section 10(b).  Indeed, it is evident that Plaintiffs are attempting to boot-strap their claim against Bucknum for insider trading on May 4, May 25 and November 30, 2004, to the February 18, 2005 trade.  For, while they provide some minimal (albeit misleading and incomplete) facts in the Amended Complaint relating to the events that allegedly led to the February 18th trade (e.g., Bucknum attended a meeting at noon that day where he learned that two individuals had been diagnosed with PML), they provide absolutely no facts, specific or otherwise, to suggest that Bucknum was trading on inside information on the three prior dates.  Even in their Opposition, Plaintiffs make nothing more than blanket and conclusory statements to the effect "that Bucknum and the Individual Defendants knew of Tysabri's safety risks and, thus, that the drug would not be widely marketable, prior to and during the Class Period" (Opposition, pp. 14-15), and that Bucknum "came to possess [this] adverse material information concerning Tysabri's safety and marketability by virtue of his position as General Counsel." (Opposition, p. 16).  Nowhere in the Amended Complaint, or even their Opposition in which they exaggerate the allegations in the Amended Complaint, do Plaintiffs provide any detail as to exactly what information Bucknum received, when he received it, how he received it, or how his receipt of that information had any connection to his trades; particularly the trades on May 4, May 25 and November 30, 2004.  This is precisely the type of pleading that the PSLRA and Rule 9(b) is intended to prevent.

3

Plaintiffs have also failed to raise a strong inference that Bucknum acted with the requisite scienter. As acknowledged in the Opposition (pp. 16-17), Plaintiffs' only evidence of scienter is what they contend is the suspicious timing and amount of Bucknum's trades. When one actually looks at the facts as pled in the Amended Complaint, as opposed to Plaintiffs' distorted recitation of those facts in the Opposition, however, there is nothing suspicious about the timing or amount of the trades. Indeed, short of their efforts to connect Bucknum's February 18, 2005 trade to the meeting at noon that day at which he allegedly learned of the PML diagnoses (which is not even significant, because, as is evident from the SEC Complaint, Bucknum actually placed the trade order at 8:45 a.m. that morning, well before the meeting), Plaintiffs offer no facts in the Amended Complaint to suggest that Bucknum's other alleged trades on May 4, May 25 and November 30, 2004, were anything but the trades of a typical investor attempting to take advantage of a favorable stock price.

Finally, contrary to their protests, Plaintiffs are also barred from maintaining a claim against Bucknum concerning even the February 18, 2005 trade due to his undeniable disgorgement of the profits from that trade in his settlement with the SEC. According to the Opposition, Plaintiffs suggest that they should be permitted to take discovery to determine whether the profits that Bucknum disgorged in his settlement with the SEC were equivalent to the actual profits that he made in that trade. It was the Plaintiffs, however, who affirmatively pled in their Amended Complaint that Bucknum sold his stock on February 18, 2005 "for a profit of $1.9 million." (Amended Complaint, ¶ 394). And, as evidenced by the Final Judgment incorporated in the Amended Complaint and on file with this Court, that is exactly the amount of profit that Bucknum was required to disgorge pursuant to the court order obtained at the insistence of the SEC. Clearly, therefore, there is no genuine dispute regarding either the amount

of profits received by Bucknum or the disgorgement of such profits such that Plaintiffs should be permitted to engage in needless discovery.

Given the multiple, independent grounds for dismissal, Bucknum's motion to dismiss should be granted with respect to all four trades (May 4, May 25 and November 30, 2004 and February 18, 2005).

## ARGUMENT

I.    **WHILE PLAINTIFFS ATTEMPT TO REVERSE COURSE IN THEIR OPPOSITION, THEY PREVIOUSLY ADMITTED THAT THEY HAD NOT PLED A PREDICATE EXCHANGE ACT VIOLATION AGAINST BUCKNUM.**

Plaintiffs first oppose Bucknum's motion to dismiss by arguing that he has improperly suggested that Plaintiffs are required to bring a separate <u>count</u> under the Exchange Act in order to satisfy the predicate act requirements of Section 20A.  (Opposition, p. 10).  Instead, Plaintiffs argue that they are only required to allege facts and successfully plead all of the elements of a predicate violation.  (Opposition, pp. 10-11).  Putting aside whether Plaintiffs have properly characterized Bucknum's argument, what they notably fail to mention is that they previously admitted that they had <u>not</u> pled a predicate Exchange Act violation against Bucknum, either in the form of a separate count or by alleging facts sufficient to plead all of the elements of such a predicate violation.

As noted by Plaintiffs in opposition to the other defendants' motion to dismiss, the other defendants had first raised the argument "that Plaintiffs Section 20A claim against Defendant Bucknum should be dismissed on the grounds that plaintiffs have failed to plead a predicate Exchange Act violation of Section 10(b) against Bucknum."  (Plaintiffs' Memorandum of Law in Opposition to Defendants' Revised Motion to Dismiss the Consolidated Class Action Complaint, p. 29).   In response, Plaintiffs did not dispute that they had not pled a predicate violation against

Bucknum, under Section 10(b) or any other section of the Exchange Act. Instead, they argued that "Section 20A does not require [that they plead] a predicate violation by *each* insider." (*Id*. at p. 29 (emphasis in original)). According to Plaintiffs, therefore, their admitted failure to plead a predicate violation against Bucknum, either in the form of a separate count or by alleging facts sufficient to plead all of the requisite elements of such a predicate violation, was cured by the fact that, at least according to them, they had pled a predicate violation against one or more of the other defendants.

Apparently, having recognized the weakness of their argument, Plaintiffs have now reversed course in their Opposition and suggest that they <u>have</u> pled a predicate Exchange Act violation against Bucknum. Specifically, Plaintiffs contend that they have alleged facts sufficient to plead all of the elements of a Section 10(b) insider trading violation by Bucknum. By their own prior admission, however, that clearly is not the case. What, by their own admission, was previously lacking, can not suddenly materialize at the mere whim of the Plaintiffs. Moreover, even assuming that a party could satisfy the predicate Exchange Act violation requirement for a Section 20A insider trading claim by pleading a Section 10(b) insider trading violation (which is inherently illogical and not conceded by Bucknum), Plaintiffs have not alleged facts sufficient to establish such a predicate Exchange Act violation.

## II.    PLAINTIFFS HAVE FAILED TO PLEAD WITH PARTICULARITY EITHER A PREDICATE EXCHANGE ACT VIOLATION OF SECTION 10(b) OR A CLAIM UNDER SECTION 20A AGAINST BUCKNUM FOR INSIDER TRADING.

As Plaintiffs acknowledge in their Opposition, the allegations against Bucknum in the Amended Complaint are subject to heightened scrutiny under the PSLRA and Fed. R. Civ. P. 9(b). (*See, e.g.*, Opposition, p. 14). Accordingly, whether one is reviewing the Amended Complaint for purposes of assessing the adequacy of Plaintiffs' Section 20A insider trading claim against Bucknum, or their newly found predicate Exchange Act violation for insider

trading under Section 10(b), the same scrutiny applies.  Despite Plaintiffs' efforts in the

Opposition to distort and expand on the actual allegations in the Amended Complaint, it is

evident from a review of that document that neither their purported Section 10(b) predicate

Exchange Act violation nor their Section 20A claim against Bucknum can withstand even the

slightest of scrutiny, never mind the requisite heightened scrutiny.

> **A.     Plaintiffs Have Not Established The Contemporaneous Trader Requirements For Either A Section 20A Insider Trading Claim Or Predicate Exchange Act Violation Under Section 10(b) For Insider Trading.**

As set forth at length in Bucknum's original memorandum in support of his motion to

dismiss (pp. 14-20), Section 20A requires that Plaintiffs allege with particularity that their

purchase of Biogen stock was "contemporaneous" with the four allegedly violative sales by

Bucknum on May 4, 2004, May 25, 2004, November 30, 2004, and February 18, 2005.  As this

Court (Lindsay, J.) has made clear, "case law in this circuit holds that an interval of just two days

between a plaintiffs purchase and sales by insiders is sufficient to deny [a] plaintiff standing as a

contemporaneous trader."  *Carney v. Cambridge Tech. Partners, Inc.*, 135 F. Supp. 2d 235, 257

n.10 (D. Mass. 2001) (noting that this represented independent grounds for dismissal of

plaintiffs' Section 20A class action claims) (citing *Backman v. Polaroid Corp.*, 540 F. Supp. 667,

671 (D. Mass. 1982), *aff'd*, 910 F.2d 10 (1st Cir. 1990)).  Indeed, one case has held that a Section

20A claim must be dismissed unless a plaintiff traded on the "same day" as the defendant.  *See*

*In re Stratus Computer, Inc. Sec. Litig.*, No. 89-2075-Z, 1992 WL 73555, at *6 (D. Mass. Mar.

27, 1992).  In the First Circuit, the same strict "contemporaneous" requirements apply to an

insider trading claim under Section 10(b).  *See Backman*, 540 F. Supp. at 669-71 (dismissing

class action complaint for insider trading under Section 10(b) for lack of standing, where

plaintiffs had purchased shares as few as two trading days after the alleged offending sale).  *See*

*also Colby v. Hologic*, 817 F. Supp. 204 (D. Mass. 1993) (dismissing a class action complaint for insider trading under Section 10(b) for lack of standing, after having been persuaded by the strict contemporaneous trading standard enunciated in *Backman*). In the present case, because Plaintiffs cannot satisfy these strict contemporaneous trading requirements with respect to any of Bucknum's alleged offending sales, they cannot establish the requirements for either a predicate violation under Section 10(b) or, more importantly, their actual claim for insider trading under Section 20A.

In their Opposition, Plaintiffs urge the Court to adopt a much more expansive view of "contemporaneous." In so doing, they ask this Court to ignore its own precedent. And, as if to make their point, that is exactly how Plaintiffs go about supporting their argument--by ignoring the Court's precedent. In fact, Plaintiffs do not even mention, never mind distinguish, *Carney, Stratus* and *Backman*. Instead, Plaintiffs cite to cases from other jurisdictions and simply ask this Court to reject the "growing trend among district courts in a number of circuits . . . to adopt a restrictive reading of the term 'contemporaneous.'" *In re MicroStrategy, Inc. Securities Litigation*, 115 F. Supp. 2d 620, 662 (E.D. Va. 2000). As set forth in Bucknum's original memorandum in support of his motion to dismiss (pp. 14-15), this trend toward a strict interpretation of "contemporaneous" has been driven by the "modern realities of the securities markets." *Id*. at 663 (citation omitted). *See also Colby*, 817 F. Supp. at 216 ("There are persuasive policy considerations which underpin the 'contemporaenous' standing requirements of evolving federal common law. The unfair advantage presumably possessed by insiders dissipates rapidly, in part because their trading transactions are followed and reported by securities analysts. Moreover, to extend liability 'well beyond the time of the insider's trading

could make the insider liable to all the world.'"). Plaintiffs offer nothing in their Opposition that should cause this Court to reverse its own precedent and suddenly reject this growing trend.

Indeed, the only case cited by Plaintiffs from this jurisdiction, *In re Xcelera.com Sec. Litig.*, No. 00-11649-RWZ, 2004 U.S. Dist. LEXIS 29064 (D. Mass. Sept. 30, 2004), is readily distinguishable and ultimately of no assistance to Plaintiffs' cause. While the court in that case allowed a plaintiff who had traded within three trading days of the alleged insider sales to act as a class representative, it only did so after finding that there were three other representative plaintiffs who had traded on the <u>same day</u> as the alleged insider trades.[3] None of the Plaintiffs in the present case can say the same, and even a three trading day window would not save Plaintiffs' claim as to two of Bucknum's four alleged trades. In view of the prevailing precedent and modern trend, therefore, it is clear that Plaintiffs cannot satisfy the contemporaneous trader requirements under either Section 10(b) or, more importantly, Section 20A with respect to any of Bucknum's four alleged trades. Accordingly, the Section 20A claim against Bucknum must be dismissed in its entirety.

### B. Plaintiffs Have Failed To Plead With Particularity That Bucknum Had Knowledge Of Material, Non-Public Information Prior To Making His <u>Alleged Trades.</u>

For both their Section 20A insider trading claim and purported predicate Exchange Act violation for insider trading under Section 10(b) to survive a motion to dismiss, Plaintiffs must allege facts in the Amended Complaint with particularity to establish that Bucknum had actual knowledge of material, nonpublic information at the time he placed the alleged offending trades.

---

[3]  The court's reliance in *Xcelera* on the case of *Shapiro v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 495 F.2d 228 (2d Cir. 1974) was also misplaced, since, in the words of the court in *Colby*, "[t]he open door to liability seemingly afforded under *Shapiro*, . . . was most emphatically closed by the Second Circuit in *Wilson v. Comtech Telecommunications Corp.*, 648 F.2d 88, 94 (1981)." 817 F. Supp. at 216.

*See* 15 U.S.C. § 78t-1 (to have a cause of action under Section 20A, plaintiff must establish that the insider traded securities "while in possession of material, non-public information"); *Colby*, 817 F. Supp. at 215 (noting that the same element is required for insider trading under Section 10(b)). This they have failed to do.

> 1.  **Plaintiffs have failed to establish that there existed material, non-public information concerning life-threatening side-effects caused by Tysabri which demonstrated that there would not be a wide market <u>for the drug.</u>**

As a preliminary matter, contrary to Plaintiffs' statement at page 14 of the Opposition, Bucknum disputes and does <u>not</u> concede that there existed material information concerning life-threatening side effects caused by Tysabri which demonstrated that there would not be a wide market for the drug. As set forth in detail in the memorandum of law (and reply) submitted by the other defendants in support of their motion to dismiss, Plaintiffs have wholly failed to allege with sufficient particularity the existence of any so-called "opportunistic infections" or "life threatening" side effects caused by Tysabri which demonstrate that there was not going to be a wide market for the drug. (Revised Memorandum of Law in Support of Defendants' Motion to Dismiss, pp. 12-18). More specifically, Plaintiffs have failed to allege with sufficient particularity, facts necessary to support their contention (1) that Tysabri "turns off" the immune system; (2) that defendants knew, based on selected scientific publications, that patients taking Tysabri would likely suffer from PML; and (3) that results from clinical trials "confirm" that Tysabri "turns off" the immune system. (*Id.*). Simply put, therefore, even if Bucknum had the motive and opportunity to obtain and trade on it, the alleged material inside information did not exist. Any analysis of the Section 20A insider trading claim against Bucknum (or the newly alleged predicate Exchange Act violation under Section 10(b)), therefore, is moot and that claim must be dismissed.

2.     **Plaintiffs distort and misstate the allegations of the Amended Complaint and rely upon purely conclusory allegations in an unsuccessful effort to establish that Bucknum had knowledge of the <u>alleged material, non-public information.</u>**

Throughout their Opposition, Plaintiffs make a series of wildly conclusory allegations and draw a corresponding series of wildly improper inferences in an effort to suggest that they have adequately pled in the Amended Complaint that Bucknum had knowledge of the alleged material, non-public information prior to his alleged trades. Not only are those supposed allegations and inferences insufficient to satisfy the heightened pleading requirements of the PSLRA and Rule 9(b), but in most cases the underlying (and otherwise insufficient) allegations do not even appear in the Amended Complaint. Indeed, Plaintiffs have attempted to bolster the scant, conclusory allegations that actually exist as to Bucknum in the Amended Complaint by attempting to inject additional allegations in their Opposition. Like the allegations in the Amended Complaint, however, these additional allegations are wholly conclusory in nature and lack the level of substance required to survive a motion to dismiss. The following representative examples illustrate this point.

> <u>Example 1</u> - Citing to para. 339 of the Amended Complaint, Plaintiffs suggest that, *"As General Counsel of Biogen, Defendant Bucknum provided legal guidance and advice to senior Biogen executives regarding, among other things, the Company's liability resulting from incidents concerning the drugs Biogen tests in clinical trials and then sells to the public upon approval by the Food and Drug Administration ('FDA'), as well as the Company's compliance with relevant laws and regulations."* (Opposition, p. 3).

In fact, paragraph 339 of the Amended Complaint contains no such allegations. Indeed, there are no allegations anywhere in the Amended Complaint regarding Bucknum's day-to-day duties. Moreover, even if such generic allegations did exist in the Amended Complaint, they would by no means provide an adequate basis for establishing that Bucknum had knowledge of the alleged material, non-public information at issue. Nonetheless, Plaintiffs proceed in their

Opposition to make the following bald-faced suggestion based on this non-existent allegation: "Since Tysabri's serious side effects subjected the Company to significant legal liability, Defendant Bucknum was <u>undoubtedly</u> aware of them." (Opposition, p. 3 (emphasis added)). The assertion is frivolous, at best.

> <u>Example 2</u> - Continuing to build on these non-existent and otherwise inconsequential allegations, Plaintiffs suggest that, *"Thus, there is a strong inference that Defendant Bucknum, given his position and duties as General Counsel of Biogen, knew of the serious side effects before the Class period began, as those risks had already materialized into serious opportunistic infections and even deaths by January 2004 when the drug's clinical trials were substantially completed."* (Opposition, p. 3).

As an initial matter, even assuming, *arguendo*, that "those risks had already materialized into serious opportunistic infections and even deaths by January 2004" (which is not true), there are absolutely no allegations in the Amended Complaint (or even the Opposition) by which Bucknum could be charged with that knowledge, nor could there be. For instance, there are no allegations as to when or how Bucknum might have received that information. Instead, Plaintiffs rely upon his mere position as General Counsel of Biogen to suggest that he <u>must</u> have had such knowledge. Plaintiffs cannot satisfy the heightened pleading requirements of the PSLRA and Rule 9(b), however, by merely alleging that Bucknum held a certain position at the Company. *See Orton v. Parametric Tech. Corp.*, 344 F. Supp. 2d 290, 306 (D. Mass. 2004) ("[A] vague assertion that a defendant must have known about the fraud by virtue of his position of authority [does not] suffice to prove a strong inference of scienter."); *Carney*, 135 F. Supp. 2d at 255 ("[A]ttributing knowledge to a defendant merely because of the defendant's status in a corporation, generally fails as a method of meeting the rigorous requirements for pleading scienter."); *In re Galileo Shareholders Litig.*, 127 F. Supp. 2d 251, 261 (D.

Mass. 2001) (observing that the allegation that defendants "must have known the facts

solely by virtue of their positions with the issuer of the securities" is insufficient).

Rather, the Amended Complaint must contain specific, articulable facts regarding what

Bucknum knew, when he knew it, and how he gained this knowledge.  Plaintiffs' failure

to include such particular allegations is fatal to their claim.  To hold otherwise would be

to subject general counsel at every corporation to automatic status as a defendant in every

case of alleged corporate wrongdoing.

> Example 3 - Again citing to para. 339 of the Amended Complaint, Plaintiffs
> suggest that *"Bucknum, in his role as Biogen's Secretary and Clerk, would have
> also attended all Board of Director's meetings prior to and during the Class
> Period, including those meetings discussing the Company's potential legal
> liability resulting from the deaths and serious opportunistic infections caused by
> Tysabri with other senior Biogen officials."*  (Opposition, p. 3).

Once again, there is no such allegation in paragraph 339, or anywhere else in the

Amended Complaint.  Nowhere in the Amended Complaint is Bucknum even identified as

Biogen's Secretary and Clerk; not that such an allegation, even if it had been asserted, would

have any significance.  Nor are there allegations in the Amended Complaint of Bucknum's

attendance at <u>any</u> Board of Director meetings, let alone any Board of Director meetings at which

"deaths and serious opportunistic infections caused by Tysabri" were discussed.  Once again, the

allegations, which are conclusory and insubstantial to begin with, do not even exist in the

Amended Complaint.

> Example 4 - Yet again citing to paragraph 339 of the Amended Complaint,
> Plaintiffs suggest that *"Bucknum discussed the Company's potential legal liability
> resulting from the deaths and serious opportunistic infections caused by Tysabri
> with senior Biogen officials at various meetings."*  (Opposition, p. 3).

No such allegations are contained in paragraph 339 or elsewhere in the Amended

Complaint.  In fact, the only meeting discussed in paragraph 339 or anywhere else in the

Amended Complaint as it relates to Bucknum is the noon meeting on February 18, 2005, where Bucknum allegedly learned that two clinical trial participants had been diagnosed with PML. And it is on the sole basis of this one, isolated meeting near the very end of the alleged Class Period that Plaintiffs attempt to retroactively build their entire case that Bucknum had knowledge of similar information at the time of his three other alleged trades during the previous year (May 4, May 25, and Nov. 30, 2004). In so doing, Plaintiffs ask this Court to draw an absurd series of inferences, once again based on allegations that are not even contained in the Amended Complaint.

According to Plaintiffs, if Bucknum attended the Feb. 18, 2005 meeting, he must have attended other prior meetings. (Opposition, p. 16 n.11: "Since Bucknum admittedly attended the meeting on February 18, 2005 with senior Biogen officials to discuss two cases of PML . . . , there is a strong inference that Defendant Bucknum attended all meetings with senior Biogen officials to discuss material matters affecting the Company's legal liability."). Of course, Plaintiffs do not bother to identify when or where any such prior meeting took place, what was discussed, or who was present. Certainly, they do not place Bucknum at any such prior meeting and his alleged attendance at the February 18, 2005 meeting can not serve as the basis for his alleged attendance at other meetings (even if Plaintiffs had actually bothered to make such an allegation in their Amended Complaint).

More importantly, the fact that Bucknum allegedly learned at this February 18, 2005 meeting that two clinical trial participants had been diagnosed with PML does not serve to suggest, as Plaintiffs would have it, that he had knowledge of similar information prior to that date and at the time of his three other alleged trades in 2004. Once again, Plaintiffs do not provide any actual allegations, specific or otherwise, in the Amended Complaint to support such

an inference and the purely conclusory allegations in their Opposition do not serve to cure this

fatal flaw.  Moreover, the inference proffered by Plaintiffs is internally inconsistent.  On the one

hand, they suggest (inaccurately) that as soon as Bucknum learned of this information at the

meeting on February 18, 2005, it prompted him to effectuate a trade on that date.  On the other

hand, they suggest that Bucknum already knew of this type of information and that this can be

inferred from his attendance at that very same February 18, 2005 meeting.  Plaintiffs can not

have it both ways.  At best, the only inference that can be drawn from Plaintiffs' allegations is

that the February 18, 2005 meeting (which took place at noon, four hours <u>after</u> Bucknum placed

his trade order) was the <u>first</u> <u>time</u> Bucknum (and the other defendants) had obtained such

information.

Plaintiffs have failed to provide any allegations, with particularity or otherwise, to

suggest that Bucknum had knowledge of any material, non-public information at the time of his

alleged trades (especially his alleged May 4, May 25 and Nov. 30, 2004 trades).  As such,

Plaintiffs have failed to satisfy the heightened pleading requirements of both the PSLRA and

Rule 9(b).

> **3.     Plaintiffs have failed to plead with particularity that Bucknum
> possessed the requisite scienter to sustain either a Section 20A claim
> or Section 10(b) predicate violation for insider trading.**

Likewise, to sustain their insider trading claim, Plaintiffs must "state with particularity

facts giving rise to a strong inference that [Bucknum] acted with the required state of mind" or

scienter.  15 U.S.C. § 78u-4(b)(2) (the PSLRA, requiring particularized showing of scienter

under Section 10(b)).  In the First Circuit, this means Plaintiffs must allege specific facts

showing it is "highly likely" that Bucknum intentionally sought to defraud Plaintiffs by trading

his Biogen stock while in possession of material, nonpublic information.  *Ezra Charitable Trust*

*v. Tyco Int'l, Ltd.*, 466 F.3d 1, 6 (1st Cir. 2006).  According to Plaintiffs, the Court should infer

that Bucknum acted with the requisite scienter because his trades were "suspicious in timing and amount." (Opposition, p. 16). Plaintiffs fail, however, to offer any specific allegations to support this proposition.

While Plaintiffs at least offer minimal (albeit incomplete and misleading) allegations with respect to Bucknum's alleged February 18, 2005 trade in which they attempt to connect that trade to the information he allegedly learned at the meeting at noon that day (even though he initiated the trade at 8:45 that morning), they offer no allegations at all with respect to his other trades. At best, Plaintiffs try to attach some sinister notice to the timing of two of Bucknum's other alleged trades by suggesting that they each occurred in close proximity to a particular event. Even these scant allegations, however, cannot withstand scrutiny.

Specifically, Plaintiffs suggest that Bucknum's alleged May 25, 2004 trade was made on the date that Biogen announced their submission to the FDA for fast-track approval of Tysabri to treat MS (Amended Complaint, p. 8 (chart) and ¶ 394), and that his alleged November 30, 2004 trade was made "less than a week after the FDA granted approval of Tysabri." (Amended Complaint, ¶ 394).[4] Plaintiffs do not go on, however, to make any allegations from which any

---

[4] Plaintiffs' allegations regarding the fourth alleged trade on May 4, 2004 are simply confusing and by no means particular and well-plead. For example, while Plaintiffs state in their Opposition that May 4, 2004 is the first date on which Plaintiffs allege Bucknum engaged in a purported insider trade (Opposition, p. 8, citing Amended Complaint, ¶ 391), the Amended Complaint references a March 4, 2004 trade by Bucknum in which Bucknum allegedly sold the exact amount of shares and produced the exact dollar amount of proceeds as the alleged May 4, 2004 trade. (See Amended Complaint, ¶ 394). Even more confusing is the fact that the Amended Complaint attempts to attribute a fraudulent intent to Bucknum's non-existent March 4, 2004 trade: "March 2, 2004 - the day Defendants announced Biogen's financial results for the year-ended December 31, 2003, Defendant Rohn sold 125,000 shares for proceeds of approximately $7 million. Only two days later, on March 4, 2004, Defendant Bucknum sold 35,000 shares for proceeds of approximately $2.1 million." Amended Complaint, ¶ 394. Plaintiffs' attempt to draw an inference of scienter from a trade Plaintiffs concede in their Opposition Bucknum never made is simply further evidence of the desperate, unfounded nature of their insider trading claims.

sinister connection between these alleged trades and events actually can be inferred. They do not allege (nor could they) that either of these events resulted in a spike in Biogen's stock price from which Bucknum profited. Nor do they allege (nor could they) that Bucknum traded at a time when the related events were unknown to contemporaneous traders, such that he was trading on inside information. Moreover, given Plaintiffs' frivolous and unsupported theory that Bucknum and the other defendants knew all along that Tysabri had safety issues that would prevent it from enjoying a broad share of the market, it would be irrelevant that he allegedly traded in close proximity with these events. According to Plaintiffs' theory, Bucknum could have traded at any time during the purported Class Period and he would have been trading on alleged insider information. Of course, as discussed above, Plaintiffs have completely and utterly failed to allege adequately that Bucknum possessed such alleged material, non-public information throughout the relevant time period. Ultimately, therefore, Plaintiffs' efforts to connect Bucknum's alleged May 25 and November 30, 2004 trades to specific events only proves the weakness of that theory.

Plaintiffs further allege as evidence of Bucknum's scienter that his "sales, which represented 100% of his shares held as of the beginning of the Class Period, are clearly suspicious in amount." (Opposition, p. 17). As a close reading of the Amended Complaint itself makes clear, however, this is not true. In fact, Plaintiffs themselves assert in the Amended Complaint that "Bucknum's Class Period sales . . . represented 53.81% of his holdings including vested options." (Amended Complaint, ¶ 392 (emphasis supplied)). Further, it is unclear how, if, as Plaintiffs now assert in their Opposition (p. 6), "Bucknum did not purchase any Biogen securities during the Class Period," that his sale of 100% of his shares held at the beginning of the Class Period represented only 53.81% of his holdings. What is clear, however, is that

Plaintiffs, in their desperate effort to concoct a claim against Bucknum, cannot even keep their facts straight.

Ultimately, there is nothing "suspicious" about Bucknum's alleged trades. At most, his alleged trades are indicative of an investor trading stock in an effort to take advantage of a favorable price. This is simply rational activity to be expected from a prudent investor. *See In re Focus Enhancements*, *Inc. Sec. Litig.*, 309 F. Supp. 2d 134, 164 (D. Mass. 2001) (observing trading activity did "not appear very suspicious" where directors sold holdings after "a significant increase occurred in the price of the stock," because the "sales did not occur before a big 'event' unknown to the public" but "the vast majority of sales occurred after a public announcement that caused stock prices to rise"); *see also Brown v. Credit Suisse First Boston LLC*, 431 F.3d 36, 49 (1st Cir. 2005) ("Scienter allegations do not pass the 'strong inference' test when, viewed in light of the complaint as a whole, there are legitimate explanations for the behavior that are equally convincing."). As such, Plaintiffs have failed to raise a strong inference that Bucknum acted with the requisite scienter.

## III.   BUCKNUM'S DISGORGEMENT OF ALL PROFITS FROM HIS FEBRUARY 18, 2005 TRADE PRECLUDES PLAINTIFFS' 20A CLAIM BASED ON THIS TRADE

In their Opposition, Plaintiffs acknowledge that the damages recoverable under Section 20A cannot exceed the profits gained in a challenged transaction and that those damages must be reduced by any amount that the defendant is "required to disgorge, pursuant to a court order obtained at the instance of the Commission." (Opposition at p. 20 (citing 15 U.S.C. § 78(t)-1(b))). Moreover, Plaintiffs cannot dispute that they have plainly alleged in their Amended Complaint that Bucknum's total profits from his February 18, 2005 trade totaled $1.9 million (Amended Complaint, ¶¶ 323, 394), and that Bucknum was required to disgorge "$1,938,465, representing profits gained," pursuant to a court order obtained at the insistence of the SEC

(Amended Complaint, ¶ 340; Memorandum In Support of Motion To Dismiss, Exhibit B, Final Judgment, p. 3).  As a result, no damages are further recoverable from Bucknum under Section 20A with respect to the February 18, 2005 transaction.

Nonetheless, relying on the decision of the United States District Court for the Northern District of Illinois in *McGhee v. Joutras*, No. 94 C 7052, 1995 U.S. Dist. LEXIS 2040 (N.D. Ill. Feb. 19, 1995), Plaintiffs argue: (1) that disgorgement does not "automatically" foreclose a private action; (2) that they are first entitled to discovery on the issue of profits, and (3) that whether Bucknum has fully disgorged his profits presents an issue of fact.  The *McGhee* court, however, was faced with a different set of facts.  Although the *McGhee* court noted that disgorgement does not "automatically" foreclose a private action under 20A, it made clear that the defendant would be entitled to judgment as a matter of law if there was no dispute that all profits were indeed ordered to be disgorged as a result of an SEC proceeding.  The *McGhee* plaintiffs argued that the SEC's calculation of profits was inaccurate and that they should not be bound by that calculation.  Thus, unlike the plaintiff in *McGhee*, the instant Plaintiffs have alleged in the Complaint that Bucknum's profits as a result of the February 18, 2005 transaction totaled $1.9 million and that all such profits were ordered disgorged.  Unlike in *McGhee*, there is no factual dispute.  Consequently, though disgorgement does not "automatically" foreclose a private right of action, it most certainly precludes a private action where, as here, the amount of profits and an order requiring the disgorgement of all such profits are undisputed.

## <u>CONCLUSION</u>

For the foregoing reasons, as well as those set forth in his original memorandum,

Bucknum respectfully requests that this Court allow his motion to dismiss and that Count III of

the Complaint be dismissed with prejudice.[5]

Respectfully submitted,


  /s/  Mark A. Berthiaume
Mark A. Berthiaume (BBO #041715)
Timothy E. Maguire (BBO #630773)
Edward E. Hale, Jr. (BBO #651272)
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
Tel:  (617) 310-6000
Fax:  (617) 310-6001

Dated: February 26, 2007

---

[5] Although it is within the Court's discretion to grant a plaintiff leave to amend a complaint following the granting of a motion to dismiss, it should dismiss an action with prejudice where it is clear that plaintiffs will not be able to state a claim as a matter of law.  *See Carney,* 135 F. Supp. 2d at 257 ("The plaintiffs' request for leave to amend their complaint further, contained in a footnote in their memorandum in opposition to the motion to dismiss, is denied.")   Here, Plaintiffs have "'pled [their] case with determined imagination, but little factual substance. Considerations of fairness, judicial economy, and congressional purpose in enacting the Securities Laws all point to a denial of discovery and to dismissal of this complaint with prejudice.'"  *Carney*, 135 F. Supp. 2d at 257 (citing *Colby*, 817 F. Supp. at 217).  The Court, therefore, should not grant Plaintiffs' request, contained in a footnote at the end of their opposition memorandum, for leave to further amend.

## <u>CERTIFICATE OF SERVICE</u>

I, Mark A. Berthiaume hereby certify that on February 26, 2007, a true copy of the

foregoing document was filed through the ECF system and served electronically upon registered

ECF participants as identified on the Notice of Electronic Filing, and I further certify that paper

copies of the foregoing document will be sent to counsel of record not registered with ECF on

February 26, 2007.


                                                   /s/ Mark A. Berthiaume
                                                   Mark A. Berthiaume

bos-fs1\215684v01

21